FENNEMORE CRAIG, P.C.
Laurel E. Davis (NV Bar No. 3005)
Craig S. Dunlap (NV Bar No. 4974)
Jeffrey S. Steffen (NV Bar No. 9912)
Bank of America Plaza, Suite 1400
300 South Fourth Street
Las Vegas, Nevada  89101
Telephone:  (702) 692-8000
Facsimile:  (702) 692-8064
*ldavis@fclaw.com*

**E-filed January 13, 2010**

MCDERMOTT WILL & EMERY LLP
William P. Smith (IL Bar No. 6187205)*
James W. Kapp III (IL Bar No. 6239269)*
Miles W. Hughes (IL Bar No. 6279176)*
227 West Monroe Street, Suite 4400
Chicago, Illinois  60606-5096
Telephone:  (312) 372-2000
Facsimile:  (312) 984-7700

*\* Pro Hac Vice Applications Pending*

*Attorneys for Ambac Assurance Corporation*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Chapter 11 |
| LAS VEGAS MONORAIL COMPANY,<br>a Nevada non-profit corporation,<br><br>Debtor. | No. BK-S-10-10464-LBR<br><br>Date of Hearing:   TBD<br>Time of Hearing:  TBD<br>Location:  300 Las Vegas Blvd. South<br>          Courtroom #1<br>          Las Vegas, Nevada 89101 |

**MOTION OF AMBAC ASSURANCE CORPORATION FOR DISMISSAL
OF CHAPTER 11 PROCEEDING PURSUANT TO 28 U.S.C §1334
AND SECTIONS 109(d) AND 1112(b) OF THE BANKRUPTCY CODE**

AMBAC ASSURANCE CORPORATION ("**Ambac**") hereby moves (the "**Motion**") to

dismiss the chapter 11 petition of Las Vegas Monorail Company ("**LVMC**"), the putative debtor,

pursuant to 28 U.S.C. §1334(b) and sections 109(d) and 1112(b) of title 11 of the United States

Code (the "**Bankruptcy Code**"), on the grounds that LVMC is ineligible to be a debtor under chapter 11 of the Bankruptcy Code, and in support thereof respectfully represents as follows:

## SUMMARY

1.    LVMC is a "municipality" for the purposes of the Bankruptcy Code and, as such, it is ineligible to be a debtor under chapter 11.  "Municipality" is defined under section 101(40) of the Bankruptcy Code to include a "public agency or instrumentality of a State."   As described herein, the applicable legal authority demonstrates that LVMC is a "municipality" because:

A.    LVMC itself has certified and agreed that "*The Borrower [i.e., LVMC] is an instrumentality of the State of Nevada, is controlled by the Governor of the State of Nevada*, as described herein, and is using the proceeds of the Bonds to acquire an existing monorail line …" under Section 1.8 of the Tax Certificate and Agreement, dated September 20, 2000 (the "**Tax Agreement**"), between LVMC and the Director of the State of Nevada Department of Business and Industry (the "**Director**"), as issuer of the tax-exempt Bonds;[1]

B.    LVMC was incorporated for the public purpose of constructing, maintaining and operating the Las Vegas Monorail (the "**Monorail**") as "a public mass transit monorail system with general public access in all respects … as a means to provide a public benefit and not as a means to provide a benefit to any private business," as described, in part, in Section 1.8 of the Tax Agreement;

C.    Moreover, as set forth in LVMC's organizational documents,[2] the State of Nevada exercises significant control over LVMC's governance, financial affairs and operations.  For example, the Governor of the State of Nevada (the "**Governor**") is the final authority with respect to (i) the appointment and removal of members of LVMC's board of directors (the "**Board**"), (ii) the approval of LVMC's annual budget, financial reports, major expenditures, and board proposed changes to LVMC's rate schedule, and

---

[1]  A true and correct copy of the Tax Agreement is attached to the *Declaration of Scott Zuchorski in Support of Motion of Ambac Assurance Corporation for Dismissal of Chapter 11 Proceeding Pursuant to 28 U.S.C. §1334 and Sections 109(d) and 1112(b) of the Bankruptcy Code* (the "**Declaration**") as <u>Exhibit A</u>.

[2]  True and correct copies of LVMC's Articles of Incorporation and Bylaws (collectively, the "**Governing Documents**") are attached to the Declaration as <u>Exhibits B and C</u>, respectively.

(iii) modifying or repealing LVMC's Governing Documents.    Upon a winding-up of LVMC, any remaining net earnings or residual assets revert to the Governor or to a designated state agency.    LVMC is also subject to public records and open meeting requirements.

2.    A "municipality" may not be a debtor under any chapter of the Bankruptcy Code except chapter 9.   Because LVMC is a "municipality" under the Bankruptcy Code, the only recourse available to LVMC is to seek relief under chapter 9.   Thus, pursuant to 28 U.S. C. §1334(b) and sections 109(b) and 1112(b) of the Bankruptcy Code, this Court must dismiss LVMC's chapter 11 petition on the grounds that LVMC is ineligible to be a debtor under chapter 11 of the Bankruptcy Code.

