FENNEMORE CRAIG, P.C.
Laurel E. Davis (NV Bar No. 3005)
Craig S. Dunlap (NV Bar No. 4974)
Jeffrey S. Steffen (NV Bar No. 9912)
Bank of America Plaza, Suite 1400
300 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 692-8000
Facsimile: (702) 692-8064
*ldavis@fclaw.com*

MCDERMOTT WILL & EMERY LLP
William P. Smith (IL Bar No. 6187205)*
James W. Kapp III (IL Bar No. 6239269)*
Miles W. Hughes (IL Bar No. 6279176)*
227 West Monroe Street, Suite 4400
Chicago, Illinois 60606-5096
Telephone: (312) 372-2000
Facsimile: (312) 984-7700

*\* Pro Hac Vice Applications Pending*

*Attorneys for Ambac Assurance Corporation*

E-filed January 13, 2010

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Chapter 11 |
| LAS VEGAS MONORAIL COMPANY, a Nevada non-profit corporation, | No. BK-S-10-10464-LBR |
| Debtor. | Date of Hearing: TBD<br>Time of Hearing: TBD<br>Location: 300 Las Vegas Blvd. South<br>Courtroom #1<br>Las Vegas, Nevada 89101 |

**DECLARATION OF SCOTT ZUCHORSKI IN SUPPORT OF
MOTION OF AMBAC ASSURANCE CORPORATION FOR DISMISSAL
OF CHAPTER 11 PROCEEDING PURSUANT TO 28 U.S.C §1334
AND SECTIONS 109(d) AND 1112(b) OF THE BANKRUPTCY CODE**

Scott Zuchorski declares as follows:

1. My name is Scott Zuchorski. I am currently a Vice-President in the Restructuring Group at Ambac Assurance Corporation ("**Ambac**"). I have held this position since the group was formed in May 2009. Ambac is a Wisconsin-domiciled stock insurance corporation regulated by the Office of the Commissioner of Insurance of the State of Wisconsin.

2. I joined Ambac in July 2002 as an analyst in Ambac's Public Finance Portfolio Risk Management division. From January 2004 to January 2006, I worked as an Assistant Vice-President in the same division. In January 2006, I became a Vice-President in the division. I held such title until May 2009, when I assumed my present position.

3. In my current position, I am responsible for the management of Ambac's various interests in distressed or troubled transactions in Ambac's book of business. I have personally been involved in the management of Ambac's interests with respect to the Las Vegas Monorail Company ("**LVMC**") since August 2005, when I became the surveillance analyst responsible for the LVMC transaction. Since August 2005, I have, among other things, analyzed the ridership and revenues of LVMC, visited various locations of LVMC, discussed numerous business and legal issues with LVMC and its constituency in the State of Nevada, and generally monitored Ambac's interests with respect to LVMC.

4. I make this Declaration in support of Ambac Assurance Corporation's Motion For Dismissal of Chapter 11 Proceeding Pursuant to 28 U.S.C. § 1334 and Sections 109(d) and 1112(b) of the Bankruptcy Code (the "**Motion**").[1]

---

[1] All terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

5. I have personal knowledge of the facts set forth herein, or have learned these facts from persons and sources who reported to me or upon whom I relied in the ordinary course of duties and responsibilities as a Vice-President of the Restructuring Group. The documents attached to this Declaration were copied or prepared in the ordinary course of business by Ambac employees. In addition, I am generally familiar with all of the documents referenced in this Declaration, including, without limitation, the Tax Certificate and Agreement, dated September 20, 2000 (the "**Tax Agreement**"), between LVMC and the Director of the State of Nevada Department of Business and Industry (the "**Director**"), LVMC's Articles of Incorporation, and LVMC's Bylaws. (True and correct copies of the Tax Agreement, LVMC's Articles of Incorporation, and LVMC's Bylaws are attached hereto as Exhibits "A", "B" and "C" respectively).

6. If called to testify, I am competent to attest to the facts set forth herein.

**LVMC and the Monorail**

7. LVMC owns and manages the Las Vegas Monorail (the "**Monorail**"). The Monorail is a seven-stop, elevated train system that travels along a 3.9-mile route near the Las Vegas Strip.

8. In 2000, LVMC was organized by the State of Nevada as a nonprofit corporation. LVMC is exempt from federal income taxation and from state sales and use taxation. LVMC's Articles of Incorporation provide that LVMC was organized to acquire, develop, operate, maintain and improve the Monorail, and to obtain financing for the acquisition, construction, installation, operation, maintenance and improvement of the Monorail. As a tax-exempt

nonprofit corporation, all of LVMC's property, assets, profits and net revenues are irrevocably dedicated to the public purposes for which it was formed.

9. The Monorail was originally owned by MGM Grand-Bally's Monorail Limited Liability Company (the "**Original Owner**"), a joint venture between MGM Grand Monorail, Inc., and Bally's Grand, Inc. In 2000, the Original Owner sold the Monorail to LVMC.

**LVMC Certifies it is a State Instrumentality in Connection with the Bond Financing**

10. LVMC financed its acquisition of the Monorail with the proceeds of the following three series of tax-exempt governmental bonds issued by the Director: (a) the $451,448,217.30 original principal amount 1st Tier Series 2000 (the "**1st Tier Bonds**"); (b) the $149,200,000 original principal amount 2nd Tier Series 2000 (the "**2nd Tier Bonds**" and, collectively with the 1st Tier Bonds, the "**Senior Bonds**"); and (c) the $48,500,000 original principal amount 3rd Tier Series 2000.

11. In connection with the Director's issuance of the Bonds, LVMC certified, acknowledged and agreed under Section 1.8 of the Tax Agreement that it is "an instrumentality of the State of Nevada" and is "controlled by the Governor of the State of Nevada."

