Richard F. Holley, Esq. (NV Bar No. 3077)
Email: rholley@nevadafirm.com
Victoria L. Nelson, Esq. (NV Bar No. 5436)
Email: vnelson@nevadafirm.com
Ogonna M. Atamoh, Esq. (NV Bar No. 7589)
Email: oatamoh@nevadafirm.com
SANTORO, DRIGGS, WALCH,
KEARNEY, HOLLEY & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:    702/791-0308
Facsimile:    702/791-1912

*Attorneys for Bombardier Transit Corporation*

*Electronically Filed On
January 19, 2010*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

In re:

LAS VEGAS MONORAIL COMPANY,

    Debtor.

Case No. BK-S-10-10464-BAM
Chapter 11

**RESPONSE BY BOMBARDIER TRANSIT CORPORATION TO INDENTURE TRUSTEE'S OBJECTION TO USE OF CASH COLLATERAL AND MOTION FOR ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 363(c)(2) AND 363(e)**

Date of Hearing:    January 19, 2010
Time of Hearing:    4:00 p.m.
Place: Courtroom No. 3, Third Floor
       Foley Federal Building
       300 Las Vegas Blvd., S.
       Las Vegas, NV 89101

Judge: Hon. Bruce A. Markell

---

Bombardier Transit Corporation ("Bombardier"), by and through its counsel, the law firm of Santoro, Driggs, Walch, Kearney, Holley & Thompson, hereby file this response (the "Response") to the *Indenture Trustee's Objection to Use of Cash Collateral and Motion for Adequate Protection Pursuant to U.S.C. §§ 361, 363(c)(2) and 363(e)* (the "Objection") filed by Indenture Trustee Wells Fargo Bank, N.A. (the "Trustee") on January 14, 2010 [Dkt. No. 13].

Bombardier is aware of the pending dispute between the Debtor and Wells Fargo Bank,

08443-01/553387.doc

N.A., as trustee under the Senior Indenture dated September 1, 2000, regarding the extent of cash collateral and the terms and conditions of the Debtor's use of cash collateral. While Bombardier does not take a position as to the extent of cash collateral, Bombardier does wish to inform the Court regarding the maintenance and operation contract between the Debtor and Bombardier and the importance and necessity of those services. Regardless of the Court's decision regarding cash collateral and the conditions for its use by the Debtor, it is Bombardier's position that if Bombardier is forced to suspend work on the System as a result of nonpayment, the System can not operate either practically or legally under the Clark County Amusement & Transportation System ordinance (Ordinance No. 3619). Therefore, it is imperative that any budget approved by the Court contain a line item for payment of the monthly fees owing to Bombardier under the existing operations and maintenance contract as more fully discussed below.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Statement of Relevant Facts

**Monorail Operation and Maintenance Agreement**

1. Clark County, Nevada, granted a franchise to operate a monorail pursuant to the Clark County Monorail Franchise Agreement dated as of December 2, 1998, as amended (the "Franchise Agreement"). The rights under the Franchise Agreement are now held by Las Vegas Monorail Company ("LVMC"), which authorizes LVMC to charge and collect fares from passengers, display advertising, establish concessions, and lease space on the monorail. See Declaration of Gavin Wilkinson, attached as Exhibit A, ¶ 3, to Objection.

2. On or about September 1, 2000, the LVMC entered into a contract with Bombardier and Granite Construction Company to design, build, operate and maintain the Monorail System (the "DB Contract"). See Declaration of Stephen Stowe filed concurrently with the Response at ¶ 10.

3. Concurrently, with the execution of the DB Contract, Bombardier also entered into a contract with the LVMC to operate and maintain the Monorail trains, automatic train controls and other control subsystems and physical assets of the system pursuant to the Monorail Operations and Maintenance Agreement (the "O&M Contract"). See Stowe Declaration at ¶ 11.

08443-01/553387.doc

A true and correct copy of the O&M Contract is attached to the Stowe Declaration as Exhibit "1".

4. The O&M Contract is for the operation of the System and it is the responsibility of Bombardier to perform all necessary services related to operating and maintaining the System.[1] The services include, but are not limited to, the following:

- All operations activities, including provision of transit services sufficient to transport the ridership specified in the Baseline Service Plan as it may be modified from time to time in accordance with the O&M Contract, and to control and monitor all System Facilities, but excluding fare collection and fare payment enforcement.

