E-filed on: February 3, 2010

Jon Pearson, Esq.  
Nevada Bar No. 10182  
BALLARD SPAHR LLP  
100 North City Parkway, Suite 1750  
Las Vegas, Nevada 89106  
Telephone: (702) 868-7541  
Fax: (702) 471-7070  
Email: pearsonj@ballardspahr.com  

Rebecca J. Winthrop, Esq.  
California SBN 116386  
BALLARD SPAHR LLP  
2029 Century Park East, Suite 800  
Los Angeles, CA 90067-2909  
Telephone: (424) 204-4330  
Facsimile: (424) 204-4350  
Email: winthropr@ballardspahr.com  

*Attorneys for the Director of the State of Nevada Department of Business and Industry*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. 10-10464-BAM |
| LAS VEGAS MONORAIL COMPANY, | Chapter 11 |
| Debtor. | **OPPOSITION OF THE DIRECTOR OF THE STATE OF NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY TO: (A) MOTION OF AMBAC ASSURANCE CORPORATION FOR DISMISSAL OF CHAPTER 11 PROCEEDING PURSUANT TO 28 U.S.C. § 1334 AND SECTIONS 109(d) AND 1112(b) OF THE BANKRUPTCY CODE; and (B), INDENTURE TRUSTEE'S JOINDER IN MOTION TO DISMISS FILED BY AMBAC ASSURANCE CORPORATION** |
| | Hearing Date: February 17, 2010 |
| | Hearing Time: 8:30 a.m. |

TO AMBAC ASSURANCE CORPORATION AND TO ITS ATTORNEYS OF RECORD:

The Director of the State of Nevada Department of Business and Industry (the "Director") hereby submits the following Opposition to: (A) the Motion of AMBAC Assurance Corporation ("AMBAC") for Dismissal of Chapter 11 Proceeding Pursuant to 28 U.S.C. § 1334 and Sections 109(d) and 1112(b) of the Bankruptcy Code (the "Motion"); and (B) Indenture Trustee's Joinder in Motion to Dismiss filed by AMBAC Assurance Corporation (the "Motion").

DMWEST #7474200 v8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Motion asks this Court to abandon an entire legislative structure treating the Las Vegas Monorail Company ("LVMC") as a private non-profit corporation in favor of finding LVMC a "municipality" within the meaning of Section 101(27) of the Bankruptcy Code. AMBAC seeks this result not to afford LVMC the more expansive reorganization powers and protections afforded municipalities in Chapter 9, but to deny LVMC the protection of the Bankruptcy Code altogether. Such a result should not be countenanced by this Court.

LVMC is a corporation and thus a "person" eligible to file a chapter 11 petition. It was created as a private non-profit corporation, holds none of the powers normally exercised by a sovereign body and does not operate as a "public body," "public transportation commission" or other "governmental unit" recognized under Nevada law. The State is not responsible for LVMC's debts, and does not control its operations. The State's involvement is limited to Governor right to negative notice review of LVMC's annual budgets and to negative notice approval of the appointment or removal of members of LVMC's Board so as to permit LVMC to obtain access to federally tax-exempt industrial revenue bond financing. Such limited involvement of the State does not render LVMC a "public agency, public subdivision or instrumentality of the State" or a "municipality" within the contemplation of the Bankruptcy Code. In sum, LVMC is not a "governmental unit" and thus is eligible for relief under chapter 11. Accordingly, the Motion should be denied.

## II.

## STATEMENT OF FACTS

For the purposes of this Opposition, the Director incorporates by reference the explanation of the Debtor's corporate structure, operations and debt structure set forth in Section II ("Statement of Facts") of the Debtor's Opposition to (1) Motion of AMBAC Assurance Corporation for Dismissal of Chapter 11 Proceeding Pursuant to 28 U.S.C. § 1334 and Sections

109(d) and 111(b) of the Bankruptcy Code, and (2) Joinder of Wells Fargo Bank, N.A., Indenture Trustee, in Motion to Dismiss (the "Debtor's Opposition").

