GORDON SILVER
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: ggordon@gordonsilver.com
WILLIAM M. NOALL, ESQ.
Nevada Bar No. 3549
E-mail: wnoall@gordonsilver.com
GABRIELLE A. HAMM, ESQ.
Nevada Bar No. 11588
E-mail: ghamm@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Attorneys for Debtor

E-Filed On _4/21/10_

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>LAS VEGAS MONORAIL COMPANY,<br><br>Debtor. | Case No.: 10-10464-BAM<br>Chapter 11<br><br><br>Date: May 19, 2010<br>Time: 9:30 a.m. |

**DEBTOR'S MOTION FOR AN ORDER EXTENDING THE EXCLUSIVE PERIODS TO FILE ITS PLAN OF REORGANIZATION AND SECURE ACCEPTANCE OF ITS PLAN OF REORGANIZATION PURSUANT TO 11 U.S.C. § 1121(d)**

Las Vegas Monorail Company, a Nevada non-profit corporation ("Debtor" or "LVMC"), debtor and debtor-in-possession, by and through its counsel, the law firm of Gordon Silver, hereby moves this Court for an order approving *Debtor's Motion For An Order Extending The Exclusive Periods To File Its Plan of Reorganization and Secure Acceptance of Its Plan of Reorganization Pursuant To 11 U.S.C. § 1121(d)* (the "Motion"),[1] and extending the period in which Debtor has the exclusive right to file its plan of reorganization for an additional time period up to an including **August 17, 2010**. Debtor further requests that the Court extend the 180-day period for securing acceptance of the plan by an additional time period up to and

---

[1] All references to "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/886004_3.doc

including **October 18, 2010**. Debtor's exclusive period to file its plan of reorganization currently expires on May 19, 2010.

The Motion is made and based on the points and authorities herein, the *Omnibus Declaration of Curtis L. Myles, III In Support of Debtor's First Day Motions* (the "Omnibus Declaration"),[2] the *Declaration of Curtis L. Myles, III In Support of Debtor's Motion For An Order Extending The Exclusive Periods To File Its Plan of Reorganization and Secure Acceptance of Its Plan of Reorganization Pursuant To 11 U.S.C. § 1121(d)* (the "Myles Exclusivity Declaration"), the *Declaration of Gabrielle A. Hamm In Support of Debtor's Motion For An Order Extending The Exclusive Periods To File Its Plan of Reorganization and Secure Acceptance of Its Plan of Reorganization Pursuant To 11 U.S.C. § 1121(d)* (the "Hamm Declaration"), the papers and pleadings on file, judicial notice of which is respectfully requested, and the argument of counsel entertained by the Court at the time of any hearing of the Motion.

## I.
## INTRODUCTION

1.      On January 13, 2010 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[3]

2.      The Debtor continues to operate its business as debtor and debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner, and no official committees have yet been established in this bankruptcy case (the "Chapter 11 Case").

## II.
## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O).

5.      The statutory basis for the relief sought herein arises from Section 1121 of the

---

[2] All capitalized terms not otherwise defined herein shall have those meanings as in the Omnibus Declaration.

[3] All references to "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/886004_3.doc

2

1    Bankruptcy Code.

2        6.    Venue of the Debtor's Chapter 11 Case in this District is proper pursuant to 28 U.S.C.

3    §§ 1408 and 1409.

4                                              **III.**
                                        **BACKGROUND**
5

6    **A.    Operations of the Monorail**

7        7.    LVMC is a special purpose Nevada not-for-profit corporation organized for the

8    purpose of developing, acquiring, constructing, operating and improving the Las Vegas Monorail

9    (the "Monorail").  In 2000, upon the formation of LVMC, LVMC acquired the original Monorail

10   system from MGM Grand-Bally's Monorail LLC and commenced extension of the system to its

11   current state of seven stations.  Omnibus Declaration, ¶ 7.

12       8.    The Monorail is a state-of-the-art, fully-automated, driverless rail system that runs

13   above the streets along the east-side of Las Vegas Boulevard (a/k/a the "Las Vegas Strip").  It is

14   the first driverless public monorail system in the world.  The existing operations provide

15   convenient and cost-effective transportation between its seven stations.   LVMC's business

16   focuses on making the Monorail an easy and convenient connection to the Las Vegas Strip and

17   the Las Vegas Convention Center.  Omnibus Declaration, ¶ 11.

