1  FENNEMORE CRAIG, P.C.                    **E-filed May 10, 2010**
   Laurel E. Davis (NV Bar. No. 3005)
2  Craig S. Dunlap (NV Bar. No. 4974)
   Bank of America Plaza, Suite 1400
3  300 South Fourth Street
   Las Vegas, Nevada  89101
4  Telephone:  (702) 692-8000
   Facsimile:  (702) 692-8064
5  ldavis@fclaw.com
   cdunlap@fclaw.com
6
   MCDERMOTT WILL & EMERY LLP
7  William P. Smith (IL Bar No. 6187205)*
   James W. Kapp III (IL Bar No. 6239269)*
8  Miles W. Hughes (IL Bar No. 6279176)*
   227 West Monroe Street, Suite 4400
9  Chicago, Illinois  60606-5096
   Telephone:  (312) 372-2000
10 Facsimile:  (312) 984-7700
   wsmith@mwe.com
11 jkapp@mwe.com
   mhughes@mwe.com
12
   *Admitted Pro Hac Vice*
13
   *Attorneys for Ambac Assurance Corporation, and*
14 *The Segregated Account of Ambac Assurance*
   *Corporation*
15
                   **UNITED STATES BANKRUPTCY COURT**
16
                            **DISTRICT OF NEVADA**
17

| 18 | In re | Chapter 11 |
|---|---|---|
| 19 | LAS VEGAS MONORAIL COMPANY, a Nevada non-profit corporation, | Case No. BK-S-10-10464-BAM |
| 20 | Debtor. | |
| 21 | AMBAC ASSURANCE CORPORATION and The Segregated Account of Ambac Assurance Corporation, | **APPEAL NO. 10-11** |
| 22 | Appellants. | **MOTION FOR LEAVE TO APPEAL BY AMBAC ASSURANCE CORPORATION AND THE SEGREGATED ACCOUNT OF AMBAC ASSURANCE CORPORATION (FED. R. BANKR. P. 8001(b) AND 8003)** |
| 23 | | |
| 24 | v. | |
| 25 | LAS VEGAS MONORAIL COMPANY, a Nevada non-profit corporation, | **(TO BE TRANSMITTED TO THE U.S. DISTRICT COURT PURSUANT** |
| 26 | Appellees. | **TO  FED.R.BANKR. P.   8003(b))** |

Ambac Assurance Corporation, on its own behalf and for The Segregated Account of Ambac Assurance Corporation, and the Segregated Account of Ambac Assurance Corporation by its court appointed Rehabilitator, the Office of the Commissioner of Insurance for the State of Wisconsin, (collectively "**Ambac**"),[1] creditors, hereby move, pursuant to Federal Rules of Bankruptcy Procedure 8001(b) and 8003, for leave to appeal the order denying Ambac's Motion to Dismiss entered on April 26, 2010 [Docket No. 341] ("**Order**") by the United States Bankruptcy Court for the District of Nevada ("**Bankruptcy Court**"). A true and correct copy of the Order is attached hereto as **Exhibit A**. The appeal involves questions of law as to which there is no controlling decision of the Ninth Circuit Court of Appeals or the Ninth Circuit Bankruptcy Appellate Panel, on which there is substantial ground for difference of opinion. An immediate appeal will also materially advance the ultimate termination of this matter and avoid wasted litigation. Finally, the issues raised in this appeal involve matters of great public importance in the State of Nevada and nationwide, and those matters should not have to wait for appeal until the Bankruptcy Court enters a final order in this case. For these reasons, and as set forth more fully below, Ambac respectfully requests this Court grant it leave to appeal the Bankruptcy Court's Order.

