FENNEMORE CRAIG, P.C.
Laurel E. Davis (NV Bar. No. 3005)
Craig S. Dunlap (NV Bar. No. 4974)
Bank of America Plaza, Suite 1400
300 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 692-8000
Facsimile: (702) 692-8064
ldavis@fclaw.com
cdunlap@fclaw.com

MCDERMOTT WILL & EMERY LLP
William P. Smith (IL Bar No. 6187205)*
James W. Kapp III (IL Bar No. 6239269)*
Miles W. Hughes (IL Bar No. 6279176)*
227 West Monroe Street, Suite 4400
Chicago, Illinois 60606-5096
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
wsmith@mwe.com
jkapp@mwe.com
mhughes@mwe.com

*Admitted Pro Hac Vice*

*Attorneys for Ambac Assurance Corporation and The Segregated Account of Ambac Assurance Corporation, by its Court Appointed Rehabilitator, the Office of the Commissioner of Insurance for the State of Wisconsin*

**E-filed May 12, 2010**

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>LAS VEGAS MONORAIL COMPANY,<br>a Nevada non-profit corporation,<br><br>Debtor. | Chapter 11<br><br>No. BK-S-10-10464-BAM<br><br>**MOTION FOR STAY PENDING APPEAL PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8005**<br><br>Hearing Date: June 16, 2010<br>Hearing Time: 9:30 a.m. |

Ambac Assurance Corporation, on its own behalf and for The Segregated Account of

Ambac Assurance Corporation by its court appointed Rehabilitator, the Office of the Commissioner of Insurance for the State of Wisconsin, (collectively "**Ambac**"),[1] pursuant to Federal Rule of Bankruptcy Procedure 8005, hereby move this Court to stay these proceedings pending Ambac's appeal to the United States District Court of this Court's Order Regarding Ambac's Motion to Dismiss entered on April 26, 2010 [Docket No. 341] ("**Order**"). Ambac's appeal raises the significant question of whether the Bankruptcy Court has authority over this chapter 11 filing. Although the appeal of this issue cannot be rendered moot, *see Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1189 (9th Cir. 2000), out of an abundance of caution and to avoid the unnecessary expenditure of the estate's and the Court's time and resources, Ambac asks this Court to stay these proceedings pending resolution of Ambac's appeal of the Order to, in part, avoid the difficulty, hardship and expense of having to unwind various complex transactions which may be effectuated in this case.

As discussed in more detail in Ambac's Motion for Leave to Appeal [Docket No. 370], Ambac seeks review of the Bankruptcy Court's Order denying Ambac's Motion to Dismiss. The key issues Ambac raises on appeal are:

- Whether the Bankruptcy Court erred as a matter of law when it concluded that the Debtor is not a "municipality" as defined in section 101(40) of the Bankruptcy Code; and

- Whether the Bankruptcy Court erred as a matter of law when it concluded that the Debtor qualifies as a "person" under section 101(41) of the Bankruptcy Code that is eligible to be a debtor under chapter 11 pursuant to section 109(d) of the Bankruptcy Code.

---

[1] As set forth in the *Declaration of Scott Zuchorski in Support of Ambac Assurance Corporation's Opposition to Debtor's Motion for Administrative Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals* (which was filed with this Court on April 7, 2010 (Docket No. 314)), Ambac, at the request and with the approval of the Office of the Wisconsin Commissioner of Insurance ("**Commissioner**"), established on March 24, 2010, a segregated account (the "**Segregated Account**") for certain contracts, including the Surety Bond and the Policy for the 1st Tier Bonds. The Commissioner then commenced rehabilitation proceedings for the Segregated Account in the Circuit Court for Dane County, Wisconsin.

As explained below, Ambac has a likelihood of success in the merits of its appeal, and if Ambac succeeds in its appeal, this Court will not have the authority to confirm any plan of reorganization for Las Vegas Monorail Company ("**LVMC**") under chapter 11. In addition, Ambac, as a large creditor and insurer of payments on the 1st Tier Bonds, risks irreparable injury if this Court proceeds with such a reorganization pending Ambac's appeal. Indeed, proceeding with the reorganization at this time, in the face of the possibility that this Court lacks jurisdiction over LVMC's petition and authority to proceed in this chapter 11 case, could waste the Court's, LVMC's and its creditors' time and resources and inflict needless hardship upon innocent parties during the unwinding of any such restructuring.

