# EXHIBIT A

1

GORDON SILVER
GERALD M. GORDON, ESQ.

2

Nevada Bar No. 229
E-mail: ggordon@gordonsilver.com

3

WILLIAM M. NOALL, ESQ.
Nevada Bar No. 3549

4

E-mail: wnoall@gordonsilver.com
GABRIELLE A. HAMM, ESQ.

5

Nevada Bar No. 11588
E-mail: ghamm@gordonsilver.com

6

3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169

7

Telephone (702) 796-5555
Facsimile (702) 369-2666

8

Attorneys for Debtor

E-Filed On ___8|17|10___

9

**UNITED STATES BANKRUPTCY COURT**

10

**FOR THE DISTRICT OF NEVADA**

11

In re:

Case No.: 10-10464-BAM
Chapter 11

12

LAS VEGAS MONORAIL COMPANY,

13

Debtor.

14

Date:   To be determined
Time:   To be determined

15

16

**DEBTOR'S PLAN OF REORGANIZATION**

17

18

19

20

21

22

23

24

25

26

27

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

TABLE OF CONTENTS

1.   DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME ......................................................................................................................... 1

    1.1.   Definitions............................................................................................................... 1
        1.1.1.    1st Tier Bond(s). .......................................................................................... 1
        1.1.2.    1st Tier Bondholder(s). ............................................................................... 1
        1.1.3.    1st Tier Bondholder(s)' Insurance Policy ................................................... 1
        1.1.4.    1st Tier Bond Claims. ................................................................................. 1
        1.1.5.    1st and 2nd Tier Indenture. ......................................................................... 2
        1.1.6.    1st Tier Note. .............................................................................................. 2
        1.1.7.    1st Tier Trustee. .......................................................................................... 2
        1.1.8.    2nd Tier Bond(s). ........................................................................................ 2
        1.1.9.    2nd Tier Bondholder(s). .............................................................................. 2
        1.1.10.   2nd Tier Bond Claims. ............................................................................... 2
        1.1.11.   2nd Tier Obligation. ................................................................................... 2
        1.1.12.   2nd Tier Trustee. ........................................................................................ 2
        1.1.13.   3rd Tier Bond(s). ........................................................................................ 2
        1.1.14.   3rd Tier Bondholder(s). .............................................................................. 2
        1.1.15.   3rd Tier Bond Claims. ................................................................................ 2
        1.1.16.   3rd Tier Indenture. ...................................................................................... 2
        1.1.17.   3rd Tier Note. .............................................................................................. 2
        1.1.18.   3rd Tier Trustees. ........................................................................................ 2
        1.1.19.   Additional Payment Obligation. ................................................................ 3
        1.1.20.   Additional Payment Obligation Note. ........................................................ 3
        1.1.21.   Administrative Claim. ................................................................................ 3
        1.1.22.   Administrative Claim Bar Date. ................................................................. 3
        1.1.23.   Affiliate. ..................................................................................................... 3
        1.1.24.   Allowed Administrative Claim. .................................................................. 3
        1.1.25.   Allowed Claim. ........................................................................................... 3
        1.1.26.   Ambac. ........................................................................................................ 4
        1.1.27.   Amended and Restated Financing Agreement............................................ 4
        1.1.28.   Amended and Restated 1st Tier Note. ........................................................ 4
        1.1.29.   Assets. ......................................................................................................... 4
        1.1.30.   Avoidance Actions. .................................................................................... 4
        1.1.31.   Bankruptcy Code. ....................................................................................... 5
        1.1.32.   Bankruptcy Court. ...................................................................................... 5
        1.1.33.   Bankruptcy Rules. ...................................................................................... 5
        1.1.34.   Bar Date. ..................................................................................................... 5
        1.1.35.   Bond Registrar. .......................................................................................... 5
        1.1.36.   Business Day. .............................................................................................. 5
        1.1.37.   Cash............................................................................................................. 5
        1.1.38.   Causes of Action. ........................................................................................ 5
        1.1.39.   Chapter 11 Case. ........................................................................................ 5
        1.1.40.   Claim. ......................................................................................................... 5
        1.1.41.   Class. .......................................................................................................... 5
        1.1.42.   Company. .................................................................................................... 5
        1.1.43.   Confirmation. ............................................................................................. 6
        1.1.44.   Confirmation Date. ..................................................................................... 6
        1.1.45.   Confirmation Hearing. ............................................................................... 6
        1.1.46.   Confirmation Order..................................................................................... 6
        1.1.47.   Contingent Claim. ...................................................................................... 6

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

i

| | | |
|---|---|---|
| 1.1.48. | Creditor. | 6 |
| 1.1.49. | Cure. | 6 |
| 1.1.50. | Debtor. | 6 |
| 1.1.51. | Director. | 6 |
| 1.1.52. | Director Claims. | 6 |
| 1.1.53. | Disbursing Agent. | 6 |
| 1.1.54. | Disclosure Statement. | 6 |
| 1.1.55. | Disputed Claim. | 6 |
| 1.1.56. | Disputed Claim Reserve. | 7 |
| 1.1.57. | Distribution. | 7 |
| 1.1.58. | D&O Liability Insurance Policy or Policies. | 7 |
| 1.1.59. | Effective Date. | 7 |
| 1.1.60. | Estate. | 7 |
| 1.1.61. | Executory Contract. | 7 |
| 1.1.62. | Final Order. | 7 |
| 1.1.63. | Financing Agreement. | 7 |
| 1.1.64. | Franchise Agreement. | 7 |
| 1.1.65. | General Unsecured Claim. | 7 |
| 1.1.66. | Holder. | 8 |
| 1.1.67. | Impaired. | 8 |
| 1.1.68. | Lien. | 8 |
| 1.1.69. | Litigation Claims. | 8 |
| 1.1.70. | Local Rule. | 8 |
| 1.1.71. | Monorail. | 8 |
| 1.1.72. | Net Project Revenues. | 8 |
| 1.1.73. | Nevada Secretary. | 8 |
| 1.1.74. | NRS. | 8 |
| 1.1.75. | O & M Expenses. | 8 |
| 1.1.76. | Other Priority Claims. | 8 |
| 1.1.77. | Other Secured Claims. | 8 |
| 1.1.78. | Person. | 9 |
| 1.1.79. | Petition Date. | 9 |
| 1.1.80. | Plan. | 9 |
| 1.1.81. | Preexisting Collateral. | 9 |
| 1.1.82. | Plan Supplement. | 9 |
| 1.1.83. | Priority Tax Claim. | 9 |
| 1.1.84. | Pro Rata. | 9 |
| 1.1.85. | Professional Fees. | 9 |
| 1.1.86. | Record Date. | 9 |
| 1.1.87. | Released Parties. | 9 |
| 1.1.88. | Reorganized LVMC. | 9 |
| 1.1.89. | Reorganized LVMC Organizational Documents. | 9 |
| 1.1.90. | Schedules. | 9 |
| 1.1.91. | Secured Claim. | 9 |
| 1.1.92. | Secured Tax Claims. | 10 |
| 1.1.93. | Statutory Committee. | 10 |
| 1.1.94. | Substantial Consummation. | 10 |
| 1.1.95. | Substantial Consummation Date. | 10 |
| 1.1.96. | Surety. | 10 |
| 1.1.97. | Taxes. | 10 |
| 1.1.98. | Unexpired Lease. | 10 |
| 1.1.99. | Unimpaired. | 10 |
| 1.1.100. | Working Capital Facility. | 10 |
| 1.2. | Exhibits and Plan Schedules. | 10 |
| 1.3. | Rules of Interpretation. | 10 |

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

ii

1.4.    Computation of Time.................................................................... 11

2.    TREATMENT OF UNCLASSIFIED CLAIMS ........................................ 11

2.1.    General............................................................................... 11
2.2.    Treatment of Administrative Claims. .................................... 11
    2.2.1.    Requests for Payment. ............................................ 11
    2.2.2.    Allowed Priority Tax Claims. .................................. 11

3.    DESIGNATION OF CLASSES OF CLAIMS ..................................... 11

3.1.    Summary of Classification....................................................... 12
3.2.    Specific Classification........................................................... 12
    3.2.1.    Class 1: Other Priority Claims. .............................. 12
    3.2.2.    Class 2: Other Secured Claims. ............................... 12
    3.2.3.    Class 3: General Unsecured Claims.......................... 12
    3.2.4.    Class 4: 1st Tier Bond Secured Claims..................... 12
    3.2.5.    Class 5: 1st Tier Bond Unsecured Claims. ................ 12
    3.2.6.    Class 6: 2nd Tier Bond Claims. ................................ 12
    3.2.7.    Class 7: 3rd Tier Bond Claims. ................................ 13
    3.2.8.    Class 8: Director Claims. ........................................ 13
    3.2.9.    Class 9: Subordinated Claims. ................................. 13

4.    DESIGNATION OF AND PROVISIONS FOR TREATMENT OF CLASSES Of
    CLAIMS NOT IMPAIRED BY THIS PLAN ......................................... 13

4.1.    Class 1 – Other Priority Claims. ............................................ 13
4.2.    Class 2 – Other Secured Claims............................................. 13

5.    DESIGNATION OF AND PROVISIONS FOR TREATMENT OF CLASSES OF
    CLAIMS IMPAIRED BY THIS PLAN................................................. 13

5.1.    Class  3 – General Unsecured Claims....................................... 13
5.2.    Class 4 – 1st Tier Bond Secured Claims.................................... 13
5.3.    Class 5 – 1st Tier Bond Unsecured Claims. .............................. 14
5.4.    Class 6 – 2nd Tier Bond Claims. ............................................ 14
5.5.    Class 7 – 3rd Tier Bond Claims. ............................................. 14
5.6.    Class 8 – Director Claims. .................................................... 14
5.7.    Class 9 – Subordinated Claims. .............................................. 14

6.    MEANS FOR IMPLEMENTATION OF PLAN ..................................... 15

6.1.    Reorganized LVMC............................................................... 15
6.2.    Additional Reorganized LVMC Provisions.................................. 15
6.3.    Effective Date Events. .......................................................... 15
6.4.    Post-Effective Date Management and Operations........................ 15
6.5.    Post-Effective Date Officers and Directors of Reorganized LVMC. .... 15
6.6.    No Corporate Action Required. ............................................... 15
6.7.    Effectuation of Transactions. ................................................. 16
6.8.    Filing with Nevada Secretary.................................................. 16

7.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................... 16

7.1.    Executory Contracts.............................................................. 16
7.2.    Approval of Assumption or Rejection. ...................................... 16

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

iii

| | | | |
|---|---|---|---|
| | 7.3. | Cure of Defaults. | 17 |
| | 7.4. | Objection to Cure Amounts. | 17 |
| | 7.5. | Confirmation Order. | 17 |
| | 7.6. | Post-Petition Date Contracts and Leases. | 17 |
| | 7.7. | Bar Date. | 17 |
| 8. | | MANNER OF DISTRIBUTION OF PROPERTY UNDER THIS PLAN | 17 |
| | 8.1. | Distributions. | 17 |
| | 8.2. | No Recourse. | 17 |
| | 8.3. | Reserves. | 18 |
| | 8.4. | Statements. | 18 |
| | 8.5. | Further Authorization | 18 |
| 9. | | CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE | 18 |
| | 9.1. | Conditions to Confirmation. | 18 |
| | 9.2. | Conditions to Effectiveness. | 18 |
| | 9.3. | Notice of Effectiveness. | 18 |
| | 9.4. | Waiver of Conditions. | 19 |
| 10. | | TITLE TO PROPERTY; DISCHARGE; INJUNCTION | 19 |
| | 10.1. | Vesting of Assets. | 19 |
| | 10.2. | Preservation of Litigation Claims. | 19 |
| | 10.3. | Settlement of Litigation Claims. | 19 |
| | 10.4. | Discharge. | 19 |
| | 10.5. | Compromise and Settlement. | 19 |
| | 10.6. | Debtor Releases. | 20 |
| | 10.7. | Injunction. | 20 |
| | 10.8. | Exculpation. | 20 |
| | 10.9. | Director and Officer Liability Insurance. | 21 |
| | 10.10. | Indemnification. | 21 |
| 11. | | RETENTION OF JURISDICTION | 21 |
| | 11.1. | Jurisdiction. | 21 |
| 12. | | MODIFICATION AND AMENDMENT OF PLAN | 23 |
| | 12.1. | Modification and Amendment. | 23 |
| 13. | | MISCELLANEOUS | 23 |
| | 13.1. | Filing of Objections to Claims. | 23 |
| | 13.2. | Resolution of Objections after Effective Date; Distributions. | 23 |
| | 13.3. | Effectuating Documents; Further Transactions; Timing. | 23 |
| | 13.4. | Cancellation of Existing Agreements. | 24 |
| | 13.5. | Exemption from Transfer Taxes. | 24 |
| | 13.6. | Revocation or Withdrawal of this Plan. | 24 |
| | 13.7. | Binding Effect. | 24 |
| | 13.8. | Governing Law. | 25 |
| | 13.9. | Modification of Payment Terms. | 25 |
| | 13.10. | Allocation of Plan Distributions between Principal and Interest. | 25 |

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

iv

| | | |
|---|---|---|
| 13.11. | Means of Cash Payment. | 25 |
| 13.12. | Providing for Claims Payments. | 25 |
| 13.13. | Set Offs. | 25 |
| 13.14. | Notices. | 26 |
| 13.15. | Statutory Committee. | 26 |
| 13.16. | Severability. | 26 |
| 13.17. | Withholding and Reporting Requirements. | 27 |
| 13.18. | Post Confirmation Reporting. | 27 |
| 13.19. | Cramdown. | 27 |
| 13.20. | Quarterly Fees to the United States Trustee. | 28 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

The Debtor,[1] debtor and debtor-in-possession in the Chapter 11 Case, proposes this Plan of Reorganization for the resolution of the Debtor's outstanding Claims. All Creditors and other parties-in-interest should refer to the Disclosure Statement for a discussion of the Debtor's history, assets, historical financial data, and for a summary and analysis of this Plan and certain related matters.

All Holders of Claims against the Debtor are encouraged to read this Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject this Plan. Holders of 2nd Tier Bond Claims and 3rd Tier Bond Claims are deemed to have rejected this Plan and are not entitled to vote. As a Nevada non-profit corporation, the Debtor has no equity interests held by any person or entity. Consequently, this Plan does not provide for treatment of equity interests, provided that the Debtor's Articles of Incorporation are not being revised to affect Article III thereof.

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions or modifications set forth in Article 12 to this Plan, the Debtor expressly reserves the right to alter, amend, strike, withdraw or modify this Plan one or more times before the Effective Date.

## 1.    DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

**1.1.    Definitions.** For purposes of this Plan, and except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article 1. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, in that order of priority. Whenever the context requires, such terms shall include the plural as well as the singular, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**1.1.1.    1st Tier Bond(s).** The Director of the State of Nevada Department of Business and Industry Las Vegas Monorail Project Revenue Bonds 1st Tier Series 2000, including both the Capital Appreciation 1st Tier Bonds in the initial denominational amount of $98,743,217 and the Current Interest 1st Tier Series Bonds in the initial denominational amount of $352,705,000 issued pursuant to the 1st and 2nd Tier Indenture, for a total initial denominational amount of $451,448,217.

**1.1.2.    1st Tier Bondholder(s).** Each Holder of one or more 1st Tier Bonds pursuant to the 1st and 2nd Tier Indenture as identified on the bond registration books of the Bond Registrar on the Record Date.

**1.1.3.    1st Tier Bondholder(s)' Insurance Policy.** The policy of insurance purchased by the Debtor and issued by Ambac in favor of the 1st Tier Trustee and the 1st Tier Bondholders insuring payment of principal and interest on the 1st Tier Bonds.

