GORDON SILVER
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: ggordon@gordonsilver.com
WILLIAM M. NOALL, ESQ.
Nevada Bar No. 3549
E-mail: wnoall@gordonsilver.com
GABRIELLE A. HAMM, ESQ.
Nevada Bar No. 11588
E-mail: ghamm@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| In re: | Case No.: 10-10464-BAM |
| | Chapter 11 |
| LAS VEGAS MONORAIL COMPANY, | |
| Debtor. | Confirmation Hearing: |
| | Date:  November 14, 2011 |
| | Time:  9:30 a.m. |

**NOTICE OF FILING BLACKLINE COMPARING DEBTOR'S THIRD
AMENDED PLAN OF REORGANIZATION, AS REVISED TO DEBTOR'S
THIRD AMENDED PLAN FILED ON JUNE 29, 2011**

On September 15, 2011, Las Vegas Monorail Company, debtor and debtor-in-possession

("Debtor"), filed the *Debtor's Third Amended Plan of Reorganization, as Revised* [ECF No.

942] (the "Amended Plan").

Attached hereto is a blackline reflecting the differences between the Amended Plan and

the *Debtor's Third Amended Plan of Reorganization* filed on June 29, 2011 [ECF No. 870].

DATED this 15th day of September 2011.

GORDON SILVER

By:_____/s/ William M. Noall_____
GERALD M. GORDON, ESQ.
WILLIAM M. NOALL, ESQ.
GABRIELLE A. HAMM, ESQ.
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Attorneys For Debtor

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/1326186

GORDON SILVER
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: ggordon@gordonsilver.com
WILLIAM M. NOALL, ESQ.
Nevada Bar No. 3549
E-mail: wnoall@gordonsilver.com
GABRIELLE A. HAMM, ESQ.
Nevada Bar No. 11588
E-mail: ghamm@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| In re: | Case No.: BK-S-10-10464-BAM |
|---|---|
| LAS VEGAS MONORAIL COMPANY, | Chapter 11 |
| Debtor. | |
| | Date: ~~September 16,~~ November 14, 2011 |
| | Time: 9:30 a.m. |

## <u>DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION, AS REVISED</u>

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002v.13/Third Amended Plan.doc

i

**TABLE OF CONTENTS**

1.    DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME...................................................................................... 1

    1.1.    Definitions........................................................................................ 1
        1.1.1.    Reserved. .......................................................................... 1
        1.1.2.    Reserved. .......................................................................... 1
        1.1.3.    Reserved. .......................................................................... 1
        1.1.4.    Reserved. .......................................................................... 1
        1.1.5.    1st Tier Bond(s). ............................................................... 1
        1.1.6.    1st Tier Bondholders. ....................................................... 1
        1.1.7.    1st Tier Bondholders' Insurance Policy. ........................... 1
        1.1.8.    1st Tier Bond Claims. ....................................................... 2
        1.1.9.    1st Tier Bondholders' Surety Bond. .................................. 2
        1.1.10.    1st and 2nd Tier Indenture. .............................................. 2
        1.1.11.    1st Tier Note. .................................................................... 2
        1.1.12.    1st Tier Trustee. ............................................................... 2
        1.1.13.    ~~2nd~~1st Tier ~~Bond(s)~~Trustee Settlement Agreement. .............. 2
        1.1.14.    2nd Tier ~~Bondholders~~Bond(s). .......................................... 2
        1.1.15.    2nd Tier ~~Bond Claims~~Bondholders. .................................. 2
        1.1.16.    2nd Tier ~~Obligation~~Bond Claims. ..................................... 2
        1.1.17.    2nd Tier ~~Trustee~~Obligation. ............................................ 2
        1.1.18.    ~~3rd~~2nd Tier ~~Bond(s)~~Trustee. ......................................... 2
        1.1.19.    3rd Tier ~~Bondholders~~Bond(s). ......................................... 2
        1.1.20.    3rd Tier ~~Bond Claims~~Bondholders. ................................... 3
        1.1.21.    3rd Tier ~~Indenture~~Bond Claims. ....................................... 3
        1.1.22.    3rd Tier ~~Note~~Indenture. .................................................. 3
        1.1.23.    3rd Tier ~~Note.~~ ............................................................... 3
        1.1.24.    3rd Tier Trustees. ............................................................. 3
        ~~1.1.24.    Administrative Claim.~~ ...................................................... ~~3~~
        1.1.25.    Administrative Claim ~~Bar Date~~. ...................................... 3
        1.1.26.    Administrative Claim Bar Date. ........................................ 3
        1.1.27.    Affiliate. ........................................................................... 3
        ~~1.1.27.    Allowed Administrative Claim.~~ ........................................ ~~3~~
        1.1.28.    Allowed Administrative Claim. ........................................ 3
        1.1.29.    ~~Ambac~~Allowed Claim. .................................................... ~~4~~3
        1.1.30.    Ambac ~~Settlement Agreement.~~ ....................................... 4
        1.1.31.    Ambac ~~Insurance Secured Claim~~Settlement Agreement. ... 4
        1.1.32.    Ambac Insurance ~~Unsecured~~Secured Claim. ................... 4
        1.1.33.    Ambac ~~Surety Bond Secured~~Insurance Unsecured Claim. .. 4
        1.1.34.    Ambac Surety Bond ~~Unsecured~~Secured Claim. ............... 4
        1.1.35.    ~~Assets~~Ambac Surety Bond Unsecured Claim. ................ 4
        1.1.36.    Assets. .............................................................................. 4
        1.1.37.    Avoidance Actions. .......................................................... 4
        ~~1.1.37.~~1.1.38.    Bankruptcy Code.~~4~~5
        ~~1.1.38.~~1.1.39.    Bankruptcy Court.~~4~~5
        ~~1.1.39.~~1.1.40.    Bankruptcy Rules.~~5~~
        ~~1.1.40.    Bar Date.~~ ....................................................................... 5
        1.1.41.    Bar Date. .......................................................................... 5
        1.1.42.    Bonds. .............................................................................. 5
        1.1.43.    Bond Registrar. ................................................................ 5
        ~~1.1.42.~~1.1.44.    Business Day.5

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555
Las Vegas, Nevada 89169
(702) 796-5555

102200-002~~v13~~/Third Amended Plan.doc

1.1.43.   CapEx Reserve Account.................................................................5
1.1.44.   CapEx Reserve Account Agreement..............................................5
1.1.45.   CapEx Notes Reserve Account ....................................................5
1.1.46.   CapEx Notes Maturity Date Reserve Account Agreement. ..............5
1.1.47.   CapEx Notes Payment Date. Reserve Account............................5
1.1.48.   Capital Appreciation Notes CapEx Bonds....................................5
1.1.49.   Capital Appreciation Notes CapEx Bonds Maturity Date. ..............65
1.1.50.   CARP CapEx Bonds Payment Date..............................................6
1.1.51.   Cash Capital Appreciation Bonds................................................6
1.1.52.   Cash Available for Debt Service. 6 Capital Appreciation Bonds Maturity Date.
1.1.53.   Cash Pay Notes CARP.................................................................6
1.1.54.   Cash Pay Notes Maturity Date. ...................................................6
1.1.55.   Cash Pay Notes Payment Date Available for Debt Service. ..............6
1.1.56.   Causes of Action Cash Pay Bonds...............................................6
1.1.57.   Chapter 11 Case Cash Pay Bonds Maturity Date.........................6
1.1.58.   Claim. .......................................................7 Cash Pay Bonds Payment Date.6
1.1.59.   Class Causes of Action...............................................................7
1.1.60.   Collateral Chapter 11 Case..........................................................7
1.1.61.   Collection Fund Claim. ...............................................................7
1.1.62.   Confirmation Class.....................................................................7
1.1.63.   Confirmation Date Collateral. ......................................................7
1.1.64.   Confirmation Hearing. Collection Fund........................................7
1.1.65.   Confirmation Order.....................................................................7
1.1.66.   Contingent Claim Confirmation Date. ...........................................7
1.1.67.   Creditor Confirmation Hearing. ...................................................7
1.1.68.   Cure Confirmation Order. ............................................................7
1.1.69.   Debtor Contingent Claim. ............................................................7
1.1.70.   Director Creditor........................................................................7
1.1.71.   Director Claims Cure. .................................................................8
1.1.72.   Debtor. ......................................................................................8
1.1.73.   Director.....................................................................................8
1.1.74.   Director Claims. ........................................................................8
1.1.75.   Disbursing Agent.......................................................................8
1.1.73. 1.1.76.   ............................................................ Disclosure Statement.8
1.1.74. 1.1.77.   ...................................................................Disputed Claim.8
1.1.75. 1.1.78.   ................................................................ Disputed Claim Reserve.8
1.1.76. 1.1.79.   ...................................................................... Distribution.8
1.1.77. 1.1.80.   ................................. D&O Liability Insurance Policy or Policies.8
1.1.78. 1.1.81.   .........................................................................Effective Date.8
1.1.79. 1.1.82.   ............................................ Employment Agreements.8
1.1.80. 1.1.83.   ...................................................................... Estate.89
1.1.81. 1.1.84.   .......................................................... Executory Contract.89
1.1.82. 1.1.85.   ................................................................ Excess Cash.89
1.1.83. 1.1.86.   .......................................... Extraordinary Transaction.89
1.1.84. 1.1.87.   ......................................................................Final Order.9
1.1.85. 1.1.88.   ................................................ Financing Agreement.9
1.1.86. 1.1.89.   ........................................................Franchise Agreement.9
1.1.90.   General Purpose Reserve. ....................................................... 9
1.1.87. 1.1.91.   ......................................................General Unsecured Claim.9
1.1.88. 1.1.92.   ...........................................................................Holder.9
1.1.89. 1.1.93.   ......................................................................... Impaired.9
1.1.90. 1.1.94.   ................................................................................ Lien.9
1.1.91. 1.1.95.   .................................................. Litigation Claims.910
1.1.92. 1.1.96.   .................................................................Local Rule.910
1.1.93. 1.1.97.   ....................................... Majority 1st Tier Bondholders.910

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555
Las Vegas, Nevada 89169
(702) 796-5555

102200-002v13/Third Amended Plan.doc

iii

1.1.94. 1.1.98. ........................................... Majority 1st Tier Bondholders' Approval. 10

1.1.95. Monorail. ...................................................................................... 10

1.1.96. Net Project Revenues. .................................................................... 10

1.1.97. Nevada Secretary. .......................................................................... 10

1.1.98. New Indenture. ............................................................................... 10

1.1.99. New Trust Administration Fees and Expenses Monorail. ...................... 10

1.1.100. New Trust Estate Make-Whole Price. ................................................. 10

1.1.101. New Trustee Net Permitted Interconnection Revenues. ........................ 10

1.1.102. NRS. ......................................................................... 10 Net Project Revenues. 11

1.1.103. Operation and Maintenance Costs Nevada Secretary. ......................... 11

1.1.104. Operating Fund New Indenture. ........................................................ 11

1.1.105. Other Priority Claims New Trust Administration Fees and Expenses. 11

1.1.106. Other Secured Claims New Trust Estate. .............................................. 11

1.1.107. Person New Trustee. ........................................................................ 11

1.1.108. Petition Date NRS. ........................................................................... 11

1.1.109. Plan Operation and Maintenance Costs. .............................................. 11

1.1.110. Plan Supplement. ..................................................... 11 Operating Fund 12

1.1.111. Other Priority Tax Claim Claims. ...................................................... 11 12

1.1.112. Pro Rata. ..................................................................... 11 Other Secured Claims. 12

1.1.113. Professional Fees. ..................................................... 11 Permitted Interconnection. 12

1.1.114. Project Permitted Interconnection Indebtedness. .................................. 12

1.1.115. Project Permitted Interconnection Revenues. ...................................... 12

1.1.116. Recapitalization Event. 12 Permitted Interconnection Operation and Maintenance

1.1.117. Permitted Stations. ........................................................................... 13

1.1.118. Permitted Station Indebtedness. ......................................................... 13

1.1.119. Permitted Station Revenues. .............................................................. 13

1.1.120. Person. ............................................................................................. 13

1.1.121. Petition Date. .................................................................................... 13

1.1.122. Plan. ................................................................................................. 13

1.1.123. Plan Supplement. .............................................................................. 13

1.1.124. Priority Tax Claim. ........................................................................... 13

1.1.125. Pro Rata. .......................................................................................... 14

1.1.126. Professional Fees. ............................................................................. 14

1.1.127. Project. ............................................................................................. 14

1.1.128. Project Revenues. .............................................................................. 14

1.1.129. Recapitalization Event ...................................................................... 14

1.1.117. 1.1.130. .................................................................. Record Date. 12 14

1.1.118. 1.1.131. .......................................................... Rehabilitation Proceedings. 12 14

1.1.119. 1.1.132. .................................................................. Released Parties. 12 15

1.1.120. 1.1.133. .................................................................. Releasing Parties. 12 15

1.1.121. 1.1.134. .................................................................. Reorganized LVMC. 13 15

1.1.122. 1.1.135. ..................................... Reorganized LVMC Organizational Documents. 13 15

1.1.123. 1.1.136. .................................................................. Revenue Fund. 13 15

1.1.124. 1.1.137. .................................................................. Schedules. 13 15

1.1.125. 1.1.138. .................................................................. Secured Claim. 13 15

1.1.126. 1.1.139. .................................................................. Secured Tax Claims. 13 15

1.1.127. 1.1.140. .................................................................. Security Documents. 13 15

1.1.128. 1.1.141. .................................................................. Subordinated Claims. 13 16

1.1.129. 1.1.142. .................................................................. Substantial Consummation. 13 16

1.1.130. 1.1.143. .................................................................. Taxes. 13 16

1.1.131. 1.1.144. .................................................................. TIP Proceedings. 14 16

1.1.132. 1.1.145. .................................................................. Third Party Release. 14 16

1.1.133. 1.1.146. .................................................................. Triggering Event. 14 16

1.1.134. 1.1.147. .................................................................. Triggering Event Payment. 14 16

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555
Las Vegas, Nevada 89169
(702) 796-5555

102200-002 v13/Third Amended Plan.doc

iv

            1.1.135.1.1.148. ........................................................................ Unexpired Lease.1417

            1.1.136.1.1.149. .............................................................................. Unimpaired.1417

            1.1.137.1.1.150. ........................................................................ Working Capital.1417

1.2.    Rules of Interpretation. ................................................................. 1517

1.3.    Computation of Time. .................................................................. 1517

**2.      TREATMENT OF UNCLASSIFIED CLAIMS** ............................................. **1517**

2.1.    General. ........................................................................................ 1517

2.2.    Treatment of Administrative Claims. ............................................ 1517

    2.2.1.    Requests for Payment. ................................................... 1517

    2.2.2.    Allowed Priority Tax Claims. ........................................ 1518

**3.      DESIGNATION OF CLASSES OF CLAIMS** ................................................ **1618**

3.1.    Summary of Classification. ......................................................... 1618

3.2.    Specific Classification. ............................................................... 1719

    3.2.1.    Class 1: Other Priority Claims. ..................................... 1719

    3.2.2.    Class 2: Other Secured Claims. ..................................... 1719

    3.2.3.    Class 3: General Unsecured Claims. ............................... 1719

    3.2.4.    Class 4A: 1st Tier Bond Secured Claims. ...................... 1719

    3.2.5.    Class 4B: Ambac Surety Bond Secured Claims. ............ 1719

    3.2.6.    Class 4C: Ambac Insurance Secured Claims. ................. 1719

    3.2.7.    Class 5A: 1st Tier Bond Unsecured Claims. .................. 1719

    3.2.8.    Class 5B: Ambac Surety Bond Unsecured Claims. ........ 1719

    3.2.9.    Class 5C: Ambac Insurance Unsecured Claims. ............ 1719

    3.2.10.   Class 6: 2nd Tier Bond Claims. ...................................... 1719

    3.2.11.   Class 7: 3rd Tier Bond Claims. ...................................... 1719

    3.2.12.   Class 8: Director Claims. ............................................... 1720

    3.2.13.   Class 9: Subordinated Claims. ...................................... 1720

**4.      DESIGNATION OF AND PROVISIONS FOR TREATMENT OF CLASSES Of CLAIMS NOT IMPAIRED BY THIS PLAN** ............................................. **1720**

4.1.    Class 1 – Other Priority Claims. ................................................. 1720

4.2.    Class 2 – Other Secured Claims. ................................................ 1820

**5.      DESIGNATION OF AND PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS IMPAIRED BY THIS PLAN** ................................................. **1820**

5.1.    Class  3 – General Unsecured Claims. ........................................ 1820

5.2.    Class 4A, Class 4B and Class 4C – 1st Tier Bond Secured Claims, Ambac Surety Bond Secured Claims, and Ambac Insurance Secured Claims. ....................... 1820

5.3.    Class 5A, Class 5B and Class 5C – 1st Tier Bond Unsecured Claims, Ambac Surety Bond Unsecured Claims, and the Ambac Insurance Unsecured Claims. .................................................. 2124

5.4.    Class 6 – 2nd Tier Bond Claims. ................................................ 2225

5.5.    Class 7 – 3rd Tier Bond Claims. ................................................ 2226

5.6.    Class 8 – Director Claims. .......................................................... 2226

5.7.    Class 9 – Subordinated Claims. .................................................. 2226

**6.      MEANS FOR IMPLEMENTATION OF PLAN** ............................................ **2326**

6.1.    Reorganized LVMC. .................................................................. 2326

6.2.    Additional Reorganized LVMC Provisions. ............................... 2326

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002v.13/Third Amended Plan.doc

v

|  |  |  |
|---|---|---|
| 6.3. | Effective Date Events. | ~~23~~26 |
| 6.4. | Additional ~~Notes~~Bond Terms. | ~~23~~27 |
| 6.5. | New Financing for New Passenger Stations. | ~~25~~28 |
| 6.6. | Capital Expenditures and Procedures. | ~~25~~29 |
| 6.7. | Extraordinary Transactions. | ~~26~~30 |
| 6.8. | Post-Effective Date Officers and Directors of Reorganized LVMC. | ~~26~~30 |
| 6.9. | Certain Rights of the New Trustee | ~~27~~31 |
| 6.10. | No Corporate Action Required. | ~~27~~31 |
| 6.11. | Effectuation of Transactions. | ~~28~~31 |
| 6.12. | Required Findings. | ~~28~~32 |
| 6.13. | Filing with Nevada Secretary | ~~28~~32 |

**7.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......................... ~~28~~**32**

| 7.1. | Executory Contracts. | ~~28~~32 |
| 7.2. | Approval of Assumption or Rejection. | ~~28~~32 |
| 7.3. | Cure of Defaults. | ~~29~~32 |
| 7.4. | Objection to Cure Amounts. | ~~29~~33 |
| 7.5. | Confirmation Order. | ~~29~~33 |
| 7.6. | Post-Petition Date Contracts and Leases. | ~~29~~33 |
| 7.7. | Bar Date. | ~~29~~33 |

**8.    MANNER OF DISTRIBUTION OF PROPERTY UNDER THIS PLAN** ........... ~~30~~**33**

| 8.1. | Distributions. | ~~30~~33 |
| 8.2. | No Recourse. | ~~30~~33 |
| 8.3. | Reserves. | ~~30~~34 |
| 8.4. | Statements. | ~~30~~34 |
| 8.5. | Further Authorization. | ~~30~~34 |

**9.    CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** ........................................................................... ~~30~~**34**

| 9.1. | Conditions to Confirmation. | ~~30~~34 |
| 9.2. | Conditions to Effectiveness. | ~~30~~34 |
| 9.3. | Notice of Effectiveness. | ~~31~~35 |
| 9.4. | Waiver of Conditions. | ~~31~~35 |

**10.    TITLE TO PROPERTY; DISCHARGE; INJUNCTION** .................................... ~~31~~**35**

| 10.1. | Vesting of Assets. | ~~31~~35 |
| 10.2. | Preservation of Litigation Claims. | ~~31~~35 |
| 10.3. | Settlement of Litigation Claims. | ~~32~~35 |
| 10.4. | Discharge. | ~~32~~35 |
| 10.5. | Compromise and Settlement. | ~~32~~36 |
| 10.6. | Releases. | ~~32~~36 |
| 10.7. | Third Party Releases. | ~~33~~36 |
| 10.8. | Injunction. | ~~33~~37 |
| 10.9. | Exculpation. | ~~33~~37 |
| 10.10. | Director and Officer Liability Insurance. | ~~34~~37 |
| 10.11. | Indemnification. | ~~34~~38 |

**11.    RETENTION OF JURISDICTION** ................................................................ ~~34~~**38**

| 11.1. | Jurisdiction. | ~~34~~38 |

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555
Las Vegas, Nevada 89169
(702) 796-5555

102200-002~~/~~v.13/Third Amended Plan.doc

**12.      MODIFICATION AND AMENDMENT OF PLAN** ................................................ ~~36~~39

    12.1.   Modification and Amendment. ................................................................ ~~36~~39

**13.      MISCELLANEOUS** ................................................................................ ~~36~~39

    13.1.   Filing of Objections to Claims. ................................................................ ~~36~~40
    13.2.   Resolution of Objections after Effective Date; Distributions. ................ ~~36~~40
        13.2.1.   Distributions. ................................................................................ ~~36~~40
        13.2.2.   Late-Filed Claims. ....................................................................... ~~36~~40
    13.3.   Effectuating Documents; Further Transactions; Timing. ....................... ~~36~~40
    13.4.   Cancellation of Existing Agreements. ................................................... ~~37~~40
    13.5.   Exemption from Transfer Taxes. ........................................................... ~~37~~41
    13.6.   Revocation or Withdrawal of this Plan. .................................................. ~~37~~41
    13.7.   Binding Effect. ...................................................................................... ~~37~~41
    13.8.   Governing Law. ..................................................................................... ~~38~~41
    13.9.   Modification of Payment Terms. ............................................................ ~~38~~41
    13.10.   Means of Cash Payment ..................................................................... ~~38~~42
    13.11.   Providing for Claims Payments. .......................................................... ~~38~~42
    13.12.   Set Offs. ............................................................................................. ~~38~~42
    13.13.   Notices. .............................................................................................. ~~38~~42
    13.14.   Severability. ....................................................................................... ~~39~~43
    13.15.   Withholding and Reporting Requirements. ........................................... ~~40~~43
    13.16.   Post Confirmation Reporting. .............................................................. ~~40~~44
    13.17.   Cramdown. ......................................................................................... ~~40~~44
    13.18.   Quarterly Fees to the United States Trustee. ...................................... ~~40~~44

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002~~v.13~~/Third Amended Plan.doc

The Debtor,[1] debtor and debtor-in-possession in the Chapter 11 Case, proposes this Third Amended Plan of Reorganization, As Revised, for the resolution of the Debtor's outstanding Claims. All Creditors and other parties-in-interest should refer to the Disclosure Statement for a discussion of the Debtor's history, assets, historical financial data, and for a summary and analysis of this Plan and certain related matters.

