1
2
3
4

SYLVESTER & POLEDNAK, LTD.
Jeffrey R. Sylvester, Esq. (NV Bar No. 4396)
7371 Prairie Falcon Rd., Suite 120
Las Vegas, NV 89128
Telephone: (702) 952-5200
Facsimile: (702) 952-5205
E-mail: jeff@sylvesterpolednak.com

5
6
7
8
9

RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Dennis J. O'Grady, Esq. (NJ Bar No. DO-7430)*
Curtis M. Plaza, Esq. (NJ Bar No. CP-9111)*
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Telephone: (973) 538-0800
Facsimile: (973) 538-1984
E-mail: cplaza@riker.com

10

*Admitted pro hac vice*

11

*Counsel for Law Debenture Trust Company of New York, as 3rd Tier Trustee*

12
13

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

14

In re:

Case No. 10-10464-BAM

15

LAS VEGAS MONORAIL COMPANY, a
Nevada non-profit corporation,

CHAPTER 11

16

Debtor.

Hearing Date:    November 14, 2011
Hearing Time:    9:30 a.m.

17

18
19

**OBJECTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK TO
CONFIRMATION OF DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION,
AS FURTHER REVISED**

20

Law Debenture Trust Company of New York ("Law Debenture" or the "3rd Tier Trustee"), as

21

successor indenture trustee with respect to the Las Vegas Monorail Project Revenue Bonds 3rd Tier

22

Series 2000 A-I (as further described below, the "3rd Tier Bonds"), by and through its undersigned

23

counsel, hereby objects (the "Objection") to the Third Amended Plan of Reorganization, As Further

24

Revised dated September 29, 2011 ("Plan"), filed by the above-captioned debtor and debtor-in-

25
26

possession ("Debtor"). The Objection is supported by the points and authority herein, the

27

Declaration of Anthony A. Bocchino and exhibits thereto, the record before the Bankruptcy Court for

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

the District of Nevada (the "Court"), reference to any portion of which record is expressly hereby reserved, and the argument of counsel entertained by the Court at the time of the hearing on confirmation of the Plan.

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

RELEVANT BACKGROUND.............................................................................3

A.    Debtor's Bankruptcy Case..........................................................................3

B.    Financing of Monorail................................................................................3

C.    The 3rd Tier Trustee and Claims................................................................4

D.    The Plan and Disclosure Statement............................................................6

OBJECTION TO CONFIRMATION...................................................................6

A.    The Plan Includes Impermissible Non-Debtor Releases in Violation of
      Bankruptcy Law...........................................................................................7

      1.    The Prohibition of Non-Debtor Releases Under Bankruptcy Law.......7

      2.    The Illegal Releases Proposed by Debtor's Plan................................8

            a.    Section 10.6 ("Release")...........................................................9

            b.    Section 8.2 ("No Recourse").....................................................12

            c.    Other Improper Third Party Releases in the Plan....................12

      3.    Debtor's Defense Regarding "Standing" Has No Merit.....................13

      4.    The Bankruptcy Court Has Sua Sponte Authority to Review the
            Propriety of the Third Party Releases Granted in the Plan.................15

      5.    Conclusion...........................................................................................16

B.    The Plan Improperly Discards Valuable Causes of Action, Including
      Avoidance Causes of Action, Which Traditionally Provide Creditor
      Recoveries...................................................................................................16

C.    The Plan Fails to Provide for Treatment of the 3rd Tier Trustee's Claims
      for Fees and Expenses.................................................................................20

      1.    Duties of the 3rd Tier Trustee and Activities Performed....................20

      2.    3rd Tier Trustee's Claim Arising From Indenture .............................21

      3.    3rd Tier Trustee's Rights Arising from Financing Agreement............22

      4.    3rd Tier Trustee's Administrative Expense Claim..............................23

5.   Plan Provisions for Fee Reimbursement.................................................24

6.   The Defenses of the Debtor to Reimbursement of the 3rd Tier
     Trustee's Fees and Expenses Have No Merit......................................25

     a.   3rd Tier Trustee's Fees and Expenses are Reasonable.........................25

     b.   Successorship Agreement Expressly Provides for Rights of
          3rd Tier Trustee to Seek Reimbursement from the Estate.....................27

     c.   Subordination Provisions Do Not Bar Reimbursement of
          the Fees and Expenses of the 3rd Tier Trustee................................27

7.   Conclusion..............................................................................30

CONCLUSION.............................................................................30

# TABLE OF AUTHORITIES

## CASES

Abercrombie v. Hayden Corp. (In re Abercrombie),
    139 F.3d 755 (9th Cir. 1998) ........................................................................22

Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns Corp.),
    285 B.R. 848 (Bankr. S.D.N.Y. 2002)............................................................17

Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In re Am. Hardwoods Inc.),
    885 F.2d 621 (9th Cir. 1989) .........................................................7, 8, 9, 12, 13

Andre v. Gaines Berland, Inc.,
    Case No. 95 Civ. 1052, 1996 U.S. Dist. LEXIS 9383,
    at *7 (S.D.N.Y. Jul. 8, 1996) ........................................................................11

Azure v. Morton,
    514 F.2d 897 (9th Cir. 1975) ........................................................................12

Beck v. Manufacturers Hanover Trust Co.,
    218 A.D.2d 1 (N.Y. 1995) .......................................................................20, 26

In re Boston Harbor Marina Co.,
    157 B.R. 726 (Bankr. D. Mass. 1993) .........................................................9, 11

Catwil Corp  v. Derf II (In re Catwil Corp.),
    175 B.R. 362 (Bankr. E.D. Cal. 1994).......................................................17, 19

In re Chicago, S. Shore & S. Bend R.R.,
    146 B.R. 421 (Bankr. N.D. Ill. 1992) .............................................................28

Commodity Futures Trading Comm'n v. Weintraub,
    471 U.S. 343 (1985)....................................................................................16

Cont'l Auto., Inc. v. Malter,
    Case No. 09 C 6176, 2010 U.S. Dist. LEXIS 84083, at *11 (N.D. Ill. Aug.
    12, 2010) .................................................................................................11

In re Curry and Sorensen,
    57 B.R. 824 (B.A.P. 9th Cir. 1986).............................................................17, 19

Cybergenics Corp. v. Chinery,
    330 F.3d 548 (3d Cir. 2003).........................................................................17

In re Cypresswood Land Partners I,
    409 B.R. 396 (Bankr. S.D. Tex. 2009) ............................................................15

G-I Holdings, Inc. v. Those Parties Listed On Exhibit A (In re G-I Holdings, Inc.),
         313 B.R. 612 (Bankr. D.N.J. 2004) .................................................17

Gillman v. Continental Airlines (In re Continental Airlines),
         203 F.3d 203 (3d Cir. 2000).......................................................11

In re Gordon, Inc.,
         275 B.R. 555 (Bankr. E.D. Cal. 2002).....................................17, 19

Krafsur v. Scurlock Permian Corp. (In re El Paso Refinery, L.P.),
         171 F.3d 249 (5th Cir. 1999) ...................................................28

Krafsur v. Scurlock Permian Corp. (In re El Paso Refinery, L.P.),
         178 B.R. 426 (Bankr. W.D. Tex. 1995)........................................28

La. World Exposition v. Federal Ins. Co.,
         858 F.2d 233 (5th Cir. 1988) ...................................................16

Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co.
         ( In re Spaulding Composites Co.),
         207 B.R. 899 (B.A.P. 9th Cir. 1997)..........................................16

In re Mako,
         985 F.2d 1052 (10th Cir. 1993) ...............................................17, 18

Maurice Sporting Goods v. Maxway Corp. (In re  Maxway Corp.),
         27 F.3d 980 (4th Cir. 1994) .....................................................17, 18

McFarland v. Leyh (In re Tex. Gen. Petroleum Corp.),
         52 F.3d 1330 (5th Cir. 1995) ...................................................17, 18

In re Metromedia Fiber Network, Inc.,
         416 F.3d 136 (2d Cir. 2005).....................................................11

In re Mid Pacific Airlines,
         110 B.R. 489 (Bankr. D. Haw. 1990) .......................................16

In re Mutchler,
         95 B.R. 748 (Bankr. D. Mont. 1989) ........................................12

Official Comm. of Unsecured Creditors v. Clark (In re Nat'l Forge Co.),
         326 B.R. 532 (W.D. Pa. 2005)..................................................17

In re Pac. Gas & Elec. Co.,
         304 B.R. 395 (N.D. Cal. 2004) ................................................10

Principal Mut. Life Ins. Co. v. Baldwin Park Towne Ctr., Ltd. (In re Baldwin Park Towne
    Ctr., Ltd.),
        171 B.R. 374 (Bankr. C.D. Cal. 1994)................................................................24

Quindlen v. Prudential Ins. Co.,
        482 F.2d 876 (5th Cir. 1973) ......................................................................12

Resort Int'l, Inc. v. Lowenschuss (In re Lowenschuss),
        67 F.3d 1394 (9th Cir. 1995) ...............................................7, 8, 9, 10, 12, 13

Robinson v. The Howard Bank (In re: Kors, Inc.),
        819 F.2d 19 (2d Cir. 1987)............................................................................28

In re Rohnert Park Auto Parts, Inc.,
        113 B.R. 610 (B.A.P. 9th Cir. Cal. 1990) ...................................................15

Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.,
        298 F.3d 1137 (9th Cir. 2002) ......................................................................7

Sturges v. Knapp,
        31 Vt. 1 (Vt. 1858) ..............................................................................20, 26

In re Tenn-Fla Partners,
        Case No. 92-27624, 1993 Bankr. LEXIS 789 (Bankr. W. D. Tenn. Apr. 29,
        1993) ........................................................................................................15

Underhill v. Royal,
        769 F.2d 1426 (9th Cir. 1985) ...................................................7, 10, 12, 13

In re Washington Mutual, Inc.,
        442 B.R. 314 (Bankr. D. Del. 2011) ...........................................................11

**STATUTES**

11 U.S.C. § 503(b)(3), (4)...............................................................................21, 23

11 U.S.C. § 506(b) ...............................................................................................25

11 U.S.C. § 524(e) .................................................................................................7

11 U.S.C. § 548(a) ...............................................................................................19

11 U.S.C. § 1102 ...................................................................................................3

11 U.S.C. § 1103 ...................................................................................................3

1

11 U.S.C. § 1109(b) ..................................................................................................15

11 U.S.C. §§ 1123(a) ................................................................................................24

11 U.S.C. § 1129(a)(1) .............................................................................................15

11 U.S.C. § 1129(b)(1) .............................................................................................24

**<u>INTRODUCTION</u>**

Under the leadership of Debtor's directors, officers, and advisers, Debtor has lost at least $650,000,000 in investments and has left the monorail on questionable financial footing heading into the future.  Many of the Debtor's creditors – including investors, former employees, and injured parties with claims against the Debtor – stand to receive little, if any, recovery, with Debtor asserting that it has little money to pay creditors.  In short, Debtor's financial condition is a mess.

Invariably in cases such as this one, the activity leading up to and during the bankruptcy – the actions of the Debtor's leadership, insiders, advisers and parties that have received payments from the Debtor – are closely examined and often become the subject of legal proceedings to help recover losses suffered by creditors of the estate.  Such legal action, whether brought by the bankruptcy estate itself or directly by creditors, often serves as an important source of recovery, and sometimes the only source of recovery in a cash-starved case.  The party typically leading the review and prosecution of such potential causes of action is an official committee of unsecured creditors ("<u>Committee</u>").  The Committee typically fulfills an important function in representing the interests of creditors, serving as a vital check against management and other parties with interests in the debtor.

In this case, no Committee has been appointed, creating a void in the overall representation of unsecured creditors.  Into that void, the Debtor has now proposed its Plan, which seeks to bury potential litigation actions against its directors, officers, and other debtor-related parties ("<u>Insiders</u>").  If that were not enough, Debtor also proposes to grant illegal releases to these Insiders protecting them from claims that the Debtor or others might assert in this bankruptcy case.

Notwithstanding the fact that there is no Committee to safeguard against overreaching by the Debtor and its Insiders, however, the Debtor's Plan must still comply with the law.  In this case, the

1

discharge and release of third party non-debtors provided in the Plan flat out violates the clear, express prohibition of such releases, which are barred under the law "without exception." As a result, the 3rd Tier Trustee objects to these releases and submits that the Court cannot approve the Plan containing such releases.

Furthermore, in part due to the absence of a Committee in this case, the 3rd Tier Trustee has had to expend a significant amount of its own resources fulfilling its duties to its constituency – the holders of approximately $48.5 million in debt issued for the Debtor. As part of those duties, the 3rd Tier Trustee has, among other things, maintained vigilance in its review and activity in this case, analyzed potential avenues for recovery, negotiated with the Debtor and other parties in interest in an effort to protect the claims of the 3rd Tier Holders and provided information and communication to the 3rd Tier Holders regarding the various developments and legal issues related to this case. The 3rd Tier Trustee has a claim to compensation against the Debtor and other parties for its work in connection with the 3rd Tier Bonds, and likewise holds claims, both administrative and unsecured, against the estate. Inexplicably, however, and without basis in law, the Plan would appear to bar any payment to the 3rd Tier Trustee for its reimbursable fees and expenses. The 3rd Tier Trustee objects to the Plan to the extent it does not provide for reimbursement of its fees and expenses. The 3rd Tier Trustee also objects to the Plan, as above, to the extent that the Plan would illegally seek to limit the 3rd Tier Holders' ability to recover on claims otherwise assertable against third party non-debtors.

Finally, apart from the 3rd Tier Trustee's objections, this Bankruptcy Court has an independent duty to ensure that a plan of reorganization complies with the law. Because the Plan contains provisions that violate applicable law, it cannot be confirmed as currently written.

## RELEVANT BACKGROUND

### A. Debtor's Bankruptcy Case.

On January 13, 2010 ("Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code ("Bankruptcy Code"), commencing this bankruptcy case ("Bankruptcy Case").

While a Committee is ordinarily appointed in every Chapter 11 reorganization case to investigate the acts, conduct, assets, liabilities, financial condition of the debtor and operation of the debtor's business, (see 11 U.S.C. § 1102 and 1103), no Committee has been appointed in this Bankruptcy Case.

### B. Financing of the Monorail.

In or about the year 2000, Debtor sought and obtained approximately $650,000,000 in financing through a series of bond issuances sponsored by the Director of the State of Nevada Department of Business and Industry ("Director"). The bonds were divided among three series: (1) $352,705,000 original principal amount of current interest bonds and $98,743,217.30 original principal amount of capital appreciation bonds constituting the Las Vegas Monorail Project Revenue Bonds 1st Tier Series 2000 (collectively, "1st Tier Bonds"); (2) $149,200,000 original principal amount of the Las Vegas Monorail Project Revenue Bonds 2nd Tier Series 2000 ("2nd Tier Bonds,"); and (3) $48,500,000 original principal amount of the 3rd Tier Bonds (the 1st, 2nd, and 3rd Tier Bonds collectively referred to as the "Bonds"). Through documents executed in connection with the issuance of the Bonds (collectively, the "Bond Documents"), including the Financing Agreement dated September 1, 2000, between the Director and the Debtor ("Financing Agreement"), the Director loaned the proceeds of the Bonds to the Debtor, and the Debtor became obligated, and to date remains obligated, to pay the principal, interest, as well as the fees and expenses of the trustees appointed to represent the Bonds. (A true and correct copy of the Financing Agreement is attached to

3

the Declaration of Anthony A. Bocchino in Support of the Objection ("Bocchino Declaration") as Exhibit "A").

### C. The 3rd Tier Trustee and Claims.

Initially, the Bond Documents appointed Wells Fargo Bank, N.A. ("Wells Fargo")[1] as indenture trustee for all series of the Bonds (see "1st and 2nd Tier Indenture" and "3rd Tier Indenture," a true and correct copy of each of which are attached to the Bocchino Declaration as Exhibits "B" and "C," respectively). Upon the occurrence of defaults on the Bonds, Wells Fargo sought successor indenture trustees for each of the 2nd and 3rd Tier Bonds due to the potential for conflicting interests among the series of the Bonds.

In or about January or February 2010, Wells Fargo contacted Law Debenture to serve as indenture trustee under the 3rd Tier Indenture. Wells Fargo and Law Debenture executed a successorship agreement titled "Agreement of Resignation, Appointment and Acceptance" ("Successorship Agreement," a true and correct copy of which is attached to the Bocchino Declaration as Exhibit "D"), which assigned Law Debenture the rights and duties of Wells Fargo as indenture trustee for the 3rd Tier Bonds. The Successorship Agreement also provided that Wells Fargo would pay Law Debenture an initial amount, up to $125,000, to reimburse Law Debenture for its fees and expenses incurred. Wells Fargo ultimately paid this amount to Law Debenture. The Successorship Agreement further specifically preserved the 3rd Tier Trustee's rights to seek reimbursement of any additional fees and expenses from the Debtor's estate.

Due to the complicated nature of the Bond issuance and technical requirements related to the Bonds, Wells Fargo sought approval instruction from the District Court of Hennepin County,

---

[1] Wells Fargo continues to serve as the indenture trustee for the 1st Tier Bonds ("1st Tier Trustee") and co-trustee for the 2nd Tier Bonds under the 1st and 2nd Tier Indenture. U.S. Bank, National Association serves as successor indenture trustee with respect to 2nd Tier Bonds and co-trustee the 1st and 2nd Tier Indenture ("2nd Tier Trustee").

4

Minnesota ("Minnesota Court") for the succession of Law Debenture.  On May 14, 2010, the Minnesota Court entered an Order approving the successorship and the Successorship Agreement ("Successorship Order," a true and correct copy of which is attached to the Bocchino Declaration as Exhibit "E").  On May 27, 2010, Wells Fargo and Law Debenture executed the Successorship Agreement.  Since that date, Law Debenture has served as successor indenture trustee for the 3rd Tier Bonds.

Pursuant to authority granted in Section 7.04 of the 3rd Tier Indenture and Section 7.02 of the Financing Agreement, on or about June 29, 2010, Law Debenture timely filed a proof of claim [Claim No. 122] ("Proof of Claim") for the 3rd Tier Bonds.  The Proof of Claim listed claims against the Debtor on account of, among other things, (i) principal and interest due on the 3rd Tier Bonds in the amount $48,500,000, and (ii) claims for reimbursement of any fees and expenses incurred by Law Debenture in this Bankruptcy Case.  The 3rd Tier Trustee may also have claims against third parties for recovery with respect to its claims.