## JURISDICTION

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, subject to this Court's determination as to whether LVMC is eligible to be a chapter 11 debtor.   This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), and (O).   Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND[3]

4.    On January 13, 2010, LVMC commenced a chapter 11 proceeding with this Court (the "**Chapter 11 Case**").   No trustee, examiner or creditors committee has been appointed in the above-captioned proceeding.

## LVMC and the Monorail

5.    LVMC owns and manages the Monorail.   The Monorail is a seven-stop, elevated train system that travels along a 3.9-mile route near the Las Vegas Strip.   LVMC has contracted

---

[3] The assertions stated herein are supported by the Declaration and the attachments thereto.

with Bombardier Transit Corporation to operate the Monorail.

6.     In 2000, LVMC was organized by the State of Nevada as a nonprofit corporation. Article III and IV of LVMC's Bylaws provide that (a) LVMC is a nonprofit public benefit corporation, without capital stock, organized under Chapter 82 of the Nevada Revised Statutes, and (ii) LVMC is not organized for the private gain of any person.  In addition, Article II of LVMC's Articles of Incorporation reiterates that LVMC is a nonprofit corporation organized and operated exclusively for civic purposes within the meaning of section 501(c)(4) of the Internal Revenue Code.  Pursuant to Article III of LVMC's Articles of Incorporation, LVMC is not organized for profit, and no part of its net earnings shall ever inure to the benefit of any individual, director, officer, or any entity other than the State of Nevada, the Governor or a designated state agency.

7.     Moreover, LVMC is exempt from federal income taxation under section 501(c)(4) of the Internal Revenue Code, and it is exempt from state sales and use taxation under section 372.3261 of the Nevada Revised Statutes.  Article I of LVMC's Articles of Incorporation states that LVMC was organized "to acquire, develop, operate, maintain and improve" the Monorail, and "to obtain financing for the acquisition, construction, installation, operation, maintenance and improvement" of the Monorail.[4]  As a tax-exempt nonprofit corporation, all of LVMC's property, assets, profits and net revenues are irrevocably dedicated to the public purposes for which it was formed.

8.     The Monorail was originally owned by MGM Grand-Bally's Monorail Limited

---

[4] Pursuant to Article III of LVMC's Articles of Incorporation, no part of LVMC's net earnings shall ever inure to the benefit of any individual, director, officer, or any entity other than the State of Nevada, the Governor or a designated state agency.

Liability Company (the "**Original Owner**"), a joint venture between MGM Grand Monorail, Inc., and Bally's Grand, Inc.  In 2000, the Original Owner sold the Monorail to LVMC.

**LVMC Certifies it is a State Instrumentality in Connection with the Bond Financing**

9.    LVMC financed its acquisition and improvement of the Monorail with the proceeds of the following three series of tax-exempt governmental bonds issued by the Director: (a) the $451,448,217.30 original principal amount 1st Tier Series 2000 (the "**1st Tier Bonds**"); (b) the $149,200,000 original principal amount 2nd Tier Series 2000 (the "**2nd Tier Bonds**" and, collectively with the 1st Tier Bonds, the "**Senior Bonds**"); and (c) the $48,500,000 original principal amount 3rd Tier Series 2000 (together with the Senior Bonds, the "**Bonds**").  The Bonds constituted the largest issue of tax-exempt Bonds in the history of the State of Nevada.

10.    The Tax Agreement makes clear that the Bonds were issued as "governmental bonds" (i.e., tax-exempt bonds issued by a governmental entity and used by such entity or an instrumentality of the government for traditional governmental activities such as public infrastructure) rather than "qualified private activity bonds" (e.g., bonds issued by a governmental entity but used by a nongovernmental person for certain qualified purposes enumerated under the Internal Revenue Code of 1986).  Thus, under Section 1.8 of the Tax Agreement, LVMC certified and agreed that it is "an instrumentality of the State of Nevada" and is "controlled by the Governor of the State of Nevada."

11.    The other key documents and agreements relating to the Senior Bonds and LVMC's ownership and operation of the Monorail are as follows:

> A.    The senior indenture, dated as of September 1, 2000 (the "**Senior Indenture**"), between the Director and Wells Fargo Bank, N.A., as Trustee (the "**Trustee**"), pursuant to which the Senior Bonds were issued (a true and correct copy is attached to the Declaration as <u>Exhibit D</u>);

B.  The financing agreement, dated as of September 1, 2000 (the "**Financing Agreement**"), between the Director and LVMC , pursuant to which the proceeds of the Bonds were loaned to LVMC (a true and correct copy is attached to the Declaration as <u>Exhibit E</u>);

C.  The Clark County Monorail Franchise Agreement, dated as of December 2, 1998, between Clark County, Nevada, and MGM Grand-Bally's Limited Liability Company, under which the Monorail franchise was granted to LVMC (a true and correct copy is attached to the Declaration as <u>Exhibit F</u>).[5]