12. Ambac insured the payment of scheduled amounts of principal and interest on the 1st Tier Bonds pursuant to its Municipal Bond Insurance Policy Number 17548BE, dated September 20, 2000 (the "**Policy**"). Ambac also guaranteed payments from the Debt Service Reserve Fund for the 1st Tier Bonds in an amount not to exceed $20,991,807.50 under Surety Bond (No. SB1080BE) (the "**Surety**") it issued to the Trustee. In addition, Ambac owns $8.5 million in principal amount of 1st Tier Bonds.

13. As of the date of the Motion, Ambac has made payments under the Policy or Surety in the aggregate amount of $20,532,771.15 due to LVMC's failure to pay required installments of interest on the 1st Tier Bonds as and when due under the Financing Agreement and the Senior Indenture. If LVMC never makes another payment on the 1st Tier Bonds, then Ambac estimates that its total exposure under the Policy and Surety will be approximately $1,163,435,771.15.[2]

14. The key documents and agreements relating to the Senior Bonds and LVMC's ownership and operation of the Monorail are as follows:

    A. The Tax Agreement;

    B. The senior indenture, dated as of September 1, 2000 (the "**Senior Indenture**"), between the Director and Wells Fargo Bank, N.A., as Trustee (the "**Trustee**"), pursuant to which the Senior Bonds were issued (a true and correct copy of the Senior Indenture is attached hereto as Exhibit "D");

    C. The financing agreement, dated as of September 1, 2000 (the "**Financing Agreement**"), between the Director and LVMC, pursuant to which the proceeds of the Bonds were loaned to LVMC (a true and correct copy of the Financing Agreement is attached hereto as Exhibit "E"); and

    D. The Clark County Monorail Franchise Agreement, dated as of December 2, 1998, between Clark County, Nevada, and MGM Grand-Bally's Limited Liability Company, under which the Monorail franchise was granted to LVMC (a true and correct copy of the Clark County Monorail Franchise Agreement is attached hereto as Exhibit "F").

15. The Trustee holds perfected security interests in certain property and interests of LVMC (collectively, the "**Collateral**") as security for the payment of the Senior Bonds. The Collateral consists, in part, of (a) all moneys received by the Director or the Trustee for the account of the Director pursuant to the Financing Agreement for the benefit of the Senior Bonds,

---

[2] This figure includes remaining direct principal and interest exposure claims paid to date.

(b) all amounts held in any fund or account established under the Senior Indenture (except for amounts held in the Indemnification Account of the Contingency Fund or in the Rebate Fund (as defined in the Financing Agreement)) (the "**Trust Funds**"), (c) rights under certain of LVMC's contracts, and (d) proceeds of the foregoing, including Project Revenues as proceeds of the Franchise Agreement.

16. As a consequence of LVMC's ongoing payment defaults in respect of the Senior Bonds, LVMC is required under the Financing Agreement to transfer all of its revenues, promptly upon receipt, to the Trustee for deposit in the Revenue Fund established under the Senior Indenture. With a few recent exceptions, LVMC for has been depositing its revenues with the Trustee for almost three years.

**State Control of LVMC**

17. LVMC was created by the State of Nevada. The Governor of the State of Nevada (the "**Governor**") has significant control and influence over LVMC, as evidenced by the following:

    A. All appointments to LVMC's board of directors (the "**Board**") must be approved by the Governor.

    B. The Board must notify the Governor of its recommendation to reappoint or replace a director whose term is expiring, and if the Governor disapproves of the Board's first two nominees, then the Governor may appoint the successor director without Board input or approval.

    C. The Governor may remove any director from LVMC's Board for cause. No director may be removed from office by the Board without the Governor's approval. If the Governor disapproves of the Board's recommendation for removal, the director shall not be removed from the Board.

    D. LVMC must obtain the Governor's approval of its annual budgets, financial reports, any material alterations to its annual budget or financial

reports, any major expenditures for enhancements or repairs of the Monorail, and any proposed changes to the rate schedule. If the Governor disapproves of any such matter, the Board cannot proceed with such action.

E. The Governor has the right to inspect and audit all of LVMC's books, records, and documents of every kind.

F. LVMC's Articles of Incorporation and Bylaws may not be amended or repealed with the approval of the Governor.

G. Net earnings and residual assets inure solely to the benefit of the Governor or a designated Nevada state agency.

H. The Governor established the initial fare schedule for the Monorail.

18. Upon the dissolution of LVMC, all of its assets remaining after the discharge of its liabilities must be distributed to the Governor or to a designated agency of the State of Nevada.

19. LVMC is subject to public records and open meetings requirements, as set forth in the Governor's Certificate. (A true and correct copy of the Governor's certificate is attached hereto as Exhibit "G", a true and correct copy of the agenda of LVMC's Board meeting on November 18, 2009 is attached hereto as Exhibit "H").

**LVMC's Public Purpose**

20. LVMC was organized to acquire and operate the Monorail for the public benefit and to issue bonds, payable out of the revenues derived from the Monorail, to pursue such a public purpose.

21. LVMC is organized as a nonprofit public benefit corporation without capital stock. LVMC's Articles of Incorporate provide that no part of LVMC's net earnings, if any, either during its existence or upon its dissolution, shall inure to the benefit of any individual, or any director, officer or member thereof, or any person, firm or corporation, except the Governor or a designated agency of the State of Nevada. In addition, the property, assets, profits and net

revenues of LVMC have been irrevocably dedicated to the operation and maintenance of the Monorail for the public improvement.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

EXECUTED this 13th day of January, 2010.

/s/ Scott Zuchorski
SCOTT ZUCHORSKI