- All maintenance activities including carrying out the system maintenance plan developed under the DB Contract, providing and updating maintenance manuals provided under the DB Contract, scheduling and completing routine cleaning, inspection and servicing of all System components (including fare collection equipment), guideway structures, vehicles, ancillary facilities, passenger walkways, guidebeam, right of way, and roadways and parking lots within the Operations Maintenance and Storage Facility, the provision and timely replenishment of all consumables, and performance of scheduled preventive maintenance and corrective maintenance.

- Monitoring actual ridership and recommending changes to the Baseline Service levels as required.

- Operations planning activities including, but not limited to, determining staffing levels for the control rooms, maintenance and roving personnel.

- The collection and analysis of all System data including system assurance data ("System Assurance Monitoring") and system availability data

---

[1] The capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the O&M Contract.

- 3 -

08443-01/553387.doc

including monitoring of ancillary facilities which are not necessarily included in the calculation of System Service Availability, performing diagnostic analysis of failures and trend analysis.

- Monthly reporting on System activities, including operating statistics and system availability and other information as required by the LVMC.
- Capital Asset Replacement Program development and implementation, including capital asset condition monitoring and reporting.
- Periodic retraining/retesting of operations and maintenance staff and others, as appropriate, and the training of new hires, as needed. Currently, there is a staff of 72.
- Safety and Security activities in conjunction with LVMCwhich shall include monitoring the System from a security perspective, responding to emergencies, and reporting of security issues, accidents and incidents to appropriate authorities.
- Assisting the LVMC in advertising and marketing activities including public relations and preparing schedules.
- Configuration management activities for all the Systems elements including hardware, software and documentation and support and maintenance of all System software.

See Stowe Declaration at ¶ 14.

5. The O&M Contract became effective July 14, 2004 after LVMC received its Certificate of Revenue Ready Status for the System. The initial term of the O&M Contract was for a period of five years (the "O&M Period"). LVMC has the option to extend the O&M Period for two (2) additional five year periods. The first five year option was exercised by the LVMC in January, 2009, effective July 2009. At the end of the second optional five-year O&M Period, LVMC may invite Bombardier to continue to operate and maintain the System at a cost to LVMC and upon such other terms and conditions to be negotiated at that time. See Stowe Declaration at ¶ 15.

08443-01/553387.doc

6. In addition to performing planned preventive and regular corrective maintenance, Bombardier is responsible for providing a Capital Asset Replacement Program to periodically overhaul, rehabilitate, refurbish or replace major components, equipment and facilities, in order to ensure that the System remains safe, modern, efficient to operate and maintain, and in good repair. Bombardier is required to rejuvenate any System element that has reached the end of its design life, cannot be maintained to perform within the limits specified in the System Performance Specification, exhibits a measurably higher failure rate, or ceases to be economical to maintain due to wear-out or obsolescence. See Stowe Declaration at ¶ 17.

7. Stations are thoroughly cleaned on a daily basis. Bombardier is responsible for litter pick-up throughout the day. Bombardier is also responsible for removing or painting over graffiti on a daily basis and before the start of the following day's operations, or at a maximum within 24 hours of discovery or notification. See Stowe Declaration at ¶ 18.

8. Bombardier keeps Station equipment operational at all times and provides daily functionality checks. Defective lights are replaced within 24 hours of discovery or notification. Holes in fences and defective security lighting are repaired without delay. Damage to the exterior or interior of cars, stations or the guideway from vandalism is promptly repaired at Bombardier's cost. See Stowe Declaration at ¶ 18.

9. Bombardier maintains the signage (exclusive of advertising signs). See Stowe Declaration at ¶ 19.

10. Standards for passenger amenities and safety must be achieved by Bombardier before a vehicle can be put into service. Safety criteria is developed by Bombardier as part of the Safety Certification process. Standards for vehicle passenger amenities include:

- Vehicle body exterior must be clean, graffiti free and in excellent condition. Equipment covers properly latched, locked and secure.
- Advertisements, floor, glass, and maps in the vehicle body interior shall be thoroughly clean, graffiti free and in excellent condition. Panels must be locked and secure.
- Visual and audible communications shall be operational and in excellent

condition.

- All doors and interior lighting shall be operational.
- Seats must be in excellent condition. No torn, dirty or damaged seats are permitted.
- Stanchions and internal fittings shall be secure and present no hazard to passengers.
- Windows shall be in excellent condition and clean and clear. No broken, fractured or scratched windows are permitted.

See Stowe Declaration at ¶ 20.

11. During the O&M Period, monthly management reports detailing the performance of the System are prepared by Bombardier and submitted to the LVMC. In addition, Bombardier keeps detailed operations and maintenance records and inventory data to permit LVMC to ascertain Bombardier's compliance. See Stowe Declaration at ¶ 21.