## III.

## LVMC IS ELIGIBLE FOR RELIEF UNDER CHAPTER 11

A. <u>LVMC Is A Corporation And Thus A "Person," Is Not A "Governmental Unit," And Accordingly Is Eligible For Relief Under Chapter 11.</u>

Under Section 109(d) of the Bankruptcy Code, "a person that may be a debtor under chapter 7 . . . may be a debtor under chapter 11." 11 U.S.C. § 109(d). Any "person" may be a debtor under chapter 7 unless such person is a railroad, an insurance company, or a bank, savings bank, cooperative bank, savings and loan allocation or similar financial institution. 11 U.S.C. § 109(b). "Person" is defined by the Code to include a corporation other than a governmental unit, 11 U.S.C. § 101(41), and "corporation" is defined as including an "association having a power or privilege that a private corporation . . . possesses." 11 U.S.C. § 101(9).

Very simply, LVMC is eligible to be a debtor under chapter 11 because it is a corporation and is not a governmental unit.

Nevada state law supports a finding that LVMC may file as a "corporation." According to the Bylaws of Las Vegas Monorail Company (the "Bylaws"), LVMC is a "nonprofit public benefit corporation organized under Chapter 82 of the Nevada Revised Statutes" ("NRS") within the meaning of Section 101(9). [Bylaws, Article III.] NRS 82.466 states that "[a] federal court may take the same actions with respect to corporations governed by this chapter as a federal court may take with respect to corporations governed by chapter 78 of NRS".[1] Thus, LVMC is a business association that has a power or privilege that a private corporation possesses within the meaning of 11 U.S.C. § 101(9). Accordingly, and barring any other exclusion, it is a "person" eligible to file a chapter 11 petition within the meaning of Section 101(9).

Section 101(27) of the Bankruptcy Code defines "governmental unit" in pertinent part as a "municipality" or a "department, agency or instrumentality of . . . a State . . . ." 11

---

[1] NRS Chapter 78 governs the establishment of private corporations.

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

U.S.C. § 101(27). AMBAC asserts that LVMC is a "governmental unit" prohibited from filing a chapter 11 petition because (i) it is characterized as an "instrumentality of the State of Nevada" in Section 1.8 of the Tax Certificate and Agreement Dated September 20, 2000 (the "Tax Agreement") entered into by LVMC in connection with the issuance of federally tax-exempt bonds, and (ii) it was incorporated to construct the Monorail as a "public mass transit monorail system with general public access". [Motion, ¶¶ 1(A), (C).] Boiled down to its essence, AMBAC argues that any private corporation whose business involves public transportation that agrees to finance a portion of its construction or operations through federal tax-exempt industrial revenue bonds is ineligible for relief under chapter 11. AMBAC is incorrect as a matter of both contract interpretation and law.

As a threshold matter, it is important for the Court to understand the purpose for which the Tax Agreement was entered into. Page 1 of the Tax Agreement expressly states that the "Issuer and the Borrower have determined to enter into this Tax Certificate in order to set forth certain terms and conditions *relating to the use and investment of proceeds of the Bonds . . . in order to assure that interest on the Bonds will be excluded from gross income* under Section 103 of the [Internal Revenue] Code." [Tax Agreement, p. 1 (emphasis added).]

The fact that LVMC is characterized as an "instrumentality of the State" for purposes of determining the tax exempt status of the bonds issued to finance the construction of the monorail does not render LVMC an instrumentality of the state for purposes of determining its eligibility for chapter 11 relief. Indeed, it is common for essentially private corporations to similarly take advantage of tax exempt financing without rendering them "governmental units" or "municipalities" within the meaning the Bankruptcy Code. This was the result in *In re Ellicott School Bldg. Authority*, 150 B.R. 261 (Bankr. D. Colo. 1992), cited with such emphasis in the Motion. *Ellicott* recognized that a corporation may be formed to take advantage of federal tax-exempt bonds so its debt is treated as issued "on behalf of a political subdivision" for purposes of the Tax Code, yet still not qualify as a "municipality" eligible to file a chapter 9 petition. *Id.* at 263.