18       9.    Though LVMC benefits from a tax exemption due its nonprofit status, it is the first

19   privately-owned public transportation system in the nation to fund its operations solely by fares

20   and advertising.  No other U.S. public transit system finances its operations solely through fare

21   and advertising revenues.   LVMC receives no governmental financial support or subsidies.

22   Omnibus Declaration, ¶ 12.

23       10.   The Monorail currently has seven stations along a 3.9-mile route: MGM Grand,

24   Bally's/Paris Las Vegas; Flamingo/Caesars Palace; Harrah's/Imperial Palace; Las Vegas

25   Convention Center; Las Vegas Hilton; and the Sahara.  It travels the 3.9-mile route in 15 minutes

26   or less, and reaches speeds of up to 50 miles per hour.  It is capable of moving 3,200 passengers

27   per hour in each direction.  The Monorail operates 365 days per year, 19 hours per day during the

28   week and 20 hours each day Friday through Sunday.  Omnibus Declaration, ¶ 13.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/886004_3.doc

3

11. Other facts regarding the background of this Chapter 11 Case are contained in the Omnibus Declaration, which is incorporated herein in its entirety.

12. Since the commencement of this case, the Debtor has: (a) taken necessary steps to stabilize and run its business operations more efficiently so as to retain the value as a going concern; (b) commenced a thorough review and analysis of its executory contracts; (c) engaged in an extensive analysis of its real and personal property interests; (d) ensured that its creditors have been kept current for obligations incurred post petition; and (e) provided ongoing communications to all interested creditors to ensure they are informed of key actions taken by Debtors during this bankruptcy proceeding. Myles Exclusivity Declaration, ¶ 4.

13. At the outset of its Chapter 11 case, Debtor committed itself to: (a) maximize the value of its assets as a going concern; (b) cooperate with its creditors and all other involved parties; and (c) conclude this bankruptcy case as quickly and cost effectively as possible. Debtor continues to hold firm to this commitment. Myles Exclusivity Declaration, ¶ 5.

14. Immediately following the commencement of this Chapter 11 Case, Ambac Assurance Corporation ("Ambac") filed the *Motion of Ambac Assurance Corporation for Dismissal of Chapter 11 Proceeding Pursuant to 28 U.S.C. § 1334 and Sections 109(d) and 1112(b) of the Bankruptcy Code* [Docket No. 8] (the "Dismissal Motion"). Also immediately following the commencement of this Chapter 11 Case, Wells Fargo Bank, N.A., the Indenture Trustee under the 1st Tier Bonds, the 2nd Tier Bonds, and the Subordinate Bonds (the "Trustee") filed the *Indenture Trustee's Objection to Use of Cash Collateral and Motion for Adequate Protection Pursuant to 11 U.S.C. 361, 363(c)(2) and 363(e)* [Docket No. 13] (the "Cash Collateral Objection").

15. The Dismissal Motion and the Cash Collateral Objection imposed significant burdens on the Debtor and the Debtor's counsel during the first 30 days of the case. Approximately ten (10) depositions were taken during an approximately three-week period in connection with the Dismissal Motion and the Cash Collateral Motion. See Hamm Declaration, ¶ 3; Myles Exclusivity Declaration, ¶ 6. Moreover, the Debtor submitted extensive briefing in response to the Dismissal Motion and the Cash Collateral Motion, as the Court is aware. As a result of these

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/886004_3.doc

4

1    contested matters and the uncertainties raised as a result of the motions, the Debtor was unable to

2    devote time or resources to the formulation of a plan during the first 30 days of this Chapter 11

3    Case. Myles Exclusivity Declaration, ¶ 6.

4        16.    As of this date the Court has not decided either motion. In light of the possibility that

5    this Chapter 11 Case could be dismissed, it is not an effective use of the Debtor's resources to

6    formulate a plan of reorganization until the Court has issued its ruling on the Dismissal Motion.

7    Myles Exclusivity Declaration, ¶ 7. Moreover, a ruling determining the extent of the Trustee's

8    cash collateral, and specifically, the extent of the Trustee's interest, if any, in postpetition

9    revenues generated by the Debtor, will have a significant impact on any plan of reorganization.

10   Id. It is not realistic to negotiate a plan of reorganization with the Trustee and the 1st Tier

11   Bondholders until the Dismissal Motion and the extent of the Trustee's rights to post-petition

12   cash proceeds as cash collateral are determined. Id. Therefore, until such time as the Court

13   issues its rulings, the Debtor cannot commence serious negotiations to reach a viable conclusion

14   to this Chapter 11 Case. Id.