---

[1] Ambac's interest in these proceedings arises under three arrangements related to the 1st Tier Bonds, described below. First, Ambac has insured the payment of scheduled amounts of principal and interest on the 1st Tier Bonds pursuant to its Municipal Bond Insurance Policy Number 17548BE, dated September 20, 2000 (the "**Policy**"). Second, Ambac has guaranteed payments from the Debt Service Reserve Fund for the 1st Tier Bonds in an amount not to exceed $20,991,807.50 under a surety bond (the "**Surety Bond**") it issued to the Trustee. Third, Ambac owns $8.5 million in principal amount of 1st Tier Bonds. As noted by the Bankruptcy Court, Ambac estimates that its exposure over the life of the bond issue is about $1.16 billion. Order at 4, n.5.

On March 24, 2010, at the request and with the approval of the Office of the Wisconsin Commissioner of Insurance ("**Commissioner**"), Ambac established a segregated account (the "**Segregated Account**") for certain contracts, including the Surety Bond and the Policy for the 1st Tier Bonds. The Commissioner then commenced rehabilitation proceedings for the Segregated Account in the Circuit Court for Dane County, Wisconsin. Ambac continues to service the Surety Bond and the Policy, subject to the oversight of the Commissioner, as rehabilitator, and the Dane County Court. It is anticipated that following the approval of a plan of rehabilitation, Segregated Account policy claims will be paid as they arise through a combination of cash and interest-bearing surplus notes.

**I.    STATEMENT OF QUESTIONS AND RELIEF SOUGHT**

Ambac seeks this Court's review of the Bankruptcy Court's Order denying Ambac's Motion to Dismiss.  The key issues Ambac will raise on appeal are:

- Whether the Bankruptcy Court erred as a matter of law when it concluded that the Debtor is not a "municipality as defined in section 101(40) of the Bankruptcy Code; and

- Whether the Bankruptcy Court erred as a matter of law when it concluded that the Debtor qualifies as a "person" under section 101(41) of the Bankruptcy Code that is eligible to be a debtor under chapter 11 pursuant to section 109(d) of the Bankruptcy Code.

Contrary to the Bankruptcy Court's ruling, based upon the undisputed facts and applicable legal authorities, the Debtor is a municipality under the Bankruptcy Code as an instrumentality of the State of Nevada because it is controlled by the Governor of the State of Nevada.  Because the Debtor is a municipality under the Bankruptcy Code, it is not eligible to be a debtor under chapter 11.  Accordingly, the Bankruptcy Court lacks authority to proceed with the Debtor's chapter 11 filing, and it erred as a matter of law when it created a legal framework never before applied in the Ninth Circuit or elsewhere to deny Ambac's Motion to Dismiss.

**II.    STATEMENT OF FACTS**

The Debtor, Las Vegas Monorail Company ("**LVMC**" or the "**Debtor**"), is a nonprofit corporation organized under the laws of the State of Nevada in 2000 for the purpose of acquiring an existing monorail and expanding it to run 3.9 miles just east of the Las Vegas Strip ("**Monorail**").  Order at 2, 2 n.1.  LVMC claims exemption from federal income taxation under section 501(c)(4) of the Internal Revenue Code, 26 U.S.C. § 501(c)(4), and it is exempt from state sales and use taxation under section 372.3261 of the Nevada Revised Statutes.  *Id.* at 2 n.1.  As a tax-exempt nonprofit corporation, all of LVMC's property, assets, profits and net revenues are irrevocably dedicated to the public purposes for which it was formed.

The Monorail was originally owned by MGM Grand-Bally's Monorail Limited Liability Company (the "**Original Owner**"), a joint venture between MGM Grand Monorail, Inc., and Bally's Grand, Inc.  Official Statement at 2, which is part of the record as Ambac Hearing Exhibit 82.  In 2000, the Original Owner sold the Monorail to LVMC.  *Id.*  In order to secure tax-exempt financing sufficient for LVMC to acquire the existing monorail and expand it, the Director of the State of Nevada Department of Business and Industry (the "**Director**") issued  two series of governmental revenue bonds:  (a) the $451,448,217.30 original principal amount 1st Tier Series 2000 (the "**1st Tier Bonds**"); (b) the $149,200,000 original principal amount 2nd Tier Series 2000 (collectively with the 1st Tier Bonds, the "**Senior Bonds**"); and (c) the $48,500,000 original principal amount 3rd Tier Series 2000 (collectively with the Senior Bonds, the "**Bonds**").  Order at 2-3.  *See also* Official Statement at 1.  The Director issued the Senior Bonds pursuant to a Senior Indenture between Wells Fargo Bank, as trustee ("**Trustee**"), and the Director.  Order at 3. The Director loaned the proceeds of the Bonds to LVMC pursuant to a Financing Agreement between LVMC and the Director.  *Id.*