On the other hand, LVMC will not be harmed by a stay pending appeal since its operating revenues, by LVMC's own admissions, are sufficient to support its ongoing operations. During the requested stay, LVMC would continue to operate in the ordinary course of business and would continue to comply with this Court's orders pertaining to cash collateral. At the same time, the requested stay ensures that LVMC's estate does not incur considerable expenses in pursuing a reorganization that is ultimately rendered null and void by the appellate court's determination that this Court does not have authority over LVMC's chapter 11 petition. A stay pending appeal also furthers the public interest since it conserves the Court's time and resources and results in an efficient bankruptcy administration. For these reasons, as set forth more fully below, Ambac respectfully requests that this Court stay this matter until the resolution of Ambac's appeal of the Order.

I.  **STATEMENT OF FACTS**

LVMC is a nonprofit public benefit corporation that owns and operates a monorail that runs 3.9 miles just east of the Las Vegas Strip ("**Monorail**"). Order at 2. Although LVMC's ridership has never met its projections, its revenues have exceeded its operating expenses, leaving it more than $5 million in annual profits before debt service. *Id.* at 4. LVMC's profits have not been able to cover its debt, which consists primarily of the repayment of a loan from the Director

of the State of Nevada Department of Business and Industry (the "**Director**") of the approximately $650 million the Director raised by issuing three series of tax-exempt bonds, with the first series (the "**1st Tier Bonds**") having a principal amount of approximately $450,000,000 and the two junior series of bonds making up the remainder. Order at 2-3, 3 n.2.

As set forth in the *Declaration of Scott Zuchorski* (the "**Declaration**") (which was filed with this Court on January 13, 2010 (Docket No. 9), Ambac has insured the payment of scheduled amounts of principal and interest on the 1st Tier Bonds pursuant to its Municipal Bond Insurance Policy Number 17548BE, dated September 20, 2000 (the "**Policy**"). *See* Declaration at ¶ 12. In addition, Ambac has guaranteed payments from the Debt Service Reserve Fund for the 1st Tier Bonds in an amount not to exceed $20,991,807.50 under a surety bond (the "**Surety Bond**") it issued to the Trustee. *Id.* To date, Ambac has made payments under the Policy and the Surety Bond in the aggregate amount of $20,532,771.15, due to LVMC's failure to pay the required installments of interest on the 1st Tier Bonds as and when due under the Financing Agreement and Senior Indenture. *Id.* at ¶ 13.[2]

On January 13, 2010, LVMC filed a petition under Chapter 11 of the Bankruptcy Code. That day, Ambac moved to dismiss LVMC's petition on the grounds that LVMC is an instrumentality of the State of Nevada and therefore not a "person" eligible for filing under chapter 11 [Docket No. 8] ("**Motion to Dismiss**"). The Bankruptcy Court held a hearing on Ambac's Motion to Dismiss on February 17, 2010. On April 26, 2010, the Bankruptcy Court denied Ambac's Motion [Docket No. 341]. On May 10, 2010, Ambac filed a Notice of Appeal, an Election to Have the Appeal Heard by the District Court, and a Motion for Leave to Appeal, seeking the district court's review of the Order denying Ambac's Motion to Dismiss.

II.    **STANDARDS FOR A MOTION FOR STAY PENDING APPEAL**

Federal Rule of Bankruptcy Procedure 8005 provides in pertinent part:

---

[2] In addition to its obligations under the Policy and the Surety Bond, Ambac owns approximately $8.5 million in the principal amount of 1st Tier Bonds. Declaration at ¶ 12. As noted by the Bankruptcy Court, Ambac estimates that its exposure over the life of the bond issue is about $1.16 billion. *See* Order at 4 n.5.

> Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.

In determining whether to stay a proceeding pending appeal, bankruptcy courts apply the same standards set forth in Rule 62(c) of the Federal Rules of Civil Procedure, which relate to injunctions pending appeal. Specifically, courts consider four elements in deciding whether to stay proceedings pending appeal: (1) appellant's likelihood of success on the merits of the appeal; (2) whether appellant will suffer irreparable injury absent a stay; (3) whether issuing the stay will substantially injure the appellee or the defendant; and (4) the public interest. *Adelson v. Smith (In re Smith)*, 397 B.R. 134, 136 (Bankr. D. Nev. 2008) (Markell, B.J.); *see also Zamora v. Virtue (In re Continental Coin Corp.)*, Nos. CV 08-0093 (PA), CV 08-1478 (PA), & CV 08-2504 (PA), 2009 U.S. Dist. LEXIS 74392, at *28 (C.D. Cal. Aug. 21, 2009) (a copy of the *Zamora* opinion is attached hereto as <u>Exhibit 1</u>).