**1.1.4.    1st Tier Bond Claims.** Any and all Claims held by a 1st Tier Bondholder and the 1st Tier Trustee under the 1st and 2nd Tier Indenture, the 1st Tier Note, and Financing Agreement. 1st Tier Bond Claims shall not include any claims which the 1st Tier Bondholders or the 1st Tier Trustee may have under the 1st and 2nd Tier Indenture against any party other than the Debtor.

---

[1] Capitalized terms are defined in Section 1.1 of this Plan.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

**1.1.5.    1st and 2nd Tier Indenture.**  The Indenture dated September 1, 2000 with the Director as obligor and Wells Fargo Bank, N.A. as Trustee for the benefit of the 1st Tier Bondholders and 2nd Tier Bondholders.

**1.1.6.    1st Tier Note.**  The $451,448,217 promissory note dated September 1, 2000, which the Debtor as obligor issued in favor of the Director pursuant to the Financing Agreement and which the Director assigned to the 1st Tier Trustee.

**1.1.7.    1st Tier Trustee.**  Wells Fargo Bank, N.A., solely in its capacity as Indenture Trustee for the 1st Tier Bondholders.

**1.1.8.    2nd Tier Bond(s).**  The Director of the State of Nevada Department of Business and Industry Las Vegas Monorail Project Revenue Bonds 2nd Tier Series 2000 issued in the aggregate principal amount of $149,200,000 pursuant to the 1st and 2nd Tier Indenture. The 2nd Tier Bonds are contractually subordinated to the 1st Tier Bonds and all 1st Tier Bond Claims.

**1.1.9.    2nd Tier Bondholder(s).**  Each Holder of one or more 2nd Tier Bonds pursuant to the 1st and 2nd Tier Indenture as identified on the bond registration books of the Bond Registrar on the Record Date.

**1.1.10.    2nd Tier Bond Claims.**  Any and all Claims held by a 2nd Tier Bondholder and the 2nd Tier Trustee under the 1st and 2nd Tier Indenture, the 2nd Tier Bonds, the 2nd Tier Obligation, and Financing Agreement.

**1.1.11.    2nd Tier Obligation.**  The $149,200,000 obligation arising under the Financing Agreement of which the Debtor is the obligor in favor of the Director pursuant to the Financing Agreement and which the Director assigned to the 2nd Tier Trustee.

**1.1.12.    2nd Tier Trustee.**  U.S. Bank National Association solely in its capacity as Indenture Trustee for the 2nd Tier Bondholders.

**1.1.13.    3rd Tier Bond(s).**  The Director of the State of Nevada Department of Business and Industry Las Vegas Monorail Project Revenue Bonds 3rd Tier Series 2000 A-I issued in the initial denominational amount of $48,500,000 pursuant to the 3rd Tier Indenture. The 3rd Tier Bonds are contractually subordinated to the 1st Tier Bonds, 2nd Tier Bonds, and all 1st Tier Bond Claims and 2nd Tier Bond Claims.

**1.1.14.    3rd Tier Bondholder(s).**  Each Holder of one or more of the 3rd Tier Bonds pursuant to the 3rd Tier Indenture as identified on the bond registration books of the Bond Registrar on the Record Date.

**1.1.15.    3rd Tier Bond Claims.**  Any and all Claims held by a 3rd Tier Bondholder and the 3rd Tier Trustee under the 3rd Tier Indenture, the 3rd Tier Bonds, the 3rd Tier Note, and Financing Agreement.

**1.1.16.    3rd Tier Indenture.**  The Indenture dated September 1, 2000 with the Director as obligor and Wells Fargo Bank, N.A. as Trustee for the benefit of the 3rd Tier Bondholders.

**1.1.17.    3rd Tier Note.**  The $48,500,000 promissory note dated September 1, 2000, which the Debtor as obligor issued in favor of the Director pursuant to the Financing Agreement and which the Director assigned to the 3rd Tier Trustees.

**1.1.18.    3rd Tier Trustees.**  Wells Fargo Bank, N.A. and Law Debenture Trust

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

2

Company of New York, jointly, solely in their capacity as co-Indenture Trustees for the 3rd Tier Bondholders.

**1.1.19.    Additional Payment Obligation.**   An obligation of Reorganized LVMC, to pay the sum of $11,000,000 on June 30, 2019 with quarterly interest payments at the rate of 5.625% per annum commencing March 31, 2011, to the Director and the Director's assignee, the 1st Tier Trustee for the benefit of the 1st Tier Bondholders and the Director; provided however, that Reorganized LVMC shall have the right to prepay and otherwise satisfy the Additional Payment Obligation at any time without penalty. The Additional Payment Obligation shall be memorialized by the Additional Payment Obligation Note, which shall be unsecured. The Director shall assign the Additional Payment Obligation Note to the 1st Tier Trustee in accordance with the Amended and Restated Financing Agreement reserving to the Director its indemnification and other rights as specified in the assignments of those obligations in the 1st and 2nd Tier Indenture. The creation or payment of the Additional Payment Obligation (or interest in respect thereto) is not intended to affect or extinguish the exclusion of interest on payments made to the 1st Tier Bonds (whether paid by the Reorganized Debtor or any third party) from gross income for federal income tax purposes; or (ii) affect or diminish any third-party rights to reimbursement or subrogation under the 1st and 2nd Tier Indenture, the Surety, or 1st Tier Bondholders' Insurance Policy.

**1.1.20.    Additional Payment Obligation Note.**

The promissory note to be executed by Reorganized LVMC to evidence the Additional Payment Obligation. A copy of the Additional Payment Obligation Note shall be substantially in the form attached as an exhibit to this Plan Supplement

**1.1.21.    Administrative Claim.**   A Claim for any cost or expense of administration of the Estate allowed under Sections, 503(b), 507(b), 546(c)(2), and 1114(e)(2) of the Bankruptcy Code and entitled to priority under Section 507(a) of the Bankruptcy Code, including, but not limited to: (i) any fees payable pursuant to Section 1930 of Title 28 of the United States Code; (ii) any actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estate and operating the business of the Debtor, including Taxes, wages, salaries, or commissions for services rendered; (iii) the value of any goods received by the Debtor within 20 days before the Petition Date in which the goods have been sold to the Debtor in the ordinary course of its business; and (iv) all Professional Fees approved by the Bankruptcy Court pursuant to interim and final allowances. To the extent that a Claim is allowed as an Administrative Claim pursuant to Section 365(d)(3) and (d)(5) of the Bankruptcy Code, such Claim shall also be deemed an Administrative Claim under this paragraph.

**1.1.22.    Administrative Claim Bar Date.**   The end of the first Business Day occurring on or after the sixtieth (60th) day after the Effective Date.

**1.1.23.    Affiliate.**   This term has the meaning set forth in Section 101(2) of the Bankruptcy Code.

**1.1.24.    Allowed Administrative Claim.**   An Administrative Claim: (i) as to which no objection has been filed or, if an objection has been filed, has been resolved by the allowance of such Administrative Claim by a Final Order of the Bankruptcy Court; or (ii) which requires payment in the ordinary course and as to which there is no Final Order of the Bankruptcy Court in effect which prohibits any such payment.

**1.1.25.    Allowed Claim.**   A Claim or any portion thereof that is not a Disputed Claim: (i) that is allowed pursuant to (a) this Plan or Final Order of the Bankruptcy Court, (b) any stipulation executed prior to the Confirmation Date and approved by the Bankruptcy Court, (c) any stipulation with the Debtor or Reorganized LVMC executed on or after the Confirmation

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc                    3

Date and approved by the Bankruptcy Court, or (d) any contract, instrument, indenture, or other agreement entered into or assumed in connection with this Plan; (ii) proof of which, requests for payment of which, or application for allowance of which, was filed or deemed to be filed on or before the Bar Date, as the case may be, for filing proofs of Claim or requests for payment of Claims of such type against the Debtor; or (iii) if no proof of Claim is filed, which has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent; and in the case of (ii) or (iii) no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or the Bankruptcy Court has entered a Final Order allowing all or a portion of such Claim. Notwithstanding anything herein to the contrary, by treating a Claim as an Allowed Claim, The Debtor does not waive its right to contest the amount and validity of any disputed, contingent or unliquidated Claim in the manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Case had not been commenced.

        **1.1.26.**    **Ambac.** This term shall refer to Ambac Assurance Corporation, on its own behalf, and for The Segregated Account of Ambac Assurance Corporation and The Segregated Account of Ambac Assurance Corporation by its court appointed Rehabilitator, the Office of the Commissioner of Insurance for the State of Wisconsin.

        **1.1.27.**    **Amended and Restated Financing Agreement.** The Financing Agreement by and between Reorganized LVMC and the Director as amended and restated in accordance with this Plan, substantially in the form attached to the Plan Supplement, to be executed by Reorganized LVMC on the Effective Date. The Amended and Restated Financing Agreement shall grant a security interest in the Preexisting Collateral and shall be supplemented by necessary implementing documents in a form to be included in the Plan Supplement to secure the Amended and Restated 1st Tier Note. The Director shall assign the Amended and Restated Financing Agreement to the 1st Tier Trustee, reserving to the Director its indemnification and other rights as specified in the assignments of those obligations in the 1st and 2nd Tier Indenture.

        **1.1.28.**    **Amended and Restated 1st Tier Note.** The Amended and Restated 1st Tier Note to be issued by Reorganized LVMC in favor of the Director on the Effective Date in accordance with the Amended and Restated Financing Agreement in place and substitution of the 1st Tier Note, which will provide for a stated principal amount of $7,500,000 with interest at 5.625% per annum and interest payable quarterly commencing March 31, 2011. Beginning March 31, 2012, 30 quarterly installments of principal and interest will be payable with the last payment of principal plus interest due on June 30, 2019 (the "Maturity Date"). Reorganized LVMC shall have the right to prepay the Amended and Restated 1st Tier Note at any time without penalty. The Amended and Restated 1st Tier Note shall be substantially in the form attached as an exhibit to the Plan Supplement. The Director shall assign the Amended and Restated 1st Tier Note to the 1st Tier Trustee, reserving to the Director its indemnification and other rights as specified in the assignments of those obligations in the 1st and 2nd Tier Indenture. The creation or payment of the Amended and Restated 1st Tier Note is not intended to affect or extinguish the exclusion of interest on payments made to the 1st Tier Bonds (whether paid by the Reorganized Debtor or any third party) from gross income for federal income tax purposes; or (iii) affect or diminish any third-party rights to reimbursement or subrogation under the 1st and 2nd Tier Indenture, the Surety, or 1st Tier Bondholders' Insurance Policy. The Amended and Restated 1st Tier Note shall be secured by the Amended and Restated Financing Agreement.

        **1.1.29.**    **Assets.** All of the assets, property, interests, effects, Cash, receivables, real and personal, tangible and intangible, wherever situated, of the Debtor, as it exists on the Effective Date.

        **1.1.30.**    **Avoidance Actions.** All avoidance, recovery, subordination and other similar actions preserved for the Estate under the Bankruptcy Code, including but not limited to

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc       4

those set forth in Sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code regardless of whether or not such action has been commenced prior to the Effective Date.

**1.1.31.**    **Bankruptcy Code.**    The Bankruptcy Reform Act of 1978, Title 11, United States Code, as applicable to the Chapter 11 Case, as now in effect or hereafter amended, 11 U.S.C. §§ 101 et seq.

**1.1.32.**    **Bankruptcy Court.**    The United States Bankruptcy Court for the District of Nevada, having jurisdiction over the Chapter 11 Case and, to the extent of the withdrawal of any reference under Section 157 of title 28 of the United States Code and/or the General Order of the District Court pursuant to Section 151 of title 28 of the United States Code, the United States District Court for the District of Nevada.

**1.1.33.**    **Bankruptcy Rules.**    The Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075.

**1.1.34.**    **Bar Date.**    The date or dates established by this Plan, order of the Bankruptcy Court, or the Bankruptcy Code or Bankruptcy Rules for the filing of proofs of Claim for all Creditors.

**1.1.35.**    **Bond Registrar.**    Shall mean, (i) with respect to the 1st Tier Bondholders, the 1st Tier Trustee; (ii) with respect to the 2nd Tier Bondholders, the 2nd Tier Trustee; and (iii) with respect to the 3rd Tier Bondholders, the 3rd Tier Trustees.

**1.1.36.**    **Business Day.**    Any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)) in Nevada.

**1.1.37.**    **Cash.**    The legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, wire transfers, and other cash equivalents.

**1.1.38.**    **Causes of Action.**    All actions, causes of action, Litigation Claims, claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims and any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, up to and through the Effective Date.

**1.1.39.**    **Chapter 11 Case.**    The Debtor's bankruptcy case under chapter 11 of the Bankruptcy Code styled In re Las Vegas Monorail Company, Case No. 10-10464, in the United States Bankruptcy Court for the District of Nevada.

**1.1.40.**    **Claim.**    Any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.1.41.**    **Class.**    A category of Holders of Claims as classified in this Plan.

**1.1.42.**    **Company.**    The Debtor in this Chapter 11 Case.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

5

**1.1.43.** **Confirmation.** The entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified having been satisfied or waived.

**1.1.44.** **Confirmation Date.** The date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.1.45.** **Confirmation Hearing.** The duly-noticed initial hearing held by the Bankruptcy Court to confirm this Plan pursuant to Section 1128 of the Bankruptcy Code, and any subsequent hearing held by the Bankruptcy Court from time to time to which the initial hearing is adjourned without further notice other than the announcement of the adjourned dates at the Confirmation Hearing.

**1.1.46.** **Confirmation Order.** The order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

**1.1.47.** **Contingent Claim.** A Claim which is contingent, unmatured, or unliquidated on or immediately before the Confirmation Date.

**1.1.48.** **Creditor.** Any Holder of a Claim, whether or not such Claim is an Allowed Claim.

**1.1.49.** **Cure.** The distribution on the Effective Date or as soon thereafter as practicable or otherwise agreed to by the Debtor and the other party of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an Executory Contract or Unexpired Lease pursuant to Section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations due under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

**1.1.50.** **Debtor.** Las Vegas Monorail Company, a Nevada nonprofit corporation, in its capacity as debtor and debtor-in-possession.

**1.1.51.** **Director.** Director of the State of Nevada Department of Business and Industry.

**1.1.52.** **Director Claims.** Any and all Claims of the Director arising under or related to the Financing Agreement not part of the 1st Tier Bond Claims, 2nd Tier Bond Claims, and 3rdTier Bond Claims, and not a Subordinated Claim.

**1.1.53.** **Disbursing Agent.** Reorganized LVMC or any party designated by the Reorganized LVMC to serve as disbursing agent under this Plan.

**1.1.54.** **Disclosure Statement.** The disclosure statement for this Plan, as amended, supplemented or modified from time to time, together with all exhibits and attachments thereto, describing this Plan that is prepared and distributed in accordance with, among others, Sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

**1.1.55.** **Disputed Claim.** A Claim or any portion thereof which is: (i) subject to timely objection interposed by the Debtor or Reorganized LVMC or any other party-in-interest entitled to file and prosecute such objection in this Chapter 11 Case, if such objection remains unresolved on the date of Confirmation; (ii) a Claim that is listed by the Debtor as disputed, unliquidated or contingent in the Schedules; or (iii) if no objection has been timely filed, a Claim which has been asserted in a timely filed proof of Claim in an amount greater than

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc                                          6

or in a Class different than that listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent; provided, however, that the Bankruptcy Court may estimate a Disputed Claim for purposes of allowance pursuant to Section 502 of the Bankruptcy Code. The term "Disputed," when used to modify a reference in this Plan to any Claim or Class of Claims, shall mean a Claim (or any Claim in such Class) that is a Disputed Claim. In the event there is a dispute as to classification or priority of a Claim, it shall be considered a Disputed Claim in its entirety. Until such time as a Contingent Claim becomes fixed and absolute, such Claim shall be treated as a Disputed Claim and not an Allowed Claim for purposes related to allocations and distributions under this Plan.