All Holders of Claims against the Debtor are encouraged to read this Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject this Plan. Holders of 2nd Tier Bond Claims and 3rd Tier Bond Claims are deemed to have rejected this Plan and are not entitled to vote. As a Nevada non-profit corporation, the Debtor has no equity interests held by any person or entity. Consequently, this Plan does not provide for treatment of equity interests.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and Local Rule 3019, and those restrictions or modifications set forth in **Article 12** to this Plan, the Debtor expressly reserves the right to alter, amend, strike, withdraw or modify this Plan one or more times before the Effective Date.

## 1.    DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

**1.1.    Definitions.** For purposes of this Plan, and except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this **Article 1**. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, in that order of priority. Whenever the context requires, such terms shall include the plural as well as the singular, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**1.1.1.    Reserved.**

**1.1.2.    Reserved.**

**1.1.3.    Reserved.**

**1.1.4.    Reserved.**

**1.1.5.    1st Tier Bond(s).** The Director of the State of Nevada Department of Business and Industry Las Vegas Monorail Project Revenue Bonds 1st Tier Series 2000, including both the Capital Appreciation 1st Tier Bonds in the initial denominational amount of $98,743,217 and the Current Interest 1st Tier Series Bonds in the initial denominational amount of $352,705,000, issued pursuant to the 1st and 2nd Tier Indenture, for a total initial denominational amount of $451,448,217.

**1.1.6.    1st Tier Bondholders.** Each Holder of one or more 1st Tier Bonds pursuant to the 1st and 2nd Tier Indenture as identified on the bond registration books of the Bond Registrar on the Record Date.

**1.1.7.    1st Tier Bondholders' Insurance Policy.** The policy of insurance purchased by the Debtor and issued by Ambac in favor of the 1st Tier Bondholders insuring payment of principal and interest on the 1st Tier Bonds.

---

[1] Capitalized terms are defined in Section 1.1 of this Plan.



Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

**1.1.8.    1st Tier Bond Claims.**  Any and all Claims held by a 1st Tier Bondholder and the 1st Tier Trustee under the 1st and 2nd Tier Indenture, the 1st Tier Note, 1st Tier Bonds, and Financing Agreement, which shall be deemed Allowed in the amount of not less than $500,248,667.80.

**1.1.9.    1st Tier Bondholders' Surety Bond.**  The surety bond issued by Ambac in favor of the 1st Tier Trustee and the 1st Tier Bondholders guaranteeing $20,991,807.50 of amounts due to the 1st Tier Bondholders under the 1st and 2nd Tier Indenture.

**1.1.10.    1st and 2nd Tier Indenture.**  The Senior Indenture dated September 1, 2000 with the Director as obligor and Wells Fargo Bank, N.A. as Trustee for the benefit of the 1st Tier Bondholders and 2nd Tier Bondholders.

**1.1.11.    1st Tier Note.**  The $451,448,217 promissory note dated September 1, 2000, which the Debtor as obligor issued in favor of the Director pursuant to the Financing Agreement and which the Director assigned to the 1st Tier Trustee.

**1.1.12.    1st Tier Trustee.**  Wells Fargo Bank, N.A, solely in its capacity as Indenture Trustee under the 1st and 2nd Tier Indenture for the 1st Tier Bondholders, and any successor thereto.

**1.1.13.    1st Tier Trustee Settlement Agreement.**  A Settlement Agreement anticipated to be executed prior to Confirmation Hearing by Ambac, the 1st Tier Trustee, the Majority 1st Tier Bondholders and LVMC and approved by the Bankruptcy Court at the Confirmation Hearing specifying the alternative terms of how the New Bonds will be held by the 1st Tier Trustee in a form which shall be substantially as attached as an exhibit to the Plan Supplement.

**1.1.14.    ~~1.1.13.~~ 2nd Tier Bond(s).**  The Director of the State of Nevada Department of Business and Industry Las Vegas Monorail Project Revenue Bonds 2nd Tier Series 2000 issued in the aggregate principal amount of $149,200,000 pursuant to the 1st and 2nd Tier Indenture.  The 2nd Tier Bonds are contractually subordinated to the 1st Tier Bonds and all 1st Tier Bond Claims.

**1.1.15.    ~~1.1.14.~~ 2nd Tier Bondholders.**  Each Holder of one or more 2nd Tier Bonds pursuant to the 1st and 2nd Tier Indenture as identified on the bond registration books of the Bond Registrar on the Record Date.

**1.1.16.    ~~1.1.15.~~ 2nd Tier Bond Claims.**  Any and all Claims held by a 2nd Tier Bondholder and the 2nd Tier Trustee under the 1st and 2nd Tier Indenture, the 2nd Tier Bonds, the 2nd Tier Obligation, and Financing Agreement.

**1.1.17.    ~~1.1.16.~~ 2nd Tier Obligation.**  The $149,200,000 obligation arising under the Financing Agreement of which the Debtor is the obligor in favor of Director pursuant to the Financing Agreement and which the Director assigned to the 2nd Tier Trustee.

**1.1.18.    ~~1.1.17.~~ 2nd Tier Trustee.**  U.S. Bank National Association solely in its capacity as successor indenture trustee with respect to the 2nd Tier Bonds and co-trustee under the 1st and 2nd Tier Indenture and any successor thereto.

**1.1.19.    ~~1.1.18.~~ 3rd Tier Bond(s).**  The Director of the State of Nevada Department of Business and Industry Las Vegas Monorail Project Revenue Bonds 3rd Tier Series 2000 A-I issued in the initial denominational amount of $48,500,000 pursuant to the 3rd Tier Indenture. The 3rd Tier Bonds are contractually subordinated to the 1st Tier Bonds, 2nd Tier Bonds, and all 1st Tier Bond Claims and 2nd Tier Bond Claims.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

**1.1.20.**    ~~1.1.19.~~ **3rd Tier Bondholders.**  Each Holder of one or more of the 3rd Tier Bonds pursuant to the 3rd Tier Indenture as identified on the bond registration books of the Bond Registrar on the Record Date.

**1.1.21.**    ~~1.1.20.~~ **3rd Tier Bond Claims.**  Any and all Claims held by a 3rd Tier Bondholder and the 3rd Tier Trustee under the 3rd Tier Indenture, the 3rd Tier Bonds, the 3rd Tier Note, and Financing Agreement.

**1.1.22.**    ~~1.1.21.~~ **3rd Tier Indenture.**  The Subordinate Indenture dated September 1, 2000 with the Director as obligor and Wells Fargo Bank, N.A. as Trustee for the benefit of the 3rd Tier Bondholders.

**1.1.23.**    ~~1.1.22.~~ **3rd Tier Note.**  The $48,500,000 promissory note dated September 1, 2000, which the Debtor as obligor issued in favor of the Director pursuant to the Financing Agreement and which the Director assigned to the 3rd Tier Trustees.

**1.1.24.**    ~~1.1.23.~~ **3rd Tier Trustees.**  Law Debenture Trust Company of New York, solely in its capacity as Indenture Trustee under the 3rd Tier Indenture for the 3rd Tier Bondholders, and any successors thereto with respect to the Las Vegas Monorail Project Revenue Bonds 3rd Tier Series 2000 A-1.

**1.1.25.**    ~~1.1.24.~~ **Administrative Claim.**  A Claim for any cost or expense of administration of the Estate allowed under sections 503(b), 507(b), 546(c)(2), and 1114(e)(2) of the Bankruptcy Code and entitled to priority under section 507(a) of the Bankruptcy Code, including, but not limited to: (i) any fees payable pursuant to section 1930 of Title 28 of the United States Code; (ii) any actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estate and operating the business of the Debtor, including Taxes, wages, salaries, or commissions for services rendered; (iii) the value of any goods received by the Debtor within twenty (20) days before the Petition Date in which the goods have been sold to the Debtor in the ordinary course of its business; and (iv) all Professional Fees approved by the Bankruptcy Court pursuant to interim and final allowances.  To the extent that a Claim is allowed as an Administrative Claim pursuant to section 365(d)(3) and (d)(5) of the Bankruptcy Code, such Claim shall also be deemed an Administrative Claim under this paragraph.

**1.1.26.**    ~~1.1.25.~~ **Administrative Claim Bar Date.**  The end of the first Business Day occurring on or after the sixtieth (60th) day after the Effective Date.

**1.1.27.**    ~~1.1.26.~~ **Affiliate.**  As defined in section 101(2) of the Bankruptcy Code.

**1.1.28.**    ~~1.1.27.~~ **Allowed Administrative Claim.**  An Administrative Claim: (i) as to which no objection has been filed or, if an objection has been filed, has been resolved by the allowance of such Administrative Claim by a Final Order of the Bankruptcy Court; or (ii) which requires payment in the ordinary course and as to which there is no Final Order of the Bankruptcy Court in effect which prohibits any such payment.

**1.1.29.**    ~~1.1.28.~~ **Allowed Claim.**  A Claim or any portion thereof that is not a Disputed Claim:  (i) that is allowed pursuant to (a) this Plan or Final Order of the Bankruptcy Court, (b) any stipulation executed prior to the Confirmation Date and approved by a Final Order of the Bankruptcy Court, (c) any stipulation with the Debtor or Reorganized LVMC, as the case may be, executed before, on or after the Confirmation Date and approved by a Final Order of the Bankruptcy Court, or (d) any contract, instrument, indenture, or other agreement entered into or assumed in connection with this Plan; (ii) proof of which, requests for payment of which, or application for allowance of which, was filed, or deemed to be filed on or before the Bar Date for filing proofs of Claim or requests for payment of Claims of such type against the Debtor; or (iii)

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

3

102200-002~~v.12~~v.13/Third Amended Plan.doc

if no proof of Claim is filed, which has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent; and in the case of (ii) or (iii) no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or the Bankruptcy Court, or the Bankruptcy Court has entered a Final Order allowing all or a portion of such Claim. Notwithstanding anything herein to the contrary, by treating a Claim as an Allowed Claim, the Debtor does not waive its right to contest the amount and validity of any disputed, contingent or unliquidated Claim in the manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Case had not been commenced.

**1.1.30.** ~~1.1.29.~~ **Ambac.** This term shall refer to Ambac Assurance Corporation and The Segregated Account of Ambac Assurance Corporation and The Segregated Account of Ambac Assurance Corporation by its court appointed Rehabilitator, the Office of the Commissioner of Insurance for the State of Wisconsin.

**1.1.31.** ~~1.1.30.~~ **Ambac Settlement Agreement.** This term shall refer to the Settlement Agreement dated as of December 27, 2010, among Ambac Assurance Corporation, the Segregated Account of Ambac Assurance Corporation, the Special Deputy Commissioner for the Segregated Account on behalf of the Commissioner of Insurance of the State of Wisconsin, as court-appointed rehabilitator for the Segregated Account (only with respect to certain sections of the Ambac Settlement Agreement), and the Majority 1st Tier Bondholders. A true and correct copy of the Ambac Settlement Agreement to be attached to the amended Plan Supplement and incorporated herein by this reference.

**1.1.32.** ~~1.1.31.~~ **Ambac Insurance Secured Claim.** This term shall refer to any of Ambac's Secured Claims against LVMC arising under or related to the 1st Tier Bondholders' Insurance Policy.

**1.1.33.** ~~1.1.32.~~ **Ambac Insurance Unsecured Claim.** This term shall refer to any of Ambac's Unsecured Claims against LVMC arising under or related to the 1st Tier Bondholders' Insurance Policy.

**1.1.34.** ~~1.1.33.~~ **Ambac Surety Bond Secured Claim.** This term shall refer to any of Ambac's Secured Claims arising under or related to the 1st Tier Bondholders' Surety Bond.

**1.1.35.** ~~1.1.34.~~ **Ambac Surety Bond Unsecured Claim.** This term shall refer to any of Ambac's Unsecured Claims arising under or related to the 1st Tier Bondholders' Surety Bond.

**1.1.36.** ~~1.1.35.~~ **Assets.** All of the assets, property, interests, and effects, real and personal, tangible and intangible, wherever situated, of the Debtor, including without limitation the Franchise Agreement, Avoidance Actions, Litigation Claims, Causes of Action, insurance recoveries (provided, however, that all insurance recoveries (net of legal fees and costs and other costs of recovery) related to the claims made in relation to train 9 (see **Schedule** ~~1.1.91~~**1.1.95** item 2) shall be earmarked for the Bombardier Transit Corporation cure payment or reimbursement of Reorganized LVMC therefore to the extent such payments have already been made by Reorganized LVMC), tax refunds and Project Revenues, as they exist on the Effective Date, or are thereafter acquired by Reorganized LVMC. Permitted Stations and Permitted Interconnections shall not be included in Collateral or the Trust Estate so long as any Permitted Station Indebtedness or Permitted Interconnection Indebtedness, as the case may be, remains outstanding.

**1.1.37.** ~~1.1.36.~~ **Avoidance Actions.** All avoidance, recovery, subordination and other similar actions preserved for the Estate under the Bankruptcy Code, including but not

4

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

limited to those set forth in sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code regardless of whether or not such action has been commenced prior to the Effective Date.

**1.1.38.** ~~1.1.37.~~ **Bankruptcy Code.** The Bankruptcy Reform Act of 1978, title 11, United States Code, as applicable to the Chapter 11 Case, as now in effect or hereafter amended, 11 U.S.C. §§ 101 et seq.

**1.1.39.** ~~1.1.38.~~ **Bankruptcy Court.** The United States Bankruptcy Court for the District of Nevada, having jurisdiction over the Chapter 11 Case and, to the extent of the withdrawal of any reference under section 157 of title 28 of the United States Code and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the District of Nevada.

**1.1.40.** ~~1.1.39.~~ **Bankruptcy Rules.** The Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075.

**1.1.41.** ~~1.1.40.~~ **Bar Date.** The date or dates established by this Plan, order of the Bankruptcy Court, or the Bankruptcy Code, Bankruptcy Rules, or Local Rules for the filing of of proofs of Claim for all Creditors.

**1.1.42.** **Bonds.** Shall mean generally the Cash Pay Bonds, the CapEx Bonds and the Capital Appreciation Bonds.

**1.1.43.** ~~1.1.41.~~ **Bond Registrar.** Shall mean (i) with respect to the 1st Tier Bondholders, the 1st Tier Trustee; (ii) with respect to the 2nd Tier Bondholders, the 2nd Tier Trustee; and (iii) with respect to the 3rd Tier Bondholders, the 3rd Tier Trustees.

**1.1.44.** ~~1.1.42.~~ **Business Day.** Any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)) in Nevada.

**1.1.45.** ~~1.1.43.~~ **CapEx Reserve Account** The account maintained and owned by the New Trustee pursuant to the CapEx Reserve Account Agreement, in which all Excess Cash, to the extent extant, shall be deposited no less frequently than the fifteenth (15th) day following the end of each calendar quarter. The funds deposited to the CapEx Reserve Account shall be the property of the New Trust Estate, and not the property of Reorganized LVMC, to be held by the New Trustee for the benefit of the holders of the Cash Pay ~~Notes~~Bonds, the CapEx ~~Notes~~Bonds and the Capital Appreciation ~~Notes~~Bonds, as their interests appear, and shall not be property of Reorganized Debtor.

**1.1.46.** ~~1.1.44.~~ **CapEx Reserve Account Agreement.** The agreement between Reorganized LVMC and the New Trustee governing the ownership, use, and other disposition of the CapEx Reserve Account which shall be substantially in the form as attached as an exhibit to the Plan Supplement.

**1.1.47.** **CapEx Reserve Account Minimum Balance**. Shall mean $2,000,000 as a reserve for the New Trustee (which reserve shall be reduced to $550,000 both after or in connection with the satisfaction of the CapEx Bonds.

**1.1.48.** ~~1.1.45.~~ **CapEx ~~Notes~~Bonds.** The pay-in-kind capital expenditure ~~notes~~bonds to be issued by Reorganized LVMC in favor of the New Trustee on the Effective Date pursuant to the New Indenture which will be in the aggregate principal amount of $19,500,000 with interest in arrears at ten percent (10%) per annum payable quarterly "in-kind" commencing, and thereafter continuing, on the CapEx ~~Notes~~Bonds Payment Date with the last

**Gordon Silver**
~~Attorneys At Law~~
~~Ninth Floor~~
~~3960 Howard Hughes Pkwy~~
~~Las Vegas, Nevada 89169~~
~~(702) 796-5555~~
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

payment due on the CapEx ~~Notes~~Bonds Maturity Date.  The CapEx ~~Notes~~Bonds shall be substantially in the form attached as an exhibit to the Plan Supplement.

**1.1.49.**  ~~1.1.46.~~ **CapEx ~~Notes~~Bonds Maturity Date.**  June 30, 2019, or a later agreed upon date in the event the CapEx ~~Notes~~Bonds are extended as provided in this Plan.

**1.1.50.**  ~~1.1.47.~~ **CapEx ~~Notes~~Bonds Payment Date.**  The fifteenth (15th) day of the month immediately following the end of the first calendar quarter from the Effective Date and continuing on the same day each calendar quarter thereafter.

**1.1.51.**  ~~1.1.48.~~ **Capital Appreciation ~~Notes~~Bonds.**  The pay-in-kind capital appreciation ~~notes~~bonds to be issued by Reorganized LVMC in favor of the New Trustee on the Effective Date pursuant to the New Indenture which will be in the aggregate principal amount of $10,000,000 with interest in arrears at 8.315% per annum compounded and payable "in-kind" annually, at the end of each calendar year, with interest commencing on the Effective Date.  The Capital Appreciation ~~Notes~~Bonds shall be substantially in the form as attached as an exhibit to the Plan Supplement.

**1.1.52.**  ~~1.1.49.~~ **Capital Appreciation ~~Notes~~Bonds Maturity Date.**  The earliest to occur of the occurrence of a Triggering Event and June 30, 2055.

**1.1.53.**  ~~1.1.50.~~ **CARP.**  The Capital Asset Replacement Program defined in section 5.1 of the Monorail Operation and Maintenance Agreement dated September 1, 2000, to be assumed under this Plan.

**1.1.54.**  ~~1.1.51.~~ **Cash.**  The legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, wire transfers, and other cash equivalents.

**1.1.55.**  ~~1.1.52.~~ **Cash Available for Debt Service.**  Net Project Revenues less approved expenditures for system expansion analysis, note issuance expenses, plus the sum of extraordinary or one-time gains, including, without limitation, items such as insurance recoveries (except to the extent such recoveries are for damage to the Project that has not been remediated with operating revenues as an Operation and Maintenance Expense), tax refunds, litigation recoveries, and proceeds of asset sales.

**1.1.56.**  ~~1.1.53.~~ **Cash Pay ~~Notes~~Bonds.**  The 10% senior ~~notes~~bonds to be issued by Reorganized LVMC in favor of the New Trustee on the Effective Date pursuant to the New Indenture which will be in the aggregate principal amount of $15,000,000 with interest in arrears at ten percent (10%) per annum payable quarterly in cash commencing on the Effective Date, and thereafter continuing, on the Cash Pay ~~Notes~~Bonds Payment Date with the last payment due on the Cash Pay ~~Notes~~Bonds Maturity Date; provided, however, that the accrued interest payable on any Cash Pay ~~Notes~~Bonds Payment Date may be paid "in-kind" through 2014 to the extent that payment of interest in cash would result in Reorganized LVMC having Working Capital of less than $2,400,000.  Principal shall begin to be amortized at the quarterly rate of 0.875% of the initial principal balance of the Cash Pay ~~Notes~~Bonds commencing on April 15, 2017.  In addition the principal shall be reduced following the end of each calendar quarter by a pro rata redemption in an amount equal to 50% of Excess Cash as of the end of such calendar quarter, after funding of the amounts set forth in clauses (i), (ii), (iii) and (iv) of **Section 5.2.8**, and subject to the concluding proviso of such Section.  In the event that Reorganized LVMC does not have funds available to pay any quarterly cash pay interest that is otherwise due and payable on a Cash Pay ~~Notes~~Bonds Payment Date, funds from the CapEx Reserve Account shall be applied to satisfy any interest shortfall on the Cash Pay ~~Notes~~Bonds to the extent available under **Section 5.2.9** of this Plan. The Cash Pay ~~Notes~~Bonds shall be substantially in the form as attached as an exhibit to the Plan Supplement.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002~~/~~v13/Third Amended Plan.doc

**1.1.57.** ~~1.1.54.~~ **Cash Pay ~~Notes~~Bonds Maturity Date.** June 30, 2019.

**1.1.58.** ~~1.1.55.~~ **Cash Pay ~~Notes~~Bonds Payment Date.** The fifteenth (15th) day of the month immediately following the end of the first calendar quarter following the Effective Date and continuing on the same day each calendar quarter thereafter.