Because of the defaults on the Bonds, the 3rd Tier Trustee acts as a fiduciary and representative for the holders of the 3rd Tier Bonds ("Holders").  The 3rd Tier Trustee has fulfilled its fiduciary obligations to the Holders by, among other activities, maintaining vigilance in its review and participation in this case.  The 3rd Tier Trustee has analyzed potential avenues for recovery on the 3rd Tier Bonds, negotiated with the Debtor and other parties in this case, reviewed and responded to the numerous iterations of the reorganization proposed by the Debtor in the Plan and in other pleadings in this case, and communicated with Holders regarding each of these developments.  Law Debenture holds claims against the Debtor which are both administrative and unsecured, for its services in this Bankruptcy Case.  To date, the unpaid fees and expenses of the 3rd Tier Trustee incurred in representing the 3rd Tier Bonds total approximately $305,000, including approximately

$21,000 in unpaid fees and expenses of Law Debenture and approximately $284,000 in fees and expenses of its counsel.[2]

## D. The Plan and Disclosure Statement.

The Debtor has filed multiple versions of its Plan and related disclosure statement [Doc. No. 880] ("Disclosure Statement").  The Plan provides for no recovery to the 3rd Tier Holders and little or no recovery for most other creditors of the Debtor.  Notwithstanding that the Debtor has cited limited resources as a reason for the limited distributions under the Plan, the Debtor has also apparently chosen to render worthless potential litigation claims against third parties, including the Debtor's directors, officers, advisers, and payees – potential litigation that could otherwise provide at least a chance of recovery to creditors.  Separately, Debtor has sought through the Plan to grant those same parties releases against claims that might relate in any way to the pre-petition and post-petition conduct of the Debtor or the Bankruptcy Case.  (See, e.g., Plan at Section 10.6.)

Without basis in law, Debtor's Plan also seeks to absolve Debtor from the claims of the 3rd Tier Trustee related to its efforts as successor indenture trustee with respect to the 3rd Tier Bonds. (See Plan at Section 10.9.)

## OBJECTION TO CONFIRMATION

Debtor's Plan fails to comply with applicable law, which prohibits releases to non-debtors. Debtor's Plan also wastes assets of the estate, including avoidance actions and other causes of action that might otherwise fund a recovery to creditors.  Furthermore, Debtor's Plan improperly seeks to extinguish the Debtor's obligations for payment of the 3rd Tier Trustee's claims for reimbursement

---

[2] The 3rd Tier Trustee has already circulated many of its invoices to the Debtor pursuant to the Order on Adequate Protection [Docket No. 343] and can provide additional invoices, including detailed entries of tasks performed, to the Court and other parties as may be appropriate.

of its fees and expenses without any basis in law. As a result, the Bankruptcy Court cannot confirm Debtor's Plan as currently drafted.

### A. The Plan Includes Impermissible Non-Debtor Releases in Violation of Bankruptcy Law.

Debtor's Plan violates the clear rule of law prohibiting releases of non-debtor parties. While the Debtor's leadership – directors, officers, and advisers – and other related parties understandably would like to be shielded from liability related to the Debtor's financial condition, applicable law flat-out prohibits a bankruptcy court from granting such protections through a plan of reorganization. As a result, the Court cannot confirm the Plan unless such third party release provisions are stricken.

### 1. The Prohibition of Non-Debtor Releases Under Bankruptcy Law.

The Bankruptcy Code precludes bankruptcy courts from discharging the liabilities of non-debtors. See 11 U.S.C. § 524(e). Accordingly, the Ninth Circuit Court of Appeals has clearly and repeatedly stated a strict prohibition against discharges of the liabilities of non-debtors in bankruptcy proceedings. See Resort Int'l, Inc. v. Lowenschuss (In re Lowenschuss), 67 F.3d 1394, 1401 (9th Cir. 1995); Stratosphere Litig. L.L.C. v. Grand Casinos, Inc., 298 F.3d 1137, 1143 (9th Cir. 2002); Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In re Am. Hardwoods Inc.), 885 F.2d 621, 626 (9th Cir. 1989); Underhill v. Royal, 769 F.2d 1426, 1432 (9th Cir. 1985). The prohibition against third party releases includes provisions that might otherwise seek to protect a debtor's directors, officers, and other related parties. See Underhill v. Royal, 769 F.2d at 1432 (discussing the background of 11 U.S.C. § 524(e), including the historical prohibition of any discharge for a debtor's officers, directors, or other related parties). Due to the prohibition against non-debtor releases, a debtor cannot seek such releases through a plan of reorganization. See, e.g., Lowenschuss, 67 F.3d at 1401-02 (holding that third-party releases contained in the debtor's plan must be vacated because the Bankruptcy Court lacked authority to grant such releases). Thus, the rule of law could not be clearer – no non-consensual third party releases in a bankruptcy plan – period.

7

The basis for the rule is that the Bankruptcy Code is clear on its face. While the Bankruptcy Code, and in particular Section 524 of the Bankruptcy Code, expressly allows discharge of the debtor, the Bankruptcy Code also expressly provides that such discharge shall not discharge the liabilities of non-debtors, including from claims related to the debtor's debt:

> Pursuant to 11 U.S.C. § 524(a), a discharge under Chapter 11 releases the debtor from personal liability for any debts. Section 524 does not, however, provide for the release of *third parties* from liability; to the contrary, § 524(e) specifically states that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."

Lowenschuss, 67 F.3d at 1401 (quoting Section 524 of the Bankruptcy Code) (emphasis in original). As a result, the Ninth Circuit Court of Appeals "has repeatedly held, without exception that § 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors." Id. (emphasis added)

The Ninth Circuit's expression of this rule "without exception" is important because it makes clear that releases of non-debtors through a plan cannot be justified through alternative theories. Id. (reaffirming that other powers available to a bankruptcy court cannot be used to replace the specific prohibition on releases and discharges of non-debtors set forth in 11 U.S.C. § 524(e)); see also Am. Hardwoods, Inc., 885 F.2d at 626. As a result, the rule is simple – no non-consensual third party releases may be effected through a discharge in a bankruptcy plan.

### 2. The Illegal Releases Proposed by Debtor's Plan.

In this case, Debtor itself has conceded that non-debtor releases may not be granted in a plan of reorganization. (See Debtor's Supplemental Brief in Support of Disclosure Statement [Docket No. 866] ("Debtor's Supplemental Brief") at 10:14 to 11:2.) Notwithstanding that acknowledgement, Debtor's Plan attempts to do just that – to provide non-debtor releases, including in Section 8.2 ("No Recourse"); Section 10.6 ("Releases"); Section 10.7 ("Third Party Releases"); Section 10.8 ("Injunction"); Section 10.9 ("Exculpation") and Section 13.4 ("Cancellation of Existing

Agreements"). (A summary of the Release Provisions contained in each of these Sections of the Plan is attached hereto as Exhibit "1.")

Perhaps because Debtor has recognized the *per se* ban on non-debtor releases, several of these release provisions attempt to conceal the releases being provided through ambiguous or confusing language. Nevertheless, a careful reading of these Sections reveals the nature of the non-debtor releases being sought. Because these releases are prohibited "<u>without exception</u>," it does not matter whether they are open or disguised, whether they arise independently or tangentially to other releases. <u>See, e.g.</u>, <u>Am. Hardwoods Inc.</u>, 885 F.2d at 626 (stating that debtor's attempts to disguise third party releases as something else are "semantic" and "unpersuasive"). Any provision that, in effect, bars a legal recourse against a third party is a release, and is likewise barred by the prohibition on third party discharges. <u>See id.</u>; <u>In re Boston Harbor Marina Co.</u>, 157 B.R. 726, 730 (Bankr. D. Mass. 1993) (emphasis added) ("Courts have accordingly denied effect to plan provisions seeking to release non-debtor parties or seeking to accomplish the *practical equivalent* by enjoining action against them."). In any event, Debtor's Plan cannot be confirmed with these non-debtor releases.

### a. Section 10.6 ("Releases")

Section 10.6 of Debtor's Plan, entitled "Releases," seeks releases of claims against "Released Parties," which include, among others, the following non-debtors: Debtor's officers, directors, employees, attorneys, actuaries, financial advisors. investment bankers, agents, professionals and representatives, as well as the Director and other parties. (<u>See</u> Plan at Section 1.1.136.) Because this provision of the Plan seeks discharges for non-debtors, it is barred by applicable law.