12.    The Trustee holds perfected security interests in certain property and interests of LVMC (collectively, the "**Collateral**") as security for the payment of the Senior Bonds.  The Collateral consists, in part, of (a) all moneys received by the Director or the Trustee for the account of the Director pursuant to the Financing Agreement for the benefit of the Senior Bonds, (b) all amounts held in any fund or account established under the Senior Indenture (except for amounts held in the Indemnification Account of the Contingency Fund or in the Rebate Fund (as defined in the Financing Agreement)) (the "**Trust Funds**"), and (c) rights under certain of LVMC's contracts, and (d) proceeds of the foregoing, including Project Revenues as proceeds of the Franchise Agreement.  <u>Senior Indenture</u> § 5.01(A) – (D); <u>Financing Agreement</u> §§ 3.1(b) and 4.4.

13.    As a consequence of LVMC's ongoing payment defaults in respect of the Senior Bonds, LVMC is required under Section 4.1(b) of the Financing Agreement to transfer all of its revenues, promptly upon receipt, to the Trustee for deposit in the Revenue Fund, as established under the Senior Indenture.  With a few recent exceptions, LVMC has been depositing its

---

[5]  The original Franchise Agreement has been amended by (a) the First Amendment to Franchise Agreement, dated as of October 20, 1999, (b) the Second Amendment to Franchise Agreement, dated as of October 7, 2003, (c) the Third Amendment to Franchise Agreement, dated as of November 1, 2005, (d) the Fourth Amendment to Franchise Agreement, dated December 6, 2006, and (e) the Extension to Fourth Amendment to Franchise Agreement, dated December 3, 2008.

revenues with the Trustee for almost three years.

**State Control of LVMC**

14.    Due to LVMC's classification as an "instrumentality" of the State of Nevada, major aspects of LVMC's governance, financial affairs, and operations are controlled by the State of Nevada.   The Governor of the State of Nevada has significant control and influence over LVMC, as evidenced by the following:

A.    All appointments to LVMC's Board must be approved by the Governor. Bylaws §§ 6.02 and 6.04.

B.    The Board must notify the Governor of its recommendation to reappoint or replace a director whose term is expiring, and if the Governor disapproves of the Board's first two nominees, then the Governor may appoint the successor director without Board input or approval.  Bylaws § 6.04.

C.    The Governor may remove any director from LVMC's Board for cause. Bylaws § 6.03.  No director may be removed from office by the Board without the Governor's approval.  *Id.*  If the Governor disapproves of the Board's recommendation for removal, the director shall not be removed from the Board.  *Id.*

D.    LVMC must obtain the Governor's approval of its annual budgets, financial reports, any material alterations to its annual budget or financial reports, any major expenditures for enhancements or repairs of the Monorail, and any proposed changes to the rate schedule.  Bylaws § 6.12. If the Governor disapproves of any such matter, the Board cannot proceed with such action.  *Id.*

E.    The Governor has the right to inspect and audit all of LVMC's books, records, and documents of every kind.  Bylaws § 8.03.

F.    LVMC's Articles of Incorporation and Bylaws may not be amended or repealed without the approval of the Governor.  Articles of Incorporation Art. IV; Bylaws Art. X.

15.    Upon the dissolution of LVMC, all of its assets remaining after the discharge of its liabilities must be distributed to the Governor or to a designated agency of the State of Nevada. Articles of Incorporation, Art. III.

16.     LVMC is subject to public records and open meetings requirements.  LVMC must make its annual budget, and any material modifications thereto, available to the public in compliance with the Certificate of the Office of the Governor dated September 18, 2000 (the "**Governor's Certificate**").[6]  Moreover, any meeting of the Board of Directors at which the annual budget is adopted must be noticed as a public meeting, open to public attendance, and public comment must be permitted.  *Id.*  Minutes of all meetings of the Board of Directors must be available for public review (but proprietary or confidential information may be deleted from the minutes).  *Id*.  LVMC continues to comply with the requirements of the Governor's Certificate, as most recently demonstrated by LVMC's public Board meeting on November 18, 2009 to present its annual budget.[7]

**Ambac Assurance Corporation**

17.     Ambac is a Wisconsin-domiciled stock insurance corporation regulated by the Office of the Commissioner of Insurance of the State of Wisconsin.

18.     Ambac's interest in this Chapter 11 Case arises, in part, under three arrangements related to the 1st Tier Bonds.  First, Ambac has insured the payment of scheduled amounts of principal and interest on the 1st Tier Bonds pursuant to its Municipal Bond Insurance Policy Number 17548BE, dated September 20, 2000 (the "**Policy**").  Second, Ambac has guaranteed payments from the Debt Service Reserve Fund for the 1st Tier Bonds in an amount not to exceed $20,991,807.50 under Surety Bond No. SB1080BE (the "**Surety Bond**") it issued to the Trustee.  Third, Ambac owns $8.5 million in principal amount of 1st Tier Bonds.