12. Bombardier obtains, maintains and controls all the special tools and equipment necessary to maintain every element of the System down to the lowest level replacement unit and for any maintenance services not subcontracted to others. See Stowe Declaration at ¶ 22.

**Compensation Under Monorail Operation and Maintenance Agreement**

13. Bombardier is compensated for providing the Baseline Service[2] and maintenance of the System for Years 1 through 5 of the Initial Five-Year O&M Period, as follows:

- Fifty-Five Million, Eight Hundred Seventy-Three Thousand, Seven Hundred Eighty-One Dollars ($55,873,781.00);
- In the event LVMC elects to exercise the option(s) for the First and Second Operational Five-Year O&M Period(s); LVMC agrees to pay Bombardier the amounts set forth as follows: Years 6 through 10 - $56,168,662 and Years 11 through 15 - $56,168,801.

See Stowe Declaration at ¶ 23.

---

[2] The Baseline Service is defined in terms of headways during each period of each day, the number of trains, operating fleet size and vehicle miles traveled daily and annually.

08443-01/553387.doc

- 6 -

14. Bombardier's monthly payment is based on the O&M Price[3] for the applicable time period with appropriate adjustments for service level changes, extra work, economic price adjustments and Daily System Availability. See Stowe Declaration at ¶ 26.

15. Bombardier's average monthly payment for its services is $900,000 (plus or minus depending upon extra work, performance levels, etc.). This amount does not include insurance (which was paid the last week of December, 2009 and is current for the next twelve months) or funding for Capital Asset Replacement Program Plans.[4] The Capital Asset Replacement Plan is priced separately and there are currently no approved works by LVMC. See Stowe Declaration at ¶ 27.

16. Under the terms of the O&M Contract, if Bombardier fails to receive a payment, Bombardier can request written assurances from LVMC that payment will be made. Unless Bombardier receives reasonably acceptable assurances within five (5) days of issuing the written request, Bombardier has the right to suspend work. See Stowe Declaration at ¶ 28.

17. The Trustee contends that it holds a security interest in the Net Project Revenues which are defined in the Financing Agreement as Project Revenues less Operation and Maintenance Costs. See Financing Agreement § 1.01 (Wilkinson Dec. Ex. 2).

18. The Trustee further contends that "Operation and Maintenance Costs" are defined in part in the Financing Agreement as "any and all amounts due under the Operation and Maintenance Agreement and the Management Agreement and any reasonable and necessary costs paid or incurred by [LVMC] for maintaining and operating the Project … ." See Financing Agreement § 1.01 (Wilkinson Dec. Ex. 2).

19. The Trustee further contends that "Operation and Maintenance Agreement" means the Monorail Operation and Maintenance Agreement dated as of September 1, 2000 between [the LVMC] and Bombardier Transit Corporation, a Delaware corporation, and any supplements, amendments, or successor agreements thereto. See Financing Agreement § 1.01 (Wilkinson Dec. Ex. 2).

---

[3] O&M Price means the applicable lump sum amounts set forth in Paragraph 13 above.

[4] Capital Asset Replacement Program means Bombardier's plan for replacement of capital assets of the System.

08443-01/553387.doc

20. Notwithstanding the above, the compensation due and owing Bombardier under the O&M Contract is not discretionary. If payment is withheld, Bombardier may be forced to suspend maintenance of the System.

21. It is absolutely critical that the System be maintained. If maintenance is suspended, the System could not operate either practically or legally under the Clark County Amusement & Transportation System ordinance. See Stowe Declaration at ¶ 29.

## CONCLUSION

For the reasons, set forth above, Bombardier files this Response to the Trustee's Opposition in order to confirm that regardless of the Court's ruling addressing the extent of cash collateral, that both the Debtor and the Trustee agree that LVMC will be permitted to continue making monthly payment and all other reasonable and necessary payments to Bombardier pursuant to the terms of the O&M Contract.

Dated this 19th day of January, 2010.

SANTORO, DRIGGS, WALCH,
KEARNEY, HOLLEY & THOMPSON

*/s/ Richard F. Holley*

Richard F. Holley, Esq. (NV Bar No. 3077)
Victoria L. Nelson, Esq. (NV Bar No. 5436)
Ogonna M. Atamoh, Esq. (NV Bar No. 7589)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone: 702/791-0308
Facsimile: 702/791-1912

*Attorneys for Bombardier Transit Corporation*

08443-01/553387.doc