DMWEST #7474200 v8    4

The Internal Revenue Service (the "IRS") also has recognized that the debt of charter schools issued on behalf of a state or local governmental unit may be tax-exempt industrial revenue bonds within the meaning of Treasury Regulation § 1.103-1(b) notwithstanding the fact that the schools themselves are not "public subdivisions" of the state. The IRS has determined that the fact that (i) the state is the principal source of financing for the school and (ii) the school is performing essential public purposes and governmental functions for the state and is subject to the control and supervision of a state-run board is not sufficient to render them an "instrumentality" of the state because they do not have the three generally acknowledged sovereign powers of a state— the power to tax, the power of eminent domain and the police power. *See* Internal Revenue Service National Office Technical Advice Memorandum No. 200646017, dated August 1, 2006.

The tax-exempt bond structure for which LVMC entered into the Tax Agreement is similar in this regard to the tax-exempt bond structures used by charter schools. An entity may enter into agreements to take advantage of tax-exempt bonds without rendering itself an instrumentality of the state for all purposes.

Both *Ellicott's* and the IRS' approach toward charter schools is consistent with cases interpreting the meaning of "governmental unit" under Section 101(27) of the Bankruptcy Code. Courts interpreting Section 101(27) look to whether the entity at issue performs an essential governmental function. In *In re Williams,* 158 B.R. 488 (Bankr. Idaho 1993), for example, the court held that a state bar association was a "governmental unit" for the purposes of 11 U.S.C. § 523(a)(7) because it "carries out many functions normally associated with the government, including protecting the public from the . . . improper and unauthorized practice of law." *Id.* at 490; s*ee also Wade v. State Bar of Arizona*, 948 F.2d 1122, 1124 (9th Cir. 1991) (regulatory and disciplinary functions delegated to state bar association by Arizona Supreme Court rendered bar association a "governmental unit" under Section 101(27)). When finding an Indian Tribe to be a "governmental unit," the Ninth Circuit similarly described the definition of "governmental unit" in Section 101(27) as one listing "a sub-set of all *governmental bodies*" with a "catch-all phrase, 'or other foreign and domestic *governments*.'" *Krystal Energy Company v. Navajo Nation*, 2004 U.S. App. LEXIS 6488, p. 3 (9th Cir. 2004) (emphasis added).

Here, LVMC is not a governmental body and performs no governmental functions. It cannot tax and its financing is derived from entirely private sources—farebox, advertising and other project revenues. Neither the full faith and credit of the Sate of Nevada or Clark County nor any other public funds may be required to make payments on the bonds. [Financing Agreement dated September 1, 2000, § 3.9.] LVMC cannot exercise any eminent domain powers. In fact, NRS 37.035(4) expressly prohibits a monorail from conducting eminent domain proceedings. It must look to a "public agency" for that function. *See also* Clark County Municipal Code 5.04.130 ("The county herein specifically declares that the grant of a monorail franchise does not grant to the franchisee the power of eminent domain.").

B. <u>Nevada's Classification Of LVMC As A Non-Profit Corporation And Not A Municipality Or Other Governmental Unit Is Dispositive.</u>

The Ninth Circuit has adopted the "state classification test" when determining whether a party is an eligible debtor pursuant to Section 109 of the Bankruptcy Code. [*See* Debtor's Opposition, ¶¶ 47-53.] As demonstrated below and in the Debtor's Opposition, when the nature, function and form of Nevada's enabling statutes for the monorail are compared to the statutory requirements imposed on public transit commissions and other public bodies under Nevada state law, LVMC should be classified as a "corporation" under Nevada law, not a "governmental unit" as proposed in the Motion.