15       17.    Further, as Ambac has recently disclosed to the Court, Ambac has transferred the

16   Surety Bond and the Insurance Policy to a "Segregated Account" purportedly created at the

17   direction of, and under the control and management of, the Office of the Wisconsin

18   Commissioner of Insurance (the "Commissioner"), and which is now subject to rehabilitation

19   proceedings (the "Rehabilitation") in the Circuit Court for Dane County, Wisconsin. See *Ambac*

20   *Assurance Corporation's Opposition to Debtor's Motion for Administrative Order Establishing*

21   *Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals*

22   [Docket No. 313] ("Ambac Opposition"), n.1; *Order for Rehabilitation*, Case No. 10CV1576, a

23   true and correct copy of which is attached to the Debtor's *Omnibus Reply to the Oppositions*

24   *Filed by: (1) Wells Fargo Bank, N.A., as Indenture Trustee, (2) Ambac Assurance Corporation,*

25   *and (3) the Director of the State of Nevada, Department of Business and Industry, to the*

26   *Debtor's Motion for Administrative Order Establishing Procedures for Interim Monthly*

27   *Compensation and Reimbursement of Expenses of Professionals* (the "Reply") as Exhibit 6.

28       18.    The Dane County Circuit Court, in addition to placing the Insurance Policy and

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/886004_3.doc

5

1  Surety Bond in the Rehabilitation, entered an injunction against the payment of any moneys to

2  the 1st Tier Bondholders for an initial period of 6 months.  See Ambac Opposition; *Order for*

3  *Temporary Injunctive Relief*, Case No. 10CV1576, a true and correct copy of which is attached

4  to the Reply as Exhibit 7.

5       19.    Following the transfer of the Insurance Policy and the Surety Bond to the

6  Rehabilitation, the Trustee filed its *Notice of Motion and Motion by Wells Fargo Bank, National*

7  *Association, in its Capacity as Trustee for the Benefit and Protection of Certain Bondholders, to*

8  *Modify Injunction Order and to Intervene* (the "Modification Motion") and its *Brief by Wells*

9  *Fargo Bank, National Association, in its Capacity as Trustee for the Benefit and Protection of*

10  *Certain Bondholders, in Support of its Motion to Modify Temporary Injunction Order and to*

11  *Intervene* (the "Modification Brief"), true and correct copies of which are attached to the Reply

12  as Exhibits 9 and 10, respectively.

13       20.    In the Modification Brief, the Trustee argues that the transfer of the Insurance Policy

14  and the Surety Bond to the Segregated Account was illegal on multiple grounds, and that the

15  Insurance Policy and Surety Bond should be removed from the Segregated Account and returned

16  to Ambac's general account.  See generally Modification Brief.  Specifically, the Trustee has

17  asserted that the Senior Bonds and the Subordinate Bonds in this Chapter 11 Case are the only

18  "municipal" bond insurance contracts Ambac transferred to the Segregated Account, and that all

19  other insurance contracts transferred to the Segregated Account relate to credit default swaps,

20  residential mortgage-backed securities, and similar toxic risks.  Id.

21       21.    In sum, the Trustee asserts that Ambac and the Commissioner violated both federal

22  and Wisconsin law by transferring all of Ambac's "bad" insurance policies to an

23  undercapitalized Segregated Account while keeping all of Ambac's "good" insurance policies

24  and all of its assets in its general account.  Id.  The Trustee, pointing out that the Segregated

25  Account is capitalized only with a non-marketable $2 billion note with questionable value issued

26  by Ambac, and that "no creditor without notice of consultation would elect to exchange an

27  obligor holding $8.5 billion in assets for one with no cash, marketable securities or other liquid

28  assets," argues that the gross undercapitalization of the Segregated Account not only violates the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/886004_3.doc      6

plain language of the applicable Wisconsin statute, but that it (i) was an unconstitutional taking of the Bondholders' property under the Fifth Amendment and (ii) violated the due process rights of the Bondholders under the Fourteenth Amendment. Id. The Trustee further contends that the Commissioner's actions contravene the Equal Protection Clauses of the Fourteenth Amendment and Wisconsin law because the 1st Tier Bondholders were treated differently than other "municipal" bondholders. Id.