To qualify to receive the proceeds of the sales of the tax-exempt governmental Bonds, and to protect the State of Nevada from liability for payment on the Bonds, LVMC and the Director executed a Tax Certificate and Agreement (the "**Tax Certificate**") under which LVMC expressly represented that it was an "instrumentality of the State of Nevada" and that it was "controlled by the Governor of the State of Nevada."  Tax Certificate, a copy of which is in the record as Ambac Hearing Exhibit 2.  As the Bankruptcy Court explained, "LVMC's instrumentality status was critical to the Director's issuance of the Bonds.  That status allowed the Director to offer the Bonds on the basis that interest payments would be free of federal tax, which in turn lowered LVMC's cost of expanding and running the monorail."  Order at 29.

Not only did LVMC represent that it was an instrumentality of the State controlled by the Governor, the undisputed facts support those representations.  The State of Nevada controls major aspects of LVMC's governance, financial affairs, and operations.  For instance, all appointments

to LVMC's Board of Directors must be approved by the Governor.  Bylaws §§ 6.02 and 6.04, a copy of which is in the record at Ambac Hearing Exhibit 4.  Moreover, the LVMC Board must notify the Governor of its recommendation to reappoint or replace a director whose term is expiring, and if the Governor disapproves of the Board's first two nominees, then the Governor may appoint the successor director without Board input or approval.  Bylaws § 6.04.  Notably, the Governor may refuse to appoint or reappoint a director, for any reason or no reason at all, at his sole discretion.    In addition, the Governor may remove any director from LVMC's Board of Directors for cause.  Bylaws § 6.03.  No director may be removed from office by the Board of Directors without the Governor's approval.  *Id.*  If the Governor disapproves of the Board's recommendation for removal, the director shall not be removed from the Board.  *Id.*

LVMC also must obtain the Governor's approval of its annual budgets, financial reports, any material alterations to its annual budget or financial reports, any major expenditures for enhancements or repairs of the Monorail, and any proposed changes to the rate schedule.[2] Bylaws § 6.12.  If the Governor disapproves of any such matter, the Board cannot proceed with such action.  *Id.*  The Governor has the right to inspect and audit all of LVMC's books, records, and documents of every kind.  Bylaws § 8.03.

LVMC's Articles of Incorporation and Bylaws may not be amended or repealed without the approval of the Governor.  Articles of Incorporation Art. IV[3]; Bylaws Art. X.  And, upon the dissolution of LVMC, all of its assets remaining after the discharge of its liabilities must be distributed to the Governor or to a designated agency of the State of Nevada.    Articles of Incorporation, Art. III.

Finally, LVMC must make its annual budget and any material modifications thereto available to the public.  Tax Certificate ¶ 3.3.5.  Moreover, any meeting of the Board of Directors at which the annual budget is adopted must be noticed as a public meeting, open to public

---

[2]  The Governor cannot disapprove of rate changes, however, if such changes are mandated under the Rate Covenant (as defined in the Bylaws).  Bylaws § 6.12.

[3]  A copy of the Articles of Incorporation is part of the record at Ambac Hearing Exhibit 3.

attendance, and public comment must be permitted.  *Id.*  Minutes of all meetings of the Board of Directors must be available for public review (but proprietary or confidential information may be deleted from the minutes).  *Id.*  Notably, a representative of the Governor or the Director attended, in person, not less than 50 meetings of the LVMC Board of Directors since 2004. Summary Chart, which is part of the record as Ambac Hearing Exhibit 14.