Although a stay pending appeal is an extraordinary remedy, *Adelson*, 397 B.R. at 136, "[b]ankruptcy courts should primarily consider the administration of the bankruptcy estate" when deciding whether to grant a stay. *Zamora*, 2009 U.S. Dist. LEXIS 74392, at *29. In *Zamora*, the bankruptcy court granted the trustee's request for a stay pending appeal, in part, because the trustee "at least has a colorable chance of prevailing." *Id.* But, even more importantly, the court explained that without the stay the trustee "would be harmed by the cost of litigating claims that may turn out to be non-cognizable as a matter of law," and such needless litigation costs would harm the administration of the bankruptcy and be borne not only by the trustee, but "also lead to diminution of the estate and adversely affect distribution to other creditors." *Id.* The court further reasoned that the stay was in the public interest because "going forward with the merits of the case while an appeal is pending on the very question of what is actionable would be a serious waste of time, money, and judicial resources." *Id.* at *30 (internal quotation marks and ellipses

omitted).

That reasoning applies equally here. Not only does Ambac have a likelihood of succeeding on the merits of appeal for the reasons set forth below, but because Ambac's appeal raises constitutional issues that go to the very question of whether this Court has jurisdiction over LVMC, a stay pending the resolution of that issue will (i) avoid needless expense and the diminution of the estate, (ii) conserve the time and resources of the Court and (iii) avoid hardship being inflicted upon LVMC's creditors and parties in interest during the unwinding of any unauthorized restructuring pursued while the appeal is pending.[3]

### A. Ambac Has a Likelihood of Success on the Merits of Its Appeal.

Ambac's Motion to Dismiss questioned whether this Court has jurisdiction over LVMC's chapter 11 filing because LVMC constitutes an "instrumentality of the State". The central question of law presented in Ambac's Motion to Dismiss is whether LVMC is a "person" otherwise eligible to seek chapter 11 protection pursuant to 11 U.S.C. § 109(d). The definition of "person," however, specifically excludes a "governmental unit." 11 U.S.C. § 101(41). Furthermore, the term "governmental unit" is defined to specifically include a "municipality." 11 U.S.C. § 101(27). "Municipality" is defined to include "a political subdivision or public agency or instrumentality of a State." 11 U.S.C. §101(40). Therefore, a "person" eligible for chapter 11 protection cannot be an "instrumentality of the State" and, in turn, a "municipality."

---

[3] Although several courts have held that the threshold issue of eligibility is not jurisdictional, *see, e.g., In re Wenberg*, 94 B.R. 631, 637 (B.A.P. 9th Cir. 1988) *aff'd Wenberg v. FDIC (In re Wenberg)*, 902 F.2d 768 (9th Cir. 1990) (noting that Section 109 eligibility is not jurisdictional); *In re First Assured Warranty Corp.*, 383 B.R. 502, 518-19 (Bankr. D. Colo. 2008) (although the issue of whether the debtor is eligible for relief is not jurisdictional, dismissal for failure to meet the requirements for filing a petition is a core issue), LVMC's lack of eligibility to be a debtor under chapter 11 results from it being an instrumentality of the State, and thereby touches upon the constitutional issue of whether a federal court may exercise power over an instrumentality of a State. *See In re City of Desert Hot Springs*, 339 F.3d 782, 789 (9th Cir. 2003) ("Congress, in an effort to avoid possible constitutional problems, designed chapter 9 of the bankruptcy code in a manner much different from the other chapters. Many of the protections afforded to creditors in the other chapters are missing in chapter 9.") (citing *In re Richmond Sch. Dist.*, 133 B.R. 221, 225 (Bankr. N.D. Cal. 1991)). Such a constitutional issue implicates the jurisdiction and power of a federal court, and thereby LVMC's lack of eligibility under chapter 11 is a jurisdictional issue in this instance.

Whether LVMC is an "instrumentality of the State" is a purely legal issue.[4] See Order at 6 ("Determining the proper scope of section 101(40)'s use of 'instrumentality' raises significant questions of statutory interpretation.") As such, on appeal the district court will review the denial of Ambac's Motion to Dismiss de novo. Adelson, 397 B.R. at 137 n.3 (acknowledging that standard of review applicable to the appeal is a consideration when evaluating a party's likelihood of success).