        **1.1.56.**   **Disputed Claim Reserve.** A reserve(s) established to hold in one or more accounts Cash or other Assets on account of Disputed Claims, which reserve shall not exceed for any Disputed Claim the current amount to be distributed under this Plan.

        **1.1.57.**   **Distribution.** Any distribution by Reorganized LVMC to the Holders of Allowed Claims as of the Record Date.

        **1.1.58.**   **D&O Liability Insurance Policy or Policies.** As defined in Section 10.10 of this Plan.

        **1.1.59.**   **Effective Date.** The day that is no earlier than the 14th day after the Confirmation Order is docketed and after which the conditions as set forth in Section 9.2 below have been satisfied or waived.

        **1.1.60.**   **Estate.** The estate created for the Debtor in its Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

        **1.1.61.**   **Executory Contract.** A contract to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

        **1.1.62.**   **Final Order.** An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, entered on the docket of such court, that has not been reversed, rescinded, stayed, modified or amended, that is in full force and effect, and as to which order or judgment: (a) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for certiorari or request for reargument or further review or rehearing filed (i) has been resolved by the highest court to which the order or judgment was appealed or from which review, rehearing or certiorari was sought or (ii) has not yet been resolved by such highest court, but such order has not been stayed pending appeal. Notwithstanding the foregoing, the Confirmation Order shall specifically become a Final Order on the 14th day following entry of such Confirmation Order unless any appeal of such Confirmation Order is accompanied by a stay pending appeal.

        **1.1.63.**   **Financing Agreement.** The Financing Agreement dated as of September 1, 2000, between the Director and the Debtor relating to issuance of the 1st Tier Note, 2nd Tier Obligation, and 3rd Tier Note.

        **1.1.64.**   **Franchise Agreement.** The Clark County Monorail Franchise Agreement executed pursuant to Chapter 5.04 of the Clark County Code, together with any amendments, modifications, and extensions thereto granting the Debtor the right to operate the Monorail.

        **1.1.65.**   **General Unsecured Claim.** Any prepetition unsecured Claim against the Debtor that is not an Administrative Claim, Other Priority Claim, Priority Tax Claim, Director Claim, 1st Tier Bond Claim, 2nd Tier Bond Claim, 3rd Tier Bond Claim, or

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

7

Subordinated Claim.

**1.1.66.** **Holder.** An entity holding a Claim.

**1.1.67.** **Impaired.** Impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.1.68.** **Lien.** This term shall have the meaning set forth in Section 101(37) of the Bankruptcy Code and, with respect to any Asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such Asset.

**1.1.69.** **Litigation Claims.** All rights, claims, torts, liens, liabilities, obligations, actions, causes of action, Avoidance Actions, derivative actions, proceedings, debts, contracts, judgments, damages, and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that the Debtor or its Estate may have against any Person, including but not limited to those listed on <u>Schedule 1.1.69</u> hereto. Failure to list a Litigation Claim on <u>Schedule 1.1.69</u> shall not constitute a waiver or release by the Debtor or Reorganized LVMC of such Litigation Claim.

**1.1.70.** **Local Rule.** The local and chambers rules of the Bankruptcy Court.

**1.1.71.** **Monorail.** The existing approximately 3.9 mile monorail system operated by the Debtor in Clark County, Nevada pursuant to the Franchise Agreement.

**1.1.72.** **Net Project Revenues.** As will be defined in the Amended and Restated Financing Agreement.

**1.1.73.** **Nevada Secretary.** The Secretary of State of the State of Nevada.

**1.1.74.** **NRS.** The Nevada Revised Statutes, as amended from time to time.

**1.1.75.** **O & M Expenses.** Any and all amounts due under the Bombardier Operation and Maintenance Agreement and any reasonable and necessary costs paid or incurred by the Debtor or Reorganized LVMC for maintaining and operating the Monorail project, including all reasonable expenses of management and repair and other expenses necessary to maintain and preserve the Monorail project in good repair and working order, and the annual costs of any permits or licenses, property taxes, including franchise fees, all administrative costs of the Debtor or Reorganized LVMC that are charged directly or apportioned to the operation of the Monorail project, such as salaries and wages of employees, legal and accounting fees, insurance, overhead, taxes (if any), fees and indemnification or other payments to the Director or the 1st Tier Trustee relating to the Amended and Restated 1st Tier Note and Additional Payment Obligation, and including all other reasonable and necessary costs of the Debtor or Reorganized LVMC or charges required to be paid by them to comply with the terms of the Plan, but excluding depreciation, replacement and obsolescence charges or reserves therefore.

**1.1.76.** **Other Priority Claims.** Any and all Claims accorded priority in right of payment under Section 507(a) of the Bankruptcy Code, other than Priority Tax Claims and Administrative Claims.

**1.1.77.** **Other Secured Claims.** Any Secured Claim, other than a Secured Claim arising under the Financing Agreement and the Secured Claim portion of the 1st Tier Bond Claims.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

8

**1.1.78.    Person.**    An individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental unit or any subdivision thereof, or any other entity.

**1.1.79.    Petition Date.** January 13, 2010, the date on which the Debtor filed its voluntary petition commencing the Chapter 11 Case.

**1.1.80.    Plan.** This Plan of Reorganization, either in its present form or as it may be amended, supplemented or modified from time to time, including all exhibits and schedules annexed hereto or referenced herein or attached to the Plan Supplement.

**1.1.81.    Preexisting Collateral.** The following property: (i) the Operation and Maintenance Agreement, the Management Agreement, and the Franchise Agreement, and any amendment or successor agreement thereto; and (ii) the Net Project Revenues.

**1.1.82.    Plan Supplement.**    The supplement to the Plan to which will be attached various documents as referenced herein, which Plan Supplement will be filed within 5 days of the commencement of the hearing to approve the Disclosure Statement.

**1.1.83.    Priority Tax Claim.** Any Claim against the Debtor entitled to priority in payment under Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.1.84.    Pro Rata.** The ratio of an Allowed Claim in a particular Class to the aggregate amount of all such Allowed Claims in any such Class.

**1.1.85.    Professional Fees.** The Administrative Claims for compensation and reimbursement submitted pursuant to Sections 330, 331, or 503(b) of the Bankruptcy Code of Persons: (i) employed pursuant to an order of the Bankruptcy Court under Sections 327, 328, or 1103 of the Bankruptcy Code; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code or by other Final Order.

**1.1.86.    Record Date.** The date, as provided for in the order approving the Disclosure Statement, on which the identity of the Holders of 1st Tier Bond Claims, 2nd Tier Bond Claims, and 3rd Tier Bond Claims shall be determined.

**1.1.87.    Released Parties.** As defined in Section 10.6 of this Plan.

**1.1.88.    Reorganized LVMC.** The Debtor as restructured in accordance with this Plan on or after the Effective Date, or any successor thereto, by merger, consolidation or otherwise.

**1.1.89.    Reorganized LVMC Organizational Documents.** The Reorganized LVMC Organizational documents, which shall be substantially in the form attached to the Plan Supplement. The Reorganized LVMC Organizational Documents shall be consistent with applicable securities, tax, bankruptcy and/or state laws and otherwise approved by the Governor to the extent required by the LVMC Organizational Documents.

**1.1.90.    Schedules.** The schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code.

**1.1.91.    Secured Claim.** A Claim that is secured by a Lien against property of the Estate to the extent of the value of such property of the Estate securing such Claim which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc                                             9

Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Section 553 of the Bankruptcy Code, in either case as determined pursuant to Section 506(a) of the Bankruptcy Code, including any Secured Tax Claims.

**1.1.92.    Secured Tax Claims.**  The Claim of any state or local governmental unit which is secured by a Lien against property owned by the Debtor by operation of applicable law, including, but not limited to, every such Claim for unpaid personal property taxes together with statutory interest.

**1.1.93.    Statutory Committee.**  Any committee appointed pursuant to Section 1102 of the Bankruptcy Code.

**1.1.94.    Substantial Consummation.**  As defined in Section 1101(2) of the Bankruptcy Code.

**1.1.95.  Substantial Consummation Date.**  The day that is the first Business Day after the Effective Date on which: (i) no stay of the Confirmation Order is in effect; (ii) all conditions to the Effective Date have occurred; and (iii) all other conditions precedent to and required for Substantial Consummation of this Plan have been satisfied or waived by the Debtor or a non-Debtor party that has the power to satisfy or waive such conditions.

**1.1.96.    Surety.**  The Surety Bond of $20,991,807.50 issued by the Ambac to be available for payments on the 1st Tier Bonds to the extent the Debtor did not make principal and interest payments on the 1st Tier Note.

**1.1.97.    Taxes.**  All income, excise, sales, use, employment, withholding, property, payroll or other taxes, assessments, or governmental charges, together with any interest, penalties, or other additions to tax, fines, and similar amounts relating thereto, whether or not yet assessed or imposed, collected by, or due to any federal, state, local or foreign governmental authority.  This shall include all Taxes arising out of or attributable to the business of the Debtor up to and including the Effective Date, whether assessed or determined or payable prior to or after the Effective Date.

**1.1.98.    Unexpired Lease.**  A lease of non-residential real property or personal property to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.1.99.    Unimpaired.**  Unimpaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.1.100.    Working Capital Facility.**  A working capital line of credit not to exceed $3,000,000 at any one time to be obtained by Reorganized LVMC on or after the Effective Date which may be secured by a senior security interest in all of the Debtor's assets other than the Preexisting Security Interests, and a junior security interest in the Preexisting Security Interests.

**1.2.    Exhibits and Plan Schedules.**  All exhibits and plan schedules attached hereto are incorporated into and are a part of this Plan as if set forth in full herein.

**1.3.    Rules of Interpretation.**  For purposes of this Plan only: (i) any reference in this Plan to a contract, instrument, release, or other agreement or documents being in particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (iii) unless otherwise specified, all references in

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc                                10

this Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan; (iv) the words "herein," "hereof," "hereto," and "hereunder" refer to this Plan in its entirety rather than to a particular portion of this Plan; (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (vi) the rules of construction and definitions set forth in Sections 101 and 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply unless otherwise expressly provided.

**1.4.    Computation of Time.**  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**2.    TREATMENT OF UNCLASSIFIED CLAIMS**

**2.1.    General.**  Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Claims against the Debtor set forth in this Article 2 are not classified within any Class. The Holders of such Claims are not entitled to vote on this Plan. The treatment of the Claims set forth below is consistent with the requirements of Section 1129(a)(9)(A) of the Bankruptcy Code.

**2.2.    Treatment of Administrative Claims.**  Each Holder of an Allowed Administrative Claim shall be paid in full and final satisfaction of such Claim by Reorganized LVMC (or otherwise satisfied in accordance with its terms), upon the latest of:  (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first Business Day following the fourteenth (14th) day after such Claim is Allowed or as soon thereafter as practicable; (iv) the date such Claim becomes due by its terms; and (v) such date as is agreed to by the Holder of such Claim and the Debtor or Reorganized LVMC.

**2.2.1.    Requests for Payment.**  All requests for payment of Administrative Claims against the Debtor and all final applications for allowance and disbursement of Professional Fees must be filed by the Administrative Claim Bar Date or the Holders thereof shall be forever barred from asserting such Administrative Claims against the Debtor and Reorganized LVMC. All Professional Fee applications must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order, and all other orders governing payment of Professional Fees.  Unless otherwise ordered by the Bankruptcy Court, from and after the Effective Date, no professional shall be required to file fee applications with the Bankruptcy Court, and the Debtor and Reorganized LVMC, as applicable, may pay all professionals in the ordinary course for fees and expenses incurred after the Effective Date.

**2.2.2.    Allowed Priority Tax Claims.**  Each Holder of an Allowed Priority Tax Claim, if any, will, in full and final satisfaction of such Claim, be paid in full (or be treated in compliance with Section 1129(a)(9)(C) of the Bankruptcy Code) by Reorganized LVMC on the later of (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first Business Day following the fourteenth (14th) day after the date on which an order allowing such Claim becomes a Final Order; or (iv) such date as is agreed to by the Holder of such Claim and the Debtor or Reorganized LVMC.

**3.    DESIGNATION OF CLASSES OF CLAIMS**

Pursuant to this Plan and in accordance with Section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors (except Administrative Claims and Priority Tax Claims) are placed in the Classes described below.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim qualifies within the description of such other Classes.  A Claim is also classified in a particular Class only to the extent that such Claim is an Allowed

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc                                                                11

1    Claim in that Class and has not been paid, released or otherwise satisfied prior to the Effective
2    Date.

3    **3.1.    Summary of Classification.**

| Class 1 | Other Priority Claims | Unimpaired – deemed accepted<br>-    no solicitation required |
|---------|----------------------|----------------------------------------------------------------|
| Class 2 | Other Secured Claims | Unimpaired – deemed accepted<br>-    no solicitation required |
| Class 3 | General Unsecured Claims | Impaired – entitled to vote<br>-    solicitation required. |
| Class 4 | 1st Tier Bond Secured Claims | Impaired – entitled to vote<br>-    solicitation required. |
| Class 5 | 1st Tier Bond Unsecured Claims | Impaired – entitled to vote<br>-    solicitation required. |
| Class 6 | 2nd Tier Bond Claims | Impaired – deemed rejected<br>-    no solicitation required |
| Class 7 | 3rd Tier Bond Claims | Impaired – deemed rejected<br>-    no solicitation required |
| Class 8 | Director Claims | Impaired – entitled to vote<br>-    solicitation required. |
| Class 9 | Subordinated Claims | Impaired – deemed rejected<br>-    no solicitation required |

**3.2.    Specific Classification.**

   **3.2.1.    Class 1: Other Priority Claims.**  Class 1 consists of all Other Priority
Claims against the Debtor.

   **3.2.2.    Class 2: Other Secured Claims.**  Class 2 consists of all Other Secured
Claims against the Debtor.

   **3.2.3.    Class 3: General Unsecured Claims.**  Class 3 consists of all General
Unsecured Claims against the Debtor other than Class 5, Class 6, Class 7, Class 8, and Class 9
Claims.

   **3.2.4.    Class 4: 1st Tier Bond Secured Claims.**  Class 4 consists of the
Secured Claim portion of all 1st Tier Bond Claims.

   **3.2.5.    Class 5: 1st Tier Bond Unsecured Claims.**  Class 5 consists of the
Unsecured Claim portion of all 1st Tier Bond Claims.

   **3.2.6.    Class 6: 2nd Tier Bond Claims.**  Class 6 consists of all 2nd Tier Bond
Claims.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

12

3.2.7. **Class 7: 3rd Tier Bond Claims.** Class 7 consists of all 3rd Tier Bond Claims.

3.2.8. **Class 8: Director Claims.** Class 8 consists of all Director Claims.

3.2.9. **Class 9: Subordinated Claims.** Class 9 consists of all Claims not including 2nd Tier Bond Claims and 3rd Tier Bonds Claims which are subordinated pursuant to Section 510 of the Bankruptcy Code.

4. **DESIGNATION OF AND PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS NOT IMPAIRED BY THIS PLAN**

4.1. **Class 1 – Other Priority Claims.** Each Allowed Other Priority Claim, if any, shall, in full and final satisfaction of such Claim, be paid in full in Cash by Reorganized LVMC upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first Business Day following the fourteenth (14th) day after such Claim is Allowed; and (iv) such date as agreed upon by the Holder of such Claim and the Debtor or the Reorganized LVMC. Holders of Claims in Class 1 are Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and are not entitled to vote on this Plan.