**1.1.59.** ~~1.1.56.~~ **Causes of Action.** All actions, causes of action, Litigation Claims, claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims and any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, up to and through the Effective Date.

**1.1.60.** ~~1.1.57.~~ **Chapter 11 Case.** The Debtor's bankruptcy case under chapter 11 of the Bankruptcy Code styled In re Las Vegas Monorail Company, Case No. 10-10464, in the United States Bankruptcy Court for the District of Nevada.

**1.1.61.** ~~1.1.58.~~ **Claim.** Any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.1.62.** ~~1.1.59.~~ **Class.** A category of Holders of Claims as classified in this Plan.

**1.1.63.** ~~1.1.60.~~ **Collateral.** Except to the extent specifically provided otherwise in this Plan, all Assets, and all proceeds, revenues, rents, issues and profits generated therefrom; and all assets and property, whether tangible or intangible, acquired by Reorganized LVMC in exchange or substitution for or in consideration of any of the foregoing, including Project Revenues.

**1.1.64.** ~~1.1.61.~~ **Collection Fund.** As defined in the New Indenture.

**1.1.65.** ~~1.1.62.~~ **Confirmation.** The entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified under this Plan having been satisfied or waived.

**1.1.66.** ~~1.1.63.~~ **Confirmation Date.** The date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.1.67.** ~~1.1.64.~~ **Confirmation Hearing.** The duly-noticed initial hearing held by the Bankruptcy Court regarding confirmation of this Plan pursuant to section 1128 of the Bankruptcy Code, and any subsequent hearing held by the Bankruptcy Court to which the initial hearing is adjourned without further notice other than the announcement of the adjourned dates at the Confirmation Hearing.

**1.1.68.** ~~1.1.65.~~ **Confirmation Order.** The order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002~~v~~v13/Third Amended Plan.doc

1.1.69.    1.1.66. **Contingent Claim.**  A Claim which is contingent, unmatured, or unliquidated on or immediately before the Confirmation Date, or if partially contingent, only to the extent of such contingent status.

1.1.70.    1.1.67. **Creditor.**  Any Holder of a Claim, whether or not such Claim is an Allowed Claim.

1.1.71.    1.1.68. **Cure.**  The distribution on the Effective Date or as soon thereafter as practicable or as otherwise agreed to by the Debtor or Reorganized LVMC, as applicable, and the other party of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an Executory Contract or Unexpired Lease pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations due under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

1.1.72.    1.1.69. **Debtor.**  Las Vegas Monorail Company, a Nevada nonprofit corporation, in its capacity as debtor and debtor-in-possession.

1.1.73.    1.1.70. **Director.**  Director of the State of Nevada Department of Business and Industry.

1.1.74.    1.1.71. **Director Claims.**  Any and all Claims of the Director against LVMC.

1.1.75.    1.1.72. **Disbursing Agent.**  Reorganized LVMC or any party designated by the Reorganized LVMC to serve as disbursing agent under this Plan.

1.1.76.    1.1.73. **Disclosure Statement.**  The disclosure statement for this Plan, as may be amended, supplemented or modified, together with all exhibits and attachments thereto, that is prepared and distributed in accordance with, among others, sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3016 and 3017, and other applicable law.

1.1.77.    1.1.74. **Disputed Claim.**  A Claim or any portion thereof which is:  (i) subject to timely objection interposed by the Debtor or Reorganized LVMC or any other party-in-interest entitled to file and prosecute such objection in the Chapter 11 Case, unless allowed by the Court on or before the Confirmation Date; (ii) a Claim that is listed by the Debtor as disputed, unliquidated or contingent in the Schedules; provided, however, that the Bankruptcy Court may estimate a Disputed Claim for purposes of allowance pursuant to section 502 of the Bankruptcy Code. In the event there is a dispute as to classification or priority of a Claim, it shall be considered a Disputed Claim in its entirety. Until such time as a Contingent Claim becomes fixed and absolute, such Claim shall be treated as a Disputed Claim and not an Allowed Claim for purposes related to allocations and distributions under this Plan.

1.1.78.    1.1.75. **Disputed Claim Reserve.**  A reserve(s) established to hold in one or more accounts, Cash or other Assets on account of Disputed Claims, which reserve shall not exceed the current amount of the Disputed Claim to be distributed under this Plan if the Disputed Claim were an Allowed Claim.

1.1.79.    1.1.76. **Distribution.**  Any distribution by Reorganized LVMC to the Holders of Allowed Claims as of the Record Date.

1.1.80.    1.1.77. **D&O Liability Insurance Policy or Policies.**  As defined in **Section 10.10** of this Plan.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

**1.1.81.** ~~1.1.78.~~ **Effective Date.** The day that is no earlier than the fifteenth (15th) day after the Confirmation Order is docketed and after which the conditions as set forth in **Section 9.2** in this Plan have been satisfied or waived.

**1.1.82.** ~~1.1.79.~~ **Employment Agreements.** Any employment agreements by and between Reorganized LVMC and its senior managers that cannot be terminated upon no greater than thirty (30) days written notice.

**1.1.83.** ~~1.1.80.~~ **Estate.** The estate created for the Debtor in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

**1.1.84.** ~~1.1.81.~~ **Executory Contract.** A contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.1.85.** ~~1.1.82.~~ **Excess Cash.** For any calendar quarter, Cash Available for debt service plus Working Capital at the beginning of the quarter less (i) all cash debt service required to be paid on the Cash Pay ~~Notes~~Bonds during such quarter, and (ii) $2,400,000.

**1.1.86.** ~~1.1.83.~~ **Extraordinary Transaction.** A merger, reorganization, extraordinary dividend, ~~a material extension of the existing route of, or the addition of one or more additional routes to, the Monorail that is operated by Reorganized LVMC,~~ or the sale, transfer or other disposition of any substantial amount of the capital assets of the Monorail (other than assets that are worn or obsolete or which have ceased to be used or useful in the operation of the Monorail).

**1.1.87.** ~~1.1.84.~~ **Final Order.** An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, entered on the docket of such court, that has not been reversed, rescinded, stayed, modified, or amended, that is in full force and effect, and as to which: (a) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely-filed appeal or petition for review, rehearing, remand, or certiorari is pending; or (b) any appeal taken, petition for certiorari, request for reargument, or further review or rehearing filed (i) has been resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, or certiorari was sought or (ii) has not yet been resolved by such highest court, but such order has not been stayed pending appeal. Notwithstanding the foregoing, the Confirmation Order shall specifically become a Final Order on the fifteenth (15th) day following entry of such Confirmation Order unless any appeal of such Confirmation Order is accompanied by a stay pending appeal.

**1.1.88.** ~~1.1.85.~~ **Financing Agreement.** The Financing Agreement dated September 1, 2000, between the Director and the Debtor relating to issuance of the 1st Tier Note, 2nd Tier Obligation, and 3rd Tier Note.

**1.1.89.** ~~1.1.86.~~ **Franchise Agreement.** The Clark County Monorail Franchise Agreement executed pursuant to Chapter 5.04 of the Clark County Code, together with any amendments, modifications, and extensions thereto granting the Debtor the right to operate the Monorail in the public right-of-way.

**1.1.90. General Purpose Reserve.** Shall mean an amount equal to $25,000,000 which can be used by Reorganized LVMC for any purpose.

**1.1.91.** ~~1.1.87.~~ **General Unsecured Claim.** Any prepetition unsecured Claim against the Debtor that is not an Administrative Claim, Cure Claim, Other Priority Claim, Priority Tax Claim, Director Claim, 1st Tier Bond Claim, 2nd Tier Bond Claim, 3rd Tier Bond Claim, or Subordinated Claim.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

**1.1.92.** ~~1.1.88.~~ **Holder.**  An entity holding a Claim, including a successor in interest to a Claim.

**1.1.93.** ~~1.1.89.~~ **Impaired.**  Impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.1.94.** ~~1.1.90.~~ **Lien.**  This term shall have the meaning set forth in section 101(37) of the Bankruptcy Code and, with respect to any Asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such Asset.

**1.1.95.** ~~1.1.91.~~ **Litigation Claims.**  All rights, claims, torts, liens, liabilities, obligations, actions, causes of action, Avoidance Actions, derivative actions, proceedings, debts, contracts, judgments, damages, and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that the Debtor or its Estate may have against any Person, including but not limited to those listed on **Schedule** ~~1.1.91~~**1.1.95** hereto.  Failure to list a Litigation Claim on **Schedule** ~~1.1.91~~**1.1.95** shall not constitute a waiver or release by the Debtor or Reorganized LVMC of such Litigation Claim.

**1.1.96.** ~~1.1.92.~~ **Local Rule.**  The local and chambers rules of the Bankruptcy Court.

**1.1.97.** ~~1.1.93.~~ **Majority 1st Tier Bondholders.**  Nuveen Asset Management, investment advisor, on behalf of the Nuveen municipal bond funds; Restoration Capital Management, LLC, as Investment Advisor for Restoration Holdings, Ltd and Restoration Special Opportunities Master Ltd; and Stone Lion Portfolio L.P., who have represented to LVMC that they collectively hold more than 51% of the face amount of the 1st Tier Bonds, for so long as each shall continue to hold 1st Tier Bond Claims, and their successors and assigns.

**1.1.98.** ~~1.1.94.~~ **Majority 1st Tier Bondholders' Approval.** Written approval or consent by Holders of a majority in face amount of the 1st Tier Bonds outstanding (the amount of what constitutes a majority, in either case, being determined on the date the Majority 1st Tier Bondholders' Approval is requested).

**1.1.99.  Minnesota Petition.**  Exhibit "1" incorporated by reference in the stipulation filed by the Debtor with the Bankruptcy Court in the Chapter 11 Case on September 2, 2011 [ECF No. 920-1] .

**1.1.100.** ~~1.1.95.~~ **Monorail.**  The existing approximately 3.9-mile monorail system currently operated by the LVMC, and any future extensions, enhancements or improvements thereto operated by the Reorganized LVMC (other than a Permitted Interconnection), in Clark County, Nevada pursuant to the Franchise Agreement.

**1.1.101.  Make-Whole Price.**  An amount determined in accordance with the following formula:

$$M = P/(1 + r)^n$$

Where,

M      is the Make-Whole Price

102200-002/v13/Third Amended Plan.doc

P        is the principal amount at maturity of the Capital Appreciation Bonds to be redeemed

r        is the applicable treasury rate, being the lesser of (x) the most recently published 30 year treasury bond as of the end of the fiscal quarter next preceding the date of redemption and (y) 2.52%.

n        is the number of years, or fraction thereof, to maturity on the Capital Appreciation Bonds to be redeemed (based on a 360-day year consisting of twelve 30-day months) as of the date of payment of the Make-Whole Price.

**1.1.102.   Net Permitted Interconnection Revenues.**  The positive difference between Permitted Interconnection Revenues and the sum of Permitted Interconnection Operation and Maintenance Costs and payment of Permitted Interconnection Indebtedness.

**1.1.103.**   ~~**1.1.96.**~~ **Net Project Revenues.**  Project Revenues less Operation and Maintenance Costs.

**1.1.104.**   ~~**1.1.97.**~~ **Nevada Secretary.**   The Secretary of State of the State of Nevada.

**1.1.105.**   ~~**1.1.98.**~~ **New Indenture.**  The indenture by and between Reorganized LVMC and the New Trustee, in form and substance reasonably acceptable to the Debtor, the New Trustee, Ambac, and the Majority 1st Tier Bondholders, which is substantially in the form attached to the Plan Supplement, to be executed by Reorganized LVMC and the New Trustee on the Effective Date.   Among other matters, the New Indenture will provide that the Cash Pay ~~Notes~~Bonds shall rank senior to and shall have a payment, collateral and liquidation preference superior to the CapEx ~~Notes~~Bonds and the Capital Appreciation ~~Notes~~Bonds and similarly that the CapEx ~~Notes~~Bonds shall rank senior to and shall have a payment, collateral and liquidation preference superior to the Capital Appreciation ~~Notes~~Bonds, and shall provide that the Cash Pay ~~Notes~~Bonds, the CapEx ~~Notes~~Bonds and the Capital Appreciation ~~Notes~~Bonds shall be secured by all of the Collateral.

**1.1.106.**   ~~**1.1.99.**~~ **New Trust Administration Fees and Expenses.**   The reasonable compensation and expenses paid to or incurred by the New Trustee and its counsel and other professionals under the Security Documents or New Indenture, which include but are not limited the costs of distribution of the Cash Pay ~~Notes~~Bonds, CapEx ~~Notes~~Bonds and Capital Appreciation ~~Notes~~Bonds issued under the New Indenture, accomplishing transfers or new registration of interests in such ~~notes~~Bonds and other charges and disbursements including those of their respective officers, directors, members, attorneys, agents and employees incurred in and about the administration and execution of the Security Documents and the New Indenture; provided, however, that the New Trust Administration Fee and Expenses shall not include any compensation or expenses in respect of the Rehabilitation Proceedings or the TIP Proceedings.

**1.1.107.**   ~~**1.1.100.**~~ **New Trust Estate.**  The trust estate created by and under the New Indenture, which includes all funds collected from Reorganized LVMC for distribution on the Cash Pay ~~Notes~~Bonds, CapEx ~~Notes~~Bonds and Capital Appreciation ~~Notes~~Bonds, and includes the CapEx Reserve Account and all funds maintained therein.

**1.1.108.**   ~~**1.1.101.**~~ **New Trustee.**  Wells Fargo Bank, N.A., solely in its capacity as indenture trustee under the New Indenture, or such other trustee as the Majority 1st Tier Bondholders may designate by Majority 1st Tier Bondholders' Approval on or before five days prior to the Confirmation Hearing (subject to the consent of Ambac), and any successor thereto; provided, however, that in the event of a conflict of interest between the holders of the Cash Pay ~~Notes~~Bonds, the CapEx ~~Notes~~Bonds, and the Capital Appreciation ~~Notes~~Bonds such that the New Trustee determines that those conflicts make it no longer appropriate for it to act as the

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

New Trustee for one or more series of such ~~notes~~Bonds, then the New Trustee shall also include any successor or co-trustee appointed with respect to such series of ~~notes~~Bonds.

**1.1.109.** ~~1.1.102.~~ **NRS.**  The Nevada Revised Statutes, as amended from time to time.

**1.1.110.** ~~1.1.103.~~ **Operation and Maintenance Costs.**  Any and all amounts due under the Monorail Operation and Maintenance Agreement, as may be amended from time to time, and any reasonable and necessary costs paid or incurred by Reorganized LVMC for maintaining, managing, and operating the Monorail project, including all reasonable expenses of maintenance and repair and other expenses necessary to maintain and preserve the Monorail project in good repair and working order, and the annual costs of any permits or licenses, property taxes, including franchise fees, all administrative costs of Reorganized LVMC that are charged directly or apportioned to the operation of the Monorail project, such as salaries and wages of employees, legal and accounting fees, insurance, overhead, and taxes (if any), the New Trust Administration Fees and Expenses, and all other reasonable and necessary costs of the Debtor or Reorganized LVMC or charges required to be paid by them to comply with the terms of the Plan; provided, however, distributions to Creditors under the Plan, depreciation, and amortization shall not constitute Operation and Maintenance Costs; provided, further, however, that the New Trust Administration Fees and Expenses shall be paid only after all other Operation and Maintenance Costs have been paid in full unless there is a material default by Reorganized LVMC under the New Indenture.  For the avoidance of doubt, any operation and maintenance costs attributable to Permitted Stations and any Permitted Interconnection Operation and Maintenance Costs shall not constitute Operation and Maintenance Costs.

**1.1.111.** ~~1.1.104.~~ **Operating Fund**  As defined in the New Indenture.

**1.1.112.** ~~1.1.105.~~ **Other Priority Claims.**  Any and all Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims and Administrative Claims.

**1.1.113.** ~~1.1.106.~~ **Other Secured Claims.**  Any Secured Claim, other than a Secured Claim arising under the Financing Agreement (such exclusion includes, but is not limited to, the Director Claim (to the extent a secured claim), any 1st Tier Bond Claims, the Ambac Insurance Policy Secured Claim, the Ambac Surety Bond Secured Claim, any Claim of the 1st Tier Trustee, any Claim of the 2nd Tier Trustee, any Claim of the 3rd Tier Trustee, and any Claim arising from the 1st and 2nd Tier Indenture or the 3rd Tier Indenture).

**1.1.114.  Permitted Interconnection.**  Any extension of the existing route of, or the addition of one or more additional routes to the Project (as the Project existed on the Effective Date) by one or more to-be formed wholly owned or controlled special purpose entities of Reorganized LVMC and any joint venture partners of those subsidiaries but only if Permitted Interconnection is approved by the unanimous consent or vote of the members of Reorganized LVMC's Board of Directors. For the avoidance of doubt, Permitted Stations do not constitute Permitted Interconnections.

**1.1.115.  Permitted Interconnection Indebtedness.**  Any indebtedness of one or more to-be formed wholly owned or controlled special purpose subsidiaries of Reorganized LVMC and any joint venture partners of those subsidiaries, the proceeds of which are applied to the development, acquisition, construction and operation of a Permitted Interconnection, but only if (i) such indebtedness is approved by the unanimous consent or vote of the members of Reorganized LVMC's Board of Directors and (ii) and, unless such indebtedness does not exceed $30,000,000, it is not vetoed (on a date fixed by Reorganized LVMC) that is not less than thirty (30) days after the Holders of Bonds reasonably anticipated to be outstanding after the issuance of such indebtedness have been provided with a description of

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

the proposed financing reasonably acceptable to the New Trustee) by the Holders of 2/3 or more in principal amount at maturity of any Bonds to be reasonably anticipated to be outstanding after the issuance of such indebtedness.  The outcome of this vote shall be determined by comparing the 2/3 veto threshold with a fraction, the numerator of which is the principal amount of such Bonds at maturity that actually vote to veto the proposed financing proposal and the denominator of which is the principal amount of such Bonds outstanding (calculated to the maturity date); provided, however, any such Bonds directly owned or controlled (meaning with power to vote) by Reorganized LVMC or its financial advisors (other than those Bonds held in the ordinary course by units or divisions of such advisors that are subject to a Chinese wall and that are held for investment purposes or for persons or entities unrelated to Reorganized LVMC) shall not be included in the denominator of such fraction.   Permitted Interconnection Indebtedness shall not be guaranteed by Reorganized LVMC.

**1.1.116.  Permitted Interconnection Revenues.**  All revenue of one or more wholly owned or controlled special purpose entities of Reorganized LVMC and attributable to a Permitted Interconnection, including but not limited to (i) ticket sales used for entry on such Permitted Interconnections, (ii) all revenue attributable to agreements (including leases, fare sharing agreements or other revenues generating agreements) entered into by the entities directly or indirectly, with respect to a Permitted Interconnection, but only to the extent relating to a Permitted Interconnection.

**1.1.117.  Permitted Interconnection Operation and Maintenance Costs.** The reasonable and necessary costs paid or incurred by one or more to-be formed wholly owned or controlled special purpose entities of Reorganized LVMC and any joint venture partners of those subsidiaries, with respect to a Permitted Interconnection, including all reasonable expenses of management and repair and other expenses necessary to maintain and preserve a Permitted Interconnection in good repair and working order, and the annual costs of any permits or licenses, property taxes, including franchise fees, all administrative costs of that are charged directly or apportioned to the operation of a Permitted Interconnection, such as salaries and wages of employees, legal and accounting fees, insurance, overhead, taxes (if any), including all other reasonable and necessary costs of the operator or charges required to be paid to comply with the terms of any Permitted Interconnection Indebtedness, respectively, but excluding in all cases depreciation, replacement and obsolescence charges, amortization of intangibles, and payments on any capital leases.

**1.1.118.  Permitted Stations.** Two (2) new passenger stations along the route of the Project as the Project existed on the Effective Date.

**1.1.119.  Permitted Station Indebtedness.**  Up to $12,000,000 in new senior secured construction indebtedness (up to $6,000,000 per passenger station) solely for the construction of Permitted Stations, but only if such Permitted Station Indebtedness is approved by the unanimous consent of the members of Reorganized LVMC' s Board of Directors.

**1.1.120.  Permitted Station Revenues.**  All revenues attributable to tickets used for entry at stations constructed with Permitted Station Indebtedness and all revenues attributed to agreements (including leases or other revenue generating agreements) entered into by the Reorganized LVMC with respect to such stations, but only to the extent relating to such stations.

**1.1.121.** ~~1.1.107.~~ **Person.**    An individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental unit or any subdivision thereof, or any other entity.

**1.1.122.** ~~1.1.108.~~ **Petition Date.**    January 13, 2010, the date on which the Debtor filed its voluntary petition commencing the Chapter 11 Case.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

**1.1.123.** ~~1.1.109.~~ **Plan.** This Plan of Reorganization, either in its present form or as it may be amended, supplemented or modified from time to time, including all exhibits and schedules annexed hereto or referenced herein or attached to the Plan Supplement.

**1.1.124.** ~~1.1.110.~~ **Plan Supplement.** The supplement to the Plan which consists of the various documents as referenced herein, which was filed on July 29, 2011, as Dkt. 907, and which will be supplemented by an amended Plan Supplement which will be filed on or before ~~July 20,~~ September 30, 2011.