Debtor may seek to argue that the releases to third parties provided by Section 10.6 are an exception to the rule because they only apply to claims held by the Debtor. In response, first it should be noted that the Ninth Circuit has made clear that there are no exceptions to the prohibition of plan discharges for third parties. <u>See, e.g.</u>, <u>Lowenschuss</u>, 67 F.3d at 1401. Second, and

importantly, <u>these Plan releases not only apply to claims held by the Debtor but also to claims "that</u> <u>any Holder of a Claim or other entity" might have and would otherwise be legally entitled to assert</u>. (Plan at Section 10.6 (emphasis added).)   In other words, while this Section appears to start out discussing releases of claims only held by the Debtor, the later language in this provision seeks also to include releases of claims held by third parties.  As a result, the effect of Section 10.6 would appear to bar claims that might otherwise be brought by third parties against third parties outside of the bankruptcy.  Such non-consensual, non-debtor discharge is exactly the kind of provision that the Ninth Circuit has barred.  <u>See</u> <u>Lowenschuss</u>, 67 F.3d at 1401.  Moreover, even in the limited cases in other jurisdictions that have appeared to allow releases by the Debtor against third-party non-debtors, such cases have specifically recognized the importance that the plan or confirmation order expressly acknowledge that the plan does not release claims directly assertable by third parties against other third parties.  <u>See, e.g.,</u>  <u>In re Pac. Gas & Elec. Co.</u>, 304 B.R. 395, 418 n.26 (N.D. Cal. 2004).

        Separately, Debtor may also attempt to argue that the non-consensual third party releases being sought by Section 10.6 are justified by some sort of "consideration" being provided.  To that end Section 10.6 makes a reference to "good and valuable consideration being provided" in connection with the requested releases.   (Plan at Section 10.6.)    But any effort to rely on "consideration" for the justification of non-consensual third party releases is misplaced.  As the Ninth Circuit has made painfully clear, non-debtor releases are prohibited in a plan of reorganization "<u>without exception</u>," with alternative theories not allowed.  <u>Lowenschuss</u>, 67 F.3d at 1401 (emphasis added).  Moreover, the Ninth Circuit has specifically stated that a plan of reorganization cannot offer non-consensual releases for "consideration" provided through a Plan.  <u>See</u> <u>Underhill v. Royal</u>, 769 F.2d 1426, 1432 (9th Cir. 1985).   Furthermore, even if the provision of consideration were a justification for non-debtor plan releases, neither Debtor nor the released parties have demonstrated,

beyond a simple unsupported assertion, that the non-debtors for which the releases are sought have actually provided any consideration. For example, the Debtor has stated as consideration "the services of the Debtor's officers and directors serving on and since the Petition Date . . . ." (Plan at Section 10.6.) Debtor fails to mention that Debtor's officers and directors have been paid for those services. Moreover, certain of the Debtor's officers and directors were required to provide such services by way of employment contracts. (See, e.g., Omnibus Declaration of Curtis L. Myles, III in Support of Debtor's First Day Motions [Doc. No. 7] at ¶ 33 (attesting that Mr. Myles served as an officer of the Debtor pursuant to a contractual arrangement for his employment).) Where directors and officers of the debtor are merely fulfilling their required duties to the Debtor, their service cannot be consideration for a release, even were such releases permitted. See Cont'l Auto., Inc. v. Malter, Case No. 09 C 6176, 2010 U.S. Dist. LEXIS 84083, at *11 (N.D. Ill. Aug. 12, 2010) (internal quotations omitted) (explaining "preexisting duty rule" of contract law, which provides that "where a party does what it is already legally obligated to do, there is no consideration because there has been no detriment"); Andre v. Gaines Berland, Inc., Case No. 95 Civ. 1052 1996 U.S. Dist. LEXIS 9383, at *7 (S.D.N.Y. Jul. 8, 1996); see also In re Washington Mutual, Inc., 442 B.R. 314, 354 (Bankr. D. Del. 2011) (finding that the services of the officers and directors were not consideration that could support releases because such services were what was already required of them and for which they received compensation); In re Metromedia Fiber Network, Inc., 416 F.3d 136, 142 (2d Cir. 2005); Gillman v. Continental Airlines (In re Continental Airlines), 203 F.3d 203, 214 n.11 (3d Cir. 2000); In re Boston Harbor Marina Co., 157 B.R. 726, 730 (Bankr. D. Mass. 1993). As a result, even if consideration being paid by directors and officers were grounds to allow a release to these parties, the Debtor's directors and officers have in any event failed to show that they have paid any meaningful consideration to obtain such release.

In any event, regardless of the Debtor's arguments, the non-debtor releases provided in Section 10.6 of the Plan are expressly contrary to applicable Ninth Circuit law.  See, e.g., Lowenschuss, 67 F.3d at 1401.  The Plan simply cannot be confirmed with the inclusion of such releases. See Lowenschuss), 67 F.3d at 1401; Am. Hardwoods, Inc., 885 F.2d at 626; Underhill v. Royal, 769 F.2d at 1432.

### b. Section 8.2 ("No Recourse")

Section 8.2 of the Plan titled "No Recourse" appears to provide a blanket release to any director, agent, attorney, accountant, or other professional for the Debtor or Reorganized LVMC.  In particular, the provision provides that "[n]o recourse shall ever be had, directly or indirectly against the [released parties] by legal or equitable proceeding or by virtue of any statute or otherwise, nor upon any promise contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by Debtor or Reorganized LVMC under this Plan."  (Plan at Section 8.2.)  The word "nor" in the provision acts as a disjunctive, meaning that the first clause of the sentence can be read apart from the second.  See, e.g., Azure v. Morton, 514 F.2d 897, 900 (9th Cir. 1975); Quindlen v. Prudential Ins. Co., 482 F.2d 876, 878 (5th Cir. 1973); In re Mutchler, 95 B.R. 748, 756 (Bankr. D. Mont. 1989).  As a result, the first clause could be construed as providing blanket releases to third parties, which are prohibited by law.  It is possible that, instead of the word "nor" in Section 8.2, the Debtor meant to say "with respect to . . . ."  If that is the case, the Plan language should be conformed accordingly.  As currently drafted, however, Section 8.2 appears to provide protective releases to third parties, impermissible under applicable law.

### c. Other Improper Third Party Releases in the Plan

In addition to the foregoing Sections, other provisions of the Plan seek to grant or implement improper third party releases.  Because of the clear prohibitions on such releases, the Plan cannot be confirmed with these provisions.

Section 10.7 of the Plan ("Third Party Releases") appears to provide broad discharges for the benefit of third parties in contravention of applicable law. See Lowenschuss, 67 F.3d at 1401; Am. Hardwoods Inc., 885 F.2d at 626; Underhill v. Royal, 769 F.2d at 1432.

Section 10.8 of the Plan ("Injunction") enjoins any party from "commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code." Because certain sections of the Plan provide improper releases to third parties, this Section 10.8 could be construed to enjoin actions by third parties as against other third parties in violation of applicable law.

Section 10.9 of the Plan ("Exculpation") appears to provide broad discharges for the benefit of third parties in contravention of applicable law. See Lowenschuss, 67 F.3d at 1401; Am. Hardwoods Inc., 885 F.2d at 626; Underhill v. Royal, 769 F.2d at 1432.

Section 13.4 of the Plan ("Cancellation of Existing Agreements") would appear to provide for the cancellation of instruments or agreements, even where such documents might govern the rights between third parties. Because the bankruptcy court has no authority to alter agreements between third parties, the cancellation provided pursuant to Section 13.4 would appear to violate applicable law. (See, e.g., Debtor's Supplemental Brief at 8:14-16; 9:22-24 (expressly acknowledging that the Court has no authority to affect agreements between non-debtor parties); Supplemental Brief of Ambac Assurance Corp. and the Segregated Account of Ambac Assurance Corp. Relating to Hearing Set For June 20, 2011 [Doc. No. 862] 2:20 to 3:16 (same).)

### 3. Debtor's Defense Regarding "Standing" Has No Merit.

Debtor may attempt to distract from the issue of the illegal releases and other infirmities of its Plan by collaterally attacking the 3rd Tier Trustee's standing in this Bankruptcy Case. Debtor would not only be wrong in such attack, but the attack itself is irrelevant because this Court has an independent duty to ensure that the Plan and its provisions comply with applicable law.

In any event, Debtor has previously made erroneous statements in this case regarding the 3rd Tier Trustee's role and standing in this case.  For example, Debtor has previously erroneously represented to the Court that subordination provisions in the Bond Documents prohibiting actions by the Holders of the 3rd Tier Bonds in a bankruptcy case also prohibit action by the 3rd Tier Trustee. (See Debtor's Reply to Objections of 2nd Tier Trustee and 3rd Tier Trustee to Debtor's Motion for Order Approving Adequacy of First Amended Disclosure Statement [Docket No. 821] ("Debtor's Reply to Trustees' Objections") at 7:7-20.)  While the 3rd Tier Indenture does provide that Holders of 3rd Tier Bonds may be precluded from bringing suit on the Bonds, (see 3rd Tier Indenture at Section 5.07(a)), such provision does not prohibit activity by the 3rd Tier Trustee.  To the contrary, the Bond Documents expressly authorize actions by the 3rd Tier Trustee in bankruptcy proceedings, including for the enforcement of its claims:

> In case proceedings shall be pending of the bankruptcy or for the reorganization of the Borrower under the federal bankruptcy laws . . . then the Trustee . . . shall be entitled and empowered by intervention in such proceedings or otherwise, to file and prove a claim or claims . . . to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Trustee allowed in such judicial proceedings relative to the Borrower . . . ."

(See Financing Agreement Section 7.2(b); see also 3rd Tier Indenture Section 7.02 (enumerating, without limitation, other powers that the 3rd Tier Trustee may be able to exercise).)[3]  As a result, and contrary to Debtor's assertions, clearly the 3rd Tier Trustee has standing under the Bond Documents to participate in this Bankruptcy Case.