---

[6]  A true and correct copy of the Governor's Certificate is attached as <u>Exhibit G</u> to the Declaration.

[7]  A copy of the agenda of LVMC's board meeting on November 18, 2009, is attached as <u>Exhibit H</u> to the Declaration.

19.    As of the date of this Motion, Ambac has made payments under its Policy or Surety in the aggregate amount of $20,532,771.15 due to LVMC's failure to pay required installments of interest on the 1st Tier Bonds as and when due under the Financing Agreement and the Senior Indenture.  If LVMC never makes another payment on the 1st Tier Bonds, then Ambac estimates that its total exposure under the Policy and Surety will be approximately $1,163,435,771.15.[8]

20.    Ambac is entitled to exercise substantial rights and remedies under the Financing Agreement and Senior Indenture.  The rights and remedies afforded to Ambac include, without limitation, the following:

    A.    The right to control and direct the enforcement of all rights and remedies available to the Trustee or the holders of Senior Bonds under the Senior Indenture, Financing Agreement, or applicable law.  <u>Senior Indenture</u> § 7.02; <u>Financing Agreement</u> § 7.2.

    B.    The right to receive LVMC's financial statements and other requested information, to discuss LVMC's finances and affairs with appropriate officers and agents of LVMC, to inspect the Monorail, to have access to LVMC's books and records, and to direct an accounting by LVMC.  <u>Senior Indenture</u> § 11.01(a) – (e).

    C.    The right to approve any contractor, operator, manager, independent engineer or revenue and ridership consultant to be engaged by LVMC.  <u>Financing Agreement</u> § 5.14(b).

**<u>RELIEF REQUESTED</u>**

21.    By this Motion, Ambac moves to dismiss the Chapter 11 Case on the basis that LVMC, as a "municipality," is ineligible to be a chapter 11 debtor.

---

[8]    This figure includes remaining direct principal and interest exposure claims paid to date.  Ambac becomes subrogated to the rights of the holders of 1st Tier Bonds to the extent it makes payments under its Policy.  <u>Trust Indenture</u> § 11.02(f).

1

**A.      A "Municipality" Cannot be a Chapter 11 Debtor**

2        22.     A debtor eligible to seek chapter 11 protection must, in part, be a "person"

3  otherwise eligible to be a debtor under chapter 7 of the Bankruptcy Code. [9]  11 U.S.C. § 109(d).

4  The definition of "person," however, specifically excludes a "governmental unit." 11 U.S.C. §

5  101(41).   "Governmental unit" is a defined term under the Bankruptcy Code and includes a

6  "municipality." 11. U.S.C. § 101(27).   Therefore, a "person" under the Bankruptcy Code cannot

7

8  be a "municipality."

9        23.     To be an eligible chapter 9 debtor, an entity must be a "municipality" as that term

10  is defined in section 101(40) of the Bankruptcy Code.   If an entity is a municipality, then it *may*

11  be eligible for a chapter 9 filing (assuming it meets the other filing requirements under section

12  109(c) of the Bankruptcy Code), but it is *not* eligible to initiate a chapter 11 proceeding because it

13  is not a "person" under the Bankruptcy Code.   Alternatively, if an entity is *not* a municipality, it

14  *may* be eligible for a chapter 11 filing even though such entity can not seek chapter 9 protection.

15  *See* Lawrence P. King, 6 COLLIER ON BANKRUPTCY ("COLLIER") ¶900.02[2] at 900-9 (15th ed.

16  Rev. 2008) ("a municipality that is eligible for relief under chapter 9 cannot be a debtor under any

17

18  other chapter of the Bankruptcy Code"); *see also In re Westport Transit Dist.*, 165 B.R. 93, 95

19  (Bankr. D. Conn. 1994) ("Chapter 9 is the sole avenue of relief for municipalities under the

20  Bankruptcy Code.")

21        24.     As a result, chapter 9 and chapter 11 eligibility are not alternatives to each other,

22

23  but, instead, are mutually exclusive.  *See* COLLIER ¶900.02[2] at 900-9.

24

25  [9] As LVMC is not a railroad, an uninsured State member bank or a corporation organized under section 25A of
   Federal Reserve Act, LVMC does not satisfy any of the alternative conditions necessary to be a chapter 11 debtor
26  pursuant to section 109(d) of the Bankruptcy Code.