Chapter 705, Nevada's enabling statute for the development of the monorail, demonstrate LVMC's private classification. NRS 705.690(1) states that the "work of or incident to the installation and operation of a monorail is <u>not a public work</u> within the meaning of chapter 338 of NRS." [Emphasis added.] NRS 338.101(a) defines a "public work" as one "financed in whole or in part from public money". As set forth in detail in the Debtor's Opposition, ¶¶ 21-26, LVMC's financing documents repeatedly provided that all of LVMC's financing was to be of a completely private nature. *See, e.g.,* Senior Indenture and Subordinate Indentures, each dated September 1, 2000 and by and between the Director and Wells Fargo Bank, N.A., as Trustee, § 7.01 ("THE BONDHOLDERS SHALL HAVE NO RECOURSE AGAINST THE DIRECTOR OR ANY PROPERTY NOW OR HEREAFTER OWNED BY THE STATE OF NEVADA IN

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

THE EVENT THAT SUCH REVENUES AND FUNDS ARE INSUFFICIENT TO MAKE PAYMENTS.") (emphasis in original).

Chapter 705 also states that a "monorail is <u>not a public utility</u> within the meaning of Chapter 704 of NRS." NRS 705.690(2) (emphasis added). According to NRS 704.001, the purpose and policy of Chapter 704 is to confer upon the Commission the power to "regulate" public utilities, "regulate" competitive telecommunication suppliers, and maintain availability of telephone service through the "levy and collection of a uniform and equitable assessment." NRS 704.001(1), (5).[2] LVMC has none of those powers.

The private nature of LVMC is particularly striking when compared to the structure of "regional transportation commissions" under Nevada law. Unlike LVMC (formed under Chapter 82), regional transportation commissions are created under Chapter 373 by city or county ordinances. NRS 373.030; *see also* Clark County Municipal Code § 4.04.020 ("The board of county commissioners does hereby create the regional transportation commission of Southern Nevada."). An express number of their board members must be actually selected by those same cities or counties, and they are expressly empowered by state law to impose excise and fuel taxes. NRS 373.040, 373.065, 373.070. Nevada case law similarly characterizes a "municipal corporation" as "one that is but a creature of the legislature, and derives all of its powers, rights and franchises from legislative enactment or statutory implication." *State ex rel. Rosenstock v. Swift*, 11 Nev. 128, 140 (1876). It bears repeating that LVMC was formed under Nevada's non-profit chapter, not Chapter 373, and has none of the traditional sovereign powers granted to public governmental bodies.

A review of various definitions of "municipality" throughout Nevada's other Chapters presented in the Debtor's Opposition is also instructive. LVMC is not a "body corporate and politic" of the State of Nevada as required in NRS 403.080. It was not organized by "special

---

[2] NRS 705.680 further contemplates that a "person" may install and operate a monorail. A "person" is defined under Nevada law as "any other <u>nongovernmental</u> legal entity including, but not limited to, a corporation." NRS 0.039 (emphasis added). "Person" does "not include a government, governmental agency or political agency or political subdivision of a government." *Id.*

DMWEST #7474200 v8                                            7

legislative act or other special charter" as required in NRS 268.696. *See also* NRS 244A.0347, 271.145(1), 350A.080. It is not authorized to issue general or special obligations on behalf of any governmental agency. *See* NRS 350.538. LVMC is no more a "governmental unit" of the State of Nevada performing regulatory or taxing governmental functions than Greyhound or any other private entity providing transportation to members of the public.