22.    The Dane County Circuit Court has not ruled on the Trustee's Modification Motion. See Hamm Declaration, ¶ 4.

23.    Pursuant to Section 1121(b) of the Bankruptcy Code, a debtor has the exclusive right to file a plan of reorganization for the first 120 days of the case (the "Exclusivity Period"). In this case, the Exclusivity Period expires on May 19, 2010, and the 180-day exclusive period for securing acceptance of the plan expires on July 20, 2010. Pursuant to Section 1121(d), Debtor is requesting an extension of the Exclusivity Period based upon the need for additional time to reach a resolution regarding the restructuring of the Debtor's debts. Myles Exclusivity Declaration, ¶ 8.

24.    By this Motion Debtor is seeking to extend the Exclusivity Period for the filing of Debtor's plan of reorganization up to and including August 17, 2010. Debtor also requests that the Court extend the 180-day exclusive period for securing acceptance of the plan up to and including October 18, 2010. The Debtor further requests that such order be without prejudice to the Debtor's right to seek further extensions.

25.    Notice of this Motion has been provided to (i) Office of the United States Trustee and (ii) those parties which have filed notices of appearance in this case. Debtor submits that no other or further notice need be given.

/ / /

/ / /

/ / /

/ / /

/ / /

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/886004_3.doc

7

# IV.
## LEGAL AUTHORITY

Section 1121 of the Bankruptcy Code authorizes a court to extend the time period within which a debtor may file a plan of reorganization. Section 1121 provides in pertinent part:

> (d) On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. 1121(d) (emphasis added).

The decision to extend a debtor's exclusive filing period is committed to the sound discretion of the bankruptcy court, based upon the facts and circumstances of each particular case. See, e.g., First American Bank of New York v. Southwest Gloves and Safely Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986).

Courts apply the term "cause" flexibly in order to allow the debtor adequate time to reach an agreement with creditors on a plan. In re McClean Industries, Inc., 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (quoting H.R. Rep. No. 595, 95th Cong., 2d Session 231 (1978), U.S. Code Cong. & Admin. News, 1978, pp. 5963, 6190). The legislative history of section 1121 makes it clear that Congress intended to grant courts the discretion to extend the Exclusivity Period to meet the needs and circumstances of the debtor:

> The Court is given the power, though, to increase or reduce the [exclusivity period] depending on the circumstances of the case. For example, if an unusually large company were to seek reorganization under Chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement.

H.R. Rep. No. 95-595, 95th Cong., 1st Session 231-32 (1978) (citations omitted).

In interpreting section 1121, courts consider various factors, including: (i) the size and complexity of the debtor's case, In re Perkins, 71 B.R. 294, 297-99 (Bankr. W.D. Tenn. 1987); In re United Press International, Inc., 60 B.R. 265, 269 (Bankr. D.C. 1986); (ii) the existence of good faith progress toward reorganization, In re Pine Run Trust, Inc., 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986); In re Swatara Coal Co., 49 B.R. 898, 900 (Bankr. E.D. Pa. 1985); and (iii) the existence of an unresolved contingency, In re Swatara Coal Co., 49 B.R. at 899-900.

The key factor in determining whether to grant extension of the Exclusivity Period is

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/886004_3.doc

1  whether the debtor-in-possession has had "a reasonable period in light of the bankruptcy case in

2  its entirety" to formulate, propose, and solicit the required acceptances of a plan. In re McClean

3  Industries, Inc., 87 B.R. at 834. In a "large and complex case requiring tremendous coordination

4  to administer ...[i]t is not unreasonable for a [debtor] to request an extension to make intelligent,

5  informed decisions with respect to the direction and future of the business." In re Service

6  Merchandise Co., Inc., 256 B.R. 744, 752 (Bankr. M.D. Tenn. 2000). See also In re United Press

7  International Inc., 60 B.R. at 269 (allowing a three-month extension of the exclusivity period to

8  file a plan where the debtor had shown diligence in moving quickly in a complex case with

9  multiple adversary proceedings).

10        The Debtor respectfully submits that cause exists for the extension requested herein. The

11  Court is well aware that the first 30 days of the Debtor's Chapter 11 Case were devoted to

12  defending against the Dismissal Motion and the Cash Collateral Objection. As of this date the

13  Court has not decided either motion. As a result of these contested matters, the Debtor was

14  unable to devote time or resources to the formulation of a plan during the first 30 days of this

15  Chapter 11 Case.

16        In light of the possibility that this Chapter 11 Case could be dismissed, it is not an

17  effective use of the Debtor's resources to formulate a plan of reorganization at this time.