On January 13, 2010, LVMC filed a petition under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  That day, Ambac moved to dismiss LVMC's petition on the grounds that LVMC is an instrumentality of the State of Nevada and, therefore, is not a "person" eligible to be a debtor under chapter 11 pursuant to section 109(d) of the Bankruptcy code [Docket No. 8] ("**Motion to Dismiss**").  The Bankruptcy Court held a hearing on Ambac's Motion to Dismiss on February 17, 2010.  On April 26, 2010, the Bankruptcy Court issued its Order denying Ambac's Motion to Dismiss [Docket No. 341].

As discussed in more detail below, Ambac asserts that the Bankruptcy Court erred as a matter of law when it concluded that (a) LVMC is not a "municipality" as defined in section 101(40) of the Bankruptcy Code, and (b) LVMC qualified as a "person" under section 101(41) of the Bankruptcy Code that is eligible to be a debtor under chapter 11 pursuant to section 109(d) of the Bankruptcy Code.  The Bankruptcy Court, in essence, created a new legal framework analyzing the controlling question of law, and in doing so, disregarded the body of applicable case law, and other legal authority, addressing the issue of "control" in the context of what constitutes an "instrumentality of the State" under 11 U.S.C. § 101(40).

As further discussed below, Ambac requests leave to appeal the Order because the appeal involves controlling questions of law as which there are substantial grounds for difference of opinion, and an immediate appeal would materially advance the ultimate termination of the litigation.

1

### III.    LEAVE TO APPEAL THE DENIAL OF AMBAC'S MOTION TO DISMISS SHOULD BE GRANTED

2

3    In its discretion, a district court may grant leave to review an interlocutory order of the

4    bankruptcy court.  28 U.S.C. § 158(a)(3); *Cutter v. Seror (In re Cutter)*, 398 B.R. 6, 16 (9th Cir.

5    BAP 2008).  The standards set forth in 28 U.S.C. § 1292(b) guide the court in determining

6    whether to grant leave to appeal from a bankruptcy court's interlocutory order.  *In re Price*, 79

7    B.R. 888, 889 (9th Cir. BAP 1987), *aff'd*, 871 F.2d 97 (9th Cir. 1989).  Under section 1292(b),

8    the court may grant leave to appeal an interlocutory order if the order being appealed (1) involves

9    a controlling question of law, (2) for which there is a substantial ground for difference of opinion

10   and (3) an immediate appeal would materially advance the ultimate termination of the litigation.

11   *Id.  Cf. In re Kashani v. Fulton*, 190 B.R. 875, 882 (9th Cir. BAP 1995) (noting that leave to

12   appeal should be granted if "the order involves a controlling question of law where there is a

13   substantial ground for difference of opinion").   As explained below, all three standards are met in

14   this case.   Accordingly, Ambac respectfully asks this Court to grant it leave to appeal the

15   Bankruptcy Court's Order denying its Motion to Dismiss.

### A.    The Motion to Dismiss Order Involves a Controlling Question of Law.

16   The first factor contained in 28 U.S.C. § 1292(b) considers whether the Bankruptcy

17   Court's Order involves a "controlling question of law."  Ambac's Motion to Dismiss questioned

18   whether the Bankruptcy Court had proper jurisdiction over LVMC's chapter 11 filing because

19   LVMC constitutes an "instrumentality of the State".[4]

20   In particular, the central question of law presented in Ambac's Motion is whether LVMC

21

22   [4] Other Courts have held that the threshold issue of eligibility is not jurisdictional.  *See In re Wenberg,* 94 B.R. 631,

23   637 (9th Cir. BAP 1988) *aff'd Wenberg v. FDIC (In re Wenberg),* 902 F.2d 768 (9th Cir. 1990) (noting that Section 109 eligibility is not jurisdictional); *In re First Assured Warranty Corp.,* 383 B.R. 502, 518-19 (Bankr. D. Colo.