Ambac has a likelihood of succeeding on its appeal because the Order creates a legal framework for analyzing the question of whether LVMC is an instrumentality of the State that has not been used by any other court. Indeed, there is no controlling decision of the Ninth Circuit Court of Appeals on the question of law addressed by the Court in the Order. However, case law and statutory guidance exists with respect to the defining characteristics of a "municipality" or an "instrumentality of a State" under section 101(40) of the Bankruptcy Code. Courts addressing the scope of the term "municipality" focus upon the extent to which the entity in question is subject to control by the state or other municipal authority. See In re Greene County Hosp., 59 B.R. at 389; In re Westport Transit Dist., 165 B.R. 93, 95 (Bankr. D. Conn. 1994); In re Ellicott School Bldg. Auth., 150 B.R. 261, 264 (Bankr. D. Colo. 1992). Moreover, when enacting the existing definition of municipality in 1976, Congress intended "to broaden applicability of Chapter IX as much as possible." H.R. Rep. No. 94-686, 94th Cong., 1st Sess. 20 (1975); see 6 Collier on Bankruptcy, ¶ 900.02[2][a] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) (noting Congress's intention to have a broad definition of "municipality").

Honoring this clear expression of legislative intent, a great majority of the courts that have considered the issue have determined that a putative debtor that otherwise lacks traditional governmental powers (e.g., the power to levy taxes, the power to exercise eminent domain, etc.) is nevertheless a "municipality" for bankruptcy purposes if it is controlled by the state, county or

---

[4] See In re Greene County Hosp., 59 B.R. 388, 389 (Bankr. S.D. Miss. 1986) (whether Greene County Hospital is a municipality involves a question of "reviewable legal conclusions").

other municipality. *E.g., In re Greene County Hosp.*, 59 B.R. at 389-90 (Bankr. S.D. Miss. 1986) (community hospital held to be a municipality based on a county board of supervisor's control over the ownership or leasing of hospital property); *Ex parte York County Natural Gas Auth.*, 238 F. Supp. 964, 976 (W.D.S.C. 1965) ("The legal test between a private or public authority or agency is whether the authority or agency is subject to control by public authority, state or municipal"); *In re Westport Transit Dist.*, 165 B.R. at 95 (recognizing that a putative debtor is a municipality if it is subject to control by a public authority, the state, or a municipality) (citations omitted); *In re Ellicott School Bldg. Auth.*, 150 B.R. at 264 (following the control tests described in *Greene County Hospital* and *York County Natural Gas Authority*, but holding that the putative debtor was not a municipality because "no governmental entity exercises any right of control" over the authority).

Although the Court described many of the relevant "municipality" cases and statutory authorities in its Order, it largely declined to follow this body of law in favor of a new legal framework. The focus of this new test is whether state control exists "to protect public finances or the public fisc" or in relation "to essential state sovereignty and essential state functions." Order at 37. The new test has little case law or statutory support. In fact, the new instrumentality test created by the Court contradicts the Congressional intention for the Bankruptcy Code definition of "municipality" to be expansive. Likewise, this new test runs contrary to the relevant case decisions, all of which emphasize the **extent** of state control, **not the purposes** of state control, in deciding whether a putative debtor is an instrumentality of the state or other municipality for bankruptcy-eligibility purposes. Because the new instrumentality test crafted by the Court conflicts with and/or contravenes applicable case law and legal authority, which support Ambac's position that LVMC is an instrumentality of the State of Nevada, Ambac has a likelihood of success on the merits of its appeal.

**B.    Ambac Will Suffer Irreparable Harm Absent a Stay Pending Appeal.**

The second consideration in determining whether to issue a stay pending appeal is

whether the movant will suffer irreparable harm without a stay. *Adelson*, 397 B.R. at 146. In other words, the movant has to show "a reasonable likelihood of future injury." *Id.* (quoting *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 918 (9th Cir. 2003)).