4.2. **Class 2 – Other Secured Claims.** Each Allowed Other Secured Claim, if any, shall, in full and final satisfaction of such Claim, be paid in full in Cash or otherwise left Unimpaired by the Debtor or Reorganized LVMC, as the case may be, upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first Business Day following the fourteenth (14th) day after such Claim is Allowed; and (iv) such date as agreed upon by the Holder of such Claim and the Debtor, and after the Effective Date, by Reorganized LVMC. Creditors in Class 2 are Unimpaired under this Plan, deemed to have accepted this Plan, and are not entitled to vote on this Plan.

5. **DESIGNATION OF AND PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS IMPAIRED BY THIS PLAN**

5.1. **Class 3 – General Unsecured Claims.** Each Holder of an Allowed General Unsecured Claim will receive in full and final satisfaction of its Allowed General Unsecured Claim 80% of its Allowed General Unsecured Claim, but in no event shall the total payment to the Holders of all Allowed General Unsecured Claims exceed $175,000, it being understood that if such total payment would exceed $175,000, the Holders of Allowed General Unsecured Claims shall instead receive their Pro Rata share of $175,000 in full satisfaction of their Allowed General Unsecured Claims. Such payment shall be made in Cash by Reorganized LVMC in 12 equal installments without interest beginning upon the latest of: (i) the first Business Day following the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first Business Day following the fourteenth (14th) day after such Claim is Allowed; and (iv) such date as agreed upon by the Holder of such Claim and the Debtor or Reorganized LVMC. Creditors in Class 3 are Impaired under this Plan and are entitled to vote on this Plan.

5.2. **Class 4 – 1st Tier Bond Secured Claims.** On the Effective Date or as soon thereafter as practicable, the Director will receive in full and final satisfaction of the Secured Claim portion of the 1st Tier Bond Claims the Amended and Restated 1st Tier Note. The Director shall assign the Amended and Restated 1st Tier Note to the 1st Tier Trustee, reserving to the Director its indemnification and other rights as specified in the assignments of those obligations in the 1st and 2nd Tier Indenture. The 1st Tier Note shall be extinguished and discharged and the Amended and Restated Financing Agreement shall provide for the liabilities

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

13

and obligations arising under the Amended and Restated 1st Tier Note and shall not provide for any liabilities or obligations regarding the 1st Tier Bond Claims or the 1st Tier Notes. The treatment afforded the Holders of Class 4 Claims herein does not affect the rights of the Holders of Class 4 Claims or the 1st Tier Trustee under the 1st and 2nd Tier Indenture against any party other than the Debtor, and specifically, is not intended to nor does it: (i) modify the maturity, the principal or initial denomination amount, or the interest rate or maturity value of the 1st Tier Bonds; (ii) affect or extinguish the exclusion of interest paid on the 1st Tier Bonds (whether paid by the Reorganized Debtor or any third party) from gross income for federal income tax purposes; or (iii) affect or diminish any third-party rights to reimbursement or subrogation under the 1st and 2nd Tier Indenture or 1st Tier Bondholders' Insurance Policy. The Holders of Class 4 Claims are Impaired under this Plan and are entitled to vote on this Plan.

**5.3.    Class 5 – 1st Tier Bond Unsecured Claims.**  On the Effective Date in full satisfaction of the 1st Tier Bond Unsecured Claims, Reorganized LVMC shall deliver the Additional Payment Obligation Note, which shall be unsecured, to the Director.  The Director shall assign the Amended and Restated 1st Tier Note to the 1st Tier Trustee, reserving to the Director its indemnification and other rights as specified in the assignments of those obligations in the 1st and 2nd Tier Indenture.  Commencing March 31, 2011, Reorganized LVMC will commence payment of the Additional Payment Obligation to the Director in full and final satisfaction of the Unsecured Claim portion of the 1st Tier Bond Claims.  The treatment afforded the Holders of Class 5 Claims herein does not affect the rights of the Holders of Class 5 Claims or the 1st Tier Trustee under the 1st and 2nd Tier Indenture against any party other than the Debtor, and specifically, is not intended to nor does it: (i) modify the maturity, the principal or initial denomination amount, or the interest rate or maturity value of the 1st Tier Bonds; (ii) affect or extinguish the exclusion of interest paid on the 1st Tier Bonds (whether paid by the Reorganized Debtor or any third party) from gross income for federal income tax purposes; or (iii) affect or diminish any third-party rights to reimbursement or subrogation under the 1st and 2nd Tier Indenture or 1st Tier Bondholders' Insurance Policy. The Holders of Class 5 Claims are Impaired under this Plan and are entitled to vote on this Plan.

**5.4.    Class 6 – 2nd Tier Bond Claims.**  2nd Tier Bond Claims are contractually subordinated to the 1st Tier Bond Claims.  Because the 1st Tier Bond Claims are not being paid in full, Holders of Class 6 Claims shall not receive or retain any property on account of their Claims under this Plan.  The 2nd Tier Obligation will be extinguished and discharged and the Amended and Restated Financing Agreement shall not provide for any liabilities regarding the 2nd Tier Bond Claims or the 2nd Tier Obligation.  The 2nd Tier Bond Claims are Impaired, are deemed to have rejected this Plan, and are not entitled to vote on the Plan.

**5.5.    Class 7 – 3rd Tier Bond Claims.**  3rd Tier Bondholders are contractually subordinated to the 1st Tier Bond Claims and 2nd Tier Bond Claims.  Because the 1st Tier Bond Claims and 2nd Tier Bond Claims are not being paid in full, Holders of Class 7 Claims shall not receive or retain any property on account of their Claims under this Plan.  The 3rd Tier Note will be extinguished and discharged and the Amended and Restated Financing Agreement shall not provide for any liabilities regarding the 3rd Tier Bond Claims or the 3rd Tier Note.  3rd Tier Bond Claims are Impaired, are deemed to have rejected this Plan, and are not entitled to vote on this Plan.

**5.6.    Class 8 – Director Claims.**  On the Effective Date, the Amended and Restated Financing Agreement shall become effective and from and after the Effective Date, all Allowed Director Claims shall participate in the distributions to Holders of Class 4 Claims and Class 5 Claims as provided for in the Amended and Restated Financing Agreement and the 1st and 2nd Tier Indenture.  Director Claims are Impaired under this Plan and entitled to vote on this Plan.

**5.7.    Class 9 – Subordinated Claims.**  Holders of Subordinated Claims shall not receive any distribution on account of such Claims.  Holders of Class 9 Claims are Impaired

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

14

1    under this Plan, are not entitled to vote on this Plan, and are deemed to have rejected this Plan.

2    **6.    MEANS FOR IMPLEMENTATION OF PLAN**

3         **6.1.    Reorganized LVMC.**  On or before the Effective Date, the Reorganized LVMC Organizational Documents shall be executed and, to the extent required, filed with the Nevada Secretary.  The Reorganized LVMC Organizational Documents shall (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code; and (ii) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate this Plan and the transactions contemplated herein.  After the Effective Date, Reorganized LVMC shall be responsible for the preparation of all reports, tax returns and other governmental filings required to be filed by the Debtor and Reorganized LVMC and all obligations related thereto.

4         **6.2.    Additional Reorganized LVMC Provisions.**  Reorganized LVMC Organizational Documents, and resolutions or similar documents related to the formation and governance of Reorganized LVMC under this Plan shall be subject to applicable bankruptcy and/or Nevada law.  Reorganized LVMC shall remain a Nevada non-profit corporation.

5         **6.3.    Effective Date Events.**  On the Effective Date, Reorganized LVMC shall execute and deliver to the Director (x) the Amended and Restated 1st Tier Note, (y) the Additional Payment Obligation Note, and (z) the Amended and Restated Financing Agreement and related security documents as provided for in this Plan, all of which shall become immediately effective, and all of which the Director shall assign to the 1st Tier Trustee as provided for in the Amended and Restated Financing Agreement and the 1st and 2nd Tier Indenture, reserving to the Director its indemnification and other rights as specified in the assignments of those obligations in the Amended and Restated Financing Agreement and the 1st and 2nd Tier Indenture.

6         **6.4.    Post-Effective Date Management and Operations.**  On and after the Effective Date Reorganized LVMC will continue to be managed by the existing managers, officers, and directors under their existing employment agreements, if any, pursuant to the Reorganized LVMC Organizational Documents, and otherwise according to the terms and conditions that existed on the date of the filing of this Plan, unless otherwise disclosed.  Reorganized LVMC shall be responsible for the payment of all Allowed Claims to be paid pursuant to this Plan which are not paid on or before the Effective Date, as well as all Allowed Claims, including Taxes and Professional Fees, incurred by the Debtor and in operating its business and complying with this Plan up to and including the Effective Date, whether due and payable before or after the Effective Date.  Reorganized LVMC is authorized without further order of the Bankruptcy Court to obtain and effectuate the Working Capital Loan as the board of directors of Reorganized LVMC determines in its business judgment.

7         **6.5.    Post-Effective Date Officers and Directors of Reorganized LVMC.**  On and after the Effective Date, the initial board of directors of Reorganized LVMC shall be comprised of the five (5) individuals serving on the board of directors on the Confirmation Date.  Thereafter, members of the board of directors shall be selected pursuant to the Reorganized LVMC Organizational Documents.  The initial officers shall be comprised of the individuals employed as officers on the Confirmation Date.  The Debtor will disclose, at or prior to the Confirmation Hearing, the identity of such individuals.

8         **6.6.    No Corporate Action Required.**  As of the Effective Date: (i) the adoption, execution, delivery and implementation or assignment of all contracts, leases, instruments, releases and other agreements related to or contemplated by this Plan; and (ii) the other matters provided for under or in furtherance of this Plan involving corporate action to be taken by or required of the Debtor shall be deemed to have occurred and be effective as provided herein, and

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc                                    15

shall be authorized and approved in all respects without further order of the Bankruptcy Court or any requirement of further action by the board of directors or officers of the Debtor. In particular, the adoption of the amended organizational documents, and the selection of directors and officers of the Debtor or Reorganized LVMC, and all other actions contemplated by or described in this Plan with respect thereto, shall be authorized and approved and be binding and in full force and effect in all respects (subject to the provisions of this Plan and the Confirmation Order), in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule (other than filing such organizational documents with the applicable governmental unit as required by applicable law) or the vote, consent, authorization, or approval of any Person.

**6.7.    Effectuation of Transactions.**  On the Effective Date, the appropriate officers of the Debtor and members of the board of directors are authorized to issue, execute, and deliver the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions, and instruments contemplated by or described in this Plan in the name of and on behalf of the Debtor and Reorganized LVMC, and to otherwise fully consummate the transactions contemplated by this Plan, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote, or other approval or authorization by any Person.

**6.8.    Filing with Nevada Secretary.**  To the extent applicable, in accordance with NRS 78.622, on the Effective Date a certified copy of this Plan and the Confirmation Order shall be filed with the Nevada Secretary. The Debtor, from the Confirmation Date until the Effective Date, is authorized and directed to take any action or carry out any proceeding necessary to effectuate this Plan pursuant to NRS 78.622.

## 7.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1.    Executory Contracts.**  Except for Executory Contracts and Unexpired Leases specifically addressed in this Plan or set forth on the schedule of Rejected Executory Contracts and Unexpired Leases attached as Schedule 7.1 hereto (which may be supplemented and amended up to the date the Bankruptcy Court enters the Confirmation Order), all Executory Contracts and Unexpired Leases that exist on the Confirmation Date shall be deemed assumed by Reorganized LVMC on the Effective Date.

**7.2.    Approval of Assumption or Rejection.**  Entry of the Confirmation Order shall constitute as of the Effective Date: (i) approval, pursuant to Section 365(a) of the Bankruptcy Code, of the assumption by the Debtor of each Executory Contract and Unexpired Lease to which the Debtor is a party and which is not listed on Schedule 7.1, not otherwise provided for in this Plan and neither assumed, assumed and assigned, nor rejected by separate order prior to the Effective Date; and (ii) rejection by the Debtor of each Executory Contract and Unexpired Lease to which the Debtor is a party listed on Schedule 7.1. Upon the Effective Date, each counter party to an assumed Executory Contract or Unexpired Lease listed shall be deemed to have consented to assumption contemplated by Section 365(c)(1)(B) of the Bankruptcy Code, to the extent such consent is necessary for such assumption. To the extent applicable, all Executory Contracts or Unexpired Leases of Reorganized LVMC assumed pursuant to this Section 7 shall be deemed modified such that the transactions contemplated by this Plan shall not be a "change of control," however such term may be defined in the relevant Executory Contract or Unexpired Lease and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by the confirmation of this Plan. Also, to the extent applicable, all Executory Contracts or Unexpired Leases of the Debtor assumed pursuant to this Section 7 shall be assigned to Reorganized LVMC on the Effective Date, and such assignment shall not be a "change of control," however such term may be defined in the relevant Executory Contract or Unexpired Lease, and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by the confirmation of this Plan.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

16

**7.3.   Cure of Defaults.**  The Debtor or Reorganized LVMC shall Cure any defaults respecting each Executory Contract or Unexpired Lease assumed pursuant to this Section 7 upon the latest of (i) the Effective Date or as soon thereafter as practicable; (ii) such dates as may be fixed by the Bankruptcy Court or agreed upon by the Debtor, and after the Effective Date, Reorganized LVMC; or (iii) the first Business Day following the fourteenth (14th) day after the entry of a Final Order resolving any dispute regarding (a) a Cure amount; (b) the ability of the Debtor or the Reorganized LVMC to provide adequate assurance of future performance under the Executory Contract or Unexpired Lease assumed pursuant to this Plan in accordance with Section 365(b)(1) of the Bankruptcy Code; or (c) any other disputed matter pertaining to assumption, assignment or the Cure of a particular Executory Contract or an Unexpired Lease. Schedule 7.3 to the Plan lists the Debtors' proposed Cure amounts, if any, that will be paid as provided for above, which Schedule 7.3 may be amended up to and including the five (5) days prior to the commencement of the Confirmation Hearing.

**7.4.   Objection to Cure Amounts.**  Any party to an Executory Contract or Unexpired Lease who objects to the Cure amounts listed on Schedule 7.3 to this Plan must file and serve an objection on the Debtor's counsel no later than thirty (30) days after the Effective Date.  Failure to file and serve a timely objection shall be deemed consent to the Cure amounts listed on Schedule 7.3.  Any Cure amounts shall be the responsibility of Reorganized LVMC.  If there is a dispute regarding: (i) the amount of any Cure payment; (ii) the ability of Reorganized LVMC to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease to be assumed or assigned; or (iii) any other matter pertaining to assumption, the Cure payments required by Section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption, except as provided in Section 7.3 of this Plan.

**7.5.   Confirmation Order.**  The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumptions described in this Section 7, pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date.  Notwithstanding the foregoing, if, as of the date the Bankruptcy Court enters the Confirmation Order, there is pending before the Bankruptcy Court a dispute concerning the cure amount or adequate assurance for any particular Executory Contract or Unexpired Lease (or if the time period for a non-Debtor to object to the Cure has not yet lapsed), the assumption of such Executory Contract or Unexpired Lease shall be effective as of the date the Bankruptcy Court enters an order resolving any such dispute and authorizing assumption by the Debtor.

**7.6.   Post-Petition Date Contracts and Leases.**  Each such Executory Contract and Unexpired Lease shall be performed by the Debtor or Reorganized LVMC, as applicable, in the ordinary course of its business.

**7.7.   Bar Date.**  All proofs of Claims with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be filed no later than thirty (30) days after the Effective Date.  Any Claim not filed within such time shall be forever barred.

**8.    MANNER OF DISTRIBUTION OF PROPERTY UNDER THIS PLAN**

**8.1.   Distributions.**  The Debtor, and if applicable, Reorganized LVMC, shall be responsible for making Distributions described in this Plan.  The Debtor and Reorganized LVMC may make such Distributions before the allowance of each Claim has been resolved if the Debtor or Reorganized LVMC has a good faith belief that the Disputed Claim Reserve is sufficient for all Disputed Claims.  Except as otherwise provided in this Plan or the Confirmation Order, all Cash necessary for Reorganized LVMC to make payments pursuant to this Plan shall be obtained from existing Cash balances and the operations of the Debtor and Reorganized LVMC.