**1.1.125.** ~~1.1.111.~~ **Priority Tax Claim.** Any Claim against the Debtor entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.1.126.** ~~1.1.112.~~ **Pro Rata.** The ratio of an Allowed Claim in a particular Class to the aggregate amount of all such Allowed Claims in any such Class.

**1.1.127.** ~~1.1.113.~~ **Professional Fees.** The Administrative Claims for compensation and reimbursement submitted pursuant to sections 330, 331, or 503(b) of the Bankruptcy Code by Persons: (i) employed pursuant to an order of the Bankruptcy Court under sections 327, 328, or 1103 of the Bankruptcy Code; or (ii) for whom compensation and reimbursement has been timely sought as provided in this Plan and allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code or by other Final Order.

**1.1.128.** ~~1.1.114.~~ **Project.** All (i) land, easements, buildings, structures, fixtures and improvements and (ii) tangible personal property, whether now existing or hereafter acquired, constructed or installed constituting the approximate 3.9-mile dual guideway monorail system in Clark County, Nevada; provided, however, that Permitted Stations and Permitted Interconnections shall not constitute after acquired portions of the Project so long as there is outstanding Permitted Station Indebtedness or Permitted Interconnection Indebtedness, as the case may be.

**1.1.129.** ~~1.1.115.~~ **Project Revenues.** For any fiscal year, the sum of (i) all gross income and revenue received or receivable by Reorganized LVMC from the ownership, operation or use of the Project, including all fees and charges received by the Reorganized LVMC for the use of the Project, including but not limited to farebox revenues, business interruption insurance, advertising revenues, licensing fees, rent, sponsorship income, other contractual revenues, interest earnings on funds held under the New Indenture or by Reorganized LVMC, and all other income and revenue however derived by the Reorganized LVMC from the ownership, operation or use of the Project or dedicated by the Reorganized LVMC or any other person to support the Project, including net recoveries from Avoidance Actions and Causes of Action, tax refunds, proceeds from Asset sales and insurance recoveries, but excluding in all ~~case~~ cases any refundable deposits made to establish credit and advances or contributions in aid of construction received during such fiscal year and provided that all insurance recoveries related to the claims made in relation to train 9 (see Schedule ~~1.1.91~~1.1.95 item 2), net of legal fees and costs and other costs of recovery, shall be earmarked for the Bombardier Transit Corporation cure payment or reimbursement of Reorganized LVMC therefore to the extent such payments have already been made by Reorganized LVMC and (ii) Reorganized LVMC's Net Permitted Interconnection Revenues; but excluding all Permitted Station Revenues for so long, but only for so long as the Permitted Station Indebtedness is outstanding, and any refundable deposits made to establish credit and advances or contributions in aid of construction received during such fiscal year.

**1.1.130.** ~~1.1.116.~~ **Recapitalization Event.** A refinancing of 50% or more of the indebtedness of Reorganized LVMC at the time outstanding; the incurrence by Reorganized LVMC, in one transaction or any series of related transactions, of additional indebtedness in an amount equal to 50% or more of the indebtedness of Reorganized LVMC at the time

14

102200-002~~v13~~/Third Amended Plan.doc

**Gordon Silver**
~~Attorneys At Law~~
~~Ninth Floor~~
~~3960 Howard Hughes Pkwy~~
~~Las Vegas, Nevada 89169~~
~~(702) 796-5555~~
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

outstanding; the conversion of Reorganized LVMC to a for-profit entity; or the issuance of equity in Reorganized LVMC to any person other than the State of Nevada or any agency or instrumentality thereof; provided, however, that for purposes of this definition, indebtedness of Reorganized LVMC shall not include Permitted Station Indebtedness or Permitted Interconnection Indebtedness.

**1.1.131.** ~~1.1.117.~~ **Record Date.** ~~The date, as provided for in (i) the order approving the Disclosure Statement, on which the identity of the Holders of 1st Tier Bond Claims shall be determined~~(i) July 6, 2011 for Plan voting purposes, and (ii) the date provided for in the Confirmation Order~~,~~ on which the identity of the Holders of 1st Tier Bond Claims shall be determined for Plan and distribution purposes.

**1.1.132.** ~~1.1.118.~~ **Rehabilitation Proceedings.** The action pending in the State of Wisconsin, Dane County Circuit Court No. 10-CV-1576, entitled In the Matter of the Rehabilitation of: Segregated Account of Ambac Assurance Corporation and all pending and future appeals of decisions and orders therein.

**1.1.133.** ~~1.1.119.~~ **Released Parties.** Collectively, and solely in their capacity as such, all officers, directors, employees, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals, and representatives of the Debtor, the Director, the 1st Tier Trustee, and Majority 1st Tier Bondholders, serving on and since the Petition Date.

**1.1.134.** ~~1.1.120.~~ **Releasing Parties.** Collectively, and solely in their capacity as such, all current officers and directors of the Debtor serving on and since the Petition Date, and, unless and to the extent they opt out of the third-party release (granted under **Section 10.7** of this Plan) on their respective ballots, the Holders of 1st Tier Bond Claims, the 1st Tier Trustee, the Director, Ambac and each of their respective officers, directors, employees, members, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals, partners and representatives.

**1.1.135.** ~~1.1.121.~~ **Reorganized LVMC.** The Debtor as restructured in accordance with this Plan on or after the Effective Date, or any subsidiary (other than a one or more to-be formed wholly owned or controlled special purpose entities of Reorganized LVMC formed to design acquire and/or operate a Permitted Interconnection) or successor thereto by merger, consolidation or otherwise.

**1.1.136.** ~~1.1.122.~~ **Reorganized LVMC Organizational Documents.** The Reorganized LVMC Organizational Documents, which shall be substantially in the form attached to the Plan Supplement. The Reorganized LVMC Organizational Documents shall be consistent with the Plan, applicable securities, tax, bankruptcy and/or state laws and otherwise approved by the Governor to the extent required by the LVMC Organizational Documents. The Reorganized LVMC Organizational Documents shall be in form and substance reasonably acceptable to the Debtor, the Majority 1st Tier Bondholders and Ambac.

**1.1.137.** ~~1.1.123.~~ **Revenue Fund.** As defined in the New Indenture.

**1.1.138.** ~~1.1.124.~~ **Schedules.** The schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code.

**1.1.139.** ~~1.1.125.~~ **Secured Claim.** A Claim that is secured by a Lien against property of the Estate to the extent of the value of such property of the Estate securing such Claim which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

accordance with section 553 of the Bankruptcy Code, in either case as determined pursuant to section 506(a) of the Bankruptcy Code, including any Secured Tax Claims.

**1.1.140.** ~~1.1.126.~~ **Secured Tax Claims.**    The Claim of any state or local governmental unit which is secured by a Lien against property owned by the Debtor by operation of applicable law, including, but not limited to, every such Claim for unpaid personal property taxes together with statutory interest.

**1.1.141.** ~~1.1.127.~~ **Security Documents.**    The security agreement, deed of trust and assignment of leases, springing lockbox and deposit account control agreements for all accounts of Reorganized LVMC and all other documents evidencing the encumbering of the Collateral to be delivered to the New Trustee pursuant to the New Indenture to secure the Cash Pay ~~Notes~~Bonds, CapEx ~~Notes~~Bonds, Capital Appreciation ~~Notes~~Bonds, and all other obligations due under the New Indenture.  The Security Documents, which shall be substantially in the form attached to the Plan Supplement, shall be in form and substance reasonably acceptable to the Debtor, the Majority 1st Tier Bondholders, and Ambac.

**1.1.142.** ~~1.1.128.~~ **Subordinated Claims.**    Claims which are subordinate to the 1st Tier Bond Claims pursuant to section 510 of the Bankruptcy Code, excluding the 2nd Tier Bond Claims and 3rd Tier Bond Claims, which are treated in Class 6 and Class 7.

**1.1.143.** ~~1.1.129.~~ **Substantial Consummation.**    As defined in section 1101(2) of the Bankruptcy Code.

**1.1.144.** ~~1.1.130.~~ **Taxes.**    All income, excise, sales, use, employment, withholding, property, payroll or other taxes, assessments, or governmental charges, together with any interest, penalties, or other additions to tax, fines, and similar amounts relating thereto, whether or not yet assessed or imposed, collected by, or due to any federal, state, local or foreign governmental authority.  This shall include all taxes arising out of or attributable to the business of the Debtor up to and including the Effective Date, whether assessed or determined or payable prior to or after the Effective Date.

**1.1.145.** ~~1.1.131.~~ **TIP Proceedings.**    The Trust Instruction Proceeding filed by the 1st Tier Trustee in the District Court for the Fourth Judicial District in Hennepin County, Minnesota, the county where the Trustee resides and administers the Trust Estate, Case No. 27-TRCV-11-13.

**1.1.146.** ~~1.1.132.~~ **Third Party Releasee.**    Collectively, the Releasing Parties, and each of their respective officers, directors, employees, members, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals, Affiliates, partners and representatives.

**1.1.147.** ~~1.1.133.~~ **Triggering Event.**    Any one or more of the following events: (i) a Recapitalization Event, (ii) an Extraordinary Transaction, (iii) an acceleration of the Capital Appreciation ~~Notes~~Bonds Maturity Date by the New Trustee due to a default by Reorganized LVMC under the Capital Appreciation ~~Notes~~Bonds, or (iv) the commencement of a voluntary bankruptcy case by Reorganized LVMC or an involuntary bankruptcy case which is not dismissed within sixty (60) days against Reorganized LVMC by someone other than the New Trustee, the holder of a Cash Pay ~~Note~~Bond, a CapEx ~~Note~~Bond or a Capital Appreciation ~~Note~~Bond or interest therein.

**1.1.148.** ~~1.1.134.~~ **Triggering Event Payment.**    An amount equal to (i) the accreted principal amount on the Capital Appreciation ~~Notes~~Bonds on the date of the Triggering Event plus (ii) an additional amount equal to the yield maintenance premium (defined in the following formula) which when added to the then-accreted principal amount on the Capital

16

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

Appreciation ~~Notes~~Bonds and invested at the applicable treasury rate (defined in the following formula), would be equal to the principal amount at stated maturity, calculated as follows:

$M = P/(1 + r)$~~n  A [to the nth power]~~ ^ n-A

Where,

M       is the yield maintenance premium.

P       is the principal amount of the Capital Appreciation ~~Notes~~Bonds at stated maturity.

r       is the applicable treasury rate, being the lesser of (x) the most recently published 30 year Treasury Bond at the time of the Triggering Event and (y)  2.52%.

n       is the number of years to maturity on the Capital Appreciation ~~Notes~~Bonds (rounded up or down to the nearest whole number).

A       is the accreted principal amount of the Capital Appreciation ~~Notes~~Bonds as of the date of the Triggering Event.

     **1.1.149.**  ~~1.1.135.~~ **Unexpired Lease.**  A lease of non-residential real property or personal property to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

     **1.1.150.**  ~~1.1.136.~~ **Unimpaired.**  Unimpaired within the meaning of section 1124 of the Bankruptcy Code.

     **1.1.151.**  ~~1.1.137.~~ **Working Capital.**  The sum of the account balances of the Collection Fund, Revenue Fund, and Operating Fund on deposit with the New Trustee as of the end of a calendar quarter less (i) year-to-date insurance reserve accruals, and (ii) outstanding checks and invoices, which may include, among other things, pending payments for the monthly Bombardier O&M invoice, CARP and bi-weekly payroll.

     **1.2.**    **Rules of Interpretation.**  For purposes of this Plan only: (i) any reference in this Plan to a contract, instrument, release, or other agreement or documents being in particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (iii) unless otherwise specified, all references in this Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan; (iv) the words "herein," "hereof," "hereto," and "hereunder" refer to this Plan in its entirety rather than to a particular portion of this Plan; (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (vi) the rules of construction and definitions set forth in sections 101 and 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply unless otherwise expressly provided. All Exhibits and Plan Schedules attached hereto are incorporated into and are a part of this Plan as if set forth in full herein.

     **1.3.**    **Computation of Time.**  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**2.**    **TREATMENT OF UNCLASSIFIED CLAIMS**

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

**2.1.    General.**    Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Claims against the Debtor set forth in this Article 2 are not classified within any Classes. The Holders of such Claims are not entitled to vote on this Plan. The treatment of the Claims set forth below is consistent with the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.

**2.2.    Treatment of Administrative Claims.**    Each Holder of an Allowed Administrative Claim shall be paid in full and final satisfaction of such Claim by Reorganized LVMC (or otherwise satisfied in accordance with its terms), upon the latest of:  (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first Business Day following the fourteenth (14th) day after such Claim is Allowed or as soon thereafter as practicable; (iv) the date such Claim becomes due by its terms; and (v) such date as is agreed to by the Holder of such Claim and the Debtor or Reorganized LVMC.

**2.2.1.    Requests for Payment.**    All requests for payment of Administrative Claims against the Debtor and all final applications for allowance and disbursement of Professional Fees must be filed by the Administrative Claim Bar Date.  All Professional Fee applications must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order, and all other orders governing payment of Professional Fees.  Unless otherwise ordered by the Bankruptcy Court, from and after the Effective Date, no professional shall be required to file fee applications with the Bankruptcy Court, and Reorganized LVMC may pay all professionals in the ordinary course for fees and expenses incurred after the Effective Date.

**2.2.2.    Allowed Priority Tax Claims.**    Each Holder of an Allowed Priority Tax Claim, if any, will, in full and final satisfaction of such Claim, be paid in full (or be treated in compliance with section 1129(a)(9)(C) of the Bankruptcy Code) by Reorganized LVMC on the later of (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first Business Day following the fourteenth (14th) day after the date on which an order allowing such Claim becomes a Final Order; or (iv) such date as is agreed to by the Holder of such Claim and the Debtor or Reorganized LVMC.

**3.    DESIGNATION OF CLASSES OF CLAIMS**

Pursuant to this Plan and in accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors (except Administrative Claims and Priority Tax Claims) are placed in the Classes described below.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim qualifies within the description of such other Classes. Each subclass in Classes 4 and 5 is deemed to be a separate class for purposes of voting pursuant to section 1122 of the Bankruptcy Code and for acceptance pursuant to section 1126 of the Bankruptcy Code.  A Claim is also classified in a particular Class only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.

**3.1.    Summary of Classification.**

| Class 1 | Other Priority Claims | Unimpaired – deemed accepted<br>-      no solicitation required |
|---------|----------------------|------------------------------------|
| Class 2 | Other Secured Claims | Unimpaired – deemed accepted<br>-      no solicitation required |
| Class 3 | General Unsecured Claims | Impaired – entitled to vote<br>-      solicitation required |

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002~~v13~~/Third Amended Plan.doc

| Class 4A | 1st Tier Bond Secured Claims | Impaired – entitled to vote -     solicitation required |
|---|---|---|
| Class 4B | Ambac Surety Bond Secured Claims | Impaired – entitled to vote -     solicitation required |
| Class 4C | Ambac Insurance Secured Claims | Impaired – entitled to vote -     solicitation required |
| Class 5A | 1st Tier Bond Unsecured Claims | Impaired – entitled to vote -     solicitation required |
| Class 5B | Ambac Surety Bond Unsecured Claims | Impaired – entitled to vote -     solicitation required |
| Class 5C | Ambac Insurance Unsecured Claims | Impaired – entitled to vote -     solicitation required |
| Class 6 | 2nd Tier Bond Claims | Impaired – deemed rejected -     no solicitation required |
| Class 7 | 3rd Tier Bond Claims | Impaired – deemed rejected -     no solicitation required |
| Class 8 | Director Claims | Impaired – entitled to vote -     solicitation required. |
| Class 9 | Subordinated Claims | Impaired – deemed rejected -     no solicitation required |

**3.2.    Specific Classification.**

**3.2.1.** **Class 1: Other Priority Claims.** Class 1 consists of all Other Priority Claims against the Debtor.

**3.2.2.** **Class 2: Other Secured Claims.** Class 2 consists of all Other Secured Claims against the Debtor.

**3.2.3.** **Class 3: General Unsecured Claims.** Class 3 consists of all General Unsecured Claims against the Debtor other than Class 5, Class 6, Class 7, Class 8, and Class 9 Claims.

**3.2.4.** **Class 4A: 1st Tier Bond Secured Claims.** Class 4A consists of the Secured Claim portion of all 1st Tier Bond Claims.

**3.2.5.** **Class 4B: Ambac Surety Bond Secured Claims.** Class 4B consists of the Secured Claim portion of any and all Ambac Surety Bond Claims.

**3.2.6.** **Class 4C: Ambac Insurance Secured Claims.** Class 4C consists of the Secured Claim portion of any and all Ambac Insurance Claims.

**3.2.7.** **Class 5A: 1st Tier Bond Unsecured Claims.** Class 5A consists of the Unsecured Claim portion of all 1st Tier Bond Claims.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002v13/Third Amended Plan.doc

**3.2.8.** **Class 5B: Ambac Surety Bond Unsecured Claims.**  Class 5B consists of the Unsecured Claim portion of any and all Ambac Surety Bond Claims.

**3.2.9.** **Class 5C: Ambac Insurance Unsecured Claims.**  Class 5C consists of the Unsecured Claim portion of any and all Ambac Insurance Claims.

**3.2.10.** **Class 6: 2nd Tier Bond Claims.**  Class 6 consists of all 2nd Tier Bond Claims.

**3.2.11.** **Class 7: 3rd Tier Bond Claims.**  Class 7 consists of all 3rd Tier Bond Claims.

**3.2.12.** **Class 8: Director Claims.**  Class 8 consists of all Director Claims.

**3.2.13.** **Class 9: Subordinated Claims.**  Class 9 consists of all Subordinated Claims.

**4.** **DESIGNATION OF AND PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS NOT IMPAIRED BY THIS PLAN**

**4.1.** **Class 1 – Other Priority Claims.**  Each Allowed Other Priority Claim, if any, shall, in full and final satisfaction of such Claim, be paid in full in Cash by Reorganized LVMC upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first Business Day following the fourteenth (14th) day after such Claim is Allowed; and (iv) such date as agreed upon by the Holder of such Claim and the Debtor or the Reorganized LVMC.  Holders of Claims in Class 1 are Unimpaired under this Plan, deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote on this Plan.

**4.2.** **Class 2 – Other Secured Claims.**  Each Allowed Other Secured Claim, if any, shall, in full and final satisfaction of such Claim, be left Unimpaired by Reorganized LVMC upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first Business Day following the  fourteenth (14th) day after such Claim is Allowed; and (iv) such date as agreed upon by the Holder of such Claim and the Debtor, and after the Effective Date, by Reorganized LVMC.  Creditors in Class 2 are Unimpaired under this Plan, deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote on this Plan.

**5.** **DESIGNATION OF AND PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS IMPAIRED BY THIS PLAN**

**5.1.** **Class 3 – General Unsecured Claims.**  Each Holder of an Allowed General Unsecured Claim will receive in full and final satisfaction of its Allowed General Unsecured Claim the lesser of 100% of its Allowed General Unsecured Claim and its Pro Rata share of an aggregate of $175,000. But in no event shall the total payment to the Holders of all Allowed General Unsecured Claims exceed $175,000, it being understood that if such total payment would exceed $175,000, the Holders of Allowed General Unsecured Claims shall instead receive their Pro Rata share of $175,000 in full satisfaction of their Allowed General Unsecured Claims. Such payment shall be made in Cash by Reorganized LVMC in 12 equal monthly installments without interest beginning upon the latest of: (i) the first Business Day following the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first Business Day following the fourteenth (14th) day after such Claim is Allowed; and

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002v.13/Third Amended Plan.doc

(iv) such date as agreed upon by the Holder of such Claim and the Debtor or Reorganized LVMC.  Creditors in Class 3 are Impaired under this Plan and are entitled to vote on this Plan.

**5.2.**  **Class 4A, Class 4B and Class 4C – 1st Tier Bond Secured Claims, Ambac Surety Bond Secured Claims, and Ambac Insurance Secured Claims.**

**5.2.1.**  Holders of 1st Tier Bond Claims, Director Claims, Ambac Surety Bond Claims and Ambac Insurance Claims, including the 1st Tier Trustee, Ambac and the Director, shall have no rights to payment under the 1st Tier Note from Reorganized LVMC and no rights under the Financing Agreement or the 1st and 2nd Tier Indenture against Reorganized LVMC after the Effective Date.  Any term herein to the contrary notwithstanding, nothing as contained in this Plan or the Confirmation Order shall affect:

**5.2.1.1.**  The right and ability of the Director and the 1st Tier Trustee as provided for in the 1st and 2nd Tier Indenture to amend and restate the 1st and 2nd Tier Indenture with which Reorganized LVMC will assist, as necessary and appropriate.

**5.2.1.2.**  The rights of Holders of 1st Tier Bond Claims under the 1st Tier Bondholders' Insurance Policy and 1st Tier Bondholders' Surety Bond, and their rights under the 1st and 2nd Tier Indenture to the extent of pursuing claims against the 1st Tier Bondholders' Insurance Policy and 1st Tier Bondholders' Surety Bond.

**5.2.1.3.**  The powers, rights, privileges and immunities of the 1st Tier Trustee under the 1st and 2nd Tier Indenture as the 1st Tier Trustee deems reasonably necessary and appropriate with respect to the administration of its duties to the 1st Tier Bondholders, provided that the 1st Tier Trustee shall have no rights to receive indemnification or payment of its fees and expenses from Reorganized LVMC for fees and expenses incurred by the 1st Tier Trustee with respect to the Rehabilitation Proceedings or the TIP Proceedings, without prejudice to or effect on the 1st Tier Trustee's charging lien against and rights to indemnification and reimbursement from the payments to the 1st Tier Bondholders under the Cash Pay ~~Notes~~Bonds, CapEx ~~Notes~~Bonds, and Capital Appreciation ~~Notes~~Bonds.