Separately, Debtor's arguments regarding the 3rd Tier Trustee's rights to appear in this case are critically flawed for several other reasons.  Among other things, 11 U.S.C. § 1109(b) ("Right to be heard") specifically provides for an indenture trustee's right to be heard in this Bankruptcy Case:

---

[3] The term "Trustee" under the Financing Agreement means collectively, for purposes of this Bankruptcy Case, each of the 1st, 2nd and 3rd Tier Trustees.  (See Financing Agreement at Section 1.1.)

> A party in interest, including the debtor, the trustee, a creditors committee, an equity
> security holders' committee, a creditor, an equity security holder, or <u>any indenture
> trustee</u>, may raise and may appear and be heard on any issue in a case under this
> chapter.

11 U.S.C. § 1109(b) (emphasis added).  <u>See also</u> <u>In re Cypresswood Land Partners I</u>, 409 B.R. 396,

420 (Bankr. S.D. Tex. 2009) (noting that entity that fell within "party in interest" definition in

Section 1109 had standing to object to plan); <u>In re Tenn-Fla Partners</u>, Case No. 92-27624, 1993

Bankr. LEXIS 789, at *3 (Bankr. W. D. Tenn. Apr. 29, 1993) (identifying indenture trustee as "party

in interest" with standing to object).  Moreover, as discussed below, the 3rd Tier Trustee has separate

claims, both general unsecured and administrative expense claims, for fees and expenses, apart from

the claims on the 3rd Tier Bonds, that have accrued and are payable by the Debtor.  The 3rd Tier

Trustee has particular standing with respect to the right to enforce those claims, including as those

claims arise both under the 3rd Tier Indenture and, separately under the Financing Agreement, as

discussed below.  Finally, the 3rd Tier Trustee also may have claims against third parties, including

against the Director for reimbursement of the 3rd Tier Trustee's fees and expenses incurred in this

case, and the 3rd Tier Trustee has standing to object to the prohibited third party releases contained in

the Plan.

### 4. The Bankruptcy Court Has Sua Sponte Authority to Review the Propriety of the Third Party Releases Granted in the Plan.

Putting aside Debtor's arguments regarding standing or other collateral attacks, and regardless

of the status of any creditor objector to the Plan, this Court has authority to conduct its own review

regarding the legality of provisions included in the Plan.

A bankruptcy court itself has a responsibility <u>not to confirm</u> a plan of reorganization that

contains provisions in violation of bankruptcy law.  <u>See</u> 11 U.S.C. § 1129(a)(1); <u>see also</u> <u>In re</u>

<u>Rohnert Park Auto Parts, Inc.</u>, 113 B.R. 610, 616-617 (B.A.P. 9th Cir. Cal. 1990)  ("[W]e hold that

under Section 1129(a) of the Code, the court had an independent obligation to determine that the Plan

complied with the provisions of Title 11."); In re Mid Pacific Airlines, 110 B.R. 489, 490 (Bankr. D. Haw. 1990) ("Regardless of whether an objection to confirmation has been asserted, the Bankruptcy Court is under a duty to determine whether a proposed plan meets all of the requirements for confirmation set forth in 11 U.S.C. Section 1129(a). . . . The plan proponent bears the burden of proving that each requirement of Section 1129(a) has been met.").

### 5. Conclusion.

Whether Debtor's Plan openly provides releases to third parties or disguises them, the simple rule is that the Plan cannot provide for non-consensual releases of claims by third parties against third parties, even where those claims relate in some way to the Debtor. As a result, the Plan cannot be confirmed with the above referenced provisions.

### B. The Plan Improperly Discards Valuable Causes of Action, Including Avoidance Causes of Action, Which Traditionally Provide Creditor Recoveries.

Under the watch of the directors, officers, accountants, attorneys and other representatives of the Debtor, the Debtor lost in excess of $650 million of value. Now, while seeking to compel numerous investors and other creditors to take nothing or very little in return for their claims against the Debtor, the Debtor seeks to shield potentially culpable parties, not only by offering them releases and indemnifications in contravention of applicable law, but also by swallowing whole causes of action that might be used to obtain recovery from these parties.

A debtor is obligated to maximize the value of its estate for the benefit of its creditors and all parties in interest. See, e.g., Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 352 (1985) ("The trustee is 'accountable for all property received,' . . . and has the duty to maximize the value of the estate") (internal quotations omitted). Accordingly, a debtor is duty bound to pursue claims and defenses that will increase the value of its estate, including avoidance actions. See, e.g., Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co. ( In re

Spaulding Composites Co.), 207 B.R. 899, 904 (B.A.P. 9th Cir. 1997); La. World Exposition v. Federal Ins. Co., 858 F.2d 233, 249 (5th Cir. 1988).

The reliance on a debtor in possession to pursue such action is not always realistic given the inherent conflicts that may arise. See Cybergenics Corp. v. Chinery, 330 F.3d 548, 573, 575 578 (3d Cir. 2003) (explaining that in a chapter 11 case where debtor-in-possession serves as trustee, the estate is faced with "the proverbial problem of the fox guarding the henhouse" and, thus, it may not be "realistic" to "order[] the debtor itself to pursue" avoidance actions); G-I Holdings, Inc. v. Those Parties Listed On Exhibit A (In re G-I Holdings, Inc.), 313 B.R. 612, 643 (Bankr. D.N.J. 2004) (assuming that even the mere "influence of conflicts of interest" must have affected debtor's decision not to bring avoidance actions). Thus, other entities, such as creditors' committees, are frequently granted standing to pursue such actions. See In re Curry and Sorensen, 57 B.R. 824, 828 (B.A.P. 9th Cir. 1986); In re Gordon, Inc., 275 B.R. 555, 566 (Bankr. E.D. Cal. 2002); Catwil Corp. by & Through Official Comm. of Unsecured Creditors v. Derf II (In re Catwil Corp.), 175 B.R. 362, 364-365 (Bankr. E.D. Cal. 1994). See also Official Comm. of Unsecured Creditors v. Clark (In re Nat'l Forge Co.), 326 B.R. 532, 545, 549 (W.D. Pa. 2005); Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns Corp.), 285 B.R. 848, 855 (Bankr. S.D.N.Y. 2002).

Therefore, it is extraordinary relief for the Court to allow the retention of avoidance actions and other potential litigation claims by the Debtor's estate, particularly where, as here, creditors are not being paid in full. See McFarland v. Leyh (In re Tex. Gen. Petroleum Corp.), 52 F.3d 1330, 1336 (5th Cir. 1995) ("The proceeds recovered in avoidance actions should not benefit the reorganized debtor; rather, the proceeds should benefit the unsecured creditors."); see also Maurice Sporting Goods v. Maxway Corp. (In re Maxway Corp.), 27 F.3d 980, 984 (4th Cir. 1994); In re Mako, 985 F.2d 1052, 1056 (10th Cir. 1993).

Here, the Debtor – at the direction of some of the same parties (directors and officers) that might be culpable – seeks to bury any "Causes of Action" by retaining these actions in the reorganized estate. (See Plan at Section 10.2.) Such a provision in the Plan should not be allowed by the Court and is particularly problematic where, as here, no Committee has been appointed in the case to advocate for these potential claims to enhance unsecured creditor recoveries. Moreover, it is inconceivable that a Debtor claiming to have little or no money to pay creditors would discard an entire category of assets that could provide a meaningful recovery to creditors. As it is, each creditor already stands to receive far less than the potential "100% of its Allowed General Unsecured Claim" advertised in the Plan. (Plan Section 5.1.) For example, Debtor's estimated claims pool of $175,000 does not include the claims of the 3rd Tier Trustee discussed below, nor does it include other claims listed as disputed, including certain personal injury and employment claims that could ultimately be allowed in substantial amounts. (See Debtor's Schedule F [Docket No. 244] (listing certain personal injury and employment claims as "disputed," notwithstanding the possibility that some of these claims may have already been determined in other legal proceedings).) Because all of these claims share in the same, paltry pot of $175,000, the likely possibility that any of these "disputed" claims be allowed would mean that Debtor's Plan will pay far less than "100%" to these creditors. Delivery of potential Avoidance Action proceeds to unsecured creditors, as is generally provided in bankruptcy cases, would at least allow the possibility of a greater recovery.

Given the presumption in bankruptcy proceedings that Avoidance Actions should benefit the estate, Debtor should make some showing of the basis upon which Debtor believes that it is entitled to keep these claims. See Tex. Gen. Petroleum Corp., 52 F.3d at 1336; Maxway Corp., 27 F.3d at 984; Mako, 985 F.2d at 1056. As it is, Debtor has not demonstrated any rationale for keeping these claims, other than to state that they are of no value to anyone and not worth delivering to creditors.

(See, e.g., Disclosure Statement at 124:3-9.)  Debtor has provided no evidence of an independent evaluation of these claims, and no Committee has reviewed the "Causes of Action" available in this Bankruptcy Case.  Debtor's plan for these claims appears to be merely to bury them, many of which claims will expire by the second anniversary of the Petition Date, i.e. within the next two months. See 11 U.S.C. § 548(a).  In other words, within two months time, Debtor will render these Avoidance Actions valueless by Debtor's own inaction.  In any event, if the "Causes of Action" indeed have no value, then Debtor should not mind delivering these actions to a trust for the benefit of creditors.  The effective discarding of these "Causes of Action" is particularly troubling and should not be permitted through the Plan.