**B.    A Case Initiated by an Ineligible Debtor Must Be Dismissed**

25.    Bankruptcy courts have limited jurisdiction under 28 U.S. C. §1334.  *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995).  With respect to a petition for bankruptcy relief, the Court has jurisdiction only over "cases arising under title 11."  28 U.S.C. §1334(b).  A court lacks jurisdiction over a petition for relief filed by an entity ineligible for protection under the Bankruptcy Code.  *Id.*

26.    Courts, interpreting section 109(d) of the Bankruptcy Code in accordance with its plain meaning, have routinely dismissed chapter 11 cases where the debtor did not constitute a "person" as defined by section 101(41) of the Bankruptcy Code.  *See In re C-TC 9th Ave. Partnership*, 113 F.3d 1304, 1309 (2d Cir. 1997) (affirming dismissal, in part, because the debtor was not a "person" as defined by the Bankruptcy Code); *In re Estate of Medcare HMO*, 998 F.2d 436, 447 (7th Cir. 1993) (affirming dismissal for lack of jurisdiction over debtor's chapter 11 petition because the entity was not an eligible "person" under section 109(d) of the Bankruptcy Code); *Hunt v. TRC Properties (In re Hunt)*, 160 B.R. 131, 135-36 (B.A.P. 9th Cir. 1993) (affirming dismissal of the bankruptcy case because a non-business trust is not a "person" under section 109(d) of the Bankruptcy Code and not entitled to chapter 11 protection); *In re Sung Soo Rim Irrevocable Intervivos Trust*, 177 B.R. 673, 679 (Bankr. C.D. Cal. 1995); *N. Fork Bank v. Abelson*, 207 B.R. 382, 390 (E.D.N.Y. 1997) (noting that if an entity fails to qualify as a debtor because it is not a "person" under the Bankruptcy Code, a bankruptcy court lacks subject matter jurisdiction); *Merrill v. Allen (In re Universal Clearing House Co.)*, 60 B.R. 985, 991 (D. Utah 1986) (if a debtor is ineligible for relief under the Bankruptcy Code, "then the statutory source of

the bankruptcy court's exercise of jurisdiction is lacking and the case must be dismissed"). [10]

27.    LVMC's ineligibility as a chapter 11 debtor justifies dismissal on jurisdictional grounds,[11] or alternatively, for "cause" pursuant to section 1112(b) of the Bankruptcy Code.[12]

28.    Therefore, if LVMC qualifies as a "municipality" under the Bankruptcy Code, it is not eligible to be a chapter 11 debtor.  In such a circumstance, this Court will lack jurisdiction over LVMC's chapter 11 petition, and consequently, this Chapter 11 Case must be dismissed under 28 U.S.C. §1334 and section 109(d) of the Bankruptcy Code, or, alternatively, should be dismissed for cause pursuant to section 1112(b) of the Bankruptcy Code.

---

[10] Other Courts have held that the threshold issue of eligibility is not jurisdictional.  *See In re Wenberg*, 94 B.R. 631, 637 (9th Cir. BAP 1988) *aff'd Wenberg v. FDIC (In re Wenberg)*, 902 F.2d 768 (9th Cir. 1990) (noting that Section 109 eligibility is not jurisdictional); *In re First Assured Warranty Corp.*, 383 B.R. 502, 518-19 (Bankr. D. Colo. 2008) (the issue of whether the debtor is eligible for relief is not jurisdictional, dismissal for failure to meet the requirements for filing a petition is a core issue).

[11] Section 1112(b) of the Bankruptcy Code typically governs the dismissal or conversion of a chapter 11 case:

> . . . on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall. . . convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, . . . if the movant establishes cause.

11 U.S.C. §1112(b).

Lack of eligibility to file is cause for dismissal of a chapter 11 case.  *See In re C-TC*, 113 F.3d at 1309.  Because LVMC's lack of eligibility to be a debtor is a jurisdictional issue, the Court should dismiss this case under 28 U.S.C. § 1334 and 11. US.C. § 109(d) without considering the application of section 1112(b) of the Bankruptcy Code.  *See In re Estate of Medcare HMO*, 998 F.2d at 447 (affirming dismissal of debtor's chapter 11 petition for lack of jurisdiction due to debtor's ineligibility under section 109(d) of the Bankruptcy Code without considering section 1112(b) of the Bankruptcy Code; *In re Gurney's Inn Corp. Liquidating Trust*, 215 B.R. 659, 669 (Bankr. E.D.N.Y. 1997) (same); *In re Sung Soo Rim*, 177 B.R at 679 (same).

[12] Alternatively, the Court should dismiss the Chapter 11 Case for cause pursuant to section 1112(b) of the Bankruptcy Code, as LVMC  is not eligible to be a debtor under chapter 11.  As set forth in section 301 of the Bankruptcy Code, a voluntary case is commenced by the filing of a petition "under such chapter by an entity that may be a debtor under such chapter."  A petition filed by an ineligible debtor, therefore, does not commence a case. *See, Wyttenbach v. Comm'n Internal Revenue*, 382 B.R. 726, 730 (S.D. Tex. 2008)(failure to comply with section 109(h) of the Bankruptcy Code precludes commencement of a bankruptcy case).

**C.    LVMC is a "Municipality" Under the Bankruptcy Code**

**1.    LVMC has Certified and Agreed that it is an Instrumentality of the State**

29.    "Municipality" is defined by the Bankruptcy Code as a "political subdivision or public agency or instrumentality of a State."  11 U.S.C. §101(40).[13]  It is absolutely clear that LVMC is a municipality for the purposes of the Bankruptcy Code because LVMC certified and agreed in connection with issuance of the Bonds that it is an "instrumentality of the State of Nevada" and "controlled by the Governor of the State of Nevada."  Tax Agreement § 1.8.  This certification and agreement by LVMC was a crucial component of the tax-exempt financing of the Monorail.  Having obtained the benefits of the Director's issuance of the tax-exempt governmental Bonds, LVMC cannot now disavow its status as an instrumentality of the State of Nevada subject to the control of the Governor.