Finally, parties cannot transform a private corporation into a public agency solely by contract. In *Polly Ann Powell, et al. v. Tucson Air Museum Foundation of Pima County*, 771 F.2d 1309 (9th Cir. 1985), for example, the plaintiff tried to claim that a management agreement between a non-profit museum and a county that gave the county the power to approve fees, accounting methods, hours of operation, improvements, and required the museum to submit an annual budget and open its books to the County for audit created a contractual relationship so close as to render the museum a *de facto* public agency so as to subject it to the Fair Labor Standards Act. The Ninth Circuit rejected that argument, holding that regulations contained in the contract were not sufficient to transform the museum into a public agency. *Id.* at 1312. The *Tuscon* court cited the following as "key factors" in determining whether a private party should be considered a public agency: whether the entity is directly responsible to public officials or to the general public, whether the parties' contracts designated them as independent contractors, not state agencies, whether the state agency had the ability to hire and fire employees, and whether there was an independent board of directors over which the county had no power of appointment. *Id.;* *see also Williams v. Eastside Mental Health Center, Inc.*, 669 F.2d 671, 679 (11th Cir. 1982) (substantial state regulation over activities of private corporation cannot change it into state agency).

As discussed in Section IV below, while the Governor had certain initial rights with respect to LVMC's original fare schedule and the composition of its original board of directors, once those functions were established, LVMC's articles and bylaws changed the Governor's rights to one of "negative notice." A close reading of those Articles and Bylaws, as presented below, demonstrates that the Governor did not exert such "significant control" over LVMC so as to transform it from the private non-profit corporation partially financed through the use of tax-

DMWEST #7474200 v8                                      8

exempt bonds envisioned by Chapter 705, to the full-fledged "governmental unit" Congress meant to prohibit from filing a Chapter 11 petition.

## IV.

## THE STATE OF NEVADA DOES EXERCISE SUFFICIENT CONTROL OVER LVMC TO RENDER LVMC A "MUNICIPALITY" OR OTHER "GOVERNMENTAL UNIT"

AMBAC attempts to shoehorn LVMC into the definition of "governmental unit" by asserting that (a) the State of Nevada "exercises significant control over LVMC's governance, financial affairs and operations" and (b) the "LVMC is subject to public records and open meetings requirements." [Motion, ¶¶ 1(B), 16.] AMBAC, overstates and mischaracterizes the State's involvement in LVMC's affairs and LVMC's obligations under Nevada's open meeting and open records laws.

A. <u>The Governor Does Not Have "Direct and Substantial Oversight" Over LVMC as Asserted by AMBAC.</u>

1. <u>Receipt of LVMC's Net Earnings Upon Dissolution Does Not Render LVMC a Municipality.</u>

The Motion first offers Article III of LVMC's Articles of Incorporation, requiring all net earnings and residual assets to be transferred to the Governor or a designated Nevada state agency upon dissolution, as evidence that the State of Nevada controls LVMC. [Motion, ¶ 34.] Article III is nothing more than the fulfillment of a requirement imposed on all non-profit corporations under Chapter 82. Under NRS 82.021(2), before a corporation may qualify as a non-profit corporation, upon dissolution, its assets must be "distribute[d] . . . to the United States, a state, or a person which is recognized as exempt under section 501(c)(3) of the Internal Revenue Code". That LVMC is a non-profit corporation under Nevada law does not render it a "municipality" or a "governmental unit." Were that the case, no non-profit corporation in Nevada would be eligible for chapter 11.

2. <u>Control of LVMC Vests in its Board of Directors, Not the Governor.</u>

Despite AMBAC's protestations to the contrary [Motion, ¶ 35], control of LVMC's operations vests in LVMC's own Board of Directors (the "Board"), and not in the State or the State Governor:

DMWEST #7474200 v8                                9

- Article V of the Bylaws of Las Vegas Monorail (the "Bylaws") states that LVMC "shall not have members. Any action which would otherwise require approval by a majority of all members or approved by the members shall require only approval by the <u>Board of Directors</u>. All rights which would otherwise vest in the members shall vest in the Directors." [Emphasis added.]