18  Moreover, a ruling determining the extent of the Trustee's cash collateral, and specifically, the

19  extent of the Trustee's interest, if any, in postpetition revenues generated by the Debtor, will

20  have a significant impact on any plan of reorganization. It is not realistic to negotiate a plan of

21  reorganization with the Trustee and the 1st Tier Bondholders until the Dismissal Motion and the

22  extent of the Trustee's rights to post-petition cash proceeds as cash collateral are determined.

23  Therefore, until such time as the Court issues its rulings, the Debtor cannot commence serious

24  negotiations to reach a viable conclusion to this Chapter 11 Case.

25        Finally, despite Ambac's extremely active participation in this Chapter 11 Case to date,

26  its standing and role in this case have become unclear, along with the availability of the proceeds

27  of the Insurance Policy and Surety Bond purchased by the Debtor for the benefit of the 1st Tier

28  Bondholders. As discussed above, Ambac has transferred the Surety Bond and the Insurance

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/886004_3.doc

9

1    Policy to the Segregated Account purportedly created at the direction of, and under the control

2    and management of, the Commissioner, and the Segregated Account is now the subject of the

3    Rehabilitation in the Circuit Court for Dane County, Wisconsin.

4        Ambac, now merely the manager of the Surety Bond and the Insurance Policy, may have

5    no or limited authority to negotiate or act on its own behalf in connection with the Insurance

6    Policy or the Surety Bond.  The Commissioner has some role now with regard to the Insurance

7    Policy and the Surety Bond.  Consequently, despite Ambac's contention that it is still relevant to

8    this Chapter 11 Case, the parties with a role in negotiating a plan of reorganization may have

9    changed.

10       Given the uncertainty regarding any future payments under either the Insurance Policy or

11   the Surety Bond, the 1st Tier Bondholders and the Trustee likely have changed their perspective

12   regarding negotiations with the Debtor regarding a restructuring of the 1st Tier Bonds.

13       As a result of these issues, the Debtor has not had a reasonable period, in light of the

14   bankruptcy case in its entirety, to formulate, propose, and solicit the required acceptances of a

15   plan.

16       Aside from the delays and events discussed above, the Debtor has been diligent and has

17   shown good faith in progressing towards a successful conclusion to this case.  Over the past three

18   months the Debtor has:  (a) taken necessary steps to stabilize and run its business operations

19   more efficiently so as to retain the value as a going concern; (b) commenced a thorough review

20   and analysis of its executory contracts; (c) engaged in an extensive analysis of its real and

21   personal property interests; (d) ensured that its creditors have been kept current for obligations

22   incurred post petition, and (e) provided ongoing communications to all interested creditors to

23   ensure they are informed of key actions taken by Debtors during this bankruptcy proceeding.

24       At the outset of its Chapter 11 case, Debtor committed itself to:  (a) maximize the value

25   of its assets as a going concern; (b); cooperate with its creditors and all other involved parties

26   and (c) conclude this bankruptcy case as quickly and cost effectively as possible.  Debtor

27   continues to hold firm to this commitment.  Debtor respectfully submits that it should be entitled

28   to complete this process in a cost effective and timely manner without the very real risk of

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/886004_3.doc

1    further uncertainty and delay associated with a lapse of the Exclusivity Period.

2                                        **V.**
                                  **CONCLUSION**

3           WHEREFORE, Debtor respectfully requests that the Court enter an Order (i) extending

4    the Exclusivity Period for the filing of Debtor's plan of reorganization for an additional time

5    period up to an including August 17, 2010 and (ii) extending the 180-day period Debtor has for

6    securing acceptance of its plan of reorganization up to an including October 18, 2010.  Debtor

7    seeks such other relief as the Court deems just and proper.

8           DATED this 21st day of April, 2010.

9                                  GORDON SILVER

10

11                                 By: _____
                                        GERALD M. GORDON, ESQ.
12                                      WILLIAM M. NOALL, ESQ.
                                        GABRIELLE A. HAMM, ESQ.
13                                      3960 Howard Hughes Pkwy., 9th Floor
                                        Las Vegas, Nevada 89169
14                                      Attorneys for Debtor

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/886004_3.doc