24   2008) (although the issue of whether the debtor is eligible for relief is not jurisdictional, dismissal for failure to meet the requirements for filing a petition is a core issue).  Here, however, LVMC's lack of eligibility to be a debtor under

25   chapter 11 results from it being an instrumentality of the state, and thereby touches upon the constitutional issue of whether a federal court may exercise power over an instrumentality of a state.  Such a constitutional issue implicates

26   the jurisdiction and power of a federal court, and thereby LVMC's lack of eligibility under chapter 11 is a jurisdictional issue in this instance.

is a "person" otherwise eligible to seek chapter 11 protection pursuant to section 109(d) of the Bankruptcy Code.  The definition of "person," however, specifically excludes a "governmental unit." 11 U.S.C. § 101(41).  Furthermore, the term "governmental unit" is defined to specifically include a "municipality." 11 U.S.C. § 101(27).  "Municipality" is defined to include a "political subdivision or public agency or *instrumentality of a State*."  11 U.S.C. §101(40) (emphasis added).  Therefore, a "person" eligible for chapter 11 protection cannot be an "instrumentality of the State" or, in turn, a "municipality."

Courts addressing the scope of the term "municipality" focus upon the extent to which the entity in question is subject to control by the state.  *In re Greene County Hosp.*, 59 B.R. 388, 389 (Bankr. S.D. Miss. 1986) (holding that the county hospital was a municipality under the Bankruptcy Code); *In re Westport Transit Dist.*, 165 B.R. 93, 96 (Bankr. D. Conn. 1994) (holding that the transit district qualified as a hybrid public agency of both the state and town, and thus the district was a municipality under the Bankruptcy Code); *In re Ellicott School Bldg. Auth.*, 150 B.R. 261, 264 (Bankr. D. Colo. 1992) (holding that the school building authority was not a "municipality" within the meaning of the Bankruptcy Code).  Supported by such legal authority, Ambac argued that the extensive control rights possessed by the Governor of the State of Nevada over LVMC's governance and material financial affairs qualified LVMC as an "instrumentality of the State," and not a "person," for the purposes of the Bankruptcy Code.

Whether LVMC is an "instrumentality of the State" is a purely legal issue which will be reviewed *de novo* on appeal.  *See* Order at 6 ("Determining the proper scope of section 101(40)'s use of 'instrumentality' raises significant questions of statutory interpretation.")  The underlying facts pertaining to the rights and control that LVMC ceded to the Governor of the State of Nevada (as described above) are undisputed.  What is disputed, however, is the legal significance to be attributed to such State oversight and whether such significant State involvement renders LVMC an "instrumentality of the State."  Thus, the issue presented by Ambac's appeal is purely a question of law that is ripe for adjudication by this Court.

Furthermore, the resolution of this issue goes to the heart of whether LVMC is "eligible" to file a chapter 11 bankruptcy petition and whether the Bankruptcy Court has authority over LVMC's petition. *See In re Grouphealth P'ship, Inc.*, No. 92-0124, 1992 WL 96333, at *2 (E.D. Pa. Apr. 21, 1992) (concluding that "the question of whether an HMO is an insurance company for purposes of the bankruptcy code is a purely legal question that controls whether the Bankruptcy Court has jurisdiction over" the Debtor's petition); *see also In re Betta Prods., Inc.*, No. C 07-0425 WHA, 2007 U.S. Dist. LEXIS 81621, at *4 (N.D. Cal. Oct. 15, 2007) (explaining that the denial of the motion to dismiss involved a controlling question of law as to whether the decisions in earlier litigation were final); *In re Bertain*, 215 B.R. 438, 441 (9th Cir. BAP 1997) (recognizing that the review of a denial of a motion to dismiss involved a controlling issue of law); *In re Burke*, 95 B.R. 716, 717 (9th Cir. BAP 1989) (same). Copies of these decisions are attached as Exhibits 1 and 2, respectively.