Proceeding with the administration of this chapter 11 case and the reorganization of LVMC in the face of Ambac's pending appeal is reasonably likely to cause Ambac, and other interested parties, injury. In particular, Ambac's appeal questions whether this Court has the authority to reorganize LVMC under chapter 11 of the Bankruptcy Code. The resolution of such a dispute (which invokes Constitutional and jurisdictional issues) cannot be rendered moot as a matter of law by the bankruptcy court's substantial consummation of a plan for LVMC. *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1189 (9th Cir. 2000) ("This appeal is not moot if the bankruptcy court lacked jurisdiction to proceed with Padilla's bankruptcy during the pendency of this appeal.").[5]

Thus, Ambac's appeal will not become inconsequential or rendered moot by any restructuring pursued or achieved by LVMC while the appeal is pending. As any restructuring accomplished by LVMC will have to be unwound if the reviewing court determines that this Court did not have proper jurisdiction over LVMC, the practical difficulties of undoing such a restructuring could wreak havoc upon the interests of Ambac, LVMC and all of its creditors. Indeed, depending upon the nature of the restructuring, the efforts to undo LVMC's restructuring may unavoidably lead to unknown and unknowable unfairness being inflicted upon innocent creditors, vendors and other parties in interest. Moreover, to the extent that distributions made to individual creditors are not recoverable in such an "unwinding" scenario, or can not be recovered in a efficient or cost-effective manner, creditors, including Ambac, could potentially be treated in an inconsistent manner than other "like" creditors, depending upon the ultimate resolution, and all

---

[5] While the appeal as to whether Padilla's bankruptcy petition should be dismissed for bad faith was pending with the appellate court, the bankruptcy court reinstated Padilla's petition, proceeded with the bankruptcy, discharged Padilla's debts and subsequently closed the bankruptcy case. *Id.* at 1188. Nonetheless, the *Padilla* court found that the timely filing of the appeal divested the bankruptcy court of the ability to proceed with Padilla's bankruptcy. *Id.* at 1189.

creditors will suffer a smaller pot from which to recover distributions.

In light of, and notwithstanding, the preservation of the legal issues presented in Ambac's appeal, the possibility exists that LVMC could incur substantial expenses pursuing a reorganization that could ultimately be for naught. *See Zamora*, 2009 U.S. Dist. LEXIS 74392, at *29-30 (affirming the entry of a stay pending appeal because, among other things, the movant would be harmed by the cost of litigating claims that potentially were not cognizable as a matter of law). In such event, not only would LVMC's restructuring efforts be null and void, but the very real costs incurred by LVMC in pursuing such a restructuring (costs which Ambac understands are being incurred now and which will presumably only increase in the upcoming weeks and months) would significantly diminish the value of LVMC's estate and the amount of the distributions potentially available to all of LVMC's creditors, not just to Ambac. Thus, in the event that the reviewing court reaches a different result than this Court with respect to the Order on the Motion to Dismiss, LVMC's estate will be forced to suffer the needless expenditure of resources in pursuing a restructuring while the appeal is pending (expenses which are being incurred by LVMC's estate at this very moment). Moreover, LVMC's estate will also be required to expend tremendous time and resources subsequently "unwinding" the invalid restructuring.

Moreover, Ambac has a real and undeniable interest in ensuring that LVMC's revenues are spent prudently, an interest that exceeds that of a typical creditor. Ambac is the only party in this case, other than LVMC itself, that may have payment obligations to LVMC's creditors. Pursuant to the Policy and Surety Bond, Ambac has an obligation to pay all scheduled amounts of principal and interest on the 1st Tier Bonds that are not paid by LVMC. Thus, every dollar expended by LVMC for a purpose other than servicing the debt owed on the 1st Tier Bonds is a dollar that Ambac itself must pay to the 1st Tier Bondholders. If the reviewing court ultimately reverses this Court's Order, the funds expended pursuing such a restructuring will needlessly reduce the resources left for LVMC to pay the 1st Tier Bonds. Likewise, the funds and resources spent by LVMC's estate subsequently "unwinding" such an invalid restructuring will only further

exacerbate Ambac's own financial obligations to the 1st Tier Bonds.

Because the real possibility exists that the appellate court could determine that LVMC is not a "person" eligible for chapter 11 protection, LVMC's estate should not expend the time and resources pursuing a chapter 11 reorganization in the Bankruptcy Court until Ambac's appeal is resolved. If LVMC incurs the significant cost inherent in pursuing a restructuring only to have an appellate court ultimately determine that LVMC does not have authority to pursue such a restructuring in chapter 11, the harm inflicted upon Ambac and all of LVMC's creditors could have been avoided by this Court granting Ambac's request for a stay pending appeal.