**8.2.   No Recourse.**  No recourse shall ever be had, directly or indirectly, against the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc                                                  17

Debtor or Reorganized LVMC or against any director, agent, attorney, accountant, or other professional for the Debtor or Reorganized LVMC, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by the Debtor or Reorganized LVMC under this Plan, or by reason of the creation of any indebtedness by the Debtor or Reorganized LVMC under this Plan for any purpose authorized by this Plan, it being expressly understood and agreed that all such liabilities, covenants, and agreements of the Debtor and Reorganized LVMC, whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Assets or such part thereof as shall under the terms of any such agreement be liable therefore or shall be evidence only of a right of payment out of the Assets.

**8.3.    Reserves.** The Debtor, or if applicable, Reorganized LVMC, shall establish and maintain a Disputed Claim Reserve.

**8.4.    Statements.** The Debtor and, if applicable, Reorganized LVMC, shall maintain a record of the names and addresses of all Holders of Allowed General Unsecured Claims as of the Effective Date for purposes of mailing Distributions to them. The Debtor and Reorganized LVMC may rely on the name and address set forth in the Schedules and/or proofs of Claim as of the Record Date as being true and correct unless and until notified in writing. The Debtor and Reorganized LVMC shall file all tax returns and other filings with governmental authorities on behalf of the Debtor and Reorganized LVMC and the Assets it holds.

**8.5.    Further Authorization.** The Debtor and Reorganized LVMC shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions of this Plan.

**9.    CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE**

**9.1.    Conditions to Confirmation.** As a condition precedent to the Confirmation of this Plan, the Confirmation Order shall be in form and substance reasonably acceptable to the Debtor.

**9.2.    Conditions to Effectiveness.** The following are conditions precedent to the occurrence of the Effective Date:

1. The Confirmation Order shall be a Final Order;

2. No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending, including any appeal;

3. All documents necessary to implement the transactions contemplated by this Plan shall be in form and substance reasonably acceptable to the Debtor and the Director; and

4. Sufficient Cash and other Assets shall be set aside, reserved and withheld by the Debtor to make the distributions required to be paid on the Effective Date or within sixty (60) days thereafter by the Bankruptcy Code and this Plan.

**9.3.    Notice of Effectiveness.** When all of the steps contemplated by Section 9.2 have been completed, the Debtor shall file with the Bankruptcy Court and serve upon all Creditors and all potential Holders of Administrative Claims known to the Debtor (whether or not disputed), a Notice of Effective Date of Plan. The Notice of Effective Date of Plan shall include notice of the Administrative Claim Bar Date.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

18

**9.4.   Waiver of Conditions.** The Debtor, and if applicable, Reorganized LVMC, may waive any or all of the other conditions set forth in this Article 9 and specifically Sections 9.2.2. and 9.2.4, above (each for themselves but not for others) without leave of or order of the Bankruptcy Court and without any formal action. The failure of a party to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each right shall be deemed an ongoing right that may be asserted at any time prior to the filing of the Notice of Effectiveness.

## 10.   TITLE TO PROPERTY; DISCHARGE; INJUNCTION

**10.1.   Vesting of Assets.** Subject to and as provided for in this Plan, the Assets shall be vested and/or transferred to Reorganized LVMC on the Effective Date. On and after the Effective Date, Reorganized LVMC may operate its business and may use, acquire, and dispose of property and compromise or settle any Claims without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

**10.2.   Preservation of Litigation Claims.** In accordance with Section 1123(b)(3) of the Bankruptcy Code, and except as otherwise expressly provided herein, on the Effective Date all Litigation Claims shall be assigned to Reorganized LVMC, and Reorganized LVMC shall have the exclusive right to enforce, prosecute, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the Litigation Claims, including, without limitation, any and all derivative actions pending or otherwise existing against the Debtor as of the Effective Date.

**10.3.   Settlement of Litigation Claims.** At any time after the Confirmation Date and before the Effective Date, notwithstanding anything in this Plan to the contrary, the Debtor may settle any or all of the Litigation Claims with the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019. After the Effective Date, Reorganized LVMC may, and shall have the exclusive right to, compromise and settle any Claims against it and claims it may have against any other Person or entity, including, without limitation, the Litigation Claims, without notice to or approval from the Bankruptcy Court, including, without limitation, any and all derivative actions pending or otherwise existing against the Debtor as of the Effective Date.

**10.4.   Discharge.** On the Effective Date, except as otherwise provided in this Plan, the Debtor shall be discharged from any and all Claims in Classes 1, 2, 3, 4, 5, 6, 7, 8, and 9 to the fullest extent provided in Sections 524 and 1141 of the Bankruptcy Code. The Discharge shall be to the fullest extent provided under Section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, and, except as otherwise expressly provided by this Plan or the Confirmation Order, all consideration distributed under this Plan and shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any kind or nature whatsoever against the Debtor or any of its assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims. Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date as to Claims in Classes 1, 2, 3, 4, 5, 6, 7, 8, and 9, the Debtor shall be deemed discharged and released under and to the fullest extent provided under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

**10.5.   Compromise and Settlement.** The allowance, classification, and treatment of all Allowed Claims and their respective distributions under this Plan take into account and/or conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, Section 510(c) of the Bankruptcy Code, or

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc                                    19

otherwise, including without limitation, the subordination provisions related to the 1st and 2nd Tier Indenture or 3rd Tier Indenture. As of the Effective Date, any and all such rights described in the preceding sentence will be settled, compromised, and released pursuant to this Plan and any and all such Causes of Action related thereto are settled, compromised, and released pursuant hereto.

**10.6.    Debtor Releases.**    On the Effective Date and effective as of the Effective Date, for good and valuable consideration, including, but not limited to: (i) the discharge of debt and all other good and valuable consideration paid pursuant to this Plan; and (ii) the services of the Debtor's officers and directors serving on and since the Petition Date in facilitating the expeditious implementation of the reorganization contemplated by this Plan, the Debtor and Reorganized LVMC shall provide a full discharge and release to, collectively, and solely in their capacity as such, all officers, directors, employees, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals, and representatives of the Debtor serving on and since the Petition Date (collectively, the "Released Parties" (and each such Released Party so released shall be deemed released and discharged by the Debtor and Reorganized LVMC)) and their respective properties from any and all Causes of Action, whether known or unknown, whether for torts, including fraud, contract, violations of federal or state securities laws, or otherwise, arising from or related in any way to the Debtor or Reorganized LVMC, including, without limitation, those that any of the Debtor or Reorganized LVMC would have been legally entitled to assert in its own right (whether individually or collectively) or that any Holder of a Claim or others entity would have been legally entitled to assert on behalf of the Debtor or its Estate, and further including those in any way related to the Chapter 11 Case or this Plan to the fullest extent of the law; provided, however, that the foregoing the Debtor releases shall not operate to waive or release any Released Party from (a) any Causes of Action expressly set forth in and preserved by this Plan, any Plan Supplement, or related documents or (b) as a result of actual fraud, gross negligence, or willful misconduct.

**10.7.    Injunction.**    From and after the Effective Date, and except as provided in this Plan and the Confirmation Order, all entities that have held, currently hold, or may hold a Claim that is terminated pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such Claims:  (i) commencing or continuing in any manner any action or other proceeding against Reorganized LVMC or its property; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Reorganized LVMC or its property; (iii) creating, perfecting or enforcing any Lien or encumbrance against Reorganized LVMC or its property; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to Reorganized LVMC or its property; and (v) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code.  By accepting distributions pursuant to this Plan, each Holder of an Allowed Claim will be deemed to have specifically consented to the injunctions set forth in this Section 10.7.

**10.8.    Exculpation.**    From and after the Effective Date, none of the Debtor, any Statutory Committees, Reorganized LVMC, nor any of their respective directors, officers, managers, employees, advisors, attorneys, or agents on and from the Petition Date forward, shall have or incur any liability to any Holder of a Claim or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of (from the Petition Date forward) the Chapter 11 Case, Reorganized LVMC, the pursuit of Confirmation of this Plan or the Substantial Consummation of this Plan, except for gross negligence and willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan or in the context of the Chapter 11 Case. No Holder of a Claim, nor any other party-in-interest, including their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates,

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc                20

shall have any right of action against the Debtor, any Statutory Committees, Reorganized LVMC, or any of their respective present or former members, officers, directors, managers, employees, advisors, attorneys, or agents, relating to, or arising out of (from the Petition Date forward) the Chapter 11 Case, the pursuit of Confirmation of this Plan, the Substantial Consummation of this Plan, or the administration of this Plan, except for:  (i) their willful misconduct and gross negligence; (ii) matters specifically contemplated by either this Plan or Reorganized LVMC; and (iii) any liability of an attorney to its client not subject to exculpation under the Bankruptcy Code.

**10.9.    Director and Officer Liability Insurance.**    As of the Effective Date, Reorganized LVMC will obtain sufficient tail coverage under a directors' and officers' liability insurance policy (the "D&O Liability Insurance Policy", and, together with all insurance policies for directors and officers' liability maintained by the Debtor as of the Petition Date, the "D&O Liability Insurance Policies") for the directors and officers of the Debtor and Reorganized LVMC, as applicable (from the Petition Date forward) for a period of six (6) years.  The Debtor will assume and, if applicable, assign to Reorganized LVMC all of the D&O Liability Insurance Policies pursuant to Section 365(a) of the Bankruptcy Code as of the Effective Date.  Entry of the Confirmation Order will constitute approval by the Bankruptcy Court of the Debtor's foregoing assumption and assignment by the Debtor to Reorganized LVMC of each of the D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in this Plan, Confirmation of this Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtor and assigned to Reorganized LVMC under this Plan as to which no proof of Claim need be filed.

**10.10.    Indemnification.**    All indemnification provisions currently in place (whether in the bylaws, articles or certificates of incorporation, articles of limited partnership, limited liability company agreements, board resolutions (or resolutions of similar bodies), or employment contracts) for the directors, officers, employees, attorneys, or other professionals and agents of the Debtor (from the Petition Date forward) shall be assumed, and shall survive effectiveness of this Plan.  All indemnification provisions in place on and prior to the Effective Date for current directors and officers of the Debtor (from the Petition Date forward) shall (i) survive the Effective Date of this Plan for Claims related to or in connection with any actions, omissions, or transactions occurring prior to the Effective Date, and (ii) remain liabilities of Reorganized LVMC specifically on behalf of the Debtor.

## 11.    RETENTION OF JURISDICTION

**11.1.    Jurisdiction.**    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and Reorganized LVMC after the Effective Date as is legally permissible, including jurisdiction to:

a.    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Disputed Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Disputed Claims;

b.    Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

c.    Resolve any matters related to the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor or Reorganized LVMC is a

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc                                    21

party and to hear, determine and, if necessary, liquidate any Claims arising therefrom or Cure amounts related thereto;

d.      Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

e.      Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications or motions involving the Debtor or Reorganized LVMC that may be pending on the Effective Date or commenced thereafter as provided for by this Plan;

f.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Disclosure Statement or the Confirmation Order, except as otherwise provided herein;

g.      Decide or resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of any Final Order, this Plan, the Confirmation Order, or obligations of any Persons incurred in connection with such Final Order, this Plan, or the Confirmation Order;

h.      Modify this Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code and Section 12.1 of this Plan or modify any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, the Confirmation Order, or Reorganized LVMC; or remedy any defect or omission or reconcile any inconsistency in any Final Order, this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code;

i.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation, implementation, or enforcement of any Final Order, this Plan, or the Confirmation Order, except as otherwise provided herein;

j.      Enter and implement such orders as are necessary or appropriate if a Final Order or the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

k.      Determine any other matters that may arise in connection with or relate to this Plan, any Final Order, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, any Final Order, or the Confirmation Order (unless such contract, instrument, release, or other agreement or document expressly provides otherwise), except as otherwise provided herein;

l.      Enter an order closing the Chapter 11 Case;

m.      Hear and decide Litigation Claims and any other claim or cause of action of the Debtor and Reorganized LVMC pending on the Effective Date; and

n.      Decide or resolve any matter over which the Bankruptcy Court has jurisdiction pursuant to Section 505 of the Bankruptcy Code.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

22

## 12.    MODIFICATION AND AMENDMENT OF PLAN

**12.1.    Modification and Amendment.** Prior to Confirmation, the Debtor may alter, amend, or modify this Plan under Section 1127(a) of the Bankruptcy Code at any time. After the Confirmation Date and prior to the Substantial Consummation Date, the Debtor may, under Section 1127(b), (c), and (d) of the Bankruptcy Code, alter, amend, or modify this Plan or institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order, and to make appropriate adjustments and modifications to this Plan or the Confirmation Order as may be necessary to carry out the purposes and effects of this Plan, so long as such proceedings do not materially adversely affect the treatment of Holders of Claims under this Plan.

## 13.    MISCELLANEOUS

**13.1.    Filing of Objections to Claims.** Prior to the Effective Date, objections to Claims shall be made and objections to Claims made previous thereto shall be pursued by the Debtor or any other party properly entitled to do so after notice to the Debtor and approval by the Bankruptcy Court. After the Effective Date, objections to Claims shall be made and objections to Claims made previous thereto shall be pursued by Reorganized LVMC or any other party properly entitled to do so after notice to Reorganized LVMC and approval by the Bankruptcy Court. Any objections to Claims filed pursuant to Federal Rule of Bankruptcy Procedure 3001 after the Effective Date shall be filed and served not later than one hundred and twenty (120) days after the Effective Date; provided, however, that such period may be extended by order of the Bankruptcy Court for good cause shown.

**13.2.    Resolution of Objections after Effective Date; Distributions.** From and after the Effective Date, the Debtor and Reorganized LVMC, as applicable, may litigate to judgment, propose settlements of, or withdraw objections to, all pending or filed Disputed Claims and may settle or compromise any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court.

a.    Distributions. In order to facilitate Distributions to Holders of Allowed Claims, and if and to the extent there are Disputed Claims in any Class, the Debtor or Reorganized LVMC, as applicable, shall set aside in the Disputed Claim Reserve the payments or Distributions applicable to such Disputed Claims as if such Disputed Claims were Allowed Claims, pending the allowance or disallowance of such Disputed Claims. In the event that the Debtor or Reorganized LVMC wishes to deposit or hold a lesser amount and is unable to reach an agreement with the Holder of the Disputed Claim on the amount to be deposited or held, the Bankruptcy Court shall fix the amount after notice and hearing. Upon Final Order with respect to a Disputed Claim, the Holder of such Disputed Claim, to the extent it has been determined to hold an Allowed Claim, shall receive from the Debtor or Reorganized LVMC, as the case maybe, that payment or Distribution to which it would have been entitled if the portion of the Claim so allowed had been allowed as of the Effective Date. Such payment or distribution shall be made as soon as practical after the order allowing the Claim has become a Final Order.

b.    Late-Filed Claims. No Claim filed after the Bar Date or, as applicable, the Administrative Claim Bar Date, shall be allowed, and all such Claims are hereby disallowed in full. After the Bar Date or the Administrative Claim Bar Date, as applicable, no Creditor shall be permitted to amend any claim to increase the claimed amount; and any such amendment shall be disallowed to the extent of the late-filed increase in the claimed amount.

**13.3.    Effectuating Documents; Further Transactions; Timing.** Each of the officers of the Debtor and Reorganized LVMC are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc                                23

may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any Interests issued, transferred, or canceled pursuant to this Plan and transactions contemplated by this Plan. All transactions that are required to occur on the Effective Date under the terms of this Plan shall be deemed to have occurred simultaneously. The Debtor and Reorganized LVMC are authorized and directed to do such acts and execute such documents as are necessary to implement this Plan. No term in this Plan shall be deemed or construed as preventing the Director, the 1st Tier Trustee, the 1st Tier Bondholders, or others from effectuating an amendment or restatement of the 1st Tier Bonds, the 1st and 2nd Tier Indenture, or the 1st Tier Bondholders Insurance Policy consistent with this Plan.