**5.2.2.**  As the sole source of recovery from Reorganized LVMC on the Secured Claim portion of any and all 1st Tier Bond Claims, and subject to the determination of Ambac's contribution and reimbursement rights with respect to the Ambac Surety Bond Secured Claim under **Section 5.2.3** below in this Plan, Holders of Class 4A Claims (which Claims include, as of the Record Date, Claims of Ambac for 1st Tier Bonds purchased and held by Ambac) shall receive ~~on the Effective Date~~ a Pro Rata interest in the Cash Pay ~~Notes and CapEx Notes.  The Cash Pay Notes and the CapEx Notes~~Bonds and CapEx Bonds, and, provided the 1st Tier Trustee Settlement Agreement is executed by all of the parties thereto and approved by the Bankruptcy Court at the Confirmation Hearing, in accordance with the 1st Tier Trustee Settlement Agreement.  In the event that the 1st Tier Trustee Settlement Agreement is not executed for any reason and approved by the Bankruptcy Court, the New Trustee will still deliver the Bonds to the 1st Tier Trustee on behalf of the Holders of Class 4A Claims.  The Cash Pay Bonds and the CapEx Bonds shall be governed by the New Indenture and the Security Documents.

**5.2.3.**  In full and complete satisfaction of the Secured Claim portion of any and all Ambac Surety Bond Claims (Class 4B Claims) against LVMC, Ambac's contribution and reimbursement rights with respect to the Ambac Surety Bond Claims, if any, shall be treated by participation in the Cash Pay ~~Notes~~Bonds and CapEx ~~Notes~~Bonds in an amount determined under applicable law and the 1st and 2nd Tier Indenture.

**5.2.4.**  In full and complete satisfaction of the Secured Claim portion of any and all Ambac Insurance Claims (Class 4C Claims) against LVMC, on the Effective Date Ambac

**Gordon Silver**
~~Attorneys At Law~~
~~Ninth Floor~~
~~3960 Howard Hughes Pkwy~~
~~Las Vegas, Nevada 89169~~
~~(702) 796-5555~~
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/~~v1~~v13/Third Amended Plan.doc

shall retain its subrogation rights under the 1st Tier Bondholders' Insurance Policy as limited by 11 U.S.C. § 509(a) and (b), and pursuant to 11 U.S.C. § 509(c), Ambac shall have the right to assert those subrogation rights only after and to the extent of payment of the 1st Tier Bond Claims in full (or with such lesser amount accepted by or binding upon the Holders in full and complete satisfaction of their claims against the 1st Tier Bondholders' Insurance Policy or as otherwise permitted under the governing agreements and applicable law). The Ambac subrogation rights with respect to the Secured Claim portion of the Ambac Insurance Claims, if any, shall be limited to receipt of the balance outstanding of the outstanding payment stream due under the Cash Pay ~~Notes~~Bonds and CapEx ~~Notes~~Bonds, but only after payment of the Class 4B Claims.

**5.2.5.** Except to the extent expressly provided for in this Plan, the Cash Pay ~~Notes~~Bonds shall be secured by a senior first priority Lien on the Collateral and will rank senior in right of payment to all of the CapEx ~~Notes~~Bonds and the Capital Appreciation ~~Notes~~Bonds (and senior to any other permitted indebtedness of Reorganized LVMC, except as otherwise expressly provided in this Plan or in the Plan Documents).

**5.2.6.** Except to the extent expressly provided for in this Plan, the CapEx ~~Notes~~Bonds shall be secured by a second priority Lien (subordinate only to the Cash Pay ~~Notes~~Bonds) on the Collateral, to become a first priority Lien upon repayment in full of the Cash Pay ~~Notes~~Bonds. The CapEx ~~Notes~~Bonds will rank senior in right of payment to the Capital Appreciation ~~Notes~~Bonds (and senior to any other permitted indebtedness of Reorganized LVMC, except as otherwise expressly provided in this Plan or in the Plan Documents).

**5.2.7.** Reorganized LVMC may incur senior purchase money Liens in the ordinary course of business (but, except as otherwise expressly stated herein or in the Plan Documents, not Liens for borrowed money). Any such permitted indebtedness and/or permitted Liens shall be (i) consistent with annual forecasts approved by ~~the board of directors~~Reorganized LVMC's Board of Directors and (ii) subject to other restrictions contained in the New Indenture.

**5.2.8.** ~~All~~In accordance with the terms of the New Indenture, all Excess Cash shall be distributed by the New Trustee in the following order of priority: (i) _first_, to pay ~~in cash~~ any ~~quarterly~~ interest on ~~the~~ Cash Pay ~~Notes that had been previously been~~Bonds paid "in-kind;~~" (ii) then to pay the minimum amortization of principal to the extent required by the Cash Pay Notes; (iii) then to fund an amount in~~" as permitted by the Plan (including deferred interest, if any); (ii) second to pay in Cash interest on the Cash Pay Bonds when due, including interest payable on deferred interest (that is not paid "in- kind" as permitted by the Plan); (iii) third, to pay any mandatory redemption (including amortization) of the Cash Pay Bonds (iv) _fourth_, for deposit into the CapEx Reserve Account ~~in the amount of $2,000,000 as a reserve for the New Trustee (which reserve shall be reduced to $550,000 after or in connection with the satisfaction of the CapEx Notes); (iv) then~~to the extent the balance of the CapEx Reserve Account is less than the CapEx Reserve Account Minimum Balance as of the end of the immediately preceding fiscal quarter; (v) _fifth_, provided that all debt service on the Cash Pay ~~Notes~~Bonds is current, $50,000 in each ~~calendar~~fiscal quarter to ~~the payment of~~pay the costs and fees described in clause ~~(vi) below; (v) then 50%~~(vii) below until they have been paid in full; (vi) _sixth_, until the Cash Pay Bonds are no longer be outstanding, to pay fifty percent (50%) of the remaining amount to redeem the Cash Pay Bonds outstanding, _pro rata in accordance with the_ principal amount at maturity of ~~the Cash Pay Notes, on a pro rata basis, and 50% to fund~~all Cash Pay Bonds outstanding as of the end of the immediately preceding fiscal quarter and to deposit fifty percent (50%) of the remaining amount into the CapEx Reserve Account~~, until~~; (vii) _seventh_, after the Cash Pay ~~Notes are redeemed in full; (vi) then to pay any otherwise~~Bonds are no longer be outstanding, to pay the unreimbursed and reasonable professional fees and expenses ~~of the Majority 1st Tier Bondholders other than in respect of professional fees and expenses incurred in relation to the Rehabilitation Proceeding and the TIP Proceeding (specifically,~~(meaning the attorney fees and costs of Kramer Levin, Naftalis & Frankel LLP, Nevada counsel, and Houlihan

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002v13/Third Amended Plan.doc

Lokey), and  of the Majority 1st Tier Bondholders (including any attorney fees and costs advanced by such 1st Tier Bondholders to the 1st Tier Trustee;) as agreed upon by LVMC and approved in the Confirmation Order other than in respect of professional fees and expenses incurred in relation to the Rehabilitation Proceeding and the TIP Proceeding, until the professional fees and costs of the Majority 1st Tier Tier Bondholders have been paid in full; and (vii) and then to fund(viii) eighth, until the CapEx Bonds are no longer outstanding, for deposit into the CapEx Reserve Account, unless and until the amount held in the CapEx Reserve Account, after taking account of (and without credit for) any withdrawals that may be made in accordance with its terms and the terms of this Plan from time to time, equals the outstanding balance onaccreted value of the CapEx NotesBonds through June 30, 2019; provided, however, that if the CapEx NotesBonds are extended through June 30, 2025, contributions to the CapEx Reserve Account shall continue to be made as aforesaid until the amountbalance thereof equals the outstanding balance on June 30, 2025; provided furtherof the CapEx Bonds on June 30, 2025; (ix) ninth, deposit into  LVMC's general operating account an amount equal to the General Purpose Reserve to be used for any corporate purposes; (x) tenth, until the CapEx Bonds are no longer outstanding, transfer fifty percent (50%) of the remaining amount to redeem CapEx Bonds outstanding, pro rata in accordance with the principal amount at maturity of all CapEx Bonds outstanding as of the end of the immediately preceding fiscal quarter, at a price equal to the accreted value of the CapEx Bonds to be redeemed, and deposit fifty percent (50%)  into LVMC's general operating account to be used for any corporate purposes; and (xi) eleventh, after the CapEx Bonds are no longer outstanding and until the Capital Appreciation Bonds are no longer outstanding, pay fifty percent (50%) of the remaining amount to redeem Capital Appreciation Bonds outstanding, pro rata in accordance with the principal amount at maturity of all Capital Appreciation Bonds outstanding as of the end of the immediately preceding fiscal quarter, at a price equal to the Make-Whole Price of the Capital Appreciation Bonds to be redeemed (calculated as of the date of redemption), and deposit fifty percent (50%)  to LVMC's general operating account to be used for any corporate purposes; provided, however,  that no distributions shall be made (other than to the CapEx Reserve Account) under clauses (iv), (v) and, (vi) and (vii) and, if and to the extent that, after giving effect thereto, the amount of the CapEx Reserve Account would be less than $2,000,000the CapEx Reserve Account Minimum Balance; and provided further, however, that the New Trustee shall implement not only the 1st Tier Trustee's charging lien, but also implement the New Trustee's charging lien under the New Indenture, against and rights to indemnification and reimbursement from Reorganized LVMC's payments on the Cash Pay Bonds, CapEx NotesBonds and Capital Appreciation NotesBonds and any funds so applied shall be deemed for all purposes under the Plan to have been applied to payment of amounts due under the Bonds in the manner, for the purposes and in the order of priority otherwise provided in the Plan and under the New Indenture.

      **5.2.9**    The funds in the CapEx Reserve Account shall be applied in the following order of priority: (i) the payment of the fees, expenses, reimbursements and indemnification of the New Trustee (in respect of all of the Cash Pay NotesBonds, the CapEx NotesBonds and the Capital Appreciation Notes)Bonds), other than in respect of fees and expenses incurred in relation to the Rehabilitation Proceeding and the TIP Proceeding, to the extent not otherwise paid when due by Reorganized LVMC; (ii) the payment of scheduled interest, principal (including amortizing the principalthe payment of mandatory redemption (amortization)) and premium, if any, on the Cash Pay NotesBonds, to the extent not otherwise paid when due by Reorganized LVMC; and (iii) the redemption of the CapEx Notes at maturity; provided, however, that if no default shall exist under the Cash Pay NotesBonds, the CapEx NotesBonds or the Capital Appreciation NotesBonds, the funds in the CapEx Reserve Account may be applied as provided in **Section 6.6** of this Plan; and provided further that the New Trustee shall implement the 1st Tier Trustee's charging lien against and rights to indemnification and reimbursement from Reorganized LVMC's payments on the Cash Pay, CapEx NotesBonds and Capital Appreciation NotesBonds and any funds so applied shall be deemed for all purposes under the Plan to have been applied to payment of amounts due under the Bonds in the manner, for the purposes and in the order of priority otherwise provided in the Plan and under the New Indenture.

23

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

**5.2.10.** The treatment afforded the Holders of Class 4 Claims herein is not intended to (i) affect or extinguish the exclusion of interest paid on the 1st Tier Bonds (whether paid by Reorganized LVMC or any third party) from gross income for federal income tax purposes; nor (ii) affect or diminish any third-party rights to reimbursement or subrogation under the 1st and 2nd Tier Indenture or 1st Tier Bondholders' Insurance Policy except as expressly set forth in this Plan.

**5.2.11.** Reserved.

**5.2.12.** The New Indenture shall include provisions for the benefit of the holders of the Cash Pay ~~Notes~~Bonds and the Holders of the CapEx ~~Notes~~Bonds that set forth (i) limitations on indebtedness and liens; (ii) a change of control put; (iii) limitations on asset sales and mandatory prepayment provisions with the proceeds of asset sales, with such asset sales limited to sales for fair value in which at least 75% of the consideration consists of cash (provided that Reorganized LVMC may engage without restriction in immaterial sales in the ordinary course of business of assets that are worn or obsolete or not used or useful in the business of Reorganized LVMC); (iv) limitations on capital expenditures ~~(~~, excluding Permitted Stations and Permitted Interconnections,      but including an annual cap of $200,000 on expenditures for expansion analysis and preparation, provided that (x) such expenditures are approved by Reorganized LVMC's ~~board~~Board of ~~directors~~Directors and (y) such expenditures are permitted only if all debt service on the Cash Pay ~~Notes~~Bonds is current, all Operations and Maintenance Costs accrued to the relevant date have been paid and Reorganized LVMC has added cash to fund its working capital requirements); and (v) a prohibition on CARP that does not comply with the definition in the Monorail Operation and Maintenance Agreement.

**5.2.13**. Provided the 1st Tier Trustee Settlement Agreement is executed by all parties thereto and approved by the Bankruptcy Court, it is an integral part of the treatment of the Class 4A, Class 4B and Class 4C, and it is incorporated herein by this reference.

**5.2.14.** The Holders of Class 4A, Class 4B and Class 4C Claims are Impaired under this Plan and are entitled to vote on this Plan.

**5.3.    Class 5A, Class 5B and Class 5C – 1st Tier Bond Unsecured Claims, Ambac Surety Bond Unsecured Claims, and the Ambac Insurance Unsecured Claims.**

**5.3.1**. As the sole source of recovery from Reorganized LVMC on the Unsecured Claim portion any and all 1st Tier Bond Claims (Class 5A Claims), and subject to the determination of Ambac's contribution and reimbursement rights with respect to the Ambac Surety Bond Unsecured Claim under **Section 5.3.2** below in this Plan, the Holders of 1st Tier Bond Claims, (which Claims include, as of the Record Date, Claims of Ambac for 1st Tier Bonds purchased and held by Ambac) shall receive ~~on the Effective Date~~ a Pro Rata interest in the Capital Appreciation ~~Notes.~~ Bonds, and, provided the 1st Tier Trustee Settlement Agreement is executed by all of the parties thereto and approved by the Bankruptcy Court at the Confirmation Hearing, in accordance with the 1st Tier Trustee Settlement Agreement.  In the event that the 1st Tier Trustee Settlement Agreement is not executed for any reason and approved by the Bankruptcy Court, the New Trustee will still deliver the Capital Appreciation Bonds to the 1st Tier Trustee on behalf of the Holders of Class 5A Claims.   The Capital Appreciation ~~Notes~~Bonds shall be governed by the New Indenture and secured by the Security Documents.  Any obligations of Debtor under the 1st Tier Note and the 1st and 2nd Tier Indenture shall be extinguished, cancelled, and discharged on the Effective Date.

**5.3.2.** In full and complete satisfaction of the Unsecured Claim portion of any and all Ambac Surety Bond Claims (Class 5B Claims) against LVMC, Ambac's contribution and reimbursement rights with respect to the Ambac Surety Bond Claims, if any, shall be treated by



participation in the Capital Appreciation ~~Notes~~Bonds in an amount determined under applicable law and the 1st and 2nd Tier Indenture.

**5.3.3.**  In full and complete satisfaction of the Unsecured Claim portion of any and all Ambac Insurance Claims (Class 5C Claims) against LVMC, on the Effective Date Ambac shall retain any reimbursement or contribution rights and its subrogation rights under the 1st Tier Bondholders' Insurance Policy as limited by 11 U.S.C. § 509(a) and (b), and pursuant to 11 U.S.C. § 509(c) and applicable law, Ambac shall have the rights to assert those reimbursement or contribution rights or rights only after and to the extent of payment of the 1st Tier Bond Claims in full (or with such lesser amount accepted by or binding upon the Holders in full and complete satisfaction of their claims against the 1st Tier Bondholders' Insurance Policy or as otherwise permitted under the governing agreements and applicable law). The Ambac subrogation rights with respect to the Unsecured Claim portion of the Ambac Insurance Claims, if any, shall be limited to receipt of the balance outstanding of the outstanding payment stream due under the Capital Appreciation ~~Notes~~Bonds, but only after payment of the Class 5B Claims.

**5.3.4.**  The Capital Appreciation ~~Notes~~Bonds shall be secured by a third priority Lien (subordinate to the Cash Pay ~~Notes~~Bonds and CapEx ~~Notes~~Bonds) on the Collateral, to become a second priority lien on the repayment in full of the Cash Pay ~~Notes~~Bonds and a first priority Lien upon repayment in full of both the Cash Pay ~~Notes~~Bonds and the CapEx ~~Notes~~Bonds.

**5.3.5.**  Reorganized LVMC may incur indebtedness and senior purchase money Liens in the ordinary course of business (but, except as otherwise expressly stated ~~herein~~in this Plan or in the Plan Documents, not Liens for borrowed money).   Any such permitted indebtedness and/or permitted Liens shall be (i) consistent with annual forecasts approved by ~~the board of directors~~Reorganized LVMC's Board of Directors and (ii) subject to other restrictions contained in the New Indenture.  The Capital Appreciation ~~Notes~~Bonds will rank senior in right of payment to any other permitted indebtedness of Reorganized LVMC, except as otherwise expressly provided in this Plan or in the Plan Documents; provided further, however, that the Lien of the Capital Appreciation ~~Notes~~Bonds may be subordinated to indebtedness of Reorganized LVMC to fund capital expenditures ~~unanimously~~if approved by the unanimous consent or vote of the members of Reorganized LVMC's ~~board~~Board of ~~directors~~Directors in amounts to be determined if so approved by holders of at least 66 2/3% of the Capital Appreciation ~~Notes amounts outstanding (in~~Bonds (by accreted principal amount~~)~~ outstanding) voting on the proposal.

~~5.3.4.~~5.3.6.      The treatment afforded the Holders of Class 5 Claims herein is not intended to (i) affect or extinguish the exclusion of interest paid on the 1st Tier Bonds (whether paid by Reorganized LVMC or any third party) from gross income for federal income tax purposes; or (ii) affect or diminish any third-party rights to reimbursement or subrogation under the 1st and 2nd Tier Indenture or 1st Tier Bondholders' Insurance Policy.

**5.3.7.**  Reserved.

**5.3.8.**  The New Indenture shall include negative covenants for the benefit of the holders of the Capital Appreciation ~~Notes~~Bonds that set forth (i) limitations on indebtedness and liens, which provisions shall be substantially the same as the limitations on indebtedness and liens in the New Indenture for the benefit of the holders of the Cash Pay ~~Notes~~Bonds and the holders of the CapEx ~~Notes~~Bonds, and (ii) limitations on capital expenditures.

**5.3.9.**  Provided the 1st Tier Trustee Settlement Agreement is executed by all the parties thereto and is approved by the Bankruptcy Court at the Confirmation Hearing, it is an integral part of the treatment of the Class 5A, Class 5B and Class 5C, and it is incorporated herein by this reference.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/v13/Third Amended Plan.doc

**5.3.10.** The Holders of Class 5A, Class 5B and Class 5C Claims are Impaired under this Plan and are entitled to vote on this Plan.

**5.4.** **Class 6 – 2nd Tier Bond Claims.** The 2nd Tier Bond Claims are contractually subordinated to the 1st Tier Bond Claims. Because the 1st Tier Bond Claims are not being paid in full, Holders of Class 6 LVMC has stipulated with the 2nd Tier Trustee, 1st Tier Trustee and Majority Bondholders to terminate the automatic stay to permit the 2nd Tier Trustee to file a petition with the Minnesota State Court seeking authority from such court to distribute the Second Tier Debt Service Reserve Fund (as defined in the 1st and 2nd Tier Indenture) held by the 2nd Tier Trustee, to pay for all of the 2nd Tier Trustee fees and costs and other 2nd Tier Bond Claims, after distributing $400,000 of that Fund to the 1st Tier Trustee to satisfy a portion of the 1st Tier Trustee's costs and expenses, all as more fully described and in accordance with the terms of that certain stipulation filed by the Debtor with the Bankruptcy Court in the Chapter 11 Case on September 2, 2011 [ECF No. 920-1], which stipulation incorporates the Minnesota Petition. The Minnesota Petition seeks additional relief, determinations, and directions as set forth therein. The Holders of 2nd Tier Bond Claims shall not receive or retain any property on account of their Claims under this Plan, The Holders of the 2nd Tier Bond Claims shall receive distributions, if any, from the 2nd Tier Trustee from the Second Tier Debt Service Reserve Fund, pursuant and subject to entry of the order of the Minnesota State Court approving the Minnesota Petition and the 1st and 2nd Tier Indenture. Notwithstanding anything to the contrary herein, the Second Tier Debt Service Reserve Fund and any and all funds therein, subject to the occurrence of the Effective Date, shall not be included as either an Asset or as Collateral under this Plan, and nothing herein shall affect the charging lien rights of the 2nd Tier Trustee (except that it has no such rights regarding the $400,000 transferred to the 1st Tier Trustee upon the entry of an order granting the Minnesota Petition). Upon the Effective Date and entry of a final order granting the Minnesota Petition, the 2nd Tier Trustee shall be relieved of all duties and responsibilities related to the 1st and 2nd Tier Indenture except with respect to the payments to be made pursuant to the Minnesota Petition. Any obligations of Debtor under the 2nd Tier Obligation and any and all obligations of the Debtor due under the Financing Agreement, the 1st and 2nd Tier Indenture, and the 2nd Tier Bonds shall be extinguished, cancelled, and discharged; provided, however, that the rights of the 2nd Tier Bondholders to the funds in the 2nd Tier Debt Service Reserve Fund presently held by the 2nd Tier Trustee and whether such funds are property of the Estate and/or Assets under this Plan, shall be determined by the Bankruptcy Court, which, provided that the Bankruptcy Court determines that such funds are property of the Estate, shall also determine the charging lien rights of the 1st Tier Trustee and 2nd Tier Trustee with respect to those funds. on the Effective Date. The 2nd Tier Bond Claims are Impaired, are deemed to have rejected this Plan, and are not entitled to vote on the Plan.