In light of these concerns, as mentioned above, one option available to the Court should be retention of the claims in the Bankruptcy Case and immediate appointment of a Committee or Trustee in the Bankruptcy Case, and/or the appointment of a litigation trustee through the Plan, for the purpose of examining causes of action that might be available to fund recoveries to unsecured creditors.  See, e.g., Curry and Sorensen, 57 B.R. at 828 (B.A.P. 9th Cir. 1986); Gordon, Inc., 275 B.R. at 566; Catwil Corp., 175 B.R. at 364-65.  Such appointment and review must be completed promptly, however, given the approach of statute of limitation deadlines i.e. within approximately two months.  The Court may sua sponte direct the appointment of such Committee or Trustee, require such appointment through the confirmation order, or, if desired the 3rd Tier Trustee would be willing to make a simple motion to the Court in furtherance of such appointment.  Because the Plan is not in any way reliant on the delivery of these bankruptcy causes of action to Reorganized LVMC, with the Debtor already having stated that it believes such actions to be of no value to Reorganized LVMC, these assets can easily be left in the Bankruptcy Case at confirmation without any material modification being made to the Plan.  The 3rd Tier Trustee submits that this proposal is a simple way

19

to ensure creditors receive the full value of any avoidance actions, without upsetting Debtor's reorganization proposal in the slightest manner.

## C.  The Plan Fails to Provide for Treatment of the 3rd Tier Trustee's Claim for Fees and Expenses.

While the 3rd Tier Trustee has a right to reimbursement from the Debtor for its fees and expenses incurred in connection with the Bonds, Debtor's Plan improperly seeks to bar any payments to the 3rd Tier Trustee.

### 1.  Duties of the 3rd Tier Trustee and Activities Performed.

In its role as indenture trustee for the 3rd Tier Bonds, the 3rd Tier Trustee owes a fiduciary obligation to Holders of the 3rd Tier Bonds.  Those duties arise under contract – including the 3rd Tier Indenture – as well as common law.  After an Event of Default under the 3rd Tier Indenture, the 3rd Tier Trustee owes, within certain limitations, a fiduciary duty to act as a prudent person might in the management of its own financial affairs.  See 3rd Tier Indenture at Section 8.01(a) ("The Trustee shall, during the existence of an Event of Default . . . exercise such of the rights and powers vested in it by this Subordinate Indenture, and use the same degree of care and skill in their exercise, as prudent persons would exercise or use under the circumstances in the conduct of their own affairs."); see also Beck v. Manufacturers Hanover Trust Co., 218 A.D.2d 1, 11 (N.Y. 1995); Sturges v. Knapp, 31 Vt. 1 (Vt. 1858).

The 3rd Tier Trustee has worked diligently, and continues to work diligently, in this Bankruptcy Case to fulfill its duties with respect to the 3rd Tier Bonds.  Among the functions performed, the 3rd Tier Trustee has maintained vigilance in its review and actions in this case by analyzing potential avenues for recovery on the 3rd Tier Bonds, negotiating with the Debtor and other parties in this case, reviewing and responding to the numerous iterations of the reorganization

proposed by the Debtor and other pleadings in this case, and communicating with the Holders of the 3rd Tier Bonds.

While discharging its obligation, the 3rd Tier Trustee also has been mindful to keep its expenditures as minimal as possible.  As a result, the 3rd Tier Trustee has limited its appearances and involvement in this case only to situations where its involvement has been necessary.  The 3rd Tier Trustee has also worked to resolve issues in advance of litigation with the Debtor.  The 3rd Tier Trustee has been cognizant of the economics of this case and the potential for recovery to Holders. Notwithstanding that cognizance, the mere fact that the Debtor has asserted that the 3rd Tier Bonds would receive no recovery does not absolve the 3rd Tier Trustee from fulfilling its fiduciary obligation.

As compensation for the performance of its duties, the 3rd Tier Trustee holds claims for the reimbursement of its fees and expenses.  Those claims arise by way of contract, as provided in the 3rd Tier Indenture and Financing Agreement, requiring the 3rd Tier Trustee to provide post-petition services in this Bankruptcy Case and also give rise to an administrative priority claim for a substantial contribution made by an indenture trustee pursuant to 11 U.S.C. § 503(b)(3), (4), and (5). Yet the Plan inexplicably appears to bar any rights of payment to the 3rd Tier Trustee in contravention of law or the discussions of the parties in this case.

## 2.  3rd Tier Trustee's Claim Arising From Indenture.

The 3rd Tier Trustee has a clear right to reimbursement of its fees and expenses from both the Director as well as the Debtor, which has accepted liability for the Director's obligations under the Bond Documents:

Compensation.  The Director shall pay to the Trustee (solely from Additional Payments) from time to time such compensation as may be agreed to in writing with the Borrower and in the absence of such agreement, reasonable compensation, for all services rendered under this Subordinate Indenture, and also all reasonable expenses, charges, legal and consulting fees and other disbursements and those of its attorneys,

agents and employees, incurred in and about the performance of its powers and duties under this Subordinate Indenture . . . .

(3rd Tier Indenture at Section 8.06.; see also Financing Agreement at Sections 4.3 (Unconditional Obligation) and 4.4 (Assignment of Director's Rights).)  As a result of the obligations of the Debtor under the 3rd Tier Indenture, at a minimum, the 3rd Tier Trustee's fees and expenses are general unsecured claims of the Debtor.  See Abercrombie v. Hayden Corp. (In re Abercrombie), 139 F.3d 755, 757 (9th Cir. 1998).

### 3. 3rd Tier Trustee's Rights Arising From Financing Agreement.

The 3rd Tier Trustee also has separate, direct rights of reimbursement of its fees and expenses, as well as a right of indemnification, from the Debtor arising from the Financing Agreement:

Section 4.2. DEPOSITS TO TRUSTEE; REPAYMENTS AND PAYMENTS OF OTHER AMOUNTS PAYABLE.  . . . (b) The Borrower also agrees to pay (i) the annual fee of the Trustee for its reasonable and ordinary services rendered as trustee, and its reasonable and ordinary expenses incurred under the . . . Subordinate Indenture, as and when the same become due and upon demand therefore, in accordance with the written agreements approved by the Borrower . . . (iii) the reasonable fees, charges and expenses of the Trustee for the necessary extraordinary services rendered by it and extraordinary expenses incurred by it under the Senior Indenture and Subordinate Indenture, as and when the same become due . . . .

Section 7.3. AGREEMENT TO PAY ATTORNEYS' FEES AND EXPENSES. In the event the Borrower should default under any of the provisions of this Agreement and the Director or the Trustee should employ attorneys or incur other expenses . . . for the collection of the payments due under this Agreement or the enforcement of performance or observance of any obligation or agreement on the part of the Borrower herein contained, the Borrower agrees to pay to the Director or the Trustee the reasonable fees of such attorneys and such other reasonable expenses so incurred by the Director or the Trustee.

Section 9.2 EXPENSES. The Borrower covenants and agrees to pay and to indemnify the Director and the Trustee against all costs and charges, including reasonable fees and disbursements of attorneys, accountants, consultants and other experts, incurred in good faith in connection with this Agreement, the Bonds, the Senior Indenture or the Subordinate Indenture, including but not limited to any judicial or administrative proceeding or investigation or audit.

(Financing Agreement at Sections 4.2(b), 7.3, 9.2.)  <u>See also</u> Financing Agreement at Sections 7.2(b) ("Any receiver, assignee or trustee in bankruptcy or reorganization is hereby authorized to . . . pay the Trustee any amount due it for reasonable compensation and expenses, including reasonable expenses and fees of counsel incurred by it up to the date of such distribution.).  Additionally, the Debtor has an obligation to provide continuing indemnification to the 3rd Tier Trustee pursuant to the Financing Agreement.  (<u>See</u> Financing Agreement at Section 9.3.)  Collectively, these provisions clearly entitle the 3rd Tier Trustee to a claim against the Debtor for reimbursement of fees and expenses.

### 4.  3rd Tier Trustee's Administrative Expense Claim.

Separate and apart from the 3rd Tier Trustee's claims for reimbursement under the Bond Documents, the 3rd Tier Trustee also has entitlement to an administrative expense claim for its work as an indenture trustee post-petition and for making a substantial contribution to the case.  Section 503(b)(3)-(5) of the Bankruptcy Code provides specifically that an indenture trustee may have an administrative expense claim against Debtor's estate for substantial contributions that such creditor may provide.  11 U.S.C. § 503(b)(3)(B), (4), (5).  Here, in connection with the services provided by the indenture trustee as described above, particularly where there has not been a Committee to otherwise represent the estate, the efforts of the 3rd Tier Trustee have benefited and made a substantial contribution to these proceedings, including in representing a large constituency of creditors ($48.5 million) of the Debtor's estate.  Debtor itself has cited some of the activities performed by the 3rd Tier Trustee as valuable in this case.  (<u>See</u> Debtor's Supplemental Brief at 6:2-6.)  As a result, the 3rd Tier Trustee is entitled to make an administrative claim in this case and seek reimbursement of same, and the Plan should permit such application of an administrative expense to be made at the appropriate time in this Bankruptcy Case.