**2.    LVMC is Subject to State Control**

30.    As discussed above, LVMC has acknowledged and agreed that it is "controlled by the Governor."  In addition, applicable case law indicates that LVMC is an "instrumentality of the State" or a "public agency" and, thus, a "municipality" pursuant to section 101(40) of the Bankruptcy Code.

31.    Courts addressing the scope of the term "municipality" have generally considered the extent to which the entity in question is subject to control by the state or other municipal authority.  *In re Greene County Hosp.*, 59 B.R. 388, 389 (Bankr. S.D. Miss. 1986); *Westport Transit Dist.*, 165 B.R. at 95; *In re Ellicott School Bldg. Auth.*, 150 B.R. at 264.

32.    For example, in *In re Ellicott School Building Authority*, a school building

---

[13]   The Bankruptcy Code, however, does not define "political subdivision, public agency, or instrumentality of a State."  *In re County of Orange*, 183 B.R. 594, 601 (Bankr. C.D. Cal. 1995); *In re Ellicott School Bldg. Auth.*, 150 B.R. 261, 264 (Bankr. D. Colo. 1992).

authority structured as a tax-exempt nonprofit corporation filed a chapter 9 petition. *Id.* at 262-63. The court concluded that the nonprofit building authority was not a "municipality" for the purposes of chapter 9 eligibility because no governmental entity exercised any right of control over it.  *Id.* at 264 ("neither Colorado statutes nor the articles of incorporation accord any governmental entity the ability to control [the building authority.]").

33.    In contrast, in *In re Westport Transit District*, the Westport Transit District was formed as a transit district to serve the transportation needs of the residents of the town of Westport, Connecticut.  *Westport Transit Dist.*, 165 B.R. at 94.  The *Westport* court found that, among other things, the debtor was an agency of the town of Westport and that it assumed "all powers of the department of transportation within the district, including the establishment of passenger fares, the regulation of existing the transit systems, and the right to use revenues to subsidize transit systems operating under private ownership."  *Id.* at 96.  The debtor could also issue bonds and notes and, under certain conditions, could obtain state guaranties of payment.  *Id.* Accordingly, the transit district was found to be a "hybrid public agency" of both the town of Westport and the state of Connecticut and it thereby qualified as a "municipality" under the Bankruptcy Code.  *Id.*;  *see also In re Greene County Hosp.*, 59 B.R. at 390 (county hospital is a "municipality" because it is subject to control by the county's board of supervisors, which exercises powers "associated with property management while the operation of the hospital itself" is left to the hospital's administrator and board of trustees).

34.    In this Chapter 11 Case, the direct and substantial oversight of the Governor, as set forth in the Governing Documents, qualifies LVMC as a "municipality" under the Bankruptcy Code.  For example:

- Net earnings and residual assets inure solely to the benefit of the Governor or a designated Nevada state agency.  <u>Articles of Incorporation</u>, Art. III.

- All appointments to the Board are subject to the Governor's approval.  In the event that the Board fails to nominate a Board member acceptable to the Governor, the Governor can appoint a new member without Board approval.  <u>Bylaws</u>, Art. VI.

- The Governor is empowered to remove a Board member for cause, and appoint a replacement without Board approval if the Board and the Governor cannot agree on a nominee.  *Id.*

- The Governor established the initial fare schedule for the Monorail.  *Id.*

- The Governor must approve LVMC's annual budget, financial reports, any material alterations to either the annual budget or financial reports during the year, any major expenditures for enhancement or repair of the monorail, and any Board proposed changes to the rate schedule.  If the Governor disapproves of such matter, then LVMC must change the matter to meet the Governor's approval or it may not implement the action.  *Id.*

- The books and records of LVMC, the Board and any Board executive committee must be available for inspection by the Governor.  *Id.*; <u>Bylaws</u>, Art. VII.

- Amendments to the Articles of Incorporation are subject to approval by the Governor.  <u>Articles of Incorporation</u>, Art. IV.

- Finally, the Bylaws may not be amended or repealed unless approved by the Governor. <u>Bylaws</u>, Art. X.

35.    In short, the Governor has approval rights with respect to essentially all decisions that are outside of LVMC's ordinary course of business.  The Governor also has significant oversight with respect to LVMC's ordinary business matters.  Such a degree of government control is similar to, if not greater than, the amount of government involvement demonstrated in the *Westport* and *In re Greene County Hospital* cases.  *See Westport Transit Dist.*, 165 B.R. at 95-96; *Greene County Hosp.*, 59 B.R. at 390.