- Article VI states that "the business and affairs of the [LVMC] shall be managed, and all corporate powers shall be exercised, by or under the direction of a <u>Board of Directors</u>." [Bylaws, § 6.01 (emphasis added).]

- Article VI states that the "<u>Board of Directors is vested with the complete and unrestrained authority</u> in the management of all the affairs of the Corporation, <u>and is authorized to exercise</u> for such purpose as the General Agent of the Corporation <u>its entire corporate authority</u>." [Bylaws, § 6.15 (emphasis added).]

- Article VI allows only <u>the Board</u> to call a regular meeting, only the Chairman of the Board or Secretary to call a special meeting, and only a majority of the Board to constitute a quorum for the transaction of business. [Bylaws, §§ 6.05, 6.06, 6.08.]

- Article VII allows only <u>the Board</u> to elect the officers, and only an affirmative vote of <u>the Board</u> to remove them (with or without cause). [Bylaws, § 7.01.]

Not one of these provisions vests any power or authority in the Governor. The Governor has never served as a member of the Board, nor has the Governor acted as an officer of the corporation. Instead, and contrary to the implication created by the Motion, the Bylaws echo Sections 3.3.4, 3.3.5 and 3.3.6 of the Tax Agreement and limit the Governor's involvement in LVMC's business affairs to that which is necessary to enable LVMC to qualify the bonds as tax exempt:

- Once the members of LVMC's initial board of directors are approved, the Governor's approval rights are reduced significantly. The Board need only give the Governor written notice of the Board's nomination of new members. Those members are deemed approved by the Governor after the expiration of 30 days unless the Governor objects. If the Governor objects, he or she must still disapprove of two new Board nominees in succession before the Governor is afforded the right to appoint a successor. [Bylaws, § 6.02.]

- Vacancies are no different. The Board first votes to nominate a successor and notifies the Governor. If no response, the nomination is deemed approved. It is only if the Governor successively disapproves of two Board nominees by written notice to LVMC that the Governor is afforded the right to appoint a successor. [Bylaws, § 6.04.]

- Removals are no different. The Governor has no right to remove a member of the Board (each a "Director") except for cause. Instead, a majority of the Board is entitled to recommend removal, notice of which must be given to the Governor. If the Governor fails to respond within 30 days, then the Board's recommendation is deemed approved and the Director removed. [Bylaws, § 6.03.]

- Fares and budgets are treated in the same fashion. While the Governor was given the right to approve the initial fare schedule, the Board controls it thereafter. [Bylaws, § 6.12.] LVMC is obligated to notify the Governor of its annual budget, financial reports and any material alterations thereto during the year, but LVMC is not obligated to obtain the Governor's affirmative approval. Rather, such items are deemed approved if the Governor fails to respond within 30 days. [Bylaws, § 6.12.] The Governor is given no power to approve compensation of Board members or even to approve any contract executed by LVMC. [Bylaws, §§ 6.10, 6.11.]

- Amendments/repeals of the Bylaws are no different. While no amendment or repeal of the Bylaws is effective unless approved by the Governor, the Board need only give written notice of same to the Governor and wait 30 days. If no response, the amendment or repeal is deemed approved. The Board is not obligated to obtain the Governor's affirmative consent. [Bylaws X.]

- LVMC is not obligated to make its books and records "available for inspection by the Governor" as claimed by the Motion. [Motion, ¶ 34.] Only Directors have that right. The Governor is given the right to <u>annually</u> inspect and audit LVMC's books and records. [Bylaws, § 8.03.]

These provisions are not "distinctions without a difference." Rather, they are entirely consistent with the purpose behind the Tax Agreement—to afford non-profit corporations the right to operate unrestrained from governmental interference, but also finance their operations through the use of federal tax-exempt bonds.