For the reasons set forth above, the issue raised by Ambac's Motion to Dismiss is a controlling issue of law and this Court's review of such a legal question should not be postponed. *See, e.g.*, *In re City of Vallejo*, 408 B.R. 280, 285 n.3 (9th Cir. BAP 2009) (certifying the bankruptcy court's order to the Ninth Circuit Court of Appeals under 28 U.S.C. § 158(d)(2) and Rule 8001(f)(4) because the order involved a matter of public importance).

**B.      Substantial Grounds for Difference of Opinion Exists Regarding the Bankruptcy Court's Denial of Ambac's Motion to Dismiss.**

The second factor contained in 28 U.S.C. § 1292(b) considers whether there is "substantial ground for difference of opinion" as to the controlling question of law. Courts in the Ninth Circuit and elsewhere have held that a substantial ground for difference of opinion exists where the bankruptcy court's ruling conflicts with caselaw or contravenes the rulings of appellate courts which have addressed the issue. *See, e.g.*, *McDonald v. Sperna (In re Sperna)*, 173 B.R. 654, 658 (9th Cir. BAP 1994) (recognizing that "there have been numerous opinions published on this [controlling legal] issue which express conflicting views."); *In re Betta Prods., Inc.*, 2007

U.S. Dist. LEXIS 81621 at *5 (stating that "there is a split among courts in different circuits" with respect to the controlling issue of law); *In re Grouphealth P'ship, Inc.*, 1992 U.S. Dist. LEXIS 5277 at *5 (noting the existence of a split among circuit courts).  As described below, the Bankruptcy Court's Order creates a new legal framework for analyzing the controlling question of law, and in doing so it disregards the body of applicable caselaw and other legal authority addressing the issue of "control" in the context of what constitutes an "instrumentality of the State" under section 101(40) of the Bankruptcy Code.

There is no controlling decision of the Ninth Circuit Court of Appeals or the Ninth Circuit Bankruptcy Appellate Panel on the question of law addressed by the Bankruptcy Court. However, case law and statutory guidance exists with respect to the defining characteristics of a "municipality" or an "instrumentality of a State" under section 101(40) of the Bankruptcy Code. In its revisions to the statute, Congress has clearly intended to expand "the applicability of chapter IX as much as possible."  H.R. Rep. No. 94-686, 94th Cong., 1st Sess. 20 (1975) (noting that certain changes to the eligibility requirements to chapter 9 debtors were intended to broaden the applicability of chapter 9); S. Rep. No. 94-458, at 13, 94th Cong. 1st Sess. (1975) ("The provisions of [chapter 9] should provide ready access to the bankruptcy courts.").  These authorities recognize, explicitly or implicitly, that the existing definition of municipality was enacted by Congress in 1976 in order "to broaden applicability of Chapter IX as much as possible."  H.R. Rep. No. 94-686, 94th Cong., 1st Sess. 20 (1975); 6 *Collier on Bankruptcy* ¶900.02[2][a] at 900-11 (15th ed. 2007) ("Congress intended the definition of municipality to be expansive …"); *see also Hamilton Creek Metro. Dist. v. Bondholders Colo. Bondshares (In re Hamilton Creek Metro Dist.)*, 143 F.3d 1381, 1384 (10th Cir. 1998) ("To be eligible for chapter 9 relief, a petitioner much meet several criteria, which are to be construed broadly to provide access to relief in furtherance of the Code's underlying policies."); *In re City of Vallejo*, 408 B.R. 280, 289 (9th Cir. BAP 2009) ("We construe broadly § 109(c)'s eligibility requirements to provide access to relief in furtherance of the Code's underlying policies.") (citations omitted); *In re Pierce*

*County Housing Auth.*, 414 B.R. 702, 710 (Bankr. W.D. Wash. 2009) ("The eligibility requirements of 109(c) are to be broadly construed to provide access to relief in furtherance of the Code's underlying policies.") (citations omitted); *In re Valley Health Sys.*, 383 B.R. 156, 163 (Bankr. C.D. Cal. 2008) ("Section 109(c)'s eligibility requirements are to be construed broadly to provide access to relief in furtherance of the Code's underlying policies.") (citations omitted).