### C. LVMC Will Not Be Harmed by a Stay.

In sharp contrast to the harm that Ambac will suffer if the bankruptcy proceedings are not stayed pending its appeal in this case, neither LVMC nor any other interested party will be injured if a stay is granted. Indeed, while the appeal is pending, LVMC will continue to operate, pay its operating expenses and generate revenues.

As this Court acknowledged in the Order, LVMC is not "bleed[ing] money," rather it is seeking to reorganize because it cannot service its debt. Order at 4. Indeed, LVMC's "revenues exceed its expenses, with more than $5 million annual profit before debt service." *Id.* LVMC itself recently acknowledged that, although it experienced some losses in January and February 2010, those losses are not continuing and its operations generate revenue. (*See* Omnibus Reply to the Oppositions Filed By: (1) Wells Fargo Bank, N.A., As Indenture Trustee, (2) Ambac Assurance Corporation, and (3) the Director of the State of Nevada, Department of Business and Industry, to the Debtor's Motion for Administrative Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals, p.4 [Docket No. 326].) In short, LVMC will suffer no harm if this Court grants Ambac's motion for a stay.

Similarly, no other party will be injured if a stay is granted. Indeed, as discussed above, LVMC's creditors will benefit from avoiding the incurrence of unnecessary restructuring costs until it is determined through the resolution of the appeal that LVMC is entitled to pursue such a

restructuring in this chapter 11 proceeding. Moreover, LVMC's customers will not be harmed as the Monorail will continue to operate in the ordinary course of business while the appeal is pending.

Although this Court may condition a stay upon the posting of a bond under Federal Rule of Bankruptcy Procedure 8005, a bond is unnecessary in this case. *See In re Swift Aire Lines, Inc.*, 21 B.R. 12, 14-16 (B.A.P. 9th Cir. 1982) (explaining that imposition of bond requirement is discretionary). "A bankruptcy court issuing a stay under Rule 8005 need not require the posting of a bond" and, under certain conditions, courts in this circuit have refused to require one. *See Zamora*, 2009 U.S. Dist. LEXIS at 31 (citations omitted) (affirming bankruptcy court's decision not to require trustee to post bond). In determining whether to require a bond, courts evaluate whether there is a need to "secure the prevailing party against any loss that might be sustained as a result of ineffectual appeal." 9 Collier on Bankruptcy P. 8005.07[2]. In this case, there is no need for a bond because LVMC will suffer no injury if its reorganization is delayed, since it will continue to carry on its operations. Therefore, even if Ambac ultimately does not prevail in its appeal, LVMC will not be injured. Accordingly, this Court should decline to impose a security requirement.

### D.    A Stay Forwards the Public Interest.

The final consideration for the Court when deciding whether to stay the proceedings pending appeal is where the public interest lies. "There is a great public interest in the efficient administration of the bankruptcy system." *Adelson*, 397 B.R. at 148. Moreover, a stay is in the public interest when "going forward with the merits of the case while an appeal is pending on the very question of what is actionable would be a serious waste of time, money, and judicial resources." *Zamora*, 2009 U.S. Dist. LEXIS 74392, at *30 (internal quotation marks and ellipses omitted).

In this case, the public interest in the efficient administration of the bankruptcy system would be forwarded by a stay. A stay of the proceedings pending Ambac's appeal of the Order

will conserve the resources and time of this Court. In addition, if LVMC is ultimately found by the reviewing court not to constitute a "person" under section 101(40) of the Bankruptcy Code, the requested stay will ensure that LVMC and its creditors do not expend time or resources on a reorganization not permitted under chapter 11 of the Bankruptcy Code.

### III.  CONCLUSION

For all of the reasons set forth above, Ambac respectfully requests that this Court stay these proceedings pending resolution of Ambac's appeal of the Order.

Dated: May 12, 2010                             Respectfully submitted,

MCDERMOTT WILL & EMERY LLP
  William P. Smith (IL Bar No. 6187205)
  James W. Kapp III (IL Bar No. 6239269)
  Miles W. Hughes (IL Bar No. 6279176)

FENNEMORE CRAIG, P.C.

By:    /s/ Laurel E. Davis
  Laurel E. Davis
  Craig S. Dunlap
  Jeffrey J. Steffen

*Attorneys for Ambac Assurance Corporation and The Segregated Account of Ambac Assurance Corporation, by its Court Appointed Rehabilitator, the Office of the Commissioner of Insurance for the State of Wisconsin*