**13.4.** **Cancellation of Existing Agreements.** On the latest to occur of (i) the Effective Date; (ii) the entry of a Final Order resolving all Claims in the Chapter 11 Case; and (iii) the final distribution made to Holders of Allowed Claims in accordance with the terms of this Plan, unless otherwise provided in this Plan, any document, agreement, or instrument evidencing any Claim shall be deemed automatically cancelled and terminated without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtor under such documents, agreements, or instruments evidencing such Claims shall be discharged.

**13.5.** **Exemption from Transfer Taxes.** Pursuant to Section 1146(a) of the Bankruptcy Code, (i) the issuance, distribution, transfer, or exchange of Estate property; (ii) the creation, modification, consolidation, or recording of any deed of trust or other interest, or the securing of additional indebtedness by such means or by other means in furtherance of, or in connection with this Plan or the Confirmation Order; (iii) the making, assignment, modification, or recording of any lease or sublease; or (iv) the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**13.6.** **Revocation or Withdrawal of this Plan.** The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date. If this Plan is withdrawn or revoked or if the Bankruptcy Court denies confirmation of this Plan, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person, nor shall the withdrawal or revocation of this Plan prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor. In the event this Plan is withdrawn or revoked, nothing set forth herein shall be deemed an admission of any sort and this Plan and any transaction contemplated thereby shall be inadmissible into evidence in any proceeding.

In the event that the Effective Date does not occur, upon notification submitted by the Debtor to the Court: (i) the Confirmation Order shall be vacated; (ii) no distributions under this Plan shall be made; (iii) the Debtor and all Holders of Claims shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (iv) the Debtor's obligations with respect to the Claims shall remain unchanged and nothing contained in this Plan shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**13.7.** **Binding Effect.** This Plan shall be binding upon, and shall inure to the benefit of, the Debtor and the Estate, Reorganized LVMC, and the Holders of all Claims and their

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc                    24

respective agents, trustees, successors, and assigns.

**13.8.  Governing Law.**  Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any contract, instrument, release, or other agreement entered into in connection with this Plan or in any document which remains unaltered by this Plan, the rights, duties, and obligations of the Debtor and any other Person arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada without giving effect to Nevada choice of law provisions.

**13.9.  Modification of Payment Terms.**  The Debtor and Reorganized LVMC, as applicable, reserve the right to modify the treatment of any Allowed Claim in any manner adverse only to the Holder of such Allowed Claim at any time after the Effective Date upon the prior written consent of the Holder whose Allowed Claim treatment is being adversely affected.

**13.10.  Allocation of Plan Distributions between Principal and Interest.**  To the extent that any Allowed Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for income tax purposes to the principal amount of the Claim first and then, to the extent that the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

**13.11.  Means of Cash Payment.**  Payments of Cash made pursuant to this Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of the Debtor or Reorganized LVMC, as the case may be, by (a) checks drawn on, or (b) wire transfer from, a domestic bank selected by the Debtor or Reorganized LVMC as applicable.  Cash payments to foreign Creditors may be made, at the option of the Debtor or Reorganized LVMC, as applicable, in such funds and by such means as are necessary or customary in the applicable foreign jurisdiction.

**13.12.  Providing for Claims Payments.**  Distributions to Holders of Allowed Claims shall be made by the Debtor or Reorganized LVMC, as applicable: (i) at the addresses set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such Holders if no proof of Claim is filed or if the Debtor has not been notified of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of Claim; (iii) at the addresses reflected in the Schedules if no proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address; or (iv) in the case of Holders of Allowed 1st Tier Bond Claims, to the 1st Tier Trustee for Pro Rata distribution to the 1st Tier Bondholders as identified on the bond registration books of the Bond Registrar from time to time.  If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Disbursing Agent is notified of such Holder's then-current address, at which time all returned distributions shall be made to such Holder without interest.  Amounts in respect of undeliverable Distributions made through the Disbursing Agent shall be returned to Reorganized LVMC until such Distributions are claimed; *provided, however,* that any distributions to 1st Tier Bondholders which are undeliverable shall be returned to the 1st Tier Trustee for distribution in accordance with the 1st and 2nd Tier Indenture.  All claims for undeliverable Distributions shall be made on or before the second anniversary of the Effective Date.  After such date, all unclaimed property shall revert to Reorganized LVMC and the Claim of any Holder or successor to such Holder with respect to such property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.  Nothing contained in this Plan shall require Reorganized LVMC or the Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

**13.13.  Set Offs.**  The Debtor or Reorganized LVMC may, but shall not be required to, set-off or recoup against any Claim and the payments or other distributions to be made pursuant to this Plan in respect of such Claim (before any distribution is made on account of such Claim),

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

25

1    claims of any nature whatsoever that the Debtor or Reorganized LVMC may have against the
     Holder of such Claim to the extent such Claims may be set-off or recouped under applicable law,
2    but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a
     waiver or release by the Debtor or Reorganized LVMC of any such Claim that it may have
3    against such Holder.

4         **13.14. Notices.** Any notice required or permitted to be provided under this Plan shall be
     in writing and served by either: (a) certified mail, return receipt requested, postage prepaid; (b)
5    hand delivery, or (c) reputable overnight courier service, freight prepaid, to be addressed as
     follows:
6

7    | If to the Debtor or Reorganized LVMC: | Las Vegas Monorail Company<br>Attn: Curtis L. Myles, III<br>3900 Paradise Road, Suite 260<br>Las Vegas, NV 89169 |
     | --- | --- |

8

9    | With a Copy to: | Gordon Silver, Ltd.<br>Attn:  William M. Noall, Esq.<br>3960 Howard Hughes Pkwy, 9th Floor<br>Las Vegas, NV  89109<br>Tel:  (702)  796-5555<br>Fax:  (702) 369-2666 |
     | --- | --- |

10

11

12

13   | If to the Director: | The Director of the State of Nevada<br>Department of Business & Industry<br>Attn:  Mr. Lon A. DeWeese |
     | --- | --- |

14

15   | With a Copy to: | Lon A. DeWeese<br>Chief Financial Officer<br>Nevada Housing Division<br>1535 Old Hot Springs Road<br>Suite 50<br>Carson City, Nevada 89706 |
     | --- | --- |

16

17

18

19                                             and

20                                             Rebecca J. Winthrop, Esq.
                                               Ballard Spahr LLP
21                                             2029 Century Park East
                                               Suite 800
22                                             Los Angeles, CA 90067-2909
                                               Tel:  (424) 204-4330
                                               Fax:  (424) 204-4350
23

24        **13.15. Statutory Committee.** Any Statutory Committee appointed in the Chapter 11
     Case shall terminate on the Effective Date and shall thereafter have no further responsibilities in
25   respect of the Chapter 11 Case, except with respect to preparation of the filing of applications for
     compensation and reimbursement of expenses.
26

27        **13.16. Severability.** If any provision of this Plan is determined by the Bankruptcy Court
     to be invalid, illegal, or unenforceable or this Plan is determined to be not confirmable pursuant
     to Section 1129 of the Bankruptcy Code, the Bankruptcy Court, at the request of the Debtor or
28   Reorganized LVMC, as applicable, shall have the power to alter and interpret such term to make

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc                                        26

it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall provide and shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.17. Withholding and Reporting Requirements.** In connection with this Plan and all instruments issued in connection therewith and Distributions thereon, Reorganized LVMC shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. Reorganized LVMC shall be authorized to take any and all action that may be necessary to comply with such withholding and recording requirements. Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim that has received a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding, and other tax obligation on account of such distribution.

**13.18. Post Confirmation Reporting.** Until the entry of the final decree closing the Chapter 11 Case, Reorganized LVMC shall comply with the post-confirmation reporting requirements found in Local Rule 3020 of the Bankruptcy Court. Additionally, to the extent required, Reorganized LVMC shall file post-confirmation quarterly operating reports as required by the United States Trustee Guidelines, para. 7.2.

**13.19. Cramdown.** In the event that any Impaired Class is determined to have rejected this Plan in accordance with Section 1126 of the Bankruptcy Code, the Debtor may invoke the provisions of Section 1129(b) of the Bankruptcy Code to satisfy the requirements for Confirmation of this Plan. The Debtor reserves the right to modify this Plan to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

///

///

///

///

///

///

///

///

///

///

///

///

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

27

1      **13.20.  Quarterly Fees to the United States Trustee.**  Prior to the Effective Date, the Debtor, and after the Effective Date, Reorganized LVMC shall pay all quarterly fees payable to

2    the Office of the United States Trustee consistent with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

3
       DATED this _____ day of August, 2010.

4
                                                     **LAS VEGAS MONORAIL COMPANY**, a
5                                                     Nevada non-profit corporation

6
                                                     By: _Curtis J. Myles_____
7

8                                                     Name:  Curtis Myles
                                                     Title:  President
9

10
       **PREPARED AND SUBMITTED BY:**
11
       GORDON SILVER
12
       By: _____
13
             GERALD M. GORDON, ESQ.
14           WILLIAM M. NOALL, ESQ.
             ERIC J. VAN, ESQ.
15           3960 Howard Hughes Pkwy., 9th Floor
             Las Vegas, Nevada 89169
16           Attorneys for the Debtor

17

18

19

20

21

22

23

24

25

26

27

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/999029.doc

28

1

**SCHEDULE 1.1.69**

2

**CERTAIN PRESERVED LITIGATION CLAIMS**

3

All defined terms used herein shall have the meanings set forth in this Plan. The following is a non-exhaustive list of potential parties against whom the Debtor, and/or the Reorganized LVMC may hold Litigation Claims. The Debtor and Reorganized LVMC reserve their right to modify this list to amend or add parties or causes of action, but disclaim any obligation to do so. In addition to the Litigation Claims listed below, the Debtor and Reorganized LVMC have or may have, in the ordinary course of its business, numerous causes of action and claims or rights against contractors, vendors, suppliers, and others with whom they deal in the ordinary course of their business (the "Ordinary Course Claims"). The Debtor and Reorganized LVMC reserve their right to enforce, sue on, settle, or compromise (or decline to do any of the foregoing) the Ordinary Course Claims, as well as the Litigation Claims listed below and all other claims and causes of action. The Debtor and Reorganized LVMC also have, or may have, and are retaining, various claims or causes of action arising under or pursuant to its insurance policies, and all rights arising under, relating to, or in connection with such policies are expressly reserved and retained.

4

5

6

7

8

9

10

Additionally, the following Litigation Claims held by the Debtor are expressly reserved and retained:

11

12

1.    All claims and causes of action raised or that can be raised against Michael Brenesell and Tix4Vegas, LLC, including, but not limited to, execution of the judgment in that litigation styled Las Vegas Monorail Company, et al. v. Michael Brenesell and Tix4Vegas, LLC, Case No. A574303, District of Nevada, Eighth Judicial District, Las Vegas, Nevada;

13

14

15

2.    All claims and causes of action that can be raised against Final Film, Inc. and/or Creative Graphic Solutions and/or any entities affiliated therewith, including, but not limited to breach of contract and unjust enrichment;

16

17

3.    Counterclaims, cross-claims, or other claims raised or that can be raised in connection with the following actions, including any appeals thereof:

18

19

     a.   Christina and Bruce Nelson v. Las Vegas Monorail Company and Bombardier Transportation, Case No. A-08-556416, Eighth Judicial District, Las Vegas, Nevada;

20

     b.   Michael Sanzaro v. Las Vegas Monorail Company, Case No. A-09-593765, Eighth Judicial District, Las Vegas, Nevada;

21

22

     c.   Michael J. Davenport v. Las Vegas Monorail Company, Case No. A-09-606157, Eighth Judicial District, Las Vegas, Nevada;

23

     d.   Demetria Phipps v. Las Vegas Monorail Company, Case No. A-10-609472-C, Eighth Judicial District, Las Vegas, Nevada.

24

25

     e.   All actions or claims asserted against the Debtor or Reorganized LVMC by any Person asserting a personal injury or loss claim;

26

     f.   All actions relating to any tax refunds due and owing to the Debtor, or otherwise related thereto;

27

28

     g.   Avoidance Actions and Litigation Claims arising out of or in connection the with Debtor's business, property, or operations;

29

h.  Avoidance Actions and Litigation Claims arising out of transactions involving, concerning, or related to the Debtor; and

i.  All other rights, privileges, claims, actions, or remedies, whether arising at law or in equity.

There may also be other Avoidance Actions and Litigation Claims which currently exist or may subsequently arise that are not set forth herein because the facts underlying such Avoidance Actions or Litigation Claims are not currently known or sufficiently known by the Debtor. The failure to list any such unknown Avoidance Action or Litigation Claim herein is not intended to limit the rights of the Debtor or Reorganized LVMC to pursue any unknown Avoidance Action or Litigation Claim to the extent the facts underlying such unknown Avoidance Action or Litigation Claim become more fully known in the future.

Unless Avoidance Actions or Litigation Claims against any individual or entity are expressly waived, relinquished, released, compromised, or settled by this Plan or any Final Order, the Debtor expressly reserves for their benefit, and the benefit of Reorganized LVMC, all Avoidance Actions and Litigation Claims, including, without limitation, all unknown Avoidance Actions and Litigation Claims for later adjudication, and therefore no preclusion doctrine (including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches) shall apply to such Avoidance Actions or Litigation Claims after the Effective Date of this Plan. In addition, the Debtor expressly reserves for its benefit, and the benefit of Reorganized LVMC, the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any individual or entity, including plaintiffs and co-defendants in such lawsuits.

30

1

2

**SCHEDULE 7.1**

3

**REJECTED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

4

5
     1.  Settlement and Release Agreement dated August 25, 2000, between Venetian Casino Resort, LLC and The MGM Grand-Bally's Monorail Limited Liability Company

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31

102200-002/999029.doc

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SCHEDULE 7.3**

**CURE AMOUNTS**

Debtor will supplement this Schedule 7.3.

102200-002/999029.doc

# EXHIBIT B

**_DRAFT - SUBJECT TO REVISION_**

**LAS VEGAS MONORAIL COMPANY SUMMARY OF ESTIMATED LIQUIDATION PROCEEDS**

| | |
|---|---:|
| **Estimated Sales Proceeds** | $  13,000,000 |
| **Estimated "Train 9" Litigation Recoveries** | 200,000 |
| **Estimated Available Cash** | 150,000 |
| | 13,350,000 |
| **Less: Estimated Ch. 7 Trustee Fees [1]** | (423,750) |
| **_Estimated Liquidation Proceeds Available to Creditors_** | $  12,926,250 |
| **_Rounded_** | $  12,925,000 |

[1] Calculated at statutory rates.