**5.5.** **Class 7 – 3rd Tier Bond Claims.** 3rd Tier Bond Claims are contractually subordinated to the 1st Tier Bond Claims and 2nd Tier Bond Claims. Because the 1st Tier Bond Claims and 2nd Tier Bond Claims are not being paid in full, Holders of Class 7 Claims shall not receive or retain any property on account of their Claims under this Plan. Any and all obligations of Debtor under the 3rd Tier Note and any and all obligations of the Debtor due under the Financing Agreement, the 3rd Tier Indenture, and the 3rd Tier Bonds shall be extinguished, cancelled, and discharged. 3rd Tier Bond Claims are Impaired, are deemed to have rejected this Plan, and are not entitled to vote on this Plan.

**5.6.** **Class 8 – Director Claims.** The Director will not receive or retain any property on account of its Claims other than any funds remaining in the "Indemnification Account" within the Contingency Fund as defined in the 1st and 2nd Tier Indenture. The Director is a Third Party Releasee and on the Effective Date will receive the Third Party Release as provided for in **Section 10.7** in this Plan. Director Claims are Impaired under this Plan and the Director is entitled to vote on this Plan.

26

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

**5.7.    Class 9 – Subordinated Claims.**  Holders of Subordinated Claims shall not receive any distribution on account of such Claims.  Holders of Class 9 Claims are Impaired under this Plan, are not entitled to vote on this Plan, and are deemed to have rejected this Plan.

# 6.    MEANS FOR IMPLEMENTATION OF PLAN

**6.1.    Reorganized LVMC.**  On or before the Effective Date, the Reorganized LVMC Organizational Documents shall be executed and, to the extent required, filed with the Nevada Secretary.  The Reorganized LVMC Organizational Documents shall (i) include, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code; and (ii) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate this Plan and the transactions contemplated herein.  After the Effective Date, Reorganized LVMC shall be responsible for the preparation of all reports, tax returns and other governmental filings required to be filed by the Debtor and Reorganized LVMC and all obligations related thereto.

**6.2.    Additional Reorganized LVMC Provisions.**  The Reorganized LVMC Organizational Documents, and resolutions or similar documents related to the formation and governance of Reorganized LVMC under this Plan shall be subject to applicable bankruptcy and/or Nevada law.  Reorganized LVMC shall remain a Nevada non-profit corporation.

**6.3.    Effective Date Events.**  On the Effective Date:

1.    The Debtor's Obligations under the 1st Tier Note, 2nd Tier Obligation, and 3rd Tier Note shall be cancelled and discharged and of no further force or effect;

2.    Reorganized LVMC and the Assets shall be released from any and all obligations and liabilities arising under the 1st and 2nd Tier Indenture, the 3rd Tier Indenture and the Financing Agreement, and the Financing Agreement shall be otherwise cancelled and extinguished except to the extent necessary or useful to retain and pursue or recover claims against the 1st Tier Bondholders' Insurance Policy and/or 1st Tier Bondholders' Surety Bond;

3.    None of the 1st Tier Note, the 2nd Tier Obligation and the 3rd Tier Note shall be a payment obligation of Reorganized LVMC, and the 1st Tier Note and 2nd Tier Indenture shall continue in effect, provided that in no event shall the 1st Tier Note, 2nd Tier Obligation, the 3rd Tier Note, the 1st and 2nd Tier Indenture or the 3rd Tier Indenture be effective or enforceable against Debtor or Reorganized LVMC;

4.    Reorganized LVMC shall execute and deliver to the New Trustee (i) the Cash Pay ~~Notes~~Bonds, (ii) the CapEx ~~Notes~~Bonds, (iii) the Capital Appreciation ~~Notes~~Bonds, (iv) the New Indenture, and (v) the Security Documents, all of which shall become immediately effective; and

5.    ~~The New Trustee shall deliver the Cash Pay Notes, the CapEx Notes, and the Capital Appreciation Notes~~In the event the 1st Tier Trustee Settlement Agreement is executed by all of the parties thereto and approved by the Bankruptcy Court at the Confirmation Hearing, the Bonds shall be delivered to the 1st Tier Trustee, to be held in accordance with the 1st Tier Trustee Settlement Agreement.  However, in the event the 1st Tier Trustee Settlement Agreement is not effective, the New Trustee shall deliver the Bonds to the 1st Tier Trustee on behalf of the Holders of 1st Tier Bond Claims, but if the 1st Tier Trustee refuses to accept delivery of the Bonds, then the New Trustee shall deliver the Bonds to Cede & Co., as nominee of the Depository Trust Company to hold as record owner for the benefit of the Holders of ~~the 1st Tier Bonds as of the Record Date~~1st Tier Bond Claims be held for the benefit of Ambac and the Holders electronically in fractionalized amounts as their interests appear.  Any term in this

**Gordon Silver**
~~Attorneys At Law~~
~~Ninth Floor~~
~~3960 Howard Hughes Pkwy~~
~~Las Vegas, Nevada 89169~~
~~(702) 796-5555~~
**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

Plan to the contrary notwithstanding, there shall only be one Cash Pay Bond, one CapEx Bond and one Capital Appreciation Bond delivered by Reorganized LVMC and the reference to each series of Bonds in plural form throughout this Plan is meant to reflect that the Bonds will be held for the benefit of Ambac and the Holders electronically in fractionalized amounts as their interests appear.

### 6.4.    Additional ~~Notes~~**Bond** Terms.

**6.4.1.**    Reorganized LVMC shall have the right to prepay the Cash Pay ~~Notes~~Bonds at any time upon payment of the outstanding principal amount plus accrued but unpaid interest to the date of redemption, plus a premium of 8% of the initial outstanding principal, declining by 1% per year through 2018 at which time such exit premium shall terminate.  The Cash Pay ~~Notes~~Bonds shall be subject to the terms of the New Indenture.  The Cash Pay ~~Notes~~Bonds shall be transferable in whole or in part, subject to applicable federal and state securities laws (taking account of section 1145(a) of the Bankruptcy Code).  For so long as the Cash Pay ~~Notes~~Bonds have not been paid, at least 66 2/3% of the holders of the Cash Pay ~~Notes~~Bonds (by principal amount outstanding) will be required for Reorganized LVMC to (i) direct the New Trustee to take any action affecting the Cash Pay ~~Notes~~Bonds, or (ii) modify any term or provision of the Cash Pay ~~Notes~~Bonds or the New Indenture to the extent affecting the Cash Pay ~~Notes~~Bonds, except for certain modifications as provided in the New Indenture and that customarily require the approval of each affected holder of the Cash Pay ~~Notes~~Bonds (modification of the interest rate, reduction of the principal amount of, or modification of the security for the Cash Pay ~~Notes~~Bonds, or extension of the Cash Pay ~~Notes~~Bonds Maturity Date).

**6.4.2.**    The CapEx ~~Notes~~Bonds may be redeemed by Reorganized LVMC prior to the CapEx ~~Notes~~Bonds Maturity Date at any time; provided, however, that all interest, principal and premium, if any, on the Cash Pay ~~Notes~~Bonds shall have been paid in full. For so long as the CapEx ~~Notes~~Bonds have not been paid, the holders of at least 66 2/3% of the CapEx ~~Notes~~Bonds (by accreted principal amount outstanding) shall be required to (i) direct the New Trustee to take any action affecting the CapEx ~~Notes~~Bonds, or (ii) modify any term or provision of the CapEx ~~Notes~~Bonds or the New Indenture to the extent affecting the CapEx ~~Notes~~Bonds, whether in response to a proposal of Reorganized LVMC or otherwise, except for certain modifications as provided in the New Indenture and that customarily require the approval of each affected holder of the CapEx ~~Notes~~Bonds (modification of the interest rate, reduction of the principal amount of, or modification of the security for the CapEx ~~Notes~~Bonds, or extension of the CapEx ~~Notes~~Bonds Maturity Date beyond June 30, 2025) and except that (i) the terms of the CapEx ~~Notes~~Bonds shall not be modified so long as the Cash Pay ~~Notes~~Bonds are outstanding, except to the extent that such modification does not adversely affect the holders of the Cash Pay ~~Notes~~Bonds, and (ii) without the consent of the New Trustee, no such modification shall cause the reduction at the time or at any future time of the balance of the CapEx Reserve Account to an amount below ~~$2,000,000 until or unless~~ the CapEx ~~Notes have been satisfied, at which time the balance of the CapEx Reserve Account may be reduced to $550,000. The positive difference between the remaining balance of the $2,000,000 trustee reserve in the CapEx Reserve Account and $550,000 may be used by Reorganized LVMC to retire the CapEx Notes.  The CapEx~~ ~~Notes~~Reserve Account Minimum Balance.  The CapEx Bonds shall be subject to the terms of the New Indenture. The CapEx ~~Notes~~Bonds shall be transferable in whole or in part, subject to applicable federal and state securities laws (taking account of section 1145(a) of the Bankruptcy Code); provided, however, that the holder of CapEx ~~Notes~~Bonds shall have no right to transfer CapEx ~~Notes~~Bonds to a transferee without transferring to that same transferee the Capital Appreciation ~~Notes~~Bonds that were issued to that holder, or that holder's predecessor-in-interest with the CapEx ~~Notes~~Bonds to be transferred.

**6.4.3.**    Prior to CapEx ~~Notes~~Bonds Maturity Date, Reorganized LVMC may make a proposal to the holders of the CapEx ~~Notes~~Bonds for the extension of the CapEx ~~Notes~~Bonds Maturity Date through a date not later than June 30, 2025, with continuing

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/v13/Third Amended Plan.doc

contributions to the CapEx Reserve Account to be made through such date, or other proposal to redeem or modify the CapEx ~~Notes~~Bonds provided that the CapEx Maturity Date shall not be later than June 30, 2025. Any such extension, or proposal for redemption or modification, shall require the approval of holders of at least 66 2/3% in principal amount of the CapEx ~~Notes~~Bonds then outstanding. If the holders of the CapEx ~~Notes~~Bonds do not agree to such extension or other proposal to redeem or modify the provisions of the CapEx ~~Notes~~Bonds, and the CapEx ~~Notes~~Bonds are not paid on or prior to the CapEx ~~Notes~~Bonds Maturity Date, the holders of the CapEx ~~Notes~~Bonds may exercise their rights and remedies set forth in the New Indenture and the Security Documents.

6.4.4. The Capital Appreciation ~~Notes~~Bonds may be redeemed by Reorganized LVMC if approved by the holders of at least 66 2/3% of the Capital Appreciation ~~Notes~~Bonds (by accreted principal amount outstanding), subject to the payment of the Triggering Event Payment. The Capital Appreciation ~~Notes~~Bonds shall be subject to the terms of the New Indenture. The Capital Appreciation ~~Notes~~Bonds shall be transferable, subject to applicable federal and state securities laws (taking account of section 1145(a) of the Bankruptcy Code), provided, however, that Holders of Capital Appreciation ~~Notes~~Bonds shall have no right to transfer Capital Appreciation ~~Notes~~Bonds to a transferee without transferring to that same transferee the all of the Capital Appreciation ~~Notes~~Bonds that were issued to that holder, or that holder's predecessor-in-interest with the Capital Appreciation ~~Notes~~Bonds to be transferred. For so long as the Capital Appreciation ~~Notes~~Bonds have not been paid, the holders of at least 66 2/3% of the Capital Appreciation ~~Notes~~Bonds (by accreted principal amount outstanding) shall be required to (i) direct the New Trustee to take any action affecting the Capital Appreciation ~~Notes~~Bonds, or (ii) modify any term or provision of the Capital Appreciation ~~Notes~~Bonds or the New Indenture to the extent affecting the Capital Appreciation ~~Notes~~Bonds, whether in response to a proposal of Reorganized LVMC or otherwise, except for certain modifications as provided in the New Indenture and that customarily require the approval of each affected holder of the Capital Appreciation ~~Notes~~Bonds (modification of the interest rate, reduction of the principal amount of, or modification of the security for the Capital Appreciation ~~Notes~~Bonds, or extension of the Capital Appreciation ~~Notes~~Bonds Maturity Date); provided, however, that such exceptions shall not apply to a modifications made in connection with Extraordinary Transaction (i) approved by the vote of the holders of at least 66 2/3% of the Capital Appreciation ~~Notes~~Bonds (by accreted principal amount outstanding) and that results in payment to the holders that is at least as beneficial to the holders of the Capital Appreciation ~~Notes~~Bonds as the Triggering Event Payment or (ii) approved by the vote of at least 66 2/3% of the holders of the Capital Appreciation ~~Notes~~Bonds outstanding, including holders of 75% of the Capital Appreciation ~~Notes~~Bonds (by accreted principal amount outstanding) voting on the proposed modification.

6.5. **New Financing for New Passenger Stations.** ~~Upon unanimous approval of its new board~~Any term in this Plan to the contrary notwithstanding, Reorganized LVMC shall have the right to obtain ~~new financing in the nature of borrowed funds in an amount not to exceed $12,000,000 (up to $6,000,000 per Monorail passenger station) in new senior secured construction financing related solely to the construction of up to two (2) new Monorail passenger stations along the currently existing Monorail alignment~~Permitted Station Indebtedness to be used to construct the Permitted Stations. A first lien on 100% of the revenues attributed and allocable to the addition of such new Monorail passenger stations, a pledge of the new Monorail passenger station(s) so constructed and agreements pertaining only to those stations (e.g., leases) shall be available to Reorganized LVMC to secure the repayment of ~~such construction financing~~Permitted Station Indebtedness, with such financing being senior in position to the Liens securing the Cash Pay ~~Notes~~Bonds, CapEx ~~Notes~~Bonds, and Capital Appreciation ~~Notes~~Bonds.

6.6. **Capital Expenditures and Procedures.**

**6.6.1.**  In each year, Reorganized LVMC may make withdrawals from the CapEx Reserve Account to fund capital expenditures on prior notice to the New Trustee but without the consent of the holders of the CapEx ~~Notes~~Bonds in an amount not to exceed $25,000 in any calendar quarter, with any unused withdrawal capacity to be available for withdrawal during the next succeeding three calendar quarters; provided, however, that the New Trustee's fees, indemnification and reimbursement rights have been fully funded to the extent allowed in this Plan, and that all debt service on the Cash Pay ~~Notes~~Bonds is current; and provided further, however, that after such withdrawal the balance of the CapEx Reserve Account shall ~~be at least $2,000,000 (absent written consent from the New Trustee) until the CapEx Notes have been satisfied, at which time the balance of~~not be less than the CapEx Reserve Account ~~may be reduced to $550,000 as a reserve for the New Trustee~~Minimum Balance.

**6.6.2.**  Reorganized LVMC may make withdrawals from the CapEx Reserve Account to fund capital expenditures in amounts in excess of $25,000 only on prior notice to the New Trustee and with the prior written consent of the holders of at least 66 2/3% of the CapEx ~~Notes~~Bonds (by accreted principal amount outstanding); provided, however, that all debt service on the Cash Pay ~~Notes~~Bonds is current and the New Trustee's fees, indemnification and reimbursement rights have been fully funded to the extent allowed in this Plan, and; provided further, however, that after such withdrawal the balance of the CapEx Reserve Account shall ~~be at least $2,000,000 (absent written consent of the New Trustee) until the CapEx Notes have been satisfied, at which time the balance of~~not be less than the CapEx Reserve Account ~~may be reduced to $550,000 as a reserve for the New Trustee~~Minimum Balance. Any such request shall specify the amount of the funds to be drawn and the capital expenditures for which the funds are required, described in reasonable detail.

**6.6.3.**  Capital expenditures (exclusive of CARP, Permitted Stations and Permitted Interconnections) shall be restricted to the costs of renewal or replacement of existing Monorail related parts, systems and capital assets necessary for the continued operation of the Monorail in a prudent and safe manner, as determined by the Reorganized  LVMC's board and subject to the negative covenants described below.

**6.6.4.**  Except as otherwise set forth in **Sections 6.6.1 and 6.6.2** of this Plan, release of funds to Reorganized LVMC from the CapEx Reserve Account, or any modification to the terms of the CapEx Reserve Account, shall require the consent of the holders of at least 66 2/3% of the CapEx ~~Notes~~Bonds outstanding (by accreted principal amount outstanding); provided, however, that for so long as the Cash Pay ~~Notes~~Bonds are outstanding, no such release or modification shall alter the amount of the funds required to be held in or contributed to the CapEx Reserve Account, as provided in this Plan and the CapEx Reserve Account Agreement; and provided further that without the consent of the New Trustee, no such modification or release shall cause the reduction, currently or at any future time, of the balance of the CapEx Reserve Account to an amount below the ~~$2,000,000 amount reserved for the New Trustee in the~~ CapEx Reserve Account ~~until the CapEx Notes have been satisfied, at which time the balance of the CapEx Reserve Account may be reduced to $550,000 as a reserve for the New Trustee~~Minimum Balance.

**6.6.5.**  ~~Any~~Reorganized LVMC shall have the right to incur Permitted Interconnection Indebtedness, the proceeds of which will be applied to the development, acquisition, construction and operation of a Permitted Interconnection.  Permitted Interconnection Indebtedness shall not be guaranteed by Reorganized LVMC. Permitted Interconnection Net Revenues, if any, shall be applied by the New Trustee and treated as Project Revenues under the New Indenture. Fare sharing agreements between Reorganized LVMC and any of the one or more to-be formed wholly owned or controlled special purpose entities of Reorganized LVMC and any joint venture partners of those subsidiaries shall apportion revenues related to a Permitted Interconnection in a fair and equitable manner and be approved by the unanimous consent or vote of the members of Reorganized LVMC's Board of Directors.

102200-002/v13/Third Amended Plan.doc

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

**6.6.6.** Except as expressly provided in this Plan, any vote on any matter under the New Indenture by any holder of a Cash Pay ~~Note~~Bond, CapEx ~~Note~~Bond or Capital Appreciation ~~Note~~Bond shall be sent to such holders no earlier than 90 days and no later than 45 days before the date on which the action or other matter voted upon is to occur or take place. The vote shall be calculated based upon the holders who actually vote.

**6.7.** **Extraordinary Transactions.** Reorganized LVMC shall not consummate an Extraordinary Transaction (i) for so long as the Cash Pay ~~Notes~~Bonds have not been paid, unless approved by the holders of at least 66 2/3% of the Cash Pay ~~Notes~~Bonds (by principal amount outstanding); (ii) for so long as the CapEx ~~Notes~~Bonds have not been paid, unless approved by the holders of at least 66 2/3% in amount of the CapEx ~~Notes~~Bonds (by accreted principal amount outstanding), and (iii) for so long as the Capital Appreciation ~~Notes~~Bonds have not been paid, unless approved by the holders of at least 66 2/3% of the Capital Appreciation ~~Notes~~Bonds (by accreted principal amount outstanding), subject to payment of the Triggering Event Payment unless otherwise agreed pursuant to **Section 6.4.4** in this Plan, and consistent with the other requirements of this Plan

**6.8.** **Post-Effective Date Officers and Directors of Reorganized LVMC.**

**6.8.1.** On the Effective Date, the initial board of directors of Reorganized LVMC shall be reconstituted to be comprised of seven (7) individuals, which shall include the five (5) individuals serving on ~~the board of directors~~Reorganized LVMC's Board of Directors on the Confirmation Date, and two (2) individuals selected by the Majority 1st Tier Bondholders, one (1) of whom shall be designated the special director of the holders of the Cash Pay ~~Notes~~Bonds and one (1) of whom shall be designated the special director of the holders of the CapEx ~~Notes~~Bonds, as provided in **Section 6.8.2** of this Plan. Thereafter, members of the board of directors shall be selected pursuant to the Reorganized LVMC Organizational Documents. The initial officers shall be comprised of the individuals employed as officers on the Confirmation Date, pursuant to each such individual's Employment Agreement, if any, as may have been modified, amended or extended prior to Confirmation. The Debtor will disclose, at or prior to the Confirmation Hearing, the identity of such individuals.

**6.8.2.** Consistent with applicable law and the Nevada Governor's existing rights regarding the appointment and removal of Debtor's directors, prior to the Effective Date (but effective only upon the Effective Date), the Reorganized LVMC Organizational Documents shall be amended to provide the right of the holders of the Cash Pay ~~Notes~~Bonds and the holders of the CapEx ~~Notes~~Bonds (each acting by majority in principal amount or accreted principal amount) to each select, remove, and replace a special director of Reorganized LVMC until such time as their respective ~~notes~~Bonds have been paid in full, at which time the applicable special director shall be deemed to have resigned.

**6.8.3.** The vote of the Cash Pay ~~Notes~~Bonds special director and the CapEx ~~Notes~~Bonds special director will be required for any determination by the Reorganized LVMC board of directors to (i) engage in any Extraordinary Transaction; or (ii) commence any voluntary bankruptcy or other insolvency, restructuring or liquidation proceeding of Reorganized LVMC.

**6.8.4.** Consistent with applicable law and the Nevada Governor's existing rights regarding the appointment and removal of Debtor's directors, at such time as the special director appointed by the holders of the Cash Pay ~~Notes~~Bonds is no longer serving on the LVMC board, the holders of the Capital Appreciation ~~Notes~~Bonds (acting by majority in accreted principal amount) shall have the right to select, remove and replace on (1) special director of Reorganized LVMC; and at such time as the special directors appointed by the holders of the Cash Pay ~~Notes~~Bonds and the CapEx ~~Notes~~Bonds are no longer serving on ~~the~~Reorganized LVMC

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

board's Board of Directors, the holders of the Capital Appreciation ~~Notes~~Bonds (acting by majority in accreted principal amount) shall have the right to select, remove, and replace two (2) special directors of Reorganized LVMC until such time as the Capital Appreciation ~~Notes~~Bonds are paid, at which time such special directors shall be deemed to have resigned. The vote of the Capital Appreciation ~~Notes~~Bonds special directors and will be required for any determination to (i) engage in any Extraordinary Transaction; or (ii) commence any voluntary bankruptcy or other insolvency, restructuring or liquidation proceeding of Reorganized LVMC.