### 5. Plan Provisions for Fee Reimbursement.

The Plan should provide for reimbursement of the 3rd Tier Trustee's reasonable fee claims. Instead, the Plan improperly, and without any justification in law, appears to seek to bar any such claims.

A plan is required to provide appropriate treatment for claims against the Debtor. See generally 11 U.S.C. §§ 1123(a), 1129. It is usual and customary for a plan of reorganization to provide for the reimbursement of the reasonable fees and expenses incurred by indenture trustees in a bankruptcy case. (See, e.g., First Amended Joint Chapter 11 Plan of Reorganization for Station Casinos, Inc. and its Affiliated Debtors (Dated July 28, 2010) (Docket No. 1863), Case No. 09-52470 (Bankr. D. Nev.) at Article III, Section B.4 – Class S.5(c).) Indeed, this plan does provide for reimbursement of at least the 1st Tier Trustee's reasonable fees and expenses. (See Plan at Section 5.2.1.3.) Notwithstanding that provision, however, and notwithstanding the 3rd Tier Trustee's rights to reimbursement discussed above, the Plan apparently seeks to bar any payments to the 3rd Tier Trustee: "in no event will the Debtor be liable or responsible to pay the fees and costs of Law Debenture Trustee Company of New York promised or otherwise due pursuant to [the Successorship Agreement] . . . ." (Plan at Section 10.09.) Given that the Successorship Agreement is the agreement that conveys to the 3rd Tier Trustee its role as indenture trustee, and likewise conveys the incumbent rights including the right to be reimbursed for its fees and expenses, this provision of the Plan appears to seek to bar any reimbursement by the Debtor to the 3rd Tier Trustee without any basis in law. Moreover, given that Debtor's Plan otherwise expressly provides for the reimbursement of other indenture trustees in this bankruptcy case, failure to treat the 3rd Tier Trustee in a similar manner improperly discriminates among similarly situated creditors. See 11 U.S.C. § 1129(b)(1) (providing that plan must not "discriminate unfairly . . . with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."); see also Principal Mut. Life Ins.

24

Co. v. Baldwin Park Towne Ctr., Ltd. (In re Baldwin Park Towne Ctr., Ltd.), 171 B.R. 374, 378 (Bankr. C.D. Cal. 1994). Debtor's obligation to pay each trustee arises from the same language in the Financing Agreement and each Indenture requiring payment by the Debtor of the Trustee's fees and expenses. (See Financing Agreement at Sections 4.2(b), 7.2(b), 7.3, 9.2, 10.9; compare 1st and 2nd Tier Indenture at Section 8.06 with 3rd Tier Indenture at Section 8.06 (providing virtually identical language).) To the extent that the Debtor asserts that the discriminatory treatment providing for reimbursement of the 1st Tier Trustee arises from the 1st Tier Trustee's security interests in collateral, the 3rd Tier Trustee notes that the Bankruptcy Code only allows for reimbursement of fees and expenses of an oversecured creditor, and the claims of the 1st Tier Trustee are undersecured. See 11 U.S.C. § 506(b). Notably the Plan also allows for the reimbursement of fees and expenses of the professionals and advisers of other undersecured or unsecured creditors. (See Plan at Section 5.2.8.)

As a result of all of the foregoing, the Plan should provide for the reimbursement (and not exclusion) of the 3rd Tier Trustee's fees and expenses.

### 6. The Defenses of the Debtor to Reimbursement of the 3rd Tier Trustee's Fees and Expenses Have No Merit.

Debtor may attempt to argue that it has no liability for reimbursement of the fees and expenses of the 3rd Tier Trustee, but these arguments have no merit.

#### a. The 3rd Tier Trustee's Fees and Expenses Are Reasonable.

Debtor may seek to argue that the amount of the 3rd Tier Trustee's fees and expenses are not reasonable. Such argument would be the subject of an evidentiary proceeding, and can be reserved for another day – the Plan can simply provide for the payment of the "reasonable" fees and expenses of the 3rd Tier Trustee, with a determination as to such "reasonableness" to be made later, if necessary. In any event, the 3rd Tier Trustee submits that its fees and expenses in this Bankruptcy Case have been reasonable. As discussed above, the 3rd Tier Trustee has worked hard to attend to all

of the functions required of it including analyzing potential avenues for recovery on the 3rd Tier Bonds, negotiating with the Debtor and other parties in this case, reviewing and responding to the numerous iterations of the reorganization proposed by the Debtor and other pleadings in this case, and communicating to the Holders of the 3rd Tier Bonds.  Moreover, the amount of the work required by the 3rd Tier Trustee was magnified by the absence of a Committee in this Bankruptcy Case, depriving creditors and the 3rd Tier Trustee of an important resource for information and analysis of the various Plan developments.

The 3rd Tier Trustee represented a group of creditors collectively holding nearly $50 million in debt.  By way of comparison, the outstanding fees and expenses of the 3rd Tier Trustee are approximately 6/10 of 1% of the claim amount.  Moreover, the 3rd Tier Trustee was in fact required to perform its duties, to keep abreast of Plan developments and to consider such developments and its own actions as a reasonably prudent investor might do.  See 3rd Tier Indenture at Section 8.01(a). See also Beck v. Manufacturers Hanover Trust Co., 218 A.D.2d at 11; Sturges v. Knapp, 31 Vt. at 32, 35.

Debtor may also argue that the 3rd Tier Trustee should not have spent time or effort in this case because the Debtor's Plan provides for no distribution on account of the 3rd Tier Bonds. Debtor's position, however, is without merit.  First, as noted above, the 3rd Tier Trustee had duties to its holders including a need for vigilance in this case regardless of what the Debtor asserted as the prospect of recovery.  Second, just because the Debtor made assertions regarding the possibility of recoveries in a case does not necessarily make it so.  Instead, parties with different interests in the case can and should have the ability to test and review Debtor's assertions.

Finally, the 3rd Tier Trustee would note that its fees and expenses are minimal and dwarfed by payments to other professionals in this case and the costs of restructuring, which have totaled

approximately $6 million as of May 2011.[4]  While other professionals in this case may invariably assert that such amount is appropriate given the complexity of the case, the 3rd Tier Trustee likewise dealt with those complexities as well and incurred a small fraction of the overall cost.

### b. Successorship Agreement Expressly Provides for Rights of 3rd Tier Trustee to Seek Reimbursement from the Estate.

Debtor has also threatened to argue that prior payments to the 3rd Tier Trustee made by the predecessor trustee Wells Fargo pursuant to the Successorship Agreement absolve the Debtor of its payment obligations.  Such argument is simply untrue.  The payment by Wells Fargo in connection with the successorship was made pursuant to the express terms of the Successorship Agreement, negotiated as in connection with the succession on the complicated Bond issuance.  The Successorship Agreement specifically states that, notwithstanding payment from Wells Fargo, the 3rd Tier Trustee would expressly reserve all of its rights for reimbursement from Debtor's estate.  (See Successorship Agreement at Section 3.5.)  Whereas Debtor received a benefit of the payment from Wells Fargo by way of a reduction of the 3rd Tier Trustee's claim against the estate, in no way did such payment diminish Debtor's obligations to make payment of the 3rd Tier Trustee's fees and expenses.

### c. Subordination Provisions Do Not Bar Reimbursement of the Fees and Expenses of the 3rd Tier Trustee.

Debtor has previously attempted to argue that the subordination provisions affecting the claims on the 3rd Tier Bonds also bar reimbursement of the fees and expenses of the 3rd Tier Trustee.  (See Debtor's Reply to Trustees' Objections at 18:22 to 19:4.)  Debtor's argument is not true for several reasons.

---

[4] More recent numbers for Debtor's expenditures in this case, including for the substantial work done in the last five months, are not available because Debtor has not timely filed monthly operating reports in this Bankruptcy Case in violation of Region 17 United States Trustee Guideline 4.5.1.

First, while the subordination provisions of the 3rd Tier Indenture may arguably apply to recoveries with respect to the claims for principal and interest on the 3rd Tier Bonds, such claims are separate from the claims of the 3rd Tier Trustee for reimbursement of its fees and expenses. Second, the 3rd Tier Trustee has claims for reimbursement of its fees and expenses arising under multiple sections of the 3rd Tier Indenture and the Financing Agreement. (See 3rd Tier Indenture at Section 4.4, 8.06; Financing Agreement at Sections 4.2, 7.2(b), 7.3, 9.2, 10.9.) None of these sections refer to the rights of reimbursement for the 3rd Tier Trustee's fees and expenses as being subject to subordination and had the drafters of the document intended that subordination should apply to these fees and expenses, they would have made clear statements to that effect in the fee and expense reimbursement provisions. Moreover, the reimbursement provisions for the 3rd Tier Trustee are nearly identical to the fee and expense provisions of the 1st and 2nd Tier Trustee, further evidence that the subordination provisions were not intended to apply to the fee reimbursements to the 3rd Tier Trustee. (Compare 3rd Tier Indenture at Section 8.06 with 1st and 2nd Tier Indenture at Section 8.06.) Third, even if the subordination provision of the 3rd Tier Indenture were interpreted to affect the entitlements of the 3rd Tier Trustee *under the 3rd Tier Indenture*, such provision would not affect the 3rd Tier Trustee's separate rights of reimbursement arising under other documents, including the Financing Agreement, or as such rights to reimbursement might arise directly under the Bankruptcy Code. Fourth, while the Debtor seeks to use the subordination provisions to escape its obligation to pay the fees and expenses of the 3rd Tier Trustee, the subordination provisions were not intended for the benefit of the Debtor – to the contrary, the Debtor's obligations, having been assumed from the Director, are expressly "absolute," meaning that the Debtor has no right to assert the relative rights among creditors as a defense to a claim by one of those creditors. See Financing Agreement at Section 4.3; see also, e.g., Robinson v. The Howard Bank (In re: Kors, Inc.), 819 F.2d 19, 24 (2d Cir.