36.    LVMC is also subject to public records and open meetings requirements.  In accordance with the Governor's Certificate, LVMC must make its annual budget, and any material modifications thereto, available to the public.  Public notice must be provided in advance

of any Board meeting at which LVMC's annual budget is to be adopted, and the meeting must be open to the public and members of the public must be permitted to provide comments.   In addition, the minutes of all Board meetings must be available for public review, provided that proprietary or confidential information may be deleted from the minutes.  As demonstrated by the agenda for LVMC's Board meeting on November 18, 2009 (a true and correct copy is attached to the Declaration as <u>Exhibit H</u>), LVMC continues to comply with the requirement of the Governor's Certificate.

37.     The foregoing examples of the Governor's oversight and control over LVMC clearly demonstrate that LVMC is an "instrumentality" or "public agency" of the State of Nevada as those terms are contemplated under the Bankruptcy Code.   As a result, LVMC is a "municipality" ineligible for chapter 11 protection under section 109(d) of the Bankruptcy Code.

**3.     LVMC Has a Public Purpose**

38.     LVMC was organized to acquire and operate the Monorail for the public benefit and to issue bonds, payable out of the revenues derived from the Monorail, to pursue such a public purpose.  As a result, LVMC constitutes a "municipality" even under the more restricted analysis applied in *In re County of Orange*, 183 B.R. 594 (Bankr. C.D. Cal. 1995).

39.     In determining whether an investment fund established by the county to invest funds of various local agencies (the "**OCIP**") constituted a "municipality," the *County of Orange* court took a different approach than that applied by other courts.  183 B.R. at 596.  After noting that the Bankruptcy Code's definition of "municipality" did not define the terms "political subdivision," "public agency" or "instrumentality of a State" and that the legislative history of section 101(40) of the Bankruptcy Code failed to establish limits for inclusion in such categories,

the *County of Orange* court looked to "the bankruptcy practice that existed prior" to the creation of section 101(40) of the Bankruptcy Code.  *Id.* at 602.  In particular, the court relied heavily upon the 1937 Bankruptcy Act and the legislative history with respect to same.  *Id.*

40.    In determining whether OCIP qualified as a "public agency," the *County of Orange* court noted that section 81(6) of the 1937 Bankruptcy Act defined "public agency" to include "incorporated authorities, commissions, or similar public agencies organized for the purpose of constructing, maintaining and operating revenue producing enterprises."  *Id.*  The court further noted, after examining the underlying legislative history, that such definition of "public agency" was specifically designed to include agencies created by revenue bond financing that were authorized to construct or acquire a revenue-producing enterprise.  *Id.*  Thus, OCIP was found not to be a "public agency" because it was not organized for the purpose of "maintaining or operating a revenue producing enterprise" and it did "not finance its operations by issuing bonds of any type."  *Id.*

41.    The *County of Orange* court's approach to defining "municipality" has been criticized.  In particular, COLLIER'S questions the *County of Orange* court's reliance upon section 81 of the 1937 Bankruptcy Act to define the term "public agency" and "instrumentality of the State" under section 101(40) of the Bankruptcy Code.  COLLIER, ¶900.02[2][a] at 900-10-11.  COLLIER'S contends that such reliance is misplaced because the Bankruptcy Code's definition of "municipality" is "strikingly dissimilar" to the language of section 81 of the 1937 Bankruptcy Act.  *Id.*  Indeed, such an interpretation fails to give effect to Congress' intention to broaden the definition of "municipality," and as a result, to broaden the applicability of chapter 9 of the

1    Bankruptcy Code as much as possible. *Id.*[14]

2        42.    COLLIER'S further contends that the *County of Orange* court's finding that OCIP

3    was not an "instrumentality of the State" is belied by the fact, as recognized by the bankruptcy

4    court that first considered the matter, that the existence of the OCIP, itself, was dependant upon

5    enabling state legislation. *Id.* at ¶900.02[2][a] [iii] at 900-11-12. Indeed, although the court found

6    that the OCIP was an instrumentality of the county and, in turn, a governmental unit, the *County*

7    *of Orange* court still found that OCIP was not an instrumentality of the State. 183 B.R. at 600. In

8    part, the *County of Orange* court reached such a conclusion because the definition of

9    "municipality" under section 101(40) of the Bankruptcy Code does not extend to instrumentalities

10   of a "county" and only references "instrumentality of the State." *Id.* at 603. COLLIER'S contends

11   that Congress specifically intended that the Bankruptcy Code's definition of "municipality" be

12   expansive, and, as a result, the lesser (instrumentality of a municipality) was certainly included

13   within the greater (instrumentality of a state). ¶900.02[2][a] [iii] at 900-11-12.

14       43.    Notwithstanding the *County of Orange* court's criticized reliance upon the 1937

15   Bankruptcy Act, its more restrictive analysis does not conflict with, and in fact supports, the

16   conclusion that LVMC is a "municipality" under section 101(40) of the Bankruptcy Code.