3.   <u>LVMC Is Not Subject to Public Records and Open Meetings Requirements.</u>

AMBAC contends that LVMC is an "instrumentality" or "public agency" of the State of the Nevada because it is "subject to public records and open meeting requirements." [Motion, ¶¶ 36-37.] The sum total of the law and facts offered to support this position is the Governor's Certificate, which requires LVMC to make the annual budget and Board minutes public and allow the public to attend the meeting at which the annual operating budget is adopted.

The Certificate, however, does not require LVMC to comply with either the Nevada Public Records Act (NRS 239.001 to 239.330, inclusive) (the "Public Records Act") or Nevada's Open Meeting Law (NRS 241.010 to 241.040, inclusive) (the "Open Meeting Law"). In fact, it implies exactly the opposite. The Certificate requires only Board minutes and the annual budget to be disclosed. If LVMC were a "governmental entity" within the meaning of the Public Records Act as AMBAC asserts, the Governor's Certificate would have required it to disclose far more. *See* NRS 239.010(1) ("All public books and public records of a governmental entity, the contents of which are not otherwise declared by law to be confidential, must be open at all times

during office hours to inspection by any person . . . ."). Similarly, the Certificate requires LVMC to allow the public to attend only that meeting where the annual budget is adopted. The Open Meeting law requires all meetings of "public bodies" to be open to the public. NRS 241.020(1).

Nor is LVMC the type of entity that would be subject to such laws. For example, only "public bodies" are obligated to comply with the Open Meeting Law. NRS 241.015(3) defines a "public body" as "any administrative, advisory, executive or legislative body of the State or a local government which expends or disburses or is supported in whole or in part by tax revenue or which advises or makes recommendations to any entity which expends or disburses or is supported in whole or in part by tax revenue." LVMC does not expend or disburse nor is it supported in whole or in part by tax revenue, nor does LVMC advise or make recommendations to any entity that expends or disburses tax revenue. Indeed, this is what crystallizes the unique nature of LVMC and why it is <u>not</u> a governmental body within the Open Meeting Law—it is the only known entity operating a transportation facility supported entirely by private revenue. The Governor's Certificate thus demonstrates that LVMC is <u>not</u> a "public agency" or "instrumentality" of the State within the meaning of the Bankruptcy Code.[3]

B. <u>LVMC is not a Municipality Within the Meaning of *Westport*, *Greene County* or *Orange County*.</u>

The cases cited in Section C(2) of the Motion do not support AMBAC's position that LVMC is a "municipality" or other "governmental unit."

*In re Westport Transit District*, 165 B.R. 93 (Bankr. D.Conn. 1994), involved a transit district created by a state municipality pursuant to state transit-district enabling statutes. *Id.* at 95. As such, the debtor assumed "all the powers of the *department of transportation* within the district," such as the power to (i) regulate existing transit systems, (ii) use revenues to subsidize

---

[3] *See also* Nevada Attorney General's Open Meeting Law Opinion No. 99-05 (Jan. 12, 1999) (Economic Development Authority of Western Nevada determined not to constitute a "public body" obligated to comply with Open Meeting Laws because, among other things, it did not administer any governmental program, pass any legislation or regulation, had no jurisdiction to regulate any activity, had no power to waive any governmental fees or taxes, did not make any grants or contracts that would be binding on any government, and when it spoke to any governmental agency, it did so on its own accord and not because it had any advisory power.

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

transit systems operating under private ownership, (iii) issue bonds, (iv) exercise the power of eminent domain and (v) obtain state guaranties of payment. *Id.* (emphasis added). LVMC could not be more different. It was created as a private corporation, not as a state public transportation commission pursuant to NRS 373 *et. seq.* It has no power to regulate and no power to use revenues to subsidize other transit systems. It is expressly denied both the power of eminent domain and access to the full faith and credit of the State of Nevada to obtain payment of the bonds. LVMC is no more a "municipality" within the meaning of *Westport* than the charter school obtaining tax free bonds in *Ellicott*. *See In re Ellicott*, 150 B.R. 261 (Bankr. D. Col. 1992) (building authority "no more a governmental entity than [] any other corporation").