Honoring this clear expression of legislative intent, substantially all of the courts addressing this issue have determined that a putative debtor which otherwise lacks traditional governmental powers (*e.g.*, the power to levy taxes, the power to exercise eminent domain, etc.) is nevertheless a "municipality" for bankruptcy purposes if it is controlled by the state (or county or municipal authority, as creatures of the state). *E.g.*, *In re Greene County Hosp.*, 59 B.R. at 389 (community hospital held to be a municipality based on county control over the ownership or leasing of hospital property); *Ex parte York County Natural Gas Auth.*, 238 F. Supp. 964 (W.D.S.C. 1965) ("The legal test between a private or public authority or agency is whether the authority or agency is subject to control by public authority, state or municipal"); *In re Westport Transit Dist.*, 165 B.R. at 95 (recognizing that a putative debtor is a municipality if it is subject to control by a public authority, the state, or a municipality); *In re Ellicott School Bldg. Auth.*, 150 B.R. at 264 (following the control tests described in *Greene County Hospital* and *York County Natural Gas Authority*, but holding that the putative debtor was not a municipality because "no governmental entity exercises any right of control" over the authority).

Under the foregoing authorities, the Nevada Governor's extensive powers of control over LVMC would provide strong, if not conclusive, support for a determination that LVMC is an instrumentality of the State for the purposes of section 101(40) of the Bankruptcy Code. Indeed, major aspects of LVMC's governance, financial affairs and operations are controlled by the Governor. *See* Order at 4 n.3 ("The level of control is fairly expansive."); Order at 37 ("It is beyond doubt that Nevada's involvement is LVMC is significant, and some might say too intrusive for LVMC to be purely private."). Moreover, in stark contrast to LVMC's undisputed

factual representation in the Tax Certificate, admitted into evidence by the Bankruptcy Court, none of the foregoing courts applying the legal test of "control" were faced with a prior written representation by the debtor that it was an instrumentality of the state and that it was controlled by the governor of such state.

Although the Bankruptcy Court described many of the relevant municipality case and statutory authorities in its Order, it largely ignored this body of law in favor of creating a new legal framework. The focus of this new test is not the extent to which state control exists over a putative debtor, but whether state control exists "to protect public finances or the public fisc" or in relation "to essential state sovereignty and essential state functions." Order at 37. In applying this new test, the Bankruptcy Court held that LVMC is not an instrumentality or municipality for bankruptcy purposes, purportedly because the Governor's significant and undisputed powers of control over LVMC were not imposed to protect the State's tax coffers and they bear little relationship to the State's traditional public functions. Order at 38-39.

In support of its ruling on the controlling question of law, the Bankruptcy Court states, in general fashion and without specific citation, that "[t]he Governor's control, then, while extensive, is not the type of control that historically has caused courts to label entities or enterprises instrumentalities of the State." Order at 39. Contrary to this statement, however, the Bankruptcy Court's ruling has little, if any, caselaw or statutory support. In fact, the new instrumentality test created by the Bankruptcy Court directly contradicts the Congressional intention for the Bankruptcy Code definition of "municipality" to be expansive. Likewise, this new test runs contrary to the relevant case decisions, substantially all of which emphasize the extent of state control, not the purposes of state control, in deciding whether a putative debtor is an instrumentality of the state for bankruptcy-eligibility purposes. Indeed, the Bankruptcy Court's view on the purpose of such state control (and, in particular, the protection of the public fisc) raises public policy questions best reserved for determination by the legislature.

Because the new instrumentality test crafted by the Bankruptcy Court conflicts with

and/or contravenes applicable caselaw and legal authority, a substantial ground for differences of opinion exists to justify this Court's review of the Order.