*DRAFT - SUBJECT TO REVISION*

| | PLAN OF REORGANIZATION | | | | LIQUIDATION ANALYSIS | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | Estimated Claim Amounts | Estimated Plan Recovery ($) | Estimated Plan Recovery (%) | | Estimated Claim Amounts | Estimated Liquidation Recovery ($) | Estimated Liquidation Recovery (%) |
| Allowed Priority Tax Claims | $6,092 | $6,092 | 100.0% | | $6,092 | $6,092 | 100.0% |
| Allowed Administrative Claims | TBD | TBD | 100.0% | | TBD | TBD | 100.0% |
| Class 1: Other Priority Tax Claims | 1,805 | 1,805 | 100.0% | | 1,805 | 1,805 | 100.0% |
| Class 2: Other Secured Claims | 1,700 | 1,700 | 100.0% | | 1,700 | 1,700 | 100.0% |
| Class 3: General Unsecured Claims | 175,000 | 140,000 | 80.0% | | 175,000 | 2,129 | 1.2% |
| Class 4: 1st Tier Bond Secured Claims | 7,500,000 | 7,500,000 | 100.0% | | 7,500,000 | 7,500,000 | 100.0% |
| Class 5: 1st Tier Bond Unsecured Claims | 445,000,000 | 11,000,000 | 2.5% | | 445,000,000 | 5,413,274 | 1.2% |
| Class 6: 2nd Tier Bond Claims | 158,749,493 (1) | - | 0.0% | | 158,749,493 (1) | - | 0.0% |
| Class 7: 3rd Tier Bond Claims | 48,500,000 (1) | - | 0.0% | | 48,500,000 (1) | - | 0.0% |
| Class 8: Director Claims | TBD | TBD | TBD | | TBD | TBD | TBD |
| Class 9: Subordinated Claims | - | - | 0.0% | | - | - | 0.0% |
| | $659,934,090 | $18,649,597 | | | $659,934,090 | $12,925,000 | |

(1) Holders of 2nd and 3rd Tier Bond Claims will be subordinate to payment in full of Allowed 1st Tier Bond Claims and shall not receive or retain any property on account of their Claims until the 1st Tier Bond Claims have been paid in full.

# EXHIBIT C

Unaudited                                                                      *DRAFT – SUBJECT TO REVISION*

### Las Vegas Monorail Company

### Assumptions Underlying the Debtor's Projections

### For the Periods Ending December 31, 2010 – June 30, 2019

*Introduction*

In connection with the development of the Plan, and for the purpose of analyzing the ability of reorganized Las Vegas Monorail Company (the "Reorganized Monorail" or "Reorganized Debtor") to meet its obligations under the Plan with sufficient liquidity and capital resources to conduct its business, Company management developed and periodically refined its business plan and prepared certain projections of the financial performance which may result therefrom.  Such projections, as modified to incorporate the material terms and conditions of the Plan (hereinafter the "Debtor's Projections"), span the period from December 2010 through June 2019 (the "Projection Period").  To the extent that new information deemed to be relevant and material becomes available, the Debtor's Projections are subject to revision.

The classification and dollar amounts of estimated Claims incorporated within the Debtor's Projections are subject to <u>significant</u> modification pending further analysis and the receipt of additional Claims information.  The Debtor is in the process of preparing a detailed reconciliation of the Claims in this Case.  Until the Debtor has completed the reconciliation of the Claims, the Claim amounts and descriptions thereof are subject to material revisions which may result in corresponding significant revisions to a number of related items such as, but not limited to, the estimated extraordinary gain on the discharge of prepetition liabilities.

The Debtor's Projections should be read in conjunction with the assumptions, qualifications and explanations set forth herein and in the notes to the Debtor's Projections, the historical financial information, the Plan, and the information appearing under "The Plan of Reorganization" section of the Disclosure Statement.  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan and Disclosure Statement.

The Debtor's Projections were assembled for the purpose of analyzing the proposed restructuring and reorganization of the Company under chapter 11 of the United States Bankruptcy Code.  This information was prepared solely for inclusion in the Disclosure Statement in compliance with the United States Bankruptcy Code and should not be used for any other purpose.  The presentation utilized in the Debtor's Projections is not designed for those who are not informed about such matters.

*Principal Assumptions*

The Debtor's Projections reflect the Debtor's assumptions with respect to the anticipated future performance of the Debtor/Reorganized Debtor, general business and economic conditions, and other matters which may be beyond the control of the Debtor/Reorganized Debtor.  *Therefore, while the Debtor's Projections are presented with numerical specificity, the actual results achieved through the Projection Period will vary from the Debtor's Projections.  These variations may be material. Additionally, the Debtor's account balances fluctuate throughout the year, and year-end/period-end balances may not reflect the highest or lowest balance during the year.*

Unaudited                                                  *DRAFT – SUBJECT TO REVISION*

Additional information relating to the principal assumptions used in preparing the Debtor's Projections is set forth below:

*(i) Effective Date, Plan Terms*: The Debtor's Projections are based on the assumption that the Plan will be confirmed by the Bankruptcy Court, and for analysis purposes, that the Effective Date under the Plan takes place on, or about, December 31, 2010. The Debtor's Projections assume, among other things, that the current route and operations of the Debtor remain in place during the Projection Period and that the Franchise Agreement between the Debtor and Clark County, Nevada is assumed under the terms of the Plan. The Debtor's Projections are based on the assumption that the total amount of Allowed Claims in each class under the Plan is the estimated amount as set forth in the Disclosure Statement. As stated above, the estimated claim amounts contained in the Debtor's Projections are subject to significant revision.

*(ii) Ticket Vending Machine ("TVM") Sales*: The estimated TVM Sales contained in the Debtor's Projections are projected as the product of estimated fare yield and number of riders. Fare yield is expected to reach $4.95 by 2019. The number of riders is expected to total an annualized 7.3 million by 2019. Accordingly, the combination of fare yield and number of riders results in an annual increase in TVM sales of approximately 5.5% (compound annual growth rate) during the Projection Period.

The estimated fare yield, number of riders, TVM Sales and percentage change in annual TVM Sales for the 12 months ending December 31st of each year in the Projection Period are as follows (amounts in thousands except for fare yield and percentage change figures)

| Year Ending December 31st | Estimated Fare Yield | Estimated # of Riders | Estimated TVM Sales [1] | % Change in Annual TVM |
|---|---|---|---|---|
| 2010 | $ 4.40 | 5,061 | $ 22,257 | -16% |
| 2011 | $ 4.25 | 5,272 | $ 22,406 | 0.7% |
| 2012 | $ 4.26 | 5,601 | $ 23,860 | 6.5% |
| 2013 | $ 4.56 | 5,869 | $ 26,752 | 12.1% |
| 2014 | $ 4.57 | 6,098 | $ 27,881 | 4.2% |
| 2015 | $ 4.59 | 6,331 | $ 29,033 | 4.1% |
| 2016 | $ 4.60 | 6,569 | $ 30,212 | 4.1% |
| 2017 | $ 4.92 | 6,813 | $ 33,528 | 11.0% |
| 2018 | $ 4.94 | 7,058 | $ 34,841 | 3.9% |
| 2019* | $ 4.95 | 4,385 | $ 21,709 | 3.8% |

*The amounts shown for 2019 only include the 1st half of the year.

[1] Excludes bulk sales.

**Unaudited**                                                          *DRAFT – SUBJECT TO REVISION*

*iii) Other Revenue*: Other Revenue consists primarily of estimated advertising revenue and ticket sales other than from TVMs (i.e., internet, bulk purchase, etc.).  During the Projection Period, other revenue is expected to grow from $265,795 to an annualized $470,455 in 2019.

The yearly estimates are as follows (dollar amounts in thousands):

| Year Ending December 31st | Bulk Sale Revenue | Advertising Revenue | Total Other Revenue |
|---|---|---|---|
| 2010 | $ 156 | $ 110 | $ 266 |
| 2011 | $ 182 | $ 200 | $ 382 |
| 2012 | $ 187 | $ 205 | $ 392 |
| 2013 | $ 193 | $ 209 | $ 402 |
| 2014 | $ 199 | $ 214 | $ 413 |
| 2015 | $ 205 | $ 219 | $ 424 |
| 2016 | $ 211 | $ 224 | $ 435 |
| 2017 | $ 217 | $ 229 | $ 447 |
| 2018 | $ 224 | $ 235 | $ 458 |
| 2019* | $ 138 | $ 144 | $ 282 |

*The amounts shown for 2019 only include the 1st half of the year.

*(iv) Bombardier*: The amounts shown for Bombardier are based on the Bombardier Agreement and assume an annual inflation rate of 2.3% based on the Philadelphia Federal Reserve's *2010 Survey of Professional Forecasters* dated August 13, 2010 (the "2010 Fed Survey").  The Debtor's Projections assume that the Reorganized Debtor exercises the last five-year option period in 2014 and that the O&M Agreement runs through July 14, 2019.

*(v) General & Administrative Expenses*:  The estimated General & Administrative expenses shown during the Projection Period consist of insurance, payroll, utilities, marketing, fare collection, professional services (non-restructuring), board fees and administrative costs.  In general, it is assumed that the majority of the expenses in this category increase by an annual inflation factor of 2.3% per year based on the 2010 Fed Survey.

*(vi) Capital Asset Replacement Program ("CARP")*:  The estimated CARP amounts during the Projection Period reflect estimated amounts to be spent to continue to maintain the monorail physical infrastructure including, but not limited to, platforms, ticket vending machines, train interiors and escalator/elevator repair and replacement.  These estimates are based on contractually obligated amounts per the O&M Agreement and annual inflation adjustments.

*DRAFT – SUBJECT TO REVISION*

CARP expenditures by year are estimated as follows (dollar amounts in thousands):

| Year Ending December 31st | CARP |
|---|---|
| 2010 | $ 1,038 |
| 2011 | $ 1,805 |
| 2012 | $ 1,280 |
| 2013 | $ 3,696 |
| 2014 | $ 2,403 |
| 2015 | $ 2,894 |
| 2016 | $ 2,960 |
| 2017 | $ 57 |
| 2018 | $ 2,995 |
| 2019* | $ 3,004 |

*The amounts shown for 2019 only include the 1st half of the year.

*(vii) Restructuring Items*: It is assumed that the restructuring of the Debtor's various obligations as contemplated in the Plan will result in a variety of non-cash, restructuring related impairment charges and gains on debt discharge. Accordingly, the Debtor's Projections reflect various impairment charges with respect to the carrying value of the Debtor's fixed asset base. For the purpose of the Debtor's Projections, a fixed asset impairment charge of approximately $331.0 million was assumed on the assumed effective date of December 31, 2010. Additionally, it is also assumed that the restructuring of the Debtor's obligations will result in, among other things, an impairment charge of approximately $35.0 million related to the write-down of various debt reserves and debt issuance costs as well as a non-cash gain on debt discharge of approximately $739.8 million. Lastly, pursuant to section 10.9 of the Plan, it is assumed that on the Effective Date the D&O Liability Insurance Policy is purchased by the Debtor at an estimated cost of $400,000 (subject to revision). ***The ultimate amount and timing of any impairment charges and gains on debt discharge will be subject to a variety of factors that may result in material revisions to the amounts shown herein.***

*(viii) Interest Income*: The Debtor's Projections reflect estimated interest income generated from the Reorganized Monorail's operating accounts and the Removal Costs Escrow Fund. The estimated interest income generated from the Reorganized Monorail's operating accounts is assumed to be available to the Reorganized Monorail for general corporate purposes; whereas, the estimated interest income generated from the cash held in the Removal Costs Escrow Fund is assumed to be restricted and added back into the balance of the Removal Costs Escrow Fund. For both types of interest income, the Debtor's Projections assume an interest rate of 0.15% per annum based on estimated 30-day United States treasury yields.

*(ix) Income Taxes*: Due to the Debtor's non-profit status, the Debtor's Projections assume no taxes during the Projection Period.

Unaudited                                                      *DRAFT – SUBJECT TO REVISION*

*(x) Post-Reorganization Debt and Interest Expense*: With respect to post-reorganization debt and the interest expense related thereto, the Debtor's Projections reflect the material terms and conditions of the Plan and incorporate certain assumptions related thereto.  Among such terms reflected in the Debtor's Projections are the following terms for the Amended and Restated 1st Tier Note:

| *Principal Amount* | $7,500,000.00 |
| *Interest Rate* | 5.625% |
| *Frequency of Interest Payments* | Quarterly beginning March 31, 2011 |
| *2011 Quarterly Principal Amortization* | $0 |
| *2012 – 2019 Quarterly Principal & Interest Payment* | $308,159.43 per quarter beginning March 31, 2012 |

Pursuant to the Plan, the Debtor's Projections also assume the following terms for the Additional Payment Obligation Note:

| *Principal Amount* | $11,000,000 |
| *Interest Rate* | 5.625% |
| *Frequency of Interest Payments* | Quarterly beginning March 31, 2011 |
| *Principal Payment* | At maturity – June 30, 2019 |

Additionally, the Debtor's Projections assume the assumption of certain agreements and the payment of the estimated pre-petition amounts owing under such agreements in twelve equal monthly payments (plus interest at 4.0%) beginning January, 2011.  Per the terms of the Plan it is also assumed that Class 3 receives $140,000 payable in 12 equal installments beginning January, 2011.

Per the Plan, the Debtor's Projections also assume a payment on the Effective Date of $9,597, which consists of Allowed Priority Tax Claims, Other Priority Tax Claims and Other Secured Claims.

Lastly, the Plan provides for a Working Capital Facility.  The Debtor's Projections assume that no amounts are drawn or outstanding under the Working Capital Facility during the Projection Period.

*The foregoing assumption and resultant computations were made solely for the purpose of preparing the Debtor's Projections.  The estimates referenced herein and in the accompanying Debtor's Projections do not purport to be appraisals or necessarily reflect the values which may be realized if the assets/enterprise were to be sold.  Reorganized Monorail will be required to determine the amount by which its reorganization value as of the Effective Date exceeds, or is less than, the fair value of its assets as of the Effective Date.  Such determination will be based upon the fair values as of that time, which could be materially higher or lower than the estimates contained in the Disclosure Statement and may be based on a different methodology than that used for the estimates in the Disclosure Statement.  Such valuation, as well as the determination of the fair value of Reorganized Monorail's fixed assets and determination of its actual liabilities, will be made as of a date not later than the effective date of a confirmed plan of reorganization, and the differences between the amounts of any or all of the foregoing items as assumed in the Debtor's Projections and the actual amounts thereof may be material.*