**6.8.5.** Reorganized LVMC shall be responsible for the payment of all Allowed Claims to be paid pursuant to this Plan which are not paid on or before the Effective Date, as well as all Allowed Claims, including Taxes and Professional Fees, incurred by the Debtor in operating its business up to and including the Effective Date, whether due or payable before or after the Effective Date, provided that any distributions that LVMC or Reorganized LVMC may receive on account of the 1st Tier Bondholders' Insurance Policy shall be transferred directly from Ambac to the 1st Tier Trustee for distribution without involvement of Reorganized LVMC.

**6.9.** **Certain Rights of the New Trustee.** The New Trustee shall have the right, upon instruction from the holders of at least 51% of the Cash Pay ~~Notes~~Bonds outstanding (by principal amount outstanding) or, if the Cash Pay ~~Notes~~Bonds shall cease to be outstanding, the holders of at least 51% of the CapEx ~~Notes~~Bonds (by accreted principal amount outstanding) or, if the CapEx ~~Notes~~Bonds shall cease to be outstanding, the holders of at least 51% of the Capital Appreciation ~~Notes~~Bonds (by accreted principal amount outstanding) and reasonable notice to LVMC, to perform an audit of the LVMC books and records and to access the Assets for purposes of inspection. Additionally, the New Trustee shall have the right to request and obtain additional information from LVMC with respect to any permitted indebtedness, permitted liens, CARP, capital expenditures, Asset sales or expenditures by LVMC for expansion analysis. LVMC will make quarterly and annual financials publicly available (with audited financials to be delivered to the New Trustee within One-Hundred Twenty (120) days of LVMC's fiscal year end).

**6.10.** **No Corporate Action Required.** As of the Effective Date: (i) the adoption, execution, delivery and implementation or assignment of all contracts, leases, instruments, releases and other agreements related to or contemplated by this Plan; and (ii) the other matters provided for under or in furtherance of this Plan involving corporate action to be taken by or required of the Debtor, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without further order of the Bankruptcy Court or any requirement of further action by ~~the board of directors~~Reorganized LVMC's Board of Directors or officers of the Debtor. In particular, the adoption of the Reorganized LVMC Organizational Documents, the selection of directors and officers of the Debtor or Reorganized LVMC, and all other actions contemplated by or described in this Plan with respect thereto, shall be authorized and approved and be binding and in full force and effect in all respects (subject to the provisions of this Plan and the Confirmation Order), in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule (other than filing such organizational documents with the applicable governmental unit as required by applicable law) or the vote, consent, authorization, or approval of any Person. Notwithstanding the forgoing, Reorganized LVMC shall take all action required to effectuate the New Indenture, the perfection and enforceability of the Security Documents, and any other action required to implement the Plan.

**6.11.** **Effectuation of Transactions.** On the Effective Date, the appropriate officers of the Debtor and members of the board of directors are authorized to issue, execute, and deliver the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions, and instruments contemplated by or described in this Plan in the name of and on behalf of the Debtor and Reorganized LVMC, and to otherwise fully consummate the transactions contemplated by this Plan, in each case without further notice to or order of the

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

32

Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote, or other approval or authorization by any Person.

**6.12. Required Findings.** Upon entry of the Confirmation Order, the Director of the State of Nevada Department of Business & Industry or other agent of the State, as applicable, shall not be restricted by the Bankruptcy Court or federal law from issuing certificates and findings to the extent required under Revenue Ruling 63-20 or other applicable law for the issuance by Reorganized LVMC of the Restructured Obligations as tax-exempt obligations, including, without limitation, a certification that the State will accept title to the Project when the Cash Pay ~~Notes~~Bonds, the CapEx ~~Notes~~Bonds, and the Capital Appreciation ~~Notes~~Bonds are discharged and a certificate stating that the State approves the purposes and activities of Reorganized LVMC and the issuance of the Cash Pay ~~Notes~~Bonds, the CapEx ~~Notes~~Bonds, and the Capital Appreciation ~~Notes~~Bonds to be issued by Reorganized LVMC.

**6.13. Filing with Nevada Secretary.** To the extent applicable, in accordance with NRS 78.622, on the Effective Date a certified copy of this Plan and the Confirmation Order shall be filed with the Nevada Secretary. The Debtor, from the Confirmation Date until the Effective Date, is authorized and directed to take any action or carry out any proceeding necessary to effectuate this Plan pursuant to NRS 78.622.

**7. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**7.1. Executory Contracts.** Except for Executory Contracts and Unexpired Leases specifically addressed in this Plan or set forth on the schedule of Rejected Executory Contracts and Unexpired Leases attached as **Schedule 7.1** hereto (which may be supplemented and amended up to the date the Bankruptcy Court enters the Confirmation Order and thereafter pursuant to **Section 7.3** of this Plan), all Executory Contracts and Unexpired Leases that exist on the Confirmation Date shall be deemed assumed by Reorganized LVMC on the Effective Date. At least 15 days prior to the Confirmation Hearing, the Majority 1st Tier Bondholders shall be provided with a written list of all known Executory Contracts and Unexpired Leases and estimated cure costs for each Executory Contract and Unexpired Lease that are to be assumed.

**7.2. Approval of Assumption or Rejection.** Entry of the Confirmation Order shall constitute as of the Effective Date: (i) approval, pursuant to section 365(a) of the Bankruptcy Code, of the assumption by the Debtor of each Executory Contract and Unexpired Lease to which the Debtor is a party and which is not listed on **Schedule 7.1**, not otherwise provided for in this Plan and neither assumed, assumed and assigned, nor rejected by separate order prior to the Effective Date; and (ii) rejection by the Debtor of each Executory Contract and Unexpired Lease to which the Debtor is a party listed on **Schedule 7.1**. Upon the Effective Date, each counter party to an assumed Executory Contract or Unexpired Lease listed shall be deemed to have consented to assumption contemplated by section 365(c)(1)(B) of the Bankruptcy Code, to the extent such consent is necessary for such assumption. To the extent applicable, all Executory Contracts or Unexpired Leases of Reorganized LVMC assumed pursuant to this **Section 7** shall be deemed modified such that the transactions contemplated by this Plan shall not be a "change of control," however such term may be defined in the relevant Executory Contract or Unexpired Lease and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by the Confirmation of this Plan. Also, to the extent applicable, all Executory Contracts or Unexpired Leases of the Debtor assumed pursuant to this **Section 7** shall be assigned to Reorganized LVMC on the Effective Date, and such assignment shall not be a "change of control," however such term may be defined in the relevant Executory Contract or Unexpired Lease, and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by the Confirmation of this Plan; provided, however, pursuant to this Plan, the Financing Agreement and the 1st Tier Note shall not be deemed executory in nature, or capable of assumption or rejection by LVMC or Reorganized LVMC.

**Gordon Silver**
~~Attorneys At Law~~
~~Ninth Floor~~
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

**7.3.** **Cure of Defaults.** The Debtor or Reorganized LVMC shall Cure any defaults respecting each Executory Contract or Unexpired Lease assumed pursuant to this **Section 7** upon the latest of (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court or agreed upon by the Debtor, and after the Effective Date, Reorganized LVMC; or (iii) the first Business Day following the fourteenth (14th) day after the entry of a Final Order resolving any dispute regarding (a) a Cure amount; (b) the ability of the Debtor or the Reorganized LVMC to provide adequate assurance of future performance under the Executory Contract or Unexpired Lease assumed pursuant to this Plan in accordance with section 365(b)(1) of the Bankruptcy Code; provided, however, that upon resolution of a dispute over a Cure amount, Reorganized LVMC may reject the Executory Contract or Unexpired Lease notwithstanding a previous listing as assumed; or (c) any other disputed matter pertaining to assumption, assignment or the Cure of a particular Executory Contract or an Unexpired Lease. **Schedule 7.3** to the Plan lists the Debtors' proposed Cure amounts, if any, that will be paid as provided for above, which **Schedule 7.3** may be amended up to and including the commencement of the Confirmation Hearing.

**7.4.** **Objection to Cure Amounts.** Any party to an Executory Contract or Unexpired Lease who objects to the Cure amounts listed on **Schedule 7.3** to this Plan must file and serve an objection on the Debtor's counsel no later than the deadline set by the Bankruptcy Court for filing Plan objections. Failure to file and serve a timely objection shall be deemed consent to the Cure amounts listed on **Schedule 7.3**. Any Cure amounts shall be the responsibility of Reorganized LVMC. If there is a dispute regarding: (i) the amount of any Cure payment; (ii) the ability of Reorganized LVMC to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease to be assumed or assigned; or (iii) any other matter pertaining to assumption, the Cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption, except as provided in **Section 7.3** of this Plan.

**7.5.** **Confirmation Order.** The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumptions described in this **Section 7** of this Plan, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. Notwithstanding the foregoing, if, as of the date the Bankruptcy Court enters the Confirmation Order, there is pending before the Bankruptcy Court a dispute concerning the cure amount or adequate assurance for any particular Executory Contract or Unexpired Lease (or if the time period for a non-Debtor to object to the Cure has not yet lapsed), the assumption of such Executory Contract or Unexpired Lease shall be effective as of the date the Bankruptcy Court enters an order resolving any such dispute and authorizing assumption by the Debtor.

**7.6.** **Post-Petition Date Contracts and Leases.** Each such Executory Contract and Unexpired Lease shall be performed by the Debtor or Reorganized LVMC, as applicable, in the ordinary course of its business.

**7.7.** **Bar Date.** All proofs of Claims with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be filed no later than thirty (30) days after the Effective Date. Any Claim not filed within such time shall be forever barred.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002/v13/Third Amended Plan.doc

## 8.    MANNER OF DISTRIBUTION OF PROPERTY UNDER THIS PLAN

**8.1.    Distributions.**    Reorganized LVMC, shall be responsible for making Distributions described in this Plan.  Reorganized LVMC may make such Distributions before the allowance of each Claim has been resolved if the Debtor or Reorganized LVMC has a good faith belief that the Disputed Claim Reserve is sufficient for all Disputed Claims.  Except as otherwise provided in this Plan or the Confirmation Order, all Cash necessary for Reorganized LVMC to make payments pursuant to this Plan shall be obtained from existing Cash balances and the operations of the Debtor and Reorganized LVMC.

**8.2.    No Recourse.**    No recourse shall ever be had, directly or indirectly, against the Debtor or Reorganized LVMC or against any director, agent, attorney, accountant, or other professional for the Debtor or Reorganized LVMC, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by the Debtor or Reorganized LVMC under this Plan, or by reason of the creation of any indebtedness by the Debtor or Reorganized LVMC under this Plan for any purpose authorized by this Plan, it being expressly understood and agreed that all such liabilities, covenants, and agreements of the Debtor and Reorganized LVMC, whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Assets or such part thereof as shall under the terms of any such agreement be liable therefore or shall be evidence only of a right of payment out of the Assets.

**8.3.    Reserves.**    Reorganized LVMC, shall establish and maintain a Disputed Claim Reserve from property of the Estate pursuant to **Section 13.2.1** of this Plan.  If the amount of the Disputed Claim Reserve is expected to exceed $175,000, the amount of the Disputed Claim Reserve shall be agreed to in writing between Debtor, Ambac, and the Majority 1st Tier Bondholders by Majority 1st Tier Bondholders' Approval, or if the parties cannot agree, shall be established by Bankruptcy Court.

**8.4.    Statements.**    The Debtor and Reorganized LVMC, shall maintain a record of the names and addresses of all Holders of Allowed General Unsecured Claims as of the Effective Date for purposes of mailing Distributions.  The Debtor and Reorganized LVMC may rely on the name and address set forth in the Schedules and/or proofs of Claim as of the Record Date as being true and correct unless and until notified in writing.  The Debtor and Reorganized LVMC shall file all tax returns and other filings with governmental authorities on behalf of the Debtor and Reorganized LVMC and the Assets it holds.

**8.5.    Further Authorization.**    Reorganized LVMC shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions of this Plan.

## 9.    CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**9.1.    Conditions to Confirmation.**    As a condition precedent to the Confirmation of this Plan, the Confirmation Order shall be in form and substance reasonably acceptable to the Debtor.

**9.2.    Conditions to Effectiveness.**    The following are conditions precedent to the occurrence of the Effective Date:

1.    The Confirmation Order, the form and substance of which shall be both consistent with the terms of the Plan and subject to the Majority 1st Tier Bondholders' Approval and in substantially the form annexed to LVMC's Confirmation Hearing brief, except for such modifications as may be approved or ordered by the Bankruptcy Court, shall be a Final Order.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002v.13/Third Amended Plan.doc

2.    No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending, including any appeal;

3.    All documents necessary to implement the transactions contemplated by this Plan shall be in form and substance reasonably acceptable to the Debtor and Ambac and subject to Majority 1st Tier Bondholders' Approval, and, as so far as it concerns the rights and remedies of the New Trustee that are inconsistent with this Plan, the New Trustee;

4.    Sufficient Cash and other Assets shall be set aside, reserved and withheld by the Debtor to make the distributions required to be paid on the Effective Date or within sixty (60) days thereafter by the Bankruptcy Code and this Plan; and

5.    The two (2) individuals selected by the Holders of a Majority of the 1st Tier Bonds shall have been deemed to be qualified, by any necessary government or other approvals, to serve on ~~the board of Reorganized LVMC; provided, however, the identities of such individuals shall be provided to the Debtor on or before June 27, 2011, and the failure of the Holders of a Majority of the 1st Tier Bonds to timely provide the identities of such individuals to the Debtor and any resulting delay in their qualification or approval shall not delay effectiveness of the Plan~~Reorganized LVMC's Board of Directors.

**9.3.**    **Notice of Effectiveness.**  When all of the steps contemplated by **Section 9.2** of this Plan have been completed, the Debtor shall file with the Bankruptcy Court and serve upon all Creditors and all potential Holders of Administrative Claims known to the Debtor (whether or not disputed), a Notice of Effective Date of Plan.  The Notice of Effective Date of Plan shall include notice of the Administrative Claim Bar Date.

**9.4.**    **Waiver of Conditions.**  The Debtor, and if applicable, Reorganized LVMC, may waive (each for themselves but not for others) any or all of the other conditions set forth in this Article 9 and specifically **Sections 9.2(2) and 9.2(4)** of this Plan  without leave of or order of the Bankruptcy Court and without any formal action.  The failure of a party to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each right shall be deemed an ongoing right that may be asserted at any time prior to the filing of the Notice of Effectiveness.

## 10.    TITLE TO PROPERTY; DISCHARGE; INJUNCTION

**10.1.**    **Vesting of Assets.**  Subject to and as provided for in this Plan, the Assets shall be vested and/or transferred to Reorganized LVMC on the Effective Date, subject to (a) any transfer of Cash to the New Trustee pursuant to the New Indenture, and (b) subject to the Liens of the New Trustee on behalf of Holders of Class 4 and Class 5 Claims, provided that all rights, claims and causes of action with respect to the 1st Tier Bondholders' Insurance Policy and 1st Tier Bondholders' Surety Bond shall vest in and be owned by the 1st Tier Trustee on behalf of the post-Effective Date beneficiaries of the 1st and 2nd Indenture.  On and after the Effective Date, Reorganized LVMC may operate its business and may use, acquire, and dispose of property and compromise or settle any Claims without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

**10.2.**    **Preservation of Litigation Claims.**  In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as otherwise expressly provided herein, on the Effective Date all Litigation Claims shall be assigned to Reorganized LVMC, and Reorganized LVMC shall have the exclusive right to enforce, prosecute, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the Litigation Claims, including, without limitation, any and all derivative actions pending or otherwise existing against the Debtor as of the Effective Date.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002~~v13~~/Third Amended Plan.doc

**10.3.** **Settlement of Litigation Claims.** At any time after the Confirmation Date and before the Effective Date, notwithstanding anything in this Plan to the contrary, the Debtor may settle any or all of the Litigation Claims with the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019. After the Effective Date, Reorganized LVMC may, and shall have the exclusive right to, compromise and settle any Claims against it and claims it may have against any other Person or entity, including, without limitation, the Litigation Claims, without notice to or approval from the Bankruptcy Court, including, without limitation, any and all derivative actions pending or otherwise existing against the Debtor as of the Effective Date.

**10.4.** **Discharge.** On the Effective Date, except as otherwise provided in this Plan, the Debtor shall be discharged from any and all Claims in Classes 1, 2, 3, 4, 5, 6, 7, 8, and 9 to the fullest extent provided in sections 524 and 1141 of the Bankruptcy Code. The Discharge shall be to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, and, except as otherwise expressly provided by this Plan or the Confirmation Order, all consideration distributed under this Plan and shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any kind or nature whatsoever against the Debtor or any of its assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims. Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date as to Claims in Classes 1, 2,  3, 4, 5, 6, 7, 8, and 9, the Debtor shall be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

**10.5.** **Compromise and Settlement.** The allowance, classification, and treatment of all Allowed Claims and their respective distributions under this Plan take into account and/or conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(c) of the Bankruptcy Code, or otherwise, including without limitation, the subordination provisions related to the 1st and 2nd Tier Indenture or 3rd Tier Indenture. As of the Effective Date, any and all such rights described in the preceding sentence will be settled, compromised, and released pursuant to this Plan and any and all such Causes of Action related thereto are settled, compromised, and released pursuant hereto.

**10.6.** **Releases. On the Effective Date and effective as of the Effective Date, for good and valuable consideration, including, but not limited to: (i) the discharge of debt and all other good and valuable consideration provided pursuant to this Plan; and (ii) the services of the Debtor's officers and directors serving on and since the Petition Date in facilitating the expeditious implementation of the reorganization contemplated by this Plan, the Debtor and Reorganized LVMC shall provide a full discharge and release to the Released Parties (and each such Released Party so released shall be deemed released and discharged by the Debtor and Reorganized LVMC) and their respective properties from any and all Causes of Action, whether known or unknown, whether for torts, including fraud, contract, violations of federal or state securities laws, or otherwise, arising from or related in any way to the Debtor or Reorganized LVMC, including, without limitation, those that either the Debtor or Reorganized LVMC would have been legally entitled to assert in its own right (whether individually or collectively) or that any Holder of a Claim or other entity would have been legally entitled to assert on behalf of the Debtor or its Estate but for this release and further including those in any way related to the Chapter 11 Case or this Plan to the fullest extent of the law; provided, however, that the foregoing releases shall not operate to waive or release any Released Party from (a) any Causes of Action expressly set forth in and preserved by this Plan, any Plan Supplement, or related documents or (b) as a result of actual fraud, gross negligence, or willful misconduct.**

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

**10.7.    Third Party Releases.  On the Effective Date and effective as of the Effective Date, only to the extent each Releasing Party votes in favor of this Plan or otherwise supports confirmation of this Plan on the record at the Confirmation Hearing and that has not opted out of the third-party release granted under this Section 10.7 on their respective ballots, to the extent  permitted by law, the Releasing Parties shall provide a full discharge and release (and each entity so released shall be deemed released by the Releasing Parties) to the Third Party Releasees and their respective property from any and all Causes of Action, whether known or unknown, whether for torts, including fraud, contract, violations of federal or state securities laws, or otherwise, arising from or related in any way to Debtor, including, without limitation, those in any way related to the Chapter 11 Cases or this Plan to the fullest extent of the law; provided, however, that the foregoing Third Party Release shall not operate to waive or release any of the Third Party Releasees from (a) any Causes of Action expressly set forth in and preserved by this Plan or related documents, (b) any claims by 1st Tier Bondholders or the 1st Tier Trustee under the Ambac Insurance Policy or the Ambac Surety Bond, or (c) as a result of actual fraud, willful misconduct or gross negligence.**

**10.8.    Injunction.  From and after the Effective Date, and except as provided in this Plan and the Confirmation Order, all entities that have held, currently hold, or may hold a Claim that is terminated pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of such Claims:  (i) commencing or continuing in any manner any action or other proceeding against Reorganized LVMC or its property; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Reorganized LVMC or its property; (iii) creating, perfecting or enforcing any Lien or encumbrance against Reorganized LVMC or its property; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to Reorganized LVMC or its property; and (v) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code.  By accepting distributions pursuant to this Plan, each Holder of an Allowed Claim will be deemed to have specifically consented to the injunctions set forth in this Section 10.8 of this Plan.**

**10.9.    Exculpation.   From and after the Effective Date, none of the Debtor, Reorganized LVMC, the Majority 1st Tier Bondholders, the 1st Tier Trustee, the 2nd Tier Trustee nor any of their respective directors, officers, managers, employees, advisors, attorneys, or agents on and from the Petition Date forward, shall have or incur any liability to any Holder of a Claim or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of (from the Petition Date forward) the Chapter 11 Case, Reorganized LVMC, the pursuit of Confirmation of this Plan, or the Substantial Consummation of this Plan, except for gross negligence and willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan or in the context of the Chapter 11 Case.  No Holder of a Claim, nor any other party-in-interest, including their respective agents, employees, representatives, financial advisors, attorneys, Affiliates, or their successors and assigns, shall have any right of action against the Debtor, Reorganized LVMC, the Majority 1st Tier Bondholders, the 1st Tier Trustee, the 2nd Tier Trustee, or any of their respective present or former members, officers, directors, managers, employees, advisors, attorneys, or agents, relating to, or arising out of (from the Petition Date forward) the Chapter 11 Case, the pursuit of Confirmation of this Plan, the Substantial Consummation of this Plan, or the administration of this Plan, except for:  (i) their willful misconduct and gross negligence; (ii) matters specifically contemplated by either this Plan or Reorganized LVMC; and (iii) any liability of an attorney to its client not subject to exculpation under the Bankruptcy Code. Nothing in this Section 10.9, shall**

38

Gordon Silver
Attorneys At Law
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555
(702) 796-5555

impair the rights and obligations in that certain Agreement of Resignation, Appointment and Acceptance dated May 27, 2010, by and between Wells Fargo Bank, N.A. and Law Debenture Trust Company of New York, or the enforcement of any rights related thereto, including provisions regarding reimbursement of fees and expenses between the indenture trustees; provided, however, that in no event will the Debtor be liable or responsible to pay the fees and costs of Law Debenture Trust Company of New York promised or otherwise due pursuant to that agreement, without prejudice to the 1st Tier Trustee's charging lien for that amount.

**10.10.** **Director and Officer Liability Insurance.** The Debtor will assume and, if applicable, assign to Reorganized LVMC all of its existing D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code as of the Effective Date. Entry of the Confirmation Order will constitute approval by the Bankruptcy Court of the Debtor's foregoing assumption and assignment by the Debtor to Reorganized LVMC of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in this Plan, Confirmation of this Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtor and assigned to Reorganized LVMC under this Plan as to which no proof of Claim need be filed.

**10.11.** **Indemnification.** All indemnification provisions currently in place (whether in the bylaws, articles or certificates of incorporation, articles of limited partnership, limited liability company agreements, board resolutions (or resolutions of similar bodies), or employment contracts) for the directors, officers, employees, attorneys, or other professionals and agents of the Debtor (from the Petition Date forward) shall be assumed, and shall survive effectiveness of this Plan. All indemnification provisions in place on and prior to the Effective Date for current directors and officers of the Debtor (from the Petition Date forward) shall (i) survive the Effective Date of this Plan for Claims related to or in connection with any actions, omissions, or transactions occurring prior to the Effective Date, and (ii) remain liabilities of Reorganized LVMC specifically on behalf of the Debtor.

## 11.    RETENTION OF JURISDICTION

**11.1.** **Jurisdiction.** Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and Reorganized LVMC after the Effective Date as is legally permissible, including jurisdiction to:

a.    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Disputed Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Disputed Claims;

b.    Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

c.    Resolve any matters related to the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor or Reorganized LVMC is a party and to hear, determine and, if necessary, liquidate any Claims arising therefrom or Cure amounts related thereto;

d.    Ensure that distributions to or for the benefit of Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

39

102200-002v13/Third Amended Plan.doc

e.    Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications or motions involving the Debtor or Reorganized LVMC that may be pending on the Effective Date or commenced thereafter as provided for by this Plan;

f.    Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Disclosure Statement or the Confirmation Order, except as otherwise provided herein;

g.    Decide or resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of any Final Order, this Plan, the Confirmation Order, or obligations of any Persons incurred in connection with such Final Order, this Plan, or the Confirmation Order;

h.    Modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code and **Section 12.1** of this Plan or modify any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, the Confirmation Order, or Reorganized LVMC; or remedy any defect or omission or reconcile any inconsistency in any Final Order, this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code;

i.    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation, implementation, or enforcement of any Final Order, this Plan, or the Confirmation Order, except as otherwise provided herein;

j.    Enter and implement such orders as are necessary or appropriate if a Final Order or the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

k.    Determine any other matters that may arise in connection with or relate to this Plan, any Final Order, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, any Final Order, or the Confirmation Order (unless such contract, instrument, release, or other agreement or document expressly provides otherwise), except as otherwise provided herein;

l.    Enter an order closing the Chapter 11 Case;

m.    Hear and decide Litigation Claims and any other claim or cause of action of the Debtor and Reorganized LVMC pending on the Effective Date;

n.    Hear and decide any remaining issues related to the 1st and 2nd Tier Indenture, the Ambac Insurance Policy or the Ambac Surety Bond to the extent it is determined by further court order that this Court has jurisdiction over such matters; and

o.    Decide or resolve any matter over which the Bankruptcy Court has jurisdiction pursuant to section 505 of the Bankruptcy Code.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002v.13/Third Amended Plan.doc

12. **MODIFICATION AND AMENDMENT OF PLAN**

**12.1.** **Modification and Amendment.** Prior to Confirmation, the Debtor may alter, amend, or modify this Plan under section 1127(a) of the Bankruptcy Code at any time. After the Confirmation Date and prior to the Effective Date, the Debtor may, under section 1127(b), (c), and (d) of the Bankruptcy Code, alter, amend, or modify this Plan or institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order, and to make appropriate adjustments and modifications to this Plan or the Confirmation Order as may be necessary to carry out the purposes and effects of this Plan, so long as such proceedings do not materially adversely affect the treatment of Holders of Claims under this Plan.

13. **MISCELLANEOUS**

**13.1.** **Filing of Objections to Claims.** Prior to the Effective Date, objections to Claims shall be made and objections to Claims made previous thereto shall be pursued by the Debtor or any other party properly entitled to do so after notice to the Debtor and approval by the Bankruptcy Court. After the Effective Date, objections to Claims shall be made and objections to Claims made previous thereto shall be pursued by Reorganized LVMC or any other party properly entitled to do so after notice to Reorganized LVMC and approval by the Bankruptcy Court. Any objections to Claims filed pursuant to Federal Rule of Bankruptcy Procedure 3001 after the Effective Date shall be filed and served not later than one hundred and twenty (120) days after the Effective Date; provided, however, that such period may be extended by order of the Bankruptcy Court for good cause shown.

**13.2.** **Resolution of Objections after Effective Date; Distributions.** From and after the Effective Date, Reorganized LVMC may litigate to judgment, propose settlements of, or withdraw objections to, all pending or filed Disputed Claims and may settle or compromise any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court.

**13.2.1.** **Distributions.** In order to facilitate Distributions to Holders of Allowed Claims, and if and to the extent there are Disputed Claims in any Class, Reorganized LVMC shall set aside in the Disputed Claim Reserve the payments or Distributions applicable to such Disputed Claims as if such Disputed Claims were Allowed Claims, pending the allowance or disallowance of such Disputed Claims. In the event that Reorganized LVMC wishes to deposit or hold a lesser amount and is unable to reach an agreement with the Holder of the Disputed Claim on the amount to be deposited or held, the Bankruptcy Court shall fix the amount after notice and hearing. Upon Final Order with respect to a Disputed Claim, the Holder of such Disputed Claim, to the extent it has been determined to hold an Allowed Claim, shall receive from Reorganized LVMC that payment or Distribution to which it would have been entitled if the portion of the Claim so allowed had been allowed as of the Effective Date. Such payment or distribution shall be made as soon as practical after the order allowing the Claim has become a Final Order.

**13.2.2.** **Late-Filed Claims.** Except with respect to Claims, proof of which is made in compliance with the requirements of sections 502(e) and 509 of the Bankruptcy Code, No Claim filed after the Bar Date or, as applicable, the Administrative Claim Bar Date, shall be allowed, and all such Claims are hereby disallowed in full. After the Bar Date or the Administrative Claim Bar Date, as applicable, no Creditor shall be permitted to amend any claim to increase the claimed amount; and any such amendment shall be disallowed to the extent of the late-filed increase in the claimed amount.

**13.3.** **Effectuating Documents; Further Transactions; Timing.** Each of the officers of the Debtor and Reorganized LVMC are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002v.13/Third Amended Plan.doc

may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any obligations issued, transferred, or cancelled pursuant to this Plan and transactions contemplated by this Plan.  All transactions that are required to occur on the Effective Date under the terms of this Plan shall be deemed to have occurred simultaneously. The Debtor and Reorganized LVMC are authorized and directed to do such acts and execute such documents as are necessary to implement this Plan.

**13.4.    Cancellation of Existing Agreements.**  On the latest to occur of (i) the Effective Date; (ii) the entry of a Final Order resolving all Claims in the Chapter 11 Case; and (iii) the final distribution made to Holders of Allowed Claims in accordance with the terms of this Plan, unless otherwise provided in this Plan (which exception shall include the 1st Tier Note and the 1st and 2nd Tier Indenture solely for the pursuit of claims under the 1st Tier Bondholders' Surety Bond and 1st Tier Bondholders' Insurance Policy), any document, agreement, or instrument evidencing any Disputed Claim that is disallowed shall be deemed automatically cancelled and terminated without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtor under such documents, agreements, or instruments evidencing such Claims shall be discharged.

**13.5.    Exemption from Transfer Taxes.**  Pursuant to section 1146(a) of the Bankruptcy Code, (i) the issuance, distribution, transfer, or exchange of Estate property; (ii) the creation, modification, consolidation, or recording of any deed of trust or other interest, or the securing of additional indebtedness by such means or by other means in furtherance of, or in connection with this Plan or the Confirmation Order; (iii) the making, assignment, modification, or recording of any lease or sublease; or (iv) the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**13.6.    Revocation or Withdrawal of this Plan.**  The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.  If this Plan is withdrawn or revoked or if the Bankruptcy Court denies confirmation of this Plan, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person, nor shall the withdrawal or revocation of this Plan prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.  In the event this Plan is withdrawn or revoked, nothing set forth herein shall be deemed an admission of any sort and this Plan and any transaction contemplated thereby shall be inadmissible into evidence in any proceeding.

In the event that the Effective Date does not occur, upon notification submitted by the Debtor to the Court: (i) the Confirmation Order shall be vacated; (ii) no distributions under this Plan shall be made; (iii) the Debtor and all Holders of Claims shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (iv) the Debtor's obligations with respect to the Claims shall remain unchanged and nothing contained in this Plan shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**13.7.    Binding Effect.**  This Plan shall be binding upon, and shall inure to the benefit of, the Debtor and the Estate, Reorganized LVMC, and the Holders of all Claims and their respective agents, trustees, successors, and assigns.

102200-002v.13/Third Amended Plan.doc

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

**13.8.** **Governing Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any contract, instrument, release, or other agreement entered into in connection with this Plan or in any document which remains unaltered by this Plan, the rights, duties, and obligations of the Debtor and any other Person arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada without giving effect to Nevada choice of law provisions.

**13.9.** **Modification of Payment Terms.** Reorganized LVMC reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the Holder of such Allowed Claim at any time after the Effective Date upon the prior written consent of the Holder whose Allowed Claim treatment is being adversely affected.

**13.10.** **Means of Cash Payment.** Payments of Cash made pursuant to this Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of Reorganized LVMC by (a) checks drawn on, or (b) wire transfer from, a domestic bank selected by Reorganized LVMC. Cash payments to foreign Creditors may be made, at the option of Reorganized LVMC in such funds and by such means as are necessary or customary in the applicable foreign jurisdiction.

**13.11.** **Providing for Claims Payments.** Distributions to Holders of Allowed Claims shall be made by Reorganized LVMC: (i) at the addresses set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such Holders if no proof of Claim is filed or if the Debtor has not been notified of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of Claim; (iii) at the addresses reflected in the Schedules if no proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address; or (iv) in the case of Holders of Allowed 1st Tier Bond Claims, to the New Trustee for Pro Rata distribution to the ~~holders~~Holders of ~~the~~ 1st Tier Bonds as identified on the bond registration books of the Bond Registrar from time to time~~.~~, except, if executed by all parties thereto and approved by the Bankruptcy Court at the Confirmation Hearing, then in accordance with the 1st Tier Trustee Settlement Agreement. If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Disbursing Agent is notified of such Holder's then-current address, at which time all returned distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made through the Disbursing Agent shall be returned to Reorganized LVMC until such Distributions are claimed; provided, however, that any distributions to Holders of 1st Tier Bonds which are undeliverable shall be returned to the New Trustee for distribution in accordance with the New Indenture. All claims for undeliverable Distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall revert to Reorganized LVMC and the Claim of any Holder or successor to such Holder with respect to such property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary. Nothing contained in this Plan shall require Reorganized LVMC or the Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

**13.12.** **Set Offs.** Reorganized LVMC may, but shall not be required to, set-off or recoup against any Claim and the payments or other distributions to be made pursuant to this Plan in respect of such Claim (before any distribution is made on account of such Claim), claims of any nature whatsoever that Reorganized LVMC may have against the Holder of such Claim to the extent such Claims may be set-off or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Reorganized LVMC of any such Claim that it may have against such Holder.

**13.13.** **Notices.** Any notice required or permitted to be provided under this Plan shall be in writing and served by either: (a) certified mail, return receipt requested, postage prepaid; (b)

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002~~v.12~~v.13/Third Amended Plan.doc

hand delivery, or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

If to Reorganized LVMC:          Las Vegas Monorail Company
                                 Attn: Curtis L. Myles, III
                                 3900 Paradise Road, Suite 260
                                 Las Vegas, NV 89169

With a Copy to:                  Gordon Silver
                                 Attn:  William M. Noall, Esq.
                                 3960 Howard Hughes Pkwy, 9th Floor
                                 Las Vegas, NV  89109
                                 Tel:  (702)  796-5555
                                 Fax:  (702) 369-2666

If to the Director:              The Director of the State of Nevada
                                 Department of Business & Industry
                                 Attn:  Mr. Lon A. DeWeese
                                 Chief Financial Officer
                                 Nevada Housing Division
                                 1535 Old Hot Springs Road
                                 Suite 50
                                 Carson City, Nevada 89706

With a Copy to:                  Office of the Attorney General
                                 Attn: Dennis L. Belcourt
                                 Deputy Attorney General
                                 100 N. Carson Street,
                                 Carson City, NV 89701-4717
                                 Tel:  (775) 684-1206
                                 Fax:  (775) 684-1156

If to the New Trustee:           Wells Fargo Bank, N.A., in its capacity as
                                 Indenture Trustee for the 1st Tier Bondholders
                                 Attn: Gavin Wilkinson
                                 MAC #N9311-115
                                 625 Marquette Ave., 11th Floor
                                 Minneapolis, MN 55479

With a Copy to:                  Lewis & Roca LLP
                                 Attn: Susan Freeman
                                 40 N. Central Avenue, Suite 1900
                                 Phoenix, AZ  85004
                                 Tel.:  (602) 262-5756
                                 Fax:  (602) 734-3824

**13.14.  <u>Severability.</u>**  If any provision of this Plan is determined by the Bankruptcy Court to be invalid, illegal, or unenforceable or this Plan is determined to be not confirmable pursuant to section 1129 of the Bankruptcy Code, the Bankruptcy Court, at the request of the Debtor or Reorganized LVMC, as applicable, shall have the power to alter and interpret such term to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or



interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.    The Confirmation Order shall provide and shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.15.  Withholding and Reporting Requirements.**  In connection with this Plan and all instruments issued in connection therewith and Distributions thereon, Reorganized LVMC shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  Reorganized LVMC shall be authorized to take any and all action that may be necessary to comply with such withholding and recording requirements.  Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim that has received a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding, and other tax obligation on account of such distribution.

**13.16.  Post Confirmation Reporting.**  Until the entry of the final decree closing the Chapter 11 Case, Reorganized LVMC shall comply with the post-confirmation reporting requirements found in Local Rule 3020 of the Bankruptcy Court.  Additionally, to the extent required, Reorganized LVMC shall file post-confirmation quarterly operating reports as required by the United States Trustee Guidelines, para. 7.2.

**13.17.  Cramdown.**  In the event that any Impaired Class is determined to have rejected this Plan in accordance with section 1126 of the Bankruptcy Code, the Debtor may invoke the provisions of section 1129(b) of the Bankruptcy Code to satisfy the requirements for Confirmation of this Plan.  The Debtor reserves the right to modify this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

**13.18.  Quarterly Fees to the United States Trustee.**  Prior to the Effective Date, the Debtor, and after the Effective Date, Reorganized LVMC shall pay all quarterly fees payable to the Office of the United States Trustee consistent with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

DATED this _____ day of ~~June~~September, 2011.

LAS VEGAS MONORAIL COMPANY, a
Nevada non-profit corporation


By:_____
Name:  Curtis Myles
Title:   President

**PREPARED AND SUBMITTED BY:**

GORDON SILVER

By: _____
    GERALD M. GORDON, ESQ.
    WILLIAM M. NOALL, ESQ.
    GABRIELLE A. HAMM, ESQ.

102200-002v.13/Third Amended Plan.doc

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

1   3960 Howard Hughes Pkwy., 9th Floor
      Las Vegas, Nevada 89169
2   Attorneys for the Debtor

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



102200-002v13/Third Amended Plan.doc

**SCHEDULE ~~1.1.91~~1.1.95**

**CERTAIN PRESERVED LITIGATION CLAIMS**

All defined terms used herein shall have the meanings set forth in this Plan. The following is a non-exhaustive list of potential parties against whom the Debtor, and/or the Reorganized LVMC may hold Litigation Claims. The Debtor and Reorganized LVMC reserve their right to modify this list to amend or add parties or causes of action, but disclaim any obligation to do so. In addition to the Litigation Claims listed below, the Debtor and Reorganized LVMC have or may have, in the ordinary course of its business, numerous causes of action and claims or rights against contractors, vendors, suppliers, and others with whom they deal in the ordinary course of their business (the "Ordinary Course Claims"). The Debtor and Reorganized LVMC reserve their right to enforce, sue on, settle, or compromise (or decline to do any of the foregoing) the Ordinary Course Claims, as well as the Litigation Claims listed below and all other claims and causes of action. The Debtor and Reorganized LVMC also have, or may have, and are retaining, various claims or causes of action arising under or pursuant to its insurance policies, and all rights arising under, relating to, or in connection with such policies are expressly reserved and retained.

Additionally, the following Litigation Claims held by the Debtor are expressly reserved and retained:

1. All claims and causes of action raised or that can be raised against Michael Brenesell and Tix4Vegas, LLC, including, but not limited to, execution of the judgment in that litigation styled Las Vegas Monorail Company, et al. v. Michael Brenesell and Tix4Vegas, LLC, Case No. A574303, District of Nevada, Eighth Judicial District, Las Vegas, Nevada;

2. All claims and causes of action that can be raised against Final Film, Inc. and/or Creative Graphic Solutions and/or any entities affiliated therewith, including, but not limited to breach of contract and unjust enrichment;

3. Counterclaims, cross-claims, or other claims raised or that can be raised in connection with the following actions, including any appeals thereof:

    a. Christina and Bruce Nelson v. Las Vegas Monorail Company and Bombardier Transportation, Case No. A-08-556416, Eighth Judicial District, Las Vegas, Nevada;

    b. Michael Sanzaro v. Las Vegas Monorail Company, Case No. A-09-593765, Eighth Judicial District, Las Vegas, Nevada;

    c. Michael J. Davenport v. Las Vegas Monorail Company, Case No. A-09-606157, Eighth Judicial District, Las Vegas, Nevada;

    d. Demetria Phipps v. Las Vegas Monorail Company, Case No. A-10-609472-C, Eighth Judicial District, Las Vegas, Nevada.

    e. All actions or claims asserted against the Debtor or Reorganized LVMC by any Person asserting a personal injury or loss claim;

    f. All actions relating to any tax refunds due and owing to the Debtor, or otherwise related thereto;

    g. Avoidance Actions and Litigation Claims arising out of or in connection the with Debtor's business, property, or operations;

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002~~v.13~~/Third Amended Plan.doc

h. Avoidance Actions and Litigation Claims arising out of transactions involving, concerning, or related to the Debtor; and

i. All other rights, privileges, claims, actions, or remedies, whether arising at law or in equity.

There may also be other Avoidance Actions and Litigation Claims which currently exist or may subsequently arise that are not set forth herein because the facts underlying such Avoidance Actions or Litigation Claims are not currently known or sufficiently known by the Debtor. The failure to list any such unknown Avoidance Action or Litigation Claim herein is not intended to limit the rights of Reorganized LVMC to pursue any unknown Avoidance Action or Litigation Claim to the extent the facts underlying such unknown Avoidance Action or Litigation Claim become more fully known in the future.

Unless Avoidance Actions or Litigation Claims against any individual or entity are expressly waived, relinquished, released, compromised, or settled by this Plan or any Final Order, the Debtor expressly reserves for their benefit, and the benefit of Reorganized LVMC, all Avoidance Actions and Litigation Claims, including, without limitation, all unknown Avoidance Actions and Litigation Claims for later adjudication, and therefore no preclusion doctrine (including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches) shall apply to such Avoidance Actions or Litigation Claims after the Effective Date of this Plan. In addition, the Debtor expressly reserves for its benefit, and the benefit of Reorganized LVMC, the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any individual or entity, including plaintiffs and co-defendants in such lawsuits.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002 v.13/Third Amended Plan.doc

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SCHEDULE 7.1**

**REJECTED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**


    1.  Settlement and Release Agreement dated August 25, 2000, between Venetian Casino Resort, LLC and The MGM Grand-Bally's Monorail Limited Liability Company

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

49

102200-002v.13/Third Amended Plan.doc

1

## SCHEDULE 7.3

## CURE AMOUNTS

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102200-002v13/Third Amended Plan.doc

Document comparison by Workshare Professional on Thursday, September 15, 2011 4:12:30 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Documents and Settings\cstrawn\Desktop\1227955_7.doc |
| Description | 1227955_7 |
| Document 2 ID | file://C:\Documents and Settings\cstrawn\Desktop\1227955_13.doc |
| Description | 1227955_13 |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 663 |
| Deletions | 701 |
| Moved from | 10 |
| Moved to | 10 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 1384 |