1987) (third party does not have standing to enforce subordination agreement); <u>Krafsur v. Scurlock</u>

<u>Permian Corp. (In re El Paso Refinery, L.P.)</u>, 178 B.R. 426, 437 (Bankr. W.D. Tex. 1995) (same),

overruled on other grounds by <u>Krafsur v. Scurlock Permian Corp. (In re El Paso Refinery, L.P.)</u>, 171

F.3d 249 (5th Cir. 1999); <u>In re Chicago, S. Shore & S. Bend R.R.</u>, 146 B.R. 421 (Bankr. N.D. Ill.

1992) (same). Moreover, Debtor has no intention of forwarding to other parties the amounts payable

to the 3rd Tier Trustee for its fees and expenses – in other words, Debtor's stated efforts to respect

subordination are merely a ruse. More to that point, certain of the intended beneficiaries themselves

have sought resolution for the reimbursement of the 3rd Tier Trustee's fees and expenses, with

Debtor's counsel independently and inexplicably seeking to block such reimbursement.[5]

Finally, Debtor's own statements and positions in this case run contrary to any arguments it

might make regarding subordination of the 3rd Tier Trustee's fee and expenses. Particularly, the 3rd

Tier Trustee's claim for reimbursement is an "Operation and Maintenance Cost" ("O&M Expenses")

payable by the Debtor. O&M Expenses include:

> fees and indemnification or other payments to the Director or the Trustee relating to
> . . . Subordinate Bonds, . . . and including all other reasonable and necessary costs . . .
> required to be paid by them to comply with the terms hereof or of such Senior or
> Subordinated Bonds.

(1st and 2nd Tier Indenture at Section 1.01, p. 17 (emphasis added); <u>see also</u> Section 4.2(b)(i) and

(iii) of the Financing Agreement (providing for fee and expense reimbursement for the 3rd Tier

Trustee).) Debtor has likewise acknowledged that the indenture trustee's fees and expenses in this

Bankruptcy Case are O&M Expenses. (<u>See</u> Transcript of Proceedings for 5/19/10 [Docket No. 410]

at 7:14-16 ("In terms of the trustee fees, their fees and costs, and their attorney fees and costs, I think

it's undisputed by us that they would constitute O&M Expenses."). Importantly, Debtor has also

---

[5] The 3rd Tier Trustee expressly acknowledges that any rights of the parties, including the majority
holders of the 1st Tier Bonds, are expressly reserved as to this issue.

29

frequently asserted on record that O&M Expenses are payable ahead of the unsecured interests of the 1st Tier Bonds.  (See, e.g., Debtor's Supplemental Brief at 6:24 to 7:18.)  As a result, Debtor itself has effectively argued that reimbursement of O&M Expenses, which include the 3rd Tier Trustee's Fees and Expenses, should come ahead of payment of the unsecured claim of the 1st Tier Bonds. Debtor cannot now bar such fee and expense reimbursement under the Plan while making a distribution on the 1st Tier Bonds.

As a result of the foregoing, the subordination provisions of the 3rd Tier Indenture are simply not a defense to Debtor's obligations to reimburse the 3rd Tier Trustee's fees and expenses.

### 7.  Conclusion.

As a result of the rights of the 3rd Tier Trustee referenced above, the Plan should provide for reimbursement of the 3rd Tier Trustee's fees and expenses.  To the extent that the amount of the 3rd Tier Trustee's fees and expenses needs to be finally determined, such issue may be reserved for future proceeding or may be resolved in discussion among the parties.

### CONCLUSION

For the reasons set forth herein, the 3rd Tier Trustee respectfully requests that the Court deny confirmation of the Plan, unless and until the Plan is appropriately modified to cure such defects, and grant such other and further relief as the Court deems just and proper.

Dated: October 31, 2011

Respectfully submitted,

RIKER DANZIG SCHERER HYLAND &
PERRETTI LLP
Dennis J. O'Grady, Esq.  (NJ Bar No. DO-7430)*
Curtis M. Plaza, Esq.  (NJ Bar No. CP-9111)*


SYLVESTER & POLEDNAK, LTD.


By _____

Jeffrey R. Sylvester, Esq. (NV Bar No. 4396)
7371 Prairie Falcon Rd., Suite 120
Las Vegas, NV  89128

*Counsel for Law Debenture Trust Company of New
York, as 3rd Tier Trustee*

31

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of SYLVESTER & POLEDNAK, LTD. and that on the 31st day of October, 2011, I caused to be served a true and correct copy of **OBJECTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK TO CONFIRMATION OF DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION, AS FURTHER REVISED** (for Creditor *Law Debenture Trust Company of New York, as 3rd Tier Trustee*), by ELECTRONIC SERVICE under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada. The above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

_____
An employee of SYLVESTER & POLEDNAK, LTD.

# Exhibit "1"

LVM Plan – Prohibited Third Party Release Provisions

| Plan Section | Bound Parties | Benefited Parties | What Causes of Action Released | Is Provision Permissible Under Applicable Bankruptcy Law? |
|---|---|---|---|---|
| 8.2 ("No Recourse") | Any and all parties | Debtor, Reorganized LVMC, or any director, agent, attorney, accountant, or other professional of Debtor or Reorganized LVMC | No recourse shall ever be had, directly or indirectly, against the [parties listed to the left] by legal or equitable proceeding or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by Debtor or Reorganized LVMC under this Plan. . . . | Initial clause appears to bar any action that could ever be brought against the parties protected here. Non-consensual third party releases are not permissible under applicable law. |
| 10.6 ("Releases") | Debtor and Reorganized LVMC, and, by extension, effectively any and all parties | "Released Parties" = Debtor, Director, 1st Tier Trustee, Majority 1st Tier Bondholders, and each of their officers directors, employees, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals, and representatives serving on and since the Petition Date. | Any and all Causes of Action, whether known or unknown, whether for torts, including fraud, contract, violations of federal or state securities laws, or otherwise, arising from or related in any way to the Debtor or Reorganize LVMC, including without limitation, those that either the Debtor or Reorganized LVMC would have been legally entitled to assert in its own | This provision effectively binds any party with respect to any claim that relates in any way to the Debtor, and causes any and all third parties to release such claims against the protected third parties. Impermissible non-consensual release under applicable law. |

| Plan Section | Bound Parties | Benefited Parties | What Causes of Action Released | Is Provision Permissible Under Applicable Bankruptcy Law? |
|---|---|---|---|---|
| | | | right (whether individually or collectively) or that any Holder of a Claim or other entity would have been legally entitled to assert on behalf of the Debtor or its Estate but for this release and further include those in any way related to the Chapter 11 Case or this Plan to the fullest extent of the law… | |
| 10.8 ("Injunction") | Any and all parties | Potentially any and all parties | Could be construed to allow enforcement of other impermissible third party release provisions as being "inconsistent with the provisions of this Plan" | To the extent that this section effectuates other provisions providing for non-consensual releases, this provision would be impermissible under applicable law. |

2

3

| Plan Section | Bound Parties | Benefited Parties | What Causes of Action Released | Is Provision Permissible Under Applicable Bankruptcy Law? |
|---|---|---|---|---|
| 10.9 ("Exculpation") | Any Holder of a Claim or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisers, attorneys, Affiliates, or any of their successors or assigns | Debtor, Reorganized LVMC, Majority 1st Tier Bondholders, 1st Tier Trustee, 2nd Tier Trustee and any of their respective directors, officers, managers, employees, advisors, attorneys, or agents on and from the Petition Date Forward | Any Liability for any act or omission in connection with, relating to, or arising out of (from the Petition Date forward) the Chapter 11 Case, Reorganized LVMC, the pursuit of Confirmation of this Plan, or the Substantial Consummation of this Plan, except for gross negligence and willful misconduct.<br><br>Any right of action relating to or arising out of (from the Petition Date forward) the Chapter 11 Case, the pursuant of confirmation of the Plan, the Substantial Consummation of this Plan, or the administration of this Plan | This section may provide impermissible non-consensual releases under applicable law. |

| Plan Section | Bound Parties | Benefited Parties | What Causes of Action Released | Is Provision Permissible Under Applicable Bankruptcy Law? |
|---|---|---|---|---|
| 13.4 ("Cancellation of Existing Agreements") | Any and all parties to existing agreements that might be cancelled | Any and all parties to existing agreements that might be cancelled | Any right under any document agreement or instrument evidencing any Disputed Claim that is disallowed shall be deemed automatically cancelled and terminated | This provision would seek to cancel any agreements, including agreements that may govern rights between non-debtors, if any such agreement relates to a Disputed Claim that is disallowed. The termination of third party rights against third parties is not allowed under applicable law. |

4