17       44.    In particular, LVMC "is organized as a nonprofit public benefit corporation

18   without capital stock." Bylaws, Art. IV. LVMC "is not organized for profit, and no part of the

19   net earnings, if any, of its corporation, either during its existence or upon its dissolution shall ever

20   inure to the benefit of any individual, or any director, officer or member thereof, or any person,

---

[14] The definition of "municipality" in section 101(40) of the Bankruptcy Code is almost identical to the language in section 84 of the 1976 Bankruptcy Act. *Id.* In turn, the definition of "municipality" in the 1976 Bankruptcy Act diverged significantly from the definition of "municipality" contained in section 81 of the 1937 Bankruptcy Act. *Id.* In particular, the 1976 Bankruptcy Act represented "a simplification of the extensive lists of kinds of municipalities contained in section 81" of the 1937 Bankruptcy Act. *Id.*

firm or corporation excepting on the Governor . . . or a designated agency of the State of Nevada." Articles of Incorporation, Art. III. LVMC is specifically organized for the "public improvement." *Id.*, Arts. I and II. The "property, assets, profits and net revenues" of LVMC shall be "irrevocably dedicated" to the operation and maintenance of the Monorail for the public improvement. *Id.*, Art. III. Accordingly, it can not be seriously contested that LVMC was formed in the public interest.

45.    Not only was LVMC organized to acquire develop, operate, maintain and improve the Monorail for the public improvement, LVMC was authorized to obtain financing to further such goals and to take "all other actions necessary and appropriate in order to accomplish the aforesaid public purposes." *Id.*, Art. I. In accordance therewith, LVMC subsequently financed the construction and operation of the Monorail, in part, through the issue of the Senior Bonds. In connection with such financing, LVMC, in part, pledged to the Trustee security interests in the Monorail's revenues.

46.    Therefore, in compliance with the dictates of the more restrictive definition applied in *County of Orange,* LVMC constitutes a "public agency" as LVMC was organized for the purpose of maintaining and operating a revenue producing enterprise for the public benefit and LVMC financed it operations, in part, by issuing the Senior Bonds. *See* 183 B.R. at 602; *see also Westport Transit Dist.*, 165 B.R. at 96 (the debtor assumed powers of the department of transportation, "including the establishment of passenger fares, the regulation of existing the transit systems, and the right to use revenues to subsidize transit systems operating under private ownership").

47.    LVMC also qualifies as an "instrumentality of a State" under section 101(40) of

the Bankruptcy Code.  "Instrumentality," is commonly defined as "something by which an end is accomplished."  *County of Orange*, 183 B.R. at 600.  As described in detail herein, LVMC has acknowledged and agreed that it is an instrumentality of the State of Nevada and is controlled by the Governor, who has clear and direct oversight over LVMC.  Indeed, LVMC, itself, was formed pursuant to enabling legislation to accomplish certain Las Vegas public transportation goals.  LVMC's relationship is directly with the State of Nevada and not any political subdivision of Nevada, which was the distinguishing factor that influenced the *County of Orange* court to determine that the OCIP was not an "instrumentality of a State."[15]  As a result, LVMC is an "instrumentality of the State" of Nevada in accordance with reasoning of the *County of Orange*.

48.    Accordingly, LVMC is a "municipality" pursuant to section 101(40) of the Bankruptcy Code.

**CONCLUSION**

49.    As set forth herein, LVMC, as demonstrated by its own acknowledgment under the Tax Agreement, by its Governing Documents, and by applicable authority, constitutes an "instrumentality of the State" and/or a "public agency" such that LVMC qualifies as a "municipality" as that term is broadly defined by section 101(40) of the Bankruptcy Code.   As a result thereof, LVMC is not eligible to initiate a chapter 11 proceeding pursuant to section 109(d) of the Bankruptcy Code and this proceeding should be dismissed pursuant to 28 U.S.C. §1334 or, alternatively, pursuant to 11 U.S.C. §1112(b).

---

[15] Other courts have differed with the *County of Orange* and have interpreted the term "of the State" to not be limited to direct relationships with the applicable state and to include relationships with a smaller subdivision of such state.  *See e.g., Westport Transit District*, 165 B.R. at 95 (the phrase "of the State" does not signify that only a "public agency of the State of Connecticut, as opposed to a public agency of the Town of Westport, may be a chapter 9 debtor").  Regardless, LVMC qualifies as an "instrumentality of the State" as such term is contemplated under the Bankruptcy Code.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

WHEREFORE, Ambac respectfully requests, for the reasons set forth herein, that the Court dismiss LVMC's chapter 11 petition and grant such other relief as is just and proper.

Dated: January 13, 2010

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP
William P. Smith (IL Bar No. 6187205)*
James W. Kapp III (IL Bar No. 6239269)*
Miles W. Hughes (IL Bar No. 6279176)*

FENNEMORE CRAIG, P.C.

By ____/s/ Laurel E. Davis_____
Laurel E. Davis
Craig S. Dunlap
Jeffrey S. Steffen

*Attorneys for Ambac Assurance Corporation*