*In re Greene County Hospital*, 59 B.R. 388 (Bankr. Miss. 1986) is similarly unpersuasive. The *Greene* court held that the community hospital was a "public agency" within the meaning of "municipality" because various Mississippi state statutes made it "clear that the hospital is subject to control by public authority, i.e., the board of supervisors." *Id.* at 390. Here, all state statutes governing the monorail make it clear that LVMC is meant to be a *private* corporation under the control of a *private* board of directors. *See* Sections III(B) and IV(A)(2) above.

The holding of *In re County of Orange*, 183 B.R. 594 (Bankr. C.D. Cal. 1995), while cited by AMBAC, supports LVMC's position that it is not a municipality. As the court aptly stated when comparing the 1976 municipal bankruptcy legislation to the 1937 Act, while the term "municipality" should not be narrowly construed, "<u>[t]his does not mean . . . that any entity under governmental control is a municipality.</u>" *Id.* at 601 (emphasis added). The court then refused the find the OCIP a municipality within the meaning of Section 109(b)(2).

<u>First</u>, it was not a "political subdivision" because it had neither sovereign power delegated to it by the State of California, nor by its existence some inherent sovereign power to act. Both factors similarly preclude LVMC from being a political subdivision of the State of Nevada. *Id.* at 602.

<u>Second</u>, the OCIP was not a "public agency" because it was neither "authorized to construct or acquire a revenue-producing utility" nor able to issue bonds for such purpose payable

solely out of the revenues derived from the utility." *Id.* LVMC is authorized to run only a non-profit corporation, and does not have the right to issue its own tax-exempt bonds (it needs the State of Nevada to act as the conduit).

Third, the OCIP was not an "instrumentality of the state" because the *Orange County* Court determined that it was created by the County and not by the State. In LVMC, the State of Nevada went one step further—it legislated that monorails could be run by "persons", *e.g.* private corporations. LVMC was created under the State's non-profit corporations chapter, not as a "public transportation commission". LVMC does not qualify as a "municipality" within the meaning of Section 109 under *Orange County* any more than the OCIP.

## V.

## THE DISMISSAL OF THIS CASE WOULD RENDER LVMC UNABLE TO SEEK ANY RELIEF UNDER THE BANKRUPTCY CODE

A municipality is eligible to file a chapter 9 proceeding if and only if, among other requirements, it is "specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter." 11 U.S.C. § 109(c)(2).

LVMC does not have any such authorization under Nevada law. Thus, if AMBAC's motion is granted, LVMC will not only be deprived of the right to seek to reorganize under chapter 11, it will be foreclosed from any relief under the Bankruptcy Code. Such a result would not be in the interests of any of LVMC's creditors or other parties-in-interest. Indeed, even AMBAC acknowledges that financial reorganization of LVMC is necessary.

///
///
///
///
///
///
///

# VI.

# CONCLUSION

For all of the foregoing reasons, the Director respectfully requests this Court to deny the Motion and allow LVMC to remain in chapter 11.

Dated this 3rd day of February, 2010.

                BALLARD SPAHR LLP

                By:    /s/ Jon Pearson
                Jon Pearson, Esq.
                Nevada Bar No. 10182
                100 North City Parkway, Suite 1750
                Las Vegas, Nevada 89106
                Telephone: (702) 471-7000
                Fax: (702) 471-7070
                Email: pearsonj@ballardspahr.com

                and

                Rebecca J. Winthrop, Esq.
                California SBN 116386
                BALLARD SPAHR LLP
                2029 Century Park East, Suite 800
                Los Angeles, CA 90067-2909
                Telephone: (424) 204-4330
                Facsimile: (424) 204-4350
                Email: winthropr@ballardspahr.com

*Attorneys for the Director of the State of Nevada Department of Business and Industry*