### C.    An Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation.

For leave to appeal an interlocutory order to be granted, appellate review must advance the litigation and conserve time and resources. *In re JWJ Contracting Co.*, 287 B.R. 501, 506 n.7 (9th Cir. BAP 2002); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir. 1982); *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 883 (9th Cir. BAP 1995). Appellate review materially advances the litigation where resolution of the appeal, if decided in appellant's favor, "would materially advance the ultimate termination of litigation by depriving the Bankruptcy Court of jurisdiction." *In re Grouphealth P'ship, Inc.*, 1992 U.S. Dist. LEXIS 5277, at *6. Furthermore, the Ninth Circuit Bankruptcy Appellate Panel in *JWJ Contracting* noted that the immediate appeal "will materially advance the termination of this litigation because it will provide an appropriate framework for the bankruptcy court and the parties to resolve the underlying dispute." *JWJ Contracting*, 287 B.R. at 506 n.7. In addition, the *JWJ Contracting* court explained that "denying leave to appeal will result in wasted litigation and expense because the parties will likely return here for an answer." *Id.*

In this case, Ambac is seeking review of the Bankruptcy Court's denial of Ambac's Motion to Dismiss questioning the Bankruptcy Court's authority to proceed with LVMC's chapter 11 bankruptcy case. If Ambac is correct and the Bankruptcy Court lacks jurisdiction over LVMC, all actions taken by the Bankruptcy Court with respect to LVMC's petition will be void. LVMC's estate should not expend time and resources pursuing a chapter 11 reorganization in the Bankruptcy Court, when the possibility exists that such restructuring could be subsequently rendered null and void by a determination that the Bankruptcy Court lacked proper jurisdiction over LVMC. Moreover, Ambac's appeal (whenever pursued) cannot be rendered moot if the Bankruptcy Court lacked jurisdiction to proceed with the LVMC's bankruptcy case in the first

1    place. *See Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1189 (9th Cir. 2000).

2          As a result, immediate appellate review, rather than appellate review postponed until after

3    a reorganization plan is confirmed, will materially advance the litigation and conserve the time

4    and resources of the courts.

5    **IV.    CONCLUSION**

6          Ambac's Motion to Dismiss involves the purely legal issue of whether LVMC is an

7    instrumentality of the State of Nevada under the broad definition of municipality set forth in

8    section 101(40) of the Bankruptcy Code.  Ample authority supports the conclusion that LVMC is

9    an instrumentality and therefore a municipality, and as such is ineligible to be a debtor under

10   chapter 11 of the Bankruptcy Code.  As such, substantial grounds for difference opinion exists on

11   the controlling issue of law raised by Ambac's appeal.  Immediate interlocutory review of the

12   Bankruptcy Court's decision that LVMC is not an instrumentality of the State will materially

13   advance the litigation since it goes to the central issue of whether the Bankruptcy Court has

14   proper jurisdiction over LVMC.  For all of the reasons set forth herein, Ambac respectfully asks

15   this Court to grant it leave to appeal the Bankruptcy Court's Order denying Ambac's Motion to

16   Dismiss.

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

FENNEMORE CRAIG, P.C.
LAS VEGAS

1

2    Dated:  May 10, 2010                          Respectfully submitted,

3                                                  MCDERMOTT WILL & EMERY LLP
                                                       William P. Smith (IL Bar No. 6187205)
4                                                      James W. Kapp III (IL Bar No. 6239269)
                                                       Miles W. Hughes (IL Bar No. 6279176)
5

6                                                  FENNEMORE CRAIG, P.C.

7                                                  By:___/s/ Laurel E. Davis_____
                                                       Laurel E. Davis
8                                                      Craig S. Dunlap
                                                       Jeffrey S. Steffen
9

10                                                 *Attorneys for Ambac Assurance Corporation,*
                                                   *and The Segregated Account of Ambac*
11                                                 *Assurance Corporation*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26