*DRAFT - SUBJECT TO REVISION*

**Las Vegas Monorail Company Income Statement**

| | Q4 2010 | Adjusted to Reflect Effective Date | Adjusted Q4 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 1H 2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | |
| TVM Sales | $ 4,888,846 | - | $ 4,888,846 | $ 22,405,647 | $ 23,859,512 | $ 26,752,450 | $ 27,880,543 | $ 29,033,436 | $ 30,211,582 | $ 33,528,499 | $ 34,841,144 | $ 21,709,345 |
| Other | 45,500 | - | 45,500 | 182,000 | 187,460 | 193,084 | 198,876 | 204,843 | 210,988 | 217,318 | 223,837 | 138,331 |
| Advertising | - | - | - | 200,000 | 204,600 | 209,306 | 214,120 | 219,045 | 224,083 | 229,237 | 234,509 | 143,942 |
| Total Revenue | 4,934,346 | - | 4,934,346 | 22,787,647 | 24,251,572 | 27,154,840 | 28,293,539 | 29,457,323 | 30,646,653 | 33,975,053 | 35,299,490 | 21,991,618 |
| **Expenses** | | | | | | | | | | | | |
| Bombardier | 2,847,505 | - | 2,847,505 | 11,533,504 | 11,687,511 | 11,874,433 | 11,942,250 | 11,914,641 | 11,985,480 | 12,034,194 | 12,229,136 | 6,327,110 |
| System Utility | 224,591 | - | 224,591 | 853,276 | 903,381 | 924,158 | 945,414 | 967,159 | 989,403 | 1,012,160 | 1,035,439 | 529,627 |
| System Insurance | 586,400 | - | 586,400 | 2,468,550 | 2,525,327 | 2,583,409 | 2,642,828 | 2,703,613 | 2,765,796 | 2,829,409 | 2,894,486 | 1,480,529 |
| Payroll | 528,451 | - | 528,451 | 2,100,628 | 2,214,920 | 2,265,863 | 2,317,978 | 2,371,291 | 2,425,831 | 2,481,625 | 2,538,702 | 1,298,546 |
| Admin & Other | 250,980 | - | 250,980 | 1,100,878 | 1,086,091 | 1,162,603 | 1,166,544 | 1,241,740 | 1,210,402 | 1,303,550 | 1,272,358 | 676,216 |
| Professional Services | 96,250 | - | 96,250 | 460,600 | 470,580 | 481,403 | 492,476 | 503,803 | 515,390 | 527,244 | 539,371 | 275,888 |
| Fare Collection | 100,944 | - | 100,944 | 435,784 | 451,544 | 492,437 | 510,463 | 528,890 | 547,725 | 594,446 | 615,196 | 318,201 |
| Marketing | 150,150 | - | 150,150 | 520,000 | 848,805 | 950,419 | 1,131,742 | 1,178,293 | 1,379,099 | 1,528,877 | 1,764,975 | 1,099,581 |
| CARP | 400,000 | - | 400,000 | 1,804,933 | 1,279,927 | 3,696,486 | 2,403,208 | 2,893,563 | 2,960,115 | 57,352 | 2,995,125 | 3,003,992 |
| Depreciation | 5,820,809 | - | 5,820,809 | 1,657,112 | 1,657,112 | 1,657,112 | 1,657,112 | 1,615,373 | 757,186 | 757,186 | 757,186 | 378,593 |
| Land Lease Amortization | 10,000 | - | 10,000 | 13,613 | 13,613 | 13,613 | 13,613 | 13,613 | 13,613 | 13,613 | 13,613 | 6,807 |
| Total Expenses | 11,016,080 | - | 11,016,080 | 22,948,878 | 23,138,811 | 26,101,937 | 25,223,626 | 25,931,978 | 25,550,040 | 23,139,655 | 26,655,586 | 15,395,090 |
| **Operating Income** | (6,081,733) | - | (6,081,733) | (161,230) | 1,112,761 | 1,052,903 | 3,069,913 | 3,525,345 | 5,096,612 | 10,835,398 | 8,643,904 | 6,596,527 |
| Interest Income from Operating Accounts | 853 | - | 853 | 1,329 | 1,942 | 3,370 | 6,220 | 10,803 | 16,294 | 26,499 | 39,511 | 21,308 |
| Interest Income from Removal Escrow Fund | 3,810 | - | 3,810 | 11,866 | 11,884 | 11,902 | 11,920 | 11,937 | 11,955 | 11,973 | 11,991 | 6,005 |
| Restructuring Items | (643,795) | (400,000) | (1,043,795) | - | - | - | - | - | - | - | - | - |
| Impairment Charges | - | (366,064,892) | (366,064,892) | - | - | - | - | - | - | - | - | - |
| Gain on Debt Extinguishment | - | 739,784,806 | 739,784,806 | - | - | - | - | - | - | - | - | - |
| Gain on Litigation | - | - | - | 200,000 | - | - | - | - | - | - | - | - |
| Interest Expense | (7,564,423) | - | (7,564,423) | (1,053,418) | (1,023,362) | (975,794) | (925,493) | (872,303) | (816,056) | (756,579) | (693,685) | (322,136) |
| Debt Amortization | (4,142,673) | - | (4,142,673) | - | - | - | - | - | - | - | - | - |
| Debt Amortization Issuance Cost | (229,011) | - | (229,011) | - | - | - | - | - | - | - | - | - |
| **Net Income** | $ (18,656,971) | $ 373,319,913 | $ 354,662,942 | $ (1,001,453) | $ 103,225 | $ 92,380 | $ 2,162,560 | $ 2,675,782 | $ 4,308,806 | $ 10,117,291 | $ 8,001,721 | $ 6,301,704 |

*DRAFT - SUBJECT TO REVISION*

**Las Vegas Monorail Balance Sheet**

| | 12/31/2010 | Adjusted to Reflect 12/31 Effective Date | Adjusted 12/31/2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 6/30/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | | | | |
| CASH AND CASH EQUIVALENTS | $ 1,337,900 | $ (409,597) | $ 928,303 | $ 844,107 | $ 1,745,577 | $ 2,747,170 | $ 5,546,585 | $ 8,856,918 | $ 12,868,998 | $ 22,462,887 | $ 30,218,143 | $ 26,603,037 |
| ACCOUNTS RECEIVABLE | 9,005 | - | 9,005 | 25,443 | 25,821 | 26,208 | 26,604 | 27,009 | 27,423 | 27,846 | 28,280 | 32,667 |
| PREPAID EXPENSES | 1,857,643 | | 1,857,643 | 1,899,794 | 1,942,914 | 1,987,026 | 2,032,153 | 2,078,317 | 2,125,544 | 2,173,856 | 2,223,280 | 1,149,420 |
| PREPAID TRUSTEE LEGAL EXPENSES | 2,696,566 | (2,696,566) | - | - | - | - | - | - | - | - | - | |
| PREPAID EXPENSES - RETAINERS | 343,788 | - | 343,788 | - | - | - | - | - | - | - | - | - |
| INVESTMENTS - TOTAL | 10,164,406 | (2,253,709) | 7,910,697 | 7,922,563 | 7,934,446 | 7,946,348 | 7,958,268 | 7,970,205 | 7,982,160 | 7,994,134 | 8,006,125 | 8,012,129 |
| 1st Tier Debt Service Reserve | 1 | (1) | | | | | | | | | | |
| 2nd Tier Debt Service Reserve - US Bank | 1,744,834 | (1,744,834) | - | - | - | - | - | - | - | - | - | |
| 1st Tier Debt Service Fund | 19 | (19) | - | - | - | - | - | - | - | - | - | |
| Indemnification Fund | 498,855 | (498,855) | | | | | | | | | | |
| Removal Cost Escrow Fund | 7,910,697 | | 7,910,697 | 7,922,563 | 7,934,446 | 7,946,348 | 7,958,268 | 7,970,205 | 7,982,160 | 7,994,134 | 8,006,125 | 8,012,129 |
| LVMC Pledged Account | 10,000 | (10,000) | - | | | | | | | | | |
| PP&E | 355,433,229 | (329,548,940) | 25,884,289 | 24,227,177 | 22,570,065 | 20,912,953 | 19,255,841 | 17,640,468 | 16,883,282 | 16,126,097 | 15,368,911 | 14,990,318 |
| PREPAID LAND LEASE | 1,588,900 | (1,473,189) | 115,711 | 102,098 | 88,485 | 74,872 | 61,259 | 47,646 | 34,033 | 20,420 | 6,807 | - |
| DEBT ISSUANCE COSTS, NET OF AMORIZATION | 30,092,488 | (30,092,488) | - | - | - | - | - | - | - | - | - | |
| **Total Assets** | $ 403,523,925 | $ (366,474,489) | $ 37,049,436 | $ 35,021,182 | $ 34,307,309 | $ 33,694,577 | $ 34,880,709 | $ 36,620,562 | $ 39,921,437 | $ 48,805,239 | $ 55,851,544 | $ 50,787,671 |
| ACCOUNTS PAYABLE - TOTAL | $ 1,942,220 | $ (900,240) | $ 1,041,980 | $ 1,224,222 | $ 1,235,150 | $ 1,405,631 | $ 1,355,098 | $ 1,398,254 | $ 1,425,655 | $ 1,286,975 | $ 1,489,262 | $ 1,727,143 |
| Accounts Payable | 975,891 | - | 975,891 | 1,158,134 | 1,169,062 | 1,339,543 | 1,289,010 | 1,332,166 | 1,359,566 | 1,220,887 | 1,423,173 | 1,661,054 |
| Accounts Payable - Accruals | - | | - | | | | | | | | | |
| Other Accrued Liabilities | 66,089 | - | 66,089 | 66,089 | 66,089 | 66,089 | 66,089 | 66,089 | 66,089 | 66,089 | 66,089 | 66,089 |
| Liabilities Subject to Compromise | 900,240 | (900,240) | - | - | - | - | - | - | - | - | - | |
| PROFESSIONAL FEES PAYABLE | 353,400 | | 353,400 | - | - | - | - | - | - | - | - | |
| CURRENT PORTION OF LONG TERM DEBT - TOTAL | - | 855,643 | 855,643 | 828,026 | 875,594 | 925,895 | 979,085 | 1,035,331 | 1,094,809 | 1,157,703 | 11,603,558 | - |
| Current Portion of Amended and Restated 1st Tier Note | - | - | - | 828,026 | 875,594 | 925,895 | 979,085 | 1,035,331 | 1,094,809 | 1,157,703 | 603,558 | |
| Current Portion of Add'l Payment Obligation Note | - | | - | - | - | - | - | - | - | - | 11,000,000 | |
| Current Portion of Cure Payment Note | - | 715,643 | 715,643 | - | - | - | - | - | - | - | - | |
| Class 3 Payment Plan | - | 140,000 | 140,000 | - | - | - | - | - | - | - | - | |
| WORKING CAPITAL FACILITY | - | | - | - | - | - | - | - | - | - | - | |
| ACCRUED INTEREST PAYABLE | 39,440,929 | (39,440,929) | - | - | - | - | - | - | - | - | - | |
| LONG TERM DEBT, NET OF CURRENT PORTION - TOTAL | 718,808,877 | (700,308,877) | 18,500,000 | 17,671,974 | 16,796,381 | 15,870,486 | 14,891,401 | 13,856,070 | 12,761,261 | 11,603,558 | - | |
| Long Term Portion of Amended and Restated 1st Tier Note | - | 7,500,000 | 7,500,000 | 6,671,974 | 5,796,381 | 4,870,486 | 3,891,401 | 2,856,070 | 1,761,261 | 603,558 | - | |
| Long Term Portion of Add'l Payment Obligation Note | - | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | - | |
| Long Term Portion of Cure Payment Note | - | | - | - | - | - | - | - | - | - | - | |
| Long Term Portion of 1st, 2nd & 3rd Tier Notes | 718,808,877 | (718,808,877) | - | - | - | - | - | - | - | - | - | |
| **Total Liabilities:** | $ 760,545,426 | $ (739,794,402) | $ 20,751,023 | $ 19,724,222 | $ 18,907,125 | $ 18,202,012 | $ 17,225,584 | $ 16,289,655 | $ 15,281,725 | $ 14,048,236 | $ 13,092,820 | $ 1,727,143 |
| **UNRESTRICTED NET ASSETS** | | | | | | | | | | | | |
| Retained Earnings-Current Year | (18,656,971) | 373,319,913 | 354,662,942 | (1,001,453) | 103,225 | 92,380 | 2,162,560 | 2,675,782 | 4,308,806 | 10,117,291 | 8,001,721 | 6,301,704 |
| Net Assets | (338,364,529) | - | (338,364,529) | 16,298,413 | 15,296,960 | 15,400,185 | 15,492,565 | 17,655,125 | 20,330,907 | 24,639,713 | 34,757,003 | 42,758,725 |
| **Net (Deficit) / Surplus** | $ (357,021,500) | $ 373,319,913 | $ 16,298,413 | $ 15,296,960 | $ 15,400,185 | $ 15,492,565 | $ 17,655,125 | $ 20,330,907 | $ 24,639,713 | $ 34,757,003 | $ 42,758,725 | $ 49,060,429 |
| **Total Liabilities Plus Net (Deficit) / Surplus** | $ 403,523,925 | $ (366,474,489) | $ 37,049,436 | $ 35,021,182 | $ 34,307,309 | $ 33,694,577 | $ 34,880,709 | $ 36,620,562 | $ 39,921,437 | $ 48,805,239 | $ 55,851,544 | $ 50,787,671 |

*DRAFT - SUBJECT TO REVISION*

**Las Vegas Monorail Company Statement of Cash Flows**

| | Q4 2010 | Adjusted to Reflect 12/31 Effective Date | Adjusted Q4 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 1H 2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Flows from Operating Activities** | | | | | | | | | | | | |
| Net Income | $ (18,656,971) | $ 373,319,913 | $ 354,662,942 | $ (1,001,453) | $ 103,225 | $ 92,380 | $ 2,162,560 | $ 2,675,782 | $ 4,308,806 | $ 10,117,291 | $ 8,001,721 | $ 6,301,704 |
| Depreciation | 5,820,809 | - | 5,820,809 | 1,657,112 | 1,657,112 | 1,657,112 | 1,657,112 | 1,615,373 | 757,186 | 757,186 | 757,186 | 378,593 |
| Amortization | 4,381,683 | - | 4,381,683 | 13,613 | 13,613 | 13,613 | 13,613 | 13,613 | 13,613 | 13,613 | 13,613 | 6,807 |
| Change in Receivables | 100 | - | 100 | (16,438) | (378) | (387) | (396) | (405) | (414) | (424) | (433) | (4,387) |
| Change in Prepaid Expenses | (1,314,698) | - | (1,314,698) | (42,151) | (43,120) | (44,112) | (45,127) | (46,165) | (47,226) | (48,313) | (49,424) | 1,073,860 |
| Change in Prepaid Retainers | | | | 343,788 | | | | | | | | |
| Change in Accounts Payable | (66,162) | - | (66,162) | 182,243 | 10,928 | 170,481 | (50,533) | 43,156 | 27,401 | (138,680) | 202,286 | 237,881 |
| Change in Professional Fees Payable | (9,966) | - | (9,966) | (353,400) | | | | | | | | |
| Impairment Charges | - | 366,064,892 | 366,064,892 | - | - | - | - | - | - | - | - | - |
| Gain on Debt Extinguishment | - | (739,784,806) | (739,784,806) | - | - | - | - | - | - | - | - | - |
| **Net Cash Flows from Operating Activities** | (9,845,205) | (400,000) | (10,245,205) | 783,314 | 1,741,379 | 1,889,088 | 3,737,230 | 4,301,355 | 5,059,365 | 10,700,673 | 8,924,949 | 7,994,457 |
| **Cash Flows from Investing** | | | | | | | | | | | | |
| CAPEX | | | | | | | | | | | | |
| Change in Interest Payable | 7,564,423 | - | 7,564,423 | | | | | | | | | |
| Change in Investment Funds | (3,810) | - | (3,810) | (11,866) | (11,884) | (11,902) | (11,920) | (11,937) | (11,955) | (11,973) | (11,991) | (6,005) |
| **Cash Flows from Financing** | | | | | | | | | | | | |
| Cure Payment Notes Payable | - | - | - | (715,643) | | | | | | | | |
| Amended and Restated 1st Tier Note | - | - | - | | (828,026) | (875,594) | (925,895) | (979,085) | (1,035,331) | (1,094,809) | (1,157,703) | (603,558) |
| Additional Obligation Note | - | - | - | | | | | | | | | (11,000,000) |
| Effective Date Plan Payments | - | (9,597) | (9,597) | | | | | | | | | |
| Class 3 Payment Plan | - | - | - | (140,000) | | | | | | | | |
| Working Capital Facility | - | - | - | | | | | | | | | |
| **Net Increase (Decrease) In Cash** | $ (2,284,591) | $ (409,597) | $ (2,694,188) | $ (84,196) | $ 901,470 | $ 1,001,592 | $ 2,799,415 | $ 3,310,333 | $ 4,012,078 | $ 9,593,892 | $ 7,755,255 | $ (3,615,106) |
| Beginning Cash Balance | $ 3,622,491 | $ 1,337,900 | $ 3,622,491 | 928,303 | $ 844,107 | $ 1,745,577 | $ 2,747,170 | $ 5,546,585 | $ 8,856,918 | $ 12,868,996 | $ 22,462,887 | 30,218,143 |
| Change In Cash | (2,284,591) | (409,597) | (2,694,188) | (84,196) | 901,470 | 1,001,592 | 2,799,415 | 3,310,333 | 4,012,078 | 9,593,892 | 7,755,255 | (3,615,106) |
| Ending Cash Balance | $ 1,337,900 | $ 928,303 | $ 928,303 | 844,107 | $ 1,745,577 | $ 2,747,170 | $ 5,546,585 | $ 8,856,918 | $ 12,868,996 | $ 22,462,887 | $ 30,218,143 | $